IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 05-06002 |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | April 25 and |
| | ) | May 3, 2006 |
| | ) | Criminal |
| LISA MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF CONFERENCES IN CHAMBERS

BEFORE THE HONORABLE GARY A. FENNER

UNITED STATES DISTRICT JUDGE.

A P P E A R A N C E S:

For the Defendant:

Mr. Ray Conrad(5-3 meeting)
Federal Public Defender
Mr. Dave Owen
Assistant Federal Public Defender
818 Grand Blvd.
Kansas City, Mo. 64106

Ms. Susan Hunt
819 Walnut Street
Kansas City, Mo. 64106

ELIZABETH SHINN, BA, RPR
U. S. COURT REPORTER
400 EAST 9TH STREET, ROOM 8435
KANSAS CITY, MO. 64106

APRIL 25, 2006

THE COURT: Susan, what is going on.

MS. HUNT: I just wanted to kind of revisit what happened last week and I have got to give you a little bit of background with the client so you understand where we are coming from.

This is probably one of the hardest cases I have ever had, not because the client is hard to deal with, that is not the issue but she has some serious, serious mental problems which I think don't come as a shock to anybody. She has been diagnosed with melanoma at C. C. A. She's under a psychiatrist's care. She's on medication. She has been seeing Dr. McCandless since Day One. It was like every day. Now it's down to once or twice a week. They're some serious, serious problems.

I think by what transpired last week we unintentionally, and perhaps because we didn't think it through, and don't have the mental health background maybe we should we have created more problems than we ever thought would happen.

You saw her in court Friday. She's a mess. I think she feels devastated by this. Her husband, we have a litigation specialist and her husband talked to her on Saturday and we got an e-mail from her basically relaying that conversation and it wasn't good. Lisa called him

Friday night and was crying, very upset. Feels she can't trust us anymore. She didn't know about this. She feels devastated, betrayed, lied to, everything. I called him yesterday just to verify is that what she really said. I mean I think we have, not we can't repair the damage with the client, I don't think it's gone forever but I think we have taken some steps back. And I think you would agree with that.

MR. OWEN: I would agree with that.

MS. HUNT: Frankly, I was kind of taken by surprise a little bit the way this thing transpired on Thursday. It's nobody's fault but Dave said he talked to Ray and he said the visit was cancelled. I was planning on calling Judy.

There were a lot of issues not to do with the client and I told you that. And there were just team dynamics, personality, whatever. I don't know if we could have ever worked through them. I don't know the answer to that. I kind of wished we would have prepared the client more or something. It was so fast nobody had a chance to really talk to her.

I talked to her last night. She told me she feels like -- all she would say, over crying, is Ron lied, I feel like Ron lied, Ron Ninemire. She thinks we all lied to her. She was going to say I think you lied to me. I don't

think she's the kind of person, based on her background, that has the ability to come out and say that to you. She wanted to see the psychiatrist all weekend. They wouldn't let her. There was a suicide up there and I think the psychiatrist has been busy with that which is one of the reasons we have lost, we have not only done that kind of damage and very unintentionally, we certainly wouldn't have intended to do that to her.

She also told me she feels like -- and this unfortunately when you stop, take a look back objectively at it, this is how things have happened her whole life, made her re-live some parts of her life unintentionally. She feels like this decision was made for her without consulting her and she has no say. To her it was a very serious decision that affects her life and she feels like we didn't consult her, it was made for her and she is told after-the-fact which is exactly what happened.

When it is all said and done that is what happened.

THE COURT: Maybe to some extent. Don't be too hard on yourself because from my perspective Ms. Clark was a third attorney who was only appointed in an effort to see if she could assist in getting a plea worked out and that was what the situation was from the very beginning. And if she was being obstructive toward the case being handled properly

and there being good communication among all the attorneys and if she was presenting difficulty with the two of you who are the ones who are going to have to try the case, I don't really have any reservation about the judgment call that needs to be made in that kind of a circumstance. You can always look back in hindsight things should have gone differently and if you were going to do it over again you might do it this way. I wouldn't be too critical of what happened in that regard.

We made the effort to discuss it with the defendant as soon as we possibly could. I can understand she's not a person that understood all of that.

MS. HUNT: There is a lot of that, a lot of things intertwined in there. You are right, that is one of the goals when we brought Judy on board was the plea, that is exactly right. Also what she brought to this case is a tremendous experience in mental health issues which the court is aware of is one of the guidelines for representation. You have to have somebody on your team with a mental health background, experience and ferreting those issues out and handling them and presenting them. I have never had a serious mental health case and I don't think Dave has.

MR. OWEN: Not a serious mental health --

MS. HUNT: Not Lisa --

MR. OWEN: The guy had delusions. Lisa's is a different mental health problem.

MS. HUNT: Did you present --

MR. OWEN: Yes, we had a psychiatrst. But I don't have the level of experience necessary to handle Lisa, I will say that.

MS. HUNT: I don't either. That is one of the things we lost, we have to rebuild is what I am trying to tell you. And to be real honest, with Judy we gained another mental health person and we gained a mitigation investigator specialist we also lost. I believe the mitigation specialist we hired, she wasn't tied to Judy at all. I don't believe she is going to stay. That is my assessment. That is your assessment, too.

MR. OWEN: She's withdrawn from the case, I believe.

MS. HUNT: So that is a serious setback for us. These are all kind of unintended consequences that just happened. David and I have had some serious conversations where do we go from here, what damage did we do, how can we rebuild it.

One thing we talked about briefly this morning was trying to put this team back together, but that is not going to work in the state it is. It's just not. We have come up with basically two options I guess and that is we haven't

made a decision, I guess, is the bottom line but we kind of wanted to keep you informed and ask your opinion as we work through this. And our goal is to work through this fairly quickly because we have to get this case back on track and try to rebuild the relationships and get people in place we need.

One option, and this is probably never going to happen, but I am throwing it out for whatever it's worth. One option is to bring Judy Clark and the resources she brings back on board in place of the public defender's office and the public defender's office out here. I can work with her and we can be back on track like something has happened but it would be very close to being back on track and on schedule for trial.

The other option is not do that and we would have to hire a mitigation specialist.

MR. OWEN: Have to find a mental health expert to assist us.

MS. HUNT: That person is probably going to potentially be a lawyer that can assist us in the preparation for trial and working with the experts, right.

MR. OWEN: Right.

MS. HUNT: We need that and we need a mitigation specialist to replace the one we have lost. We may need another investigator. We don't know. That is up in the

air.

THE COURT: What is the problem with the mitigation specialist.

MR. OWEN: Judge, she was star struck by Judy Clark. She lives in L.A. Judy Clark lives in San Diego.

MS. HUNT: They didn't know each other prior to this.

MS. OWEN: Prior to this and she has aligned herself with Judy Clark quite honestly. When we talk about her in Kansas City we figured she's constantly interviewing for a job with Judy. And when Susan and I called her Thursday night we told her what had happened and we asked for her commitment to stay on the case and all that, she gave us her commitment. The next day she calls Susan --

MS. HUNT: That next evening.

MR. OWEN: With a totally different approach, just like our phone call the night before had never happened.

MS. HUNT: She claims she misunderstood what I said. There is no way. We made it very clear.

MR. OWEN: She had talked to Judy Clark in the meantime and we have found out she has absolutely no confidence in Kansas City lawyers; me specifically, my office in general and no respect for Susan. She thinks that we have done an absolute devastating damage to Lisa's case and essentially she has withdrawn.

MS. HUNT: And David hasn't talked to her and I have. She called me Friday night and I talked to her over the weekend. Really when she is all settled down what it comes down to a lot she does have some mental health background, experience as a mitigation investigator, talking to her. She does not have, and that is what she told me, she does not have the background and experience to go and look for experts. And she said, my God, now you are going to look to me to try to find experts to help you with that and I am not at all qualified for this and I am not sure ethically, professionally I can stay on that case. That is really what she told me on Sunday after she called down.

So it's a combination of what he said, what I said all rolled in one. But the bottom line, I don't think she will be there at the end of the day. She hasn't said that. And I don't think David wants her to stay, to be real honest.

MR. OWEN: After the things she said, no.

MS. HUNT: That's a deal breaker there.

THE COURT: I understand.

MS. HUNT: Now you don't know this, this is our third mitigation person. We look like a bunch of idiots to these witnesses. We went, through nobody's fault, but she wasn't really doing a good job. That was early on. Holly is this woman's name, Holly Jackson, and she has established

relationships with a lot of core people involved that need to be established in this case and frankly I think that is a huge problem. Now we have to start over. It's unintended consequences, it really is.

THE COURT: I am not saying it's possible but I would much rather see you try to make up with her than trying to make up with Miss Clark.

MS. HUNT: I understand that.

THE COURT: What you have told me, I am not saying you couldn't convince me otherwise but it probably would be a pretty hard sell to get me to feel that would be the right thing to do.

MR. OWEN: Judge, I will throw this out on that line. My office will not work with Judy Clark ever again. We just are not going to take that abuse.

MS. HUNT: The first option, their office maybe frankly was and that is -- David and I, we still get along, nothing personal here -- but the first option their office withdraw and that office be added and the opportunity remains and you have two lawyers and all the mitigation people we need, that is the first option.

THE COURT: What's your other option. I am not inclined to do that.

MS. HUNT: The other option, like he said we have to find a mental health person, we have to rebuild. And

that option is going to take time. I guess that is one of the reasons we are coming to you now, is because of this situation. We have to do this quickly for the client and everybody's sake.

THE COURT: What do you want me to do.

MR. OWEN: I am not asking to get off this case. You appointed our office to do this case.

MS. HUNT: We know that is option B, that is not going to happen. I just wanted you to know where we are coming from. I think you would want to be advised.

THE COURT: I appreciate that and I am not inclined to want Miss Clark to be involved in it. For whatever that is worth to you, that tells you what you need to try and do. It may be your mitigation person, maybe she thinks about it and you talk to her again.

MS. HUNT: I think you have decided you don't want her back.

MR. OWEN: I am the one that pays her paycheck. And her attitude toward our office has to change.

MS. HUNT: That is a real problem. Problems are solvable, I understand that.

THE COURT: I am not telling how you have got to solve it, but we all get upset with people from time to time and are able to work past it and go on with it. And I know you all are keeping your perspective on giving your client

the best representation you can and that is what you have got to do. And not that it is going to help you much but I would be happy for you to tell your mitigation person you have talked with me and I want her to stay on the case, if that is something you are comfortable with doing. And I am more than happy for you to use my position with her to help you in that effort if you decide that is the best route to go.

I guess to some extent I think it's somewhat unprofessional for a person to take on a job and a task and responsibility, particularly one of this nature and then --

MS. HUNT: Things don't go your way.

THE COURT: You know, particularly if it's at least for the most part based on her personal relationship with an attorney who I have made a decision is no longer involved in the case. That is not a very professional approach. That would be like, you know, if for some reason I decided that one of you was going to be replaced and the other one said I am giving up on my client then, I am walking, too.

MS. HUNT: We wouldn't do that. I guess part of our message is if we do option B. or plan B, whatever, I don't see how this case can go in October.

THE COURT: I understand what your message is on that.

MS. HUNT: It's not we didn't want to do that. Seriously we did want to.

MR. OWEN: Judge, we were literally running nine miles an hour to make the October trial even after this came down, but it's not working.

THE COURT: You all make an assessment of it and if it's something that we need to talk about then we will get the government up here and we can sit down and talk about it.

MS. HUNT: We can't give you a time how long we need. We have reached out to other people to try to get suggestions and names and we are going to try to get that put together but until we do --

THE COURT: I can tell you all that I think, as you know, I was very hesitant to have Judy Clark involved in it from the first place. But that is just the way it goes and I can see why you all at that time thought that would be helpful. I don't have any reservation about the fact that she needed to be taken off the case because her involvement was obstructive in getting a defense for Miss Montgomery put together.

MS. HUNT: It was being put together but it was tense.

THE COURT: Somebody has to be in charge and in this case it's you.

MS. HUNT: I think we would have been ready in October had this not happened. We just kind of wanted to keep you up-to-date.

THE COURT: I appreciate that and you all talk about what you need to do with the mitigation thing and decide how you want to approach it. Even if you decide you want to try to keep this lady I can't force her to stay on. I am not going to try. If she isn't staying she isn't staying.

MS. HUNT: If you force somebody she wouldn't do a good job.

THE COURT: You don't want that. Think about it and if you get to a point you want to talk about something else I am more than happy to talk with you about where you are and what you are thinking you might need to do or not do.

MR. OWEN: We appreciate it.

THE COURT: And we will go from there.

MS. HUNT: We just have a lot of re-building. I just don't think we thought it through. So the consequence is enough.

MR. OWEN: You can't think of all the consequences.

MS. HUNT: No, but things happen.

THE COURT: I tried to make your client understand

it was my decision and she might have been willing to accept that and apparently she hasn't accepted that and who knows different.

MS. HUNT: She had a different relationship with Judy Clark that was good, but that is what happened. She was expecting her that day and then all of a sudden she was told her visit was cancelled.

(Discussion off the record.)

MR. OWEN: We do need to have this under seal. I am being serious about that.

THE COURT: We will continue it.

MAY 3, 2006

THE COURT: Susan, I suppose that David and/or Ray told you they visited with me earlier this week.

MS. HUNT: Right.

THE COURT: And they expressed concerns about the defense of Lisa Montgomery proceeding and you all being able to work things out. And I told them I wanted to talk to all three of you at the same time to see what the situation was and what, if anything, can be done to facilitate, if there is a problem, getting that resolved and getting things going.

So I would like to hear your position on where things stand and what, if any, problems you have and what, if anything, you think can be done.

MS. HUNT: Okay. First, I don't know if the court has seen it. I filed a letter from the client this morning under seal. You got it.

MR. OWEN: Yes.

THE COURT: I have not seen it.

MS. HUNT: Here is the original if you want to read it.

THE COURT: Just tell me what she says right now.

MS. HUNT: She's not blaming anybody. She just is expressing basically her concern about the removal of Judy and the fact, you have read it, too, she feels she wasn't

frankly notified about it and it wasn't discussed with her. And I think that frankly is a problem that I think we should have talked to her about it prior to it being done. The fact she has had trouble trusting lawyers in the past, that she has gone through other team members being removed without her knowledge or understanding, Anita Burns who was initially on this; another Lisa Rickart, a mitigation investigator we hired. Frankly the reason she was removed she resigned. She would have been fired if she hadn't. She just wasn't doing the job is the bottom line but she expressed some concerns about that. Are decisions going to continue to be made without my knowledge or consent. Is that what I expect in the future. It's a nice letter. It's well written.

MR. OWEN: It's well written. She's not bashing. She extolled Judy's virtues. That is basically it.

THE COURT: That is the bottom line.

MS. HUNT: That is the bottom line. I think we came to you last week, I forget two weeks ago. Basically I think what we told you there was some big problems with functioning, right, wrong, I think the blame lies with everyone. I think the blame lies with me, the blame lies with the federal public defender, the blame lies with Judy. There were problems working together and that is why we came to you.

Quite frankly, I didn't anticipate the depth of the devastation on Lisa Montgomery by the removal of Judy. I knew there was a good relationship between the two and I knew that. She had gotten Lisa to open up more and there was some changes. I think it was wrong, I think it really was. And I think David and I, this is our fault. I think we should have discussed it with her and tried to assess that before it just happened. I think they're fundamental problems. And I think they're fundamental problems with our continuing on.

THE COURT: "With us continuing on", what do you mean by that.

MS. HUNT: With David Owen and I. I think there is a lot of water under the bridge, nothing personal against David Owen. I still consider him a friend. That is not this issue obviously.

THE COURT: One thing about it, Lisa Montgomery doesn't get to pick who her attorneys are. She's entitled to have effective counsel and that is my responsibility to see to it that is accomplished. And it's also your responsibility as her counsel to see to it that takes place. So it's unfortunate Lisa Montgomery is upset and if she doesn't like what is going on, I have told Lisa Montgomery it was my decision and it was my decision alone. And, you know, I am very, very surprised by everything that

has taken place in this case over the last couple of weeks. First the two of you come and say Judy Clark is a non productive member of the team, causing problems, we need to have her removed from the defense. And based upon your explanation of the situation I did that.

And then a few days later the two of you came back and you wanted to think about reconsidering that and maybe bringing Judy Clark back in. And then a few days later we have a situation where the two of you say that you are not able to work together and get along. And as I told David and remember when they came in and talked that, knowing both of you I find it hard to believe you would have some kind of an issue you couldn't sit down and talk about and get it resolved and get it behind you. And as I told you at one of our meetings over the course of the last couple of weeks I considered you the lead attorney in the case (talking to Susan). And certainly in any relationship I expect the attorneys to talk things through and work with each other and be receptive to each other's input and opinion on how things ought to be handled. But when it comes right down to if there is a difference of opinion where a decision has to be made then somebody has to be in a position to make that decision.

MS. HUNT: I think that is the problem.

THE COURT: I am not going to change attorneys on

Lisa Montgomery every week.

MS. HUNT: I agree.

THE COURT: If there are specific circumstances that you all want to talk about with me, issues that you feel you are not going to be able to work through or resolve, I am happy to listen to you but I am really not inclined to take anybody off the case because somebody is having a difficult time getting along. Just on a broad proposition that you can't work together my reaction to that is then you need to work it out and you need to resolve it and you need to get past it. If there is something that happened, somebody feels that there are specific things that have taken place that have destroyed the ability to have a working relationship to provide effective counsel to Lisa Montgomery then tell me what they are.

MS. HUNT: Judge, there has been a lot of, as I think we told you the other day, we consulted Dick Burr, the National Resource Counsel, David and I met with him last Tuesday and Ray was in that meeting as well. And we all agreed because of Lisa Montgomery's mental health and because of the information in this case we had to have somebody on this team and the A. B. A. Guidelines and Supreme Court requires on mental health background. And Dick's job, he was going to try to find somebody. Dick hasn't been able to find anybody. He says basically there

is nobody that can do this.

And I really am going to resist, I don't want to get into he said-she said, I don't think that is productive at this point. I have a strong feeling that while the court considers me lead counsel and David says I am lead counsel, in reality I am not. And decisions are made I am not consulted on and things are ignored we all agreed to. And that situation cannot occur and I can effectively represent Lisa. And I personally can't be involved and be effective and I think it's a bad situation.

This case definitely requires a federal public defender's office because it's going to require a lot of resources frankly and I think we all know there is a problem sometimes getting sufficient money out of Judge Logan to accomplish things that need to be done. I would be the first one to say the public defender needs to be in this case. It requires a lot of resources. It requires a lot of investigators, like Thomas Smith does not. That is not a problem. Two C. J. lawyers, it's not been a problem. That being said, if anybody should go it should probably be me because they have the resources I don't have and I can't get. I don't know. I don't know what was said to you on Monday. I wasn't a party to that conversation at all.

THE COURT: Really not much more than what I have said, David and Ray represented that you and David were at a

point you weren't able to work together anymore and David did not feel that he would be able to at this point represent Miss Montgomery in the case. Basically my sense was that David and Ray were saying when we met on Monday that they needed out and now you are saying you need out.

MS. HUNT: And I am saying it because of the resources I can't muster and I just cannot do. One of the major disagreements -- and I think maybe the court is aware of this -- is I was supposed to call Judy that day and discuss this with her. Unbeknownst to me she had already contacted Dick Burr. He said why don't I sit down with you people and see if we can't work out these differences and get this case rolling.

David, he told you, he did not tell me this, call and cancel the visit. That is what happened. I was stunned. I never was allowed to make the phone call. I tried to resurrect with Dick Burr, that is one of the topics we talked on Tuesday, let's try to put this back together for the sake of the client. We had the resources, mental health people we needed, we had all this in place. That was lead counsel, that was my opinion the best way to go. Put aside our personal differences. Always been personal differences, not about the client. That was my opinion as lead counsel what should happen. He said absolutely not and that is where we are at. That is just, I don't want to go

into all the other details. I don't think it's productive, but that is just an example of how my ability to actually make decisions and be responsible is not respected. I don't have it, I just don't have it.

THE COURT: David, do you think there is a basis for Susan to feel you don't respect her judgment or decisions in the case, things happen that draw that into question.

MR. OWEN: Speaking to that particular issue, Judy Clark being in the case, she can assume that is her decision or not her decision. I have overruled this by saying I can't work with this person. I don't know how you want to view it. Our office cannot work with that woman. It is impossible. She is just abusive beyond reasonability. We just can't work with her.

THE COURT: I accepted that.

MR. OWEN: I appreciate Susan's position. She thinks it's best for Lisa Montgomery's defense to have that team put back together. I have no objection if they want to put that team back together, but our office can't work with them.

The other issue I think bothers Susan greatly is the money. And I appreciate her position as lead counsel she ought to be able to do, what money is spent where and how. I have never denied anybody any money, never. But

no-one outside the federal public defender's office has control over the federal public defender's budget and how it is spent. I cannot give that duty to Susan just because she's the lead counsel.

MS. HUNT: I understand.

MR. OWEN: They're those fundamental differences. Additionally, again I don't want to get into the he says-she says, this is not the place for that. All of a sudden it appears that all of the problems with this case are sitting in my lap, it's all my fault because I, quote, feel the need to control this case, unquote. Well, I don't. But that's the perception and I cannot be the whipping boy and the scape goat.

THE COURT: I do sense there is some surprising second guessing on the decision to remove Judy Clark. And I am surprised by that because it was a joint request from the two of you and it seemed that there was no consideration for anything other than the fact that Judy Clark had to go.

Then a couple days later I was surprised to hear you suggest, well, maybe we ought to bring Judy Clark back in. And it's like in anything else you have got to, in this business you make your decisions and you go with it. And you make things work from that point on. And when we met the following Monday after Judy Clark was removed and that was suggested to me I told you pretty clearly as far as I

was concerned that wasn't an option, Judy Clark was not coming back in. And I mean I still don't hear anything that I think is of such a significant or serious nature that the two of you shouldn't be able to work together.

I guess you are basically saying, Susan, that if the public defender's office stays in this case that you want out.

MS. HUNT: Quite frankly, I wasn't the one that came to you Monday and said I couldn't work. This meeting is because David Owen and he feels obviously strongly about that.

THE COURT: But this meeting is because I wanted to talk to everybody about it.

MS. HUNT: I understand but because he came and told you he couldn't work with me. I never did that. Maybe that was a good thing for David to do. Maybe it was a bad thing for him to do. But obviously there were issues that at a minimum needed to be aired, resolved and moved past or at the other extreme something else needs to be done.

MR. OWEN: Judge, if I may, Dick Burr is the resource counsel, he sent an e-mail to me yesterday of which Susan received a copy and in which he squarely puts the blame in my lap for the inability to even obtain additional resources; in other words, somebody that is expertise in handling that will help the case. And it is obvious to me

that we are the federal public defender's office to stay on this case. Dick Burr would not be able to assist in the defense of Lisa Montgomery in obtaining additional resources. I think, quite honestly, he is ready to wash his hands of the whole thing as well.

It is my viewpoint that in the best interest of the client, best interest of proceeding in this case through to trial in a timely fashion that it would be best for our office to get off. That way Susan could continue because not only have we got the problem between Susan and me we have the mitigation specialist who, quite frankly, was hired by our office, is paid by our office but will not deal with our office. She wouldn't even return my calls.

MS. HUNT: I don't think she is staying.

MR. OWEN: She would if I wasn't. My point being is I believe she would continue on the case. if I am still on the case, if the federal public defender's office is still on the case, and Holly leaves, the mitigation specialist leaves, this case goes back to square one with mitigation investigators and things like that. All that has been done. This person has developed a relationship with the various witnesses that need to be developed. And Susan can, and I am sure with the court's assistance, obtain whatever funds are necessary from Judge Logan. It is just my opinion for the good of the defense and to keep this case

on track and moving smoothly, it's just best we get off.

MS. HUNT: He has had more contact with the witnesses than I have and you know the witnesses and so does Ron Ninemire, just like the mitigation specialist. I haven't had contact.

THE COURT: My main concern is whether the two of you can work together. You are always going to have problems with experts and I can't predict who is going to do what, what expert is going to have a problem or get sick or what is going to happen. I am concerned with having capable attorneys who can do an effective job for the client. And in my judgment you are both of that caliber, but you are telling me you can't work with her and you are telling me that you all have had issues you think it's best you not continue in the case.

MS. HUNT: Yes, based on obviously, like I said, he is the one that came up here and said he couldn't work with me. He is saying that now.

THE COURT: I understand. That is a little bit petty in the sense, I mean --

MS. HUNT: I understand.

THE COURT: That is like one brother tattling on another one and then everybody getting mad and not being able -- I mean I am confident you could move past that.

MS. HUNT: That is not what caused me to say that,

correct.

THE COURT: I am not saying it wouldn't be upsetting to anybody. I am sure David would be sensitive about it if things had transpired the other way. But I guess if they're differences that need some input then probably better they come out or the sooner they come out the better, maybe the two of you agreeing let's go talk. But we have already discharged two of Lisa Montgomery's attorneys, Anita and Judy Clark. And if one or other or both of you go it's pretty much my opinion we are going to be starting over regardless. Maybe we wouldn't. Maybe there would be a way to put something together and have one of you off of the case and be able to pick up maybe along the lines of what David is suggesting. But I still, I just can't believe that the two of you are in here telling me you can't work together.

MS. HUNT: Well, frankly, that may not be the answer you want to hear. One of the reasons I say their office needs to stay they have a paralegal. I don't have a paralegal. They're experts that have already signed contracts with their office ready to come in here and do some work. If they were off the case and I was on it, appoint somebody else, I would have to file a motion. That work right now would be at a standstill where right now under their office it would continue to go as far as getting

this case back on track. I may not get the money from Judge Logan. I had some problems with the Thomas Smith case. He denied an expert once and he wrote another letter and he granted it. You probably don't know but that expert came in and didn't charge for travel time, didn't charge for meals. Submitted a very conservative bill and Judge Logan cut it by three thousand dollars. It's very difficult to get people to work with you under those scenarios and I could not be effective under that. Really a lot what this boils down to is the expert money and the resources. They have a big office. They have a paralegal. They have that staff. They can do that and the paralegal they have has been busy, 40 hours a week on this case.

THE COURT: Are you saying you can't work with them.

MS. HUNT: I am not saying that is the reason. I am saying that because he came in here to talk to you. No, that brings more of an issue for me. That is not the sole reason. I am saying that I think they're fundamental differences. He can say I am lead counsel but there have been decisions made in my opinion I am just ignored and I don't think in this case, it's my third death penalty case. I am no expert and I know David doesn't like hearing that but he doesn't have that background and experience to make those decisions. Frankly, that was part of the problem why

the team fell apart in the beginning in the first place. I can't see it's going to change much. That will be a problem.

THE COURT: We have some difficulties in the Smith case too with attorneys.

MS. HUNT: Right, that was the client though.

THE COURT: The codefendant and with the client, but the attorneys need to work together to try to head off, resolve those kinds of issues. And here we are well into this case and I have got two veteran, experienced, capable attorneys in here, both of them telling me we just can't work together. And these are long hard, difficult cases.

MS. HUNT: Very much so.

THE COURT: It would be extremely unusual if people didn't have differences and even serious differences and disagreements about how things ought to go. You just ought to be able to work through them. I know that I keep saying that and I guess that if you tell me, if you are both telling me that is not going to happen then I have got to decide what I am going to do. But that certainly would be what I would expect and anticipate from both of you. But I can't make it happen and if that is not possible or highly unlikely then I will decide what I am going to do. But really it seems to me like you ought to put these things aside and do your job of representing Lisa Montgomery. And

I know you are both capable people and it's a hard case. It's a difficult case. All of these cases are. They take a long time. It's not something that is over in a short period of time and it's just an awful lot you have to deal with and that makes it a rough road.

Ray, is there anything you want to comment on.

MR. CONRAD: Judge, Susan sent out a six-page letter that basically attacks me and David fairly consistently in the case. One of the problems, we are under-cutting her authority as lead counsel because of money and the only way that you can get around that is to have Susan as lead counsel and the C. J. A. panel attorney and have her own budget she works with. We have never denied her anything. But nevertheless I am the subject of the attacks on the fact we are controlling the budget and not letting her have the money she needs and in fact making a statement we refused to use money on a particular subject which is not correct. We have not denied that money. I am pretty bitter about that. I am pretty upset that would happen.

I am upset these two people come to you saying they can't work with Judy Clark. Three days later we meet with defense counsel and much to my surprise Susan says I have changed my mind. This is a big hole in this case and I have made a mistake, I can accept that. After all we are

talking about somebody that is facing the potential death penalty and if she has had time to think about it and think she made a mistake, that is her choice. But then to suggest that it is my fault and David's fault and we decided we would prevent Judy Clark from entering the prison and talking to the client is totally untrue. I did not make that decision. But that is the gist and that is suggested nationally to other people she had no opportunity to even object, she was so stunned she was unable to object to this court. And yet she is lead counsel, asked that Judy be removed from the case and I have to sit here and have that kind of thing said against me and David. And nationally that is known, that people are aware of that including The National Resource Counsel, if not others, that supposedly we are controlling the budget and preventing her from acting as lead counsel. We have given her the opportunity she requires to control the budget as lead counsel. If that is the case then she certainly would have every opportunity to seek a budget through this court. But, no, day-to-day she comes here with another proposition and that is I can't handle this case with this budget, we have got to have the federal public defender in here to take care of the budget. So that is a new position. And yet just three or four days ago she wanted us off the case. When we come to you and tell you we can't work with Susan, today she says they

should have the case and I should be off of it.

MS. HUNT: I disagree with about everything he says what my letter was. But obviously they're some deep-seeded feelings and I am going to renew my motion to withdraw from this case. I think, based on what he has said, it's obvious they do not want to work with me and I cannot be effective.

Having said that I do believe they do have the budget, they do have the experience, they do have the background in this case. They have the file and I think that would be in the best interest of the client at this point.

THE COURT: Well, needless to say, I am extremely disappointed in the circumstance that presents itself and as equally surprised by the situation that presents itself. I don't know too much more what I can say to anybody and I guess that I am going to have to think about it and if I want to talk to anybody any further about it I will call you back. If not, I will make a decision what we are going to do. Okay.

CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Elizabeth Shinn
U.S. Court Reporter