IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. 12-8001-CV-W-GAF |
| | ) | Crim. No. 05-06002-01-CR-W-GAF |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>GOVERNMENT'S RESPONSE IN OPPOSITION TO MONTGOMERY'S MOTION TO DISQUALIFY JUDGE FENNER</u>**

The respondent, the United States of America, appears by and through Tammy Dickinson, United States Attorney, and Assistant United States Attorney Roseann A. Ketchmark, and provides the following response in opposition to Lisa M. Montgomery's motion to disqualify and recuse the Honorable Gary A. Fenner, United States District Judge, from further participation in this case:

## I. Introduction

Montgomery has requested an order under 28 U.S.C. § 455, and the Fifth, Sixth, and Eighth Amendments, disqualifying and recusing this Court from further participation in this case. Specifically, Montgomery contends that 1) pursuant to 28 U.S.C. § 455(b)(1) this Court has personal knowledge of disputed evidentiary facts concerning Montgomery's 28 U.S.C. § 2255 proceeding, and 2) pursuant to 28 U.S.C. § 455(b)(5)(iv) this Court believes he is likely to be a material witness in Montgomery's 28 U.S.C. § 2255 proceeding.

Montgomery contends that on April 20, 2006, when her trial attorney, Assistant Federal Public Defender (FPD) David Owen, and his supervisor, FPD Ray Conrad, met with Judge

Fenner in his chambers to explain why the FPD's Office was requesting that Judge Fenner remove Judy Clarke as a co-attorney for Montgomery, that this meeting resulted in Judge Fenner acquiring knowledge of disputed facts and becoming a material witness to some of Montgomery's claims in her 28 U.S.C. § 2255 motion, and, therefore, contend that this Court should be disqualified and recused.

However, the extremely limited unrecorded communications involving this Court on April 20, 2006, which were later duplicated on the record, do not constitute a valid basis for this Court to recuse and disqualify itself for several reasons. First, there is no dispute as to the fact that David Owen requested that Judy Clarke be removed as counsel from the Montgomery case. Second, the information and facts that this Court acquired were obtained during Judge Fenner's participation in the case, and in his judicial capacity, and were not obtained through an "extrajudicial source."[1] Third, Montgomery has not shown that **this Court believes** he is "likely to be a material witness" in Montgomery's 28 U.S.C. § 2255 proceeding.[2] Fourth, Judge Fenner is in the best position to preside over this matter since this Court has been extensively involved in this case since 2005, has been intimately involved in all the proceedings, and has acquired a familiarity with all the issues way beyond any other court.

The extremely limited unrecorded communications involving this Court do not give rise to Judge Fenner acquiring knowledge of disputed evidentiary facts or to Judge Fenner believing he is likely to be a material witness. Rather, the dispositive facts involved in the unrecorded

---

[1]28 U.S.C. § 455(b)(1) does not apply to knowledge obtained in the course of related judicial proceedings. *United States v. Patrick*, 542 F.2d 381, 390-91(7th Cir. 1976), *cert. denied*, 430 U.S. 931 (1977).

[2]28 U.S.C. § 455(b)(5)(iv) applies when a judge "or his spouse . . .**is to the judge's knowledge** likely to be a material witness in the proceeding." (emphasis added)

communications, as well as the related recorded communications that followed, are uncontroverted. Those dispositive facts being that the FPD's Office, and specifically, Assistant FPD David Owen, could no longer work productively with Judy Clarke, the attorney Mr. Owen had petitioned this Court to appoint on a pro hac vice status.

Further, even assuming, solely for the sake of argument, that there are varying accounts of trial counsels' actions and statements during the discussion with Judge Fenner to remove pro hac vice counsel, Judy Clarke, there is absolutely no dispute or varying accounts that Mr. Owen's felt Judy Clarke was verbally abusive to him and his staff at the FPD's Office, that Mr. Owen's relationship with Judy Clarke had deteriorated to the point that Mr. Owen could no longer tolerate working together with Judy Clarke as co-counsel for Montgomery, and that Mr. Owen wanted and requested the Court to remove Judy Clarke as counsel from the case. These facts are not in dispute.

Additionally, Montgomery's claims of ineffective assistance of counsel, denial of right to counsel, and fraud on the court stem from this Court's removal of pro hac vice counsel, Judy Clarke. No one is more qualified than this Court to reach a determination of whether Montgomery received constitutionally effective representation, whether Montgomery was deprived of her right to counsel, or whether trial counsel committed fraud on the court.

In particular, no one is more qualified to reach a determination of whether Montgomery received constitutionally effective representation at trial and on appeal than this Court. As the trial judge, this Court was able to observe not only the trial performance of Montgomery's trial team, which included three trial attorneys, but also was able to observe the pretrial performance of Montgomery's attorneys during the three years leading up to Montgomery's jury trial.

## II. Case History of Appointed Counsel

### *A. FPD's Office Appointed to Represent Ms. Montgomery*

Montgomery was charged by Complaint on December 17, 2004, in the United States District Court for the Western District of Missouri, and shortly thereafter the Office of the Federal Public Defender (FPD) for the Western District of Missouri was appointed to represent her. Three days after the Complaint was filed, on December 30, 2004, Assistant FPD Anita Burns was assigned by the FPD to represent Montgomery on behalf of the FPD, with Assistant FPD David Owen serving as supervisor to Ms. Burns. The following month, on January 20, 2005, Susan Hunt was also appointed as learned counsel for Montgomery. Three months later, on April 14, 2005, Anita Burns was granted leave to withdraw, and Assistant FPD David Owen assumed Ms. Burns' role as primary co-counsel for Ms. Montgomery.

Mr. Owen and Ms. Hunt served together as primary co-counsel for Ms. Montgomery for six months from April 2005 until October of 2005. In October of 2005, David Owen moved this Court to appoint Judy Clarke pro hac vice, as a third attorney for Montgomery.

### *B. This Court's Reluctance to Appoint Judy Clarke as pro hac vice counsel.*

The record is uncontroverted that this Court was hesitant to appoint Judy Clarke as an additional third co-counsel for Ms. Montgomery from the outset. On April 25, 2006, this Court reaffirmed on the record, its initial reluctance to appoint Judy Clark[e] as co-counsel in the Montgomery case. This Court was clear to David Owen, Susan Hunt and Ray Conrad during a conferences in chambers that "I was very hesitant to have Judy Clark(e) involved in it from the first place." (Montgomery Attach. 5 at 13.) The record in this case is without any opinion or statement to the contrary.

## *C. Information Relied Upon by this Court for Removing Judy Clarke.*

Even though reluctant to allow Judy Clarke to participate in the Montgomery case, this Court granted David Owen's request on October 7, 2005. (D.E. 63.) Judy Clarke served as a third co-counsel for Montgomery for less than seven months before she was removed on April 20, 2006.

It is abundantly clear that Mr. Owen and Ms. Clarke did not have a healthy working relationship. The significant depth of their deteriorated relationship is uncontroverted.

### *1. David Owen*

David Owen described his relationship with Judy Clarke as "drastically deteriorat[ing]" within one month of Judy Clarke's appointment by this Court. (Montgomery Attach. 2 at 6, Declaration of David Owen.) David Owen explained that problems with the Montgomery team arose shortly after the involvement of Judy Clarke on the case. (Gov. Attach. 1 at 2, Letter to Richard Burr.)

The bad working relationship between Judy Clarke and Mr. Owen continued to become worse over time. Mr. Owen has given the example of how he felt as though Judy Clarke "took a baseball bat to [Mr. Owen's] head" during a team meeting, and that "Judy just started lambasting that I did not have the experience to establish priority to anything. It was a very ugly scene." (Gov. Attach. 1 at 2, Letter to Richard Burr.)

There is no doubt on April 20, 2006, David Owen and Ray Conrad spoke with this Court about the difficulties the Montgomery defense team was having amongst each other. Likewise, it is uncontroverted that during this conversation David Owen advised this Court that he felt Judy

Clarke was causing problems for the Montgomery defense team, and Mr. Owen requested this Court to remove her as counsel from the case.

Mr. Owen was clear when he reiterated to this Court during a recorded in-chambers conversation that "I can't work with this person…[o]ur office cannot work with that woman. It is impossible. She is just abusive beyond reasonability. We just can't work with (Judy Clarke)." (Montgomery Attach. 5 at 23.)

Consistent with Mr. Owen's complaints to the Court about Judy Clarke, Mr. Owen advised the Capital Resource Counsel on May 2, 2006, in a letter that "I was not and still am not willing to continue to be abused (by Judy Clarke) and will not tolerate any employee of the Federal Public Defender being abused the way Ron Ninemire was abused (by Judy Clarke)." (Gov. Attach. 1 at 3.)

*2.* *Susan Hunt*

Susan Hunt described Mr. Owen having difficulty working with Ms. Clarke as early as November of 2005. (Montgomery Attach. 1 at 6; Declaration of Susan Hunt.) At one point Judy Clarke called a meeting with Ms. Hunt and Mr. Owen at a restaurant. "Mr. Owen was extremely angry after the meeting and felt he had been attacked unfairly. He never got over this and continued to complain about Judy Clarke and her people." (Montgomery Attach. 1 at 6.) Ms. Hunt concedes that on April 19, 2006, she, Mr. Owen, and Judy Clarke discussed Judy Clarke possibly getting off the Montgomery case because of internal defense team problems. (Montgomery Attach. 1 at 6.) Ms. Hunt concedes that she and Mr. Owen planned to speak to this Court the following day on April 20, 2006, about the team's problems and the potential of Judy Clarke leaving the Montgomery case. (Montgomery Attach. 1 at 6.) In a conference in the

Court's chambers on April 25, 2006, Ms. Hunt described the team's problems as "team dynamics, personality (issues)" and claimed that "I don't know if we could have ever worked through them. I don't know the answer to that." (Montgomery Attach. 5 at 3.) Ms. Hunt went on to reiterate and describe the team problems to the Court in a conference in chambers on May 3, 2006. Ms. Hunt told this Court, "I think we came to you last week, I forget two weeks ago. Basically I think what we told you there was some big problems with functioning, right, wrong, I think the blame lies with everyone. I think the blame lies with me, the blame lies with the federal public defender, the blame lies with Judy. There were problems working together and that is why we came to you." (Montgomery Attach. 5 at 17.)

*3.* *Judy Clarke*

Judy Clarke conceded in her declaration dated March 14, 2013, that the Montgomery defense team was having problems. Judy Clarke recalled meeting at a restaurant with Mr. Owen and Ms. Hunt to discuss the team problems. (Gov. Attach 2 at 7, Declaration of Judy Clarke.) Judy Clarke admits that "Mr. Owen interpreted my comments and observations (during this restaurant meeting) as an all-out attack on him and his professional abilities." Judy Clarke went on to state in her declaration that "I explained that the team needed to function in a better way and that we had to change the way the team was functioning. I stated matter-of-factly that he (David Owen) did not know enough to be the leader of the team and that he needed to relinquish control, and take this experience as an opportunity to learn about capital investigation and litigation. I gave examples of how his actions were impeding the investigation, especially his insistence on participating in sensitive interviews." (Gov. Attach 2 at 7.)

Judy Clarke went on to opine that "I believe that some of the resentment and resistance that led to the need to have that conversation over dinner and the hurt feelings that remained after, worsened the divisions that were apparent on the team when I first became counsel on the case. I tried very hard to keep the various factions working together as a whole but failed. However, as much as I tried, I could never figure out how to fix what was wrong…[t]he drama that infected this team was definitely detrimental to the work that we were trying to accomplish for Lisa Montgomery." (Gov. Attach 2 at 7.)

Judy Clarke likewise echoed in her declaration, the critical aspects of Ms. Hunt and Mr. Owen's memory of the April 19, 2006 meeting at Ms. Hunt's house. Judy Clarke agrees the meeting was a bit heated and was about whether Judy Clarke should continue as a part of the Montgomery defense team. (Gov. Attach 2 at 8.)

## III. Legal Authority and Analysis

Montgomery contends that this Court should be disqualified and recused from further participation in this case for two reasons:

First, pursuant to 28 U.S.C. § 455(b)(1) this Court has personal knowledge of disputed evidentiary facts concerning Montgomery's 28 U.S.C. § 2255 proceeding. Second, pursuant to 28 U.S.C. § 455(b)(5)(iv) this Court believes he is likely to be a material witness in Montgomery's 28 U.S.C. § 2255 proceeding.

## *A. 28 U.S.C. § 455(b)(1)*

As to Montgomery's claim under 28 U.S.C. § 455(b)(1), "[t]his rule applies to knowledge which the judge obtained extrajudicially." *United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987). Discussions in the judge's chambers were held to be "in the course of a judicial proceeding." *United States v. Bailey*, 175 F.3d 966 (11th Cir. 1999); s*ee also United States v. Sims*, 845 F.2d 1564, 1570 (11th Cir. 1988) (in camera hearing is not extrajudicial). Moreover, facts learned by a judge in his judicial capacity cannot be the basis for disqualification. *United States v. Patrick*, 542 F.2d 381 (7th Cir. 1976) (citing *United States v. Bernstein*, 533 F.2d 775, 785 (2nd Cir. 1976)).

In *ISC v. Nobel Biocare Investments*, ISC's former counsel met with the district court privately, and without a court reporter, to advise the judge of his reasons for applying to withdraw as counsel. The Second Circuit held that the unrecorded *exparte* conversation with the district court did not merit recusal of the judge. The Second Circuit went on to find the communication did not qualify as "extrajudicial" and that "[a]ny information the district court acquired was obtained in the normal course of adjudicating a withdrawal motion." *ISC v. Nobel Biocare Investments*, 688 F.3d 98 (2nd Cir. 2012), and *ISC v. Nobel Biocare Investments*,759 F.Supp.2d 289 (S.D.N.Y.2010).

Also as to Montgomery's claim under 28 U.S.C. § 455(b)(1), the "evidentiary facts concerning the proceeding" must be in "dispute." As previously discussed, there is no dispute that Assistant FPD David Owen felt he could no longer work productively with Judy Clarke and this was communicated to Judge Fenner in the April 20, 2006 in-chambers discussion. There is also no dispute that Judge Fenner removed Judy Clarke as co-counsel because of this. Those are

the dispositive facts. Any other non-dispositive facts, including the personal feelings and opinions of Susan Hunt towards Judy Clarke, are irrelevant for purposes of 28 U.S.C. § 455(b)(1).

### ***B. <u>28 U.S.C. § 455(b)(5)(iv)</u>***

As to Montgomery's claim under 28 U.S.C. § 455(b)(5)(iv), Montgomery must show that the judge "or his spouse . . . is to the judge's knowledge likely to be a material witness in the proceeding." Montgomery has not attempted to make such a showing.

The responsibility for deciding a § 455 recusal motion lies solely with the judge to whom the motion is directed. *In re: Kensington International Limited*, 353 F.3d 211, 223 (3rd Cir. 2003) (citing *Bernard v. Coyne*, 31 F.3d 842, 843 (9th Cir. 1994)); *see also Shadid v. Oklahoma City*, 494 F.2d 1267, 1268 (10th Cir. 1974) (the decision to recuse is left to the sound discretion of the judge) "Discretion is confided in the district judge in the first instance to determine whether to disqualify himself . . .[because the] judge presiding over a case is in the best position to appreciate the implications of those matter alleged in a recusal motion." *In re: Kensington International Limited*, *supra*, (citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2nd Cir. 1988)). The Ninth Circuit stressed in *Kensington*, that the discretion confided in district judges to determine whether a recusal is warranted "is particularly true where, as here, the district court judge has presided over (i) an extraordinarily complex litigation (ii) for an extended period of time" and the judge "has been intimately involved in these proceedings for the past two years." (*Id.*)

Wherefore, the United States respectfully requests this Court to enter an order denying Montgomery's motion to disqualify or recuse this Court from further participation in this case.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney

By /s/ *Roseann A. Ketchmark*

ROSEANN A. KETCHMARK
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on April 9, 2013, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Roseann A. Ketchmark*
Roseann A. Ketchmark
Assistant United States Attorney