IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Movant*, | ) | |
| | ) | |
| v. | ) | Case No. 12-08001-CV-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

MOVANT'S REPLY IN SUPPORT OF HER MOTION TO REASSIGN CASE

COMES NOW movant Lisa M. Montgomery, by and through undersigned counsel, and submits the following reply to the Government's Response in Opposition to her pending Motion to Reassign the Case.

## I. Introduction

As an initial matter, Mrs. Montgomery notes that this Court has set this case for oral argument on May 6, 2013, at 1:30 p.m. on Mrs. Mongomery's pending motion to reassign the case. Undersigned counsel interpret the Court's docket entry to limit the May 6th court setting to oral argument only. Mrs. Montgomery respectfully submits that if the Court is not inclined to re-assign her 2255 motion to another judge, then at a minimum the pending motion to re-assign should be referred to another judge for consideration.

Undersigned counsel wish to make clear that by appearing for oral argument on May 6th, they in no way waive Mrs. Mongomery's right to an evidentiary hearing on the pending motion. If such a hearing were to be set, Mrs. Montgomery would request an opportunity to conduct discovery, including but not limited to the depositions of Ray Conrad and an interview or deposition of Judge Fenner, prior to such hearing.

Mrs. Mongomery has requested that this case be re-assigned to a different judge pursuant to 28 U.S.C. §455(b)(1) and 455(b)(5)(iv) as well as the Fifth, Sixth, and Eighth Amendments. Mrs. Montgomery believes such reassignment is necessary because Ray Conrad and David Owen chose to make Judge Fenner a witness and, in doing so, Mr. Conrad, and possibly Mr. Owen, made material misrepresentations in order to have Judge Fenner remove Judy Clarke from Mrs. Montgomery's defense team without the consent of lead counsel Susan Hunt and without consulting Mrs. Montgomery. As reflected in her pending Section 2255 motion[1], Mrs. Montgomery strongly believes that her Sixth Amendment right to counsel, among other rights, was violated when Judy Clarke was precipitously removed from her defense team without the Court hearing from Ms. Clarke, Ms. Hunt and Mrs. Montgomery. It is regrettable that Mr. Conrad and Mr. Owen involved Judge Fenner in this matter, but that is what occurred. As a result, due process requires that a different judge handle this Section 2255 motion.

To be clear, Mrs. Montgomery believes that Judge Fenner is required to recuse himself and re-assign this case to a different division pursuant to both 28 U.S.C. §§ 455(b)(1) and (b)(5)(iv). Title 28 U.S.C. §455(b) provides in relevant part:

> (b) He *shall* also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or *personal knowledge of disputed evidentiary facts concerning the proceeding*;
> >
> > * * *
> >
> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> >
> > > (iv) *is to the judge's knowledge likely to be a material witness in the proceeding*.

[1] See Claims I to IV at p.16-54 of Doc. #32.

(Emphasis added). *See also* Code of Judicial Conduct for United States Judges, Canon 3 (C)(1)(D)(iv) ("A judge *shall* disqualify himself or herself in a proceeding in which the judges impartiality might reasonably be questioned, including but not limited to instances in which . . . the judge . . . is to the judge's knowledge likely to be a material witness to the proceeding.")(emphasis added).

In its Response in Opposition to Ms. Montgomery's Motion to Reassign this case, the government argues that four factors weigh against Ms. Montgomery's motion. The government is wrong in each instance:

## II. The Government's Characterization of the *Ex Parte* Off-the-Record Communications Illustrates the Key Issue Related to this Motion

As an initial matter, the government characterizes the communications that made Judge Fenner a material witness to this matter as "extremely limited" and asserts that those communications were "later duplicated" on the record. In so arguing, the government has illustrated Mrs. Montgomery's argument. Until depositions are taken or other testimony regarding those *ex parte* off the record communications is developed, the nature, scope, and content of the communications are unknown. The government's claim that the *ex parte* unrecorded and untranscribed communications were "limited" is not supported by the record, precisely because there is no record. While it is known that Mr. Conrad contacted Judge Fenner by telephone on April 20, 2006, and that a subsequent meeting occurred in chambers, there is no transcript for the April 20, 2006 telephone call or subsequent meeting in chambers. While the Government chooses to characterize these matters as "extremely limited unrecorded communications involving this Court," there currently is no basis for such a claim. Indeed Judge Fenner is one of three material witnesses to the nature, extent, and content of those conversations.

The only known witnesses to what was said to prompt the removal of Judy Clarke from the case are Ray Conrad, David Owen, and Judge Fenner – each of whom is a material witness to Mrs. Montgomery's case. Thus far, counsel for Mrs. Montgomery have only been able to hear David Owen's version of the events that transpired on April 20, 2006. Ray Conrad has refused to discuss the issue with 2255 counsel. [2]

Similarly, there is no support for the Government's claim that these conversations were "later duplicated on the record." Instead, there were later recorded conversations making reference to the April 20, 2006 telephone call and meeting, but without discovery and creation of a record as to what was said in the *ex parte* off-the-record conversations it is pure speculation to say such conversations were "duplicated on the record." Indeed it is apparent that they were not duplicated on the record as the subsequent transcripts that exist merely hint as to what was said off the record. The existing hints suggest that the Court received materially false information about Judy Clarke. As but one example, the Court indicates that he was informed that Ms. Clarke was unproductive. That is a demonstrably untrue statement, but what was said to lead the Court to that conclusion is unknown and not duplicated on the record.

## III. Factual Disputes Exist As to Mr. Owen's Representations to Judge Fenner That Resulted in the Removal of Judy Clarke.

In its next argument that Judge Fenner is not a material witness, the Government contends that there is no factual dispute that David Owen wanted Judy Clarke off the case. This is not accurate. According to David Owen, he went to Mr. Conrad on the morning of April 20th to apprise him that there were some issues within the defense team and that he and Ms. Hunt were considering asking her to leave the defense team.

[2] Mr. Conrad consented to an interview with 2255 counsel, but refused to answer any questions regarding the Judy Clarke matter, calling it a "personnel matter." See Attachment 1. *Declaration of Janet Santana* re Ray Conrad at p. 2.

Mr. Owen has stated that Mr. Conrad proceeded to contact Judge Fenner and ask that Ms. Clarke be removed from the defense team. Upon information and belief, Mr. Conrad had not even been involved in defense team meetings nor did he have any independent basis for asking that Ms. Clarke be removed from the defense team. Then, Mr. Conrad participated in a meeting with Judge Fenner later that morning – a meeting at which lead counsel Susan Hunt was not present. It is unknown exactly what was said during the meeting in chambers as no record was made of the conversation. As Mr. Owen does not recall what was said in chambers to Judge Fenner to cause Judge Fenner to remove Ms. Clarke from the case, and as Ray Conrad refuses to speak on the matter, there is no evidence in the record as to what was said to Judge Fenner to cause him to take the unprecedented action of calling CCA to have Ms. Clarke removed that day without a hearing.[3] Judge Fenner is a necessary witness to the creation of the record as to what transpired in his chambers during that *ex parte* off-the-record conference.

Subsequent on-the record conversations suggest that either Ray Conrad or David Owen made material misrepresentations to Judge Fenner in order to have Ms. Clarke removed from the case. Both Susan Hunt and David Owen have admitted that they were at a loss as to how to defend Mrs. Montgomery. Both Ms. Hunt and Mr. Owen felt that they needed the assistance of an experienced death penalty attorney who was skilled in identifying and dealing with mental health issues in capital cases. This is the reason they added Ms. Clarke to the defense team. As discussed in Mrs. Mongomery's 2255 motion, very little had been accomplished in the defense of Mrs. Montgomery prior to Ms. Clarke entering the case.

Again, the Government has repeatedly emphasized that David Owen wanted Ms. Clarke off the case, but that is not the issue currently before the Court. The government appears to be

[3] Ms. Clarke was in Kansas City. She could have easily been rerouted to the Court for a hearing.

jumping to the merits of Mrs. Montgomery's 2255 claims pertaining to the removal of Judy Clarke. Yet, the only issue before the Court at this time is whether Judge Fenner is precluded from hearing the merits of Mrs. Montgomery's 2255 claims and should therefore re-assign the case to a different division of this Court.

As for Mr. Owen's feelings about Ms. Clarke, it is undisputed that there was a meeting in November of 2005 at which Ms. Clarke told Mr. Owen that he did not have the experience to lead the defense team. While Ms. Clarke later realized that she had offended Mr. Owen with her comment, it is now apparent that Mr. Owen took the comment much more seriously and developed a dislike of Ms. Clarke despite the fact that it was accurate to say that he had no experience in capital cases and was the least experienced capital attorney on the defense team having never been involved in a death penalty case prior to Mrs. Montgomery's case. Moreover, contrary to the Government's assertion in its Response, there is a dispute as to whether or not Ms. Clarke was "verbally abusive" to Mr. Owen and staff members of the Federal Public Defender's Office.

The record of later meetings suggests that Mr. Conrad or Mr. Owen made misrepresentations to have Judy Clarke removed from the defense team without the consent of either lead counsel Susan Hunt or Mrs. Montgomery. During the time that Judy Clarke was involved in the case she developed a close relationship with Mrs. Montgomery. In addition to working with the client, Ms. Clarke reviewed discovery, met with Government counsel, moved forward with collecting documents, set out an investigation plan, and sent out contracts to two expert witnesses in the weeks prior to her being removed from the case. In fact, Ms. Clarke had made remarkable strides in moving the case forward, despite significant obstacles put in place by Mr. Owen and

his in-house team. Yet, subsequent recorded conversations with Judge Fenner suggest that Mr. Owen portrayed Ms. Clarke as being an unproductive member of the defense team.

It is not clear whether Judge Fenner was told on April 20, 2006 that learned and lead counsel Susan Hunt was uncertain about removing Judy Clarke from the case. Ms. Hunt had asked Mr. Owen for time to consider such an important decision and had informed him that she planned to call Judy Clarke on April 20th to discuss the dynamics and issues within the defense team. Without waiting for Ms. Hunt's decision, Mr. Conrad and Mr. Owen apparently went to the Judge with their complaints causing the Court to take the extraordinary and unprecedented step of removing the most experienced and successful member of the defense team.

The Government stresses that Mr. Owen later claimed on the record that he could no longer tolerate working with Judy Clarke; however, it is not clear whether he made such statements on April 20th and, even if he did, removing Ms. Clarke was not the only option for resolving this situation. More importantly, this claim is irrelevant to the instant motion. After Ms. Clarke entered the case she became part of Lisa Montgomery's defense team. Nowhere in any of the statements from counsel or in any of the available transcripts are there any allegations that Ms. Clarke did anything improper that would have precluded her from continuing to practice *pro hac vice* in this Court. Instead, Ms. Clarke was moving forward, acting in accordance with prevailing professional norms, in preparing Mrs. Montgomery's case for trial in the face of incredible obstacles set by the federal defender staff. It certainly appears Ms. Clarke was removed from the defense team based upon misrepresentations because David Owen did not like her.

Pursuant to Sixth Amendment, Mrs. Montgomery had a right to counsel. While she may not have had the right to choose her appointed attorney in the first instance, if a member of the

defense team needed to be removed, she should have been consulted. The Court's decisive action to remove Ms. Clarke without hearing from her or from Mrs. Montgomery suggests that the Court was told something of a magnitude and nature sufficient to warrant such precipitous action. The record is clear that when problems later developed between Susan Hunt and David Owen, Judge Fenner called them both into chambers and asked them – on the record – to resolve their differences for the good of the case.[4] That Judge Fenner's actions in the removal of Judy Clarke were so different from his approach with Ms. Hunt and Mr. Owen indicates that the Court was told something more than that the parties merely could not get along or that one of the attorneys had used coarse language. The key issue for purposes of this motion is what Judge Fenner was told by Mr. Conrad and Mr. Owen.

It is the nature of what the Court was told which is at issue between the parties. The facts of the *ex parte* off-the-record telephone call and subsequent off-the record conference in Judge Fenner's chambers are very much in dispute and Mrs. Montgomery is entitled to discovery of those facts in support of her claims[5]. Unless the Court reassigns the case, Mrs. Montgomery will be denied her chance to prove her claims as she will be unable to seek discovery of the truth of what happened in that conference.

[4] See Attachment 5 to Motion to Reassign, D.E. 41-5. *Transcript of in Chambers Proceedings* at p.19-20.

[5] The Government raises a separate issue in its response which also suggests that the Court should reassign the case. The Government references a comment by the Court in a transcript expressing an initial reluctance to appoint Ms. Clarke. There is no record of such reluctance and neither Ms. Hunt nor Mr. Owen remember any such reluctance. The Government's allegation thus raises another issue for counsel to explore with Judge Fenner. Was there a reluctance? On what was it based? Was it based on extrajudicial information? How was it expressed and where? See Attachments 1 and 2 to Motion to Reassign, Doc. # 41-1 and # 41-2. *Declaration of Susan Hunt* at p.5 and *Declaration of David Owen* at p.6.

## IV. ***Ex Parte* Off-the Record Conversations Between Mr. Conrad, Mr. Owen, and Judge Fenner Were Extrajudicial Because They Did Not Involve the Subject Matter of the Litigation.**

The government also argues that the facts received by the Court in the *ex parte* off the record telephone call and subsequent in chambers conference were not "extrajudicial" in that they occurred in the course of Judge Fenner's role as the tribunal in this case. Mrs. Montgomery recognizes that much of the case law surrounding the issue of the determination of "personal knowledge" as defined by §455(b)(1) turns on the source of the Court's knowledge. That is to say, in many reported cases, the issue is indeed able to be resolved with that superficial analysis. The inquiry here is not so simple.

In this case, the Court's knowledge occurred in a proceeding where neither the Court nor the attorneys chose to create a record so the determination of whether Judge Fenner's knowledge is "extrajudicial" or not is still an open question. Though the factual predicate for appellate court examination of this issue is rare, district courts have recused themselves in similar circumstances. *See United States v. Martin*, 561 F.2d 135 (8th Cir. 1977); *United States v. Rhynes*, 196 F.3d 207 (4th Cir. 1999). "This language usually refers to those possible occasions in which a judge is a witness to the events which are the subject of the lawsuit." *United States v. Masters*, 1988 WL 79612, No. 88 CR 0500, at p.2 (N.D. Ill., July 25, 1988).

The "personal knowledge" possessed by Judge Fenner requires reassignment because the *ex parte* off-the-record telephone call as well as the off-the-record in chambers conference cannot be construed as in the course of the Court's judicial duties. The government is correct that the preponderance of case law indicates that a court may not be recused simply based upon prior knowledge by the judge of facts concerning a party "learned by a judge in his judicial capacity." *United States v. Patrick*, 542 F.2d 381, 390-91 (7th Cir. 1976) *cert. denied*, 430 U.S. 931 (1977)

(*citing*, *United States v. Bernstein*, 533 775, 785 (2nd Cir. 1976)). However, the government's assumption that the telephone call and chambers conference to which Judge Fenner is a witness qualifies as information learned in his judicial capacity is not founded on case law. Indeed in *Bernstein*, the Second Circuit noted the types of proceedings which constitute "judicial capacity":

> The rule of law, without belaboring the point, is that what a judge learns in his judicial capacity, whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both, is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification.

*Id.*, at 785. Of note, however, the types of proceedings listed by the *Bernstein* court (which was relied upon by the Seventh Circuit in the *Patrick* case cited by the government) are all proceedings of which there is a record which may apprise any party of what occurred and what was said. The absence of such a record in this case is at the heart of why Judge Fenner is both a material witness and must be disqualified based upon his personal knowledge. Here, unlike in the cases cited by the government, the Court's knowledge is not based upon events which occurred on the record in the Court's regular judicial capacity. While it may be that the Court regularly oversees matters related to appointed counsel, it cannot be part of the Court's "judicial capacity" to arbitrate personality disputes between members of the defense team. Upon information and belief, the Court's entertainment of Mr. Conrad and Mr. Owen's personality-driven complaints about Ms. Clarke was not properly in the course of the Court's "judicial capacity." Unfortunately the Court is also a material witness as to what was said, which is necessary to the evaluation of whether the Court's knowledge and actions were or were not in the course of his judicial capacity.

**V. <u>Determination of "Material Witness" is not Based On Judge Fenner's Subjective Belief.</u>**

The government mistakenly believes that 28 U.S.C. §455 (b)(5)(iv) requires proof of the Court's subjective belief that he is a witness, and argues that Mrs. Montgomery has failed to meet her burden of showing the Court's belief. The government misconstrues the standard. Though case law on 28 U.S.C. §455(b)(5)(iv) is scant, the overwhelming precedent on the entirety of the recusal and reassignment statute supports the use of an objective test. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). *See also Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 ( 1994); *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir.2003); *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 164 (3d Cir.1993); *United States v. Cooley,* 1 F.3d 985, 993 (10th Cir.1993).

**VI. <u>Reassignment is Necessary To Protect Ms. Montgomery's Constitutional Rights</u>**

Finally, the government argues that Mrs. Montgomery's motion must fail because Judge Fenner is the best judge for this case. The government's argument is inappropriate under these circumstances. Any party's perception of the best forum is irrelevant in the face of the Court's obligation to uphold due process and fundamental fairness. Mrs. Montgomery is entitled to discovery of all information – including the testimony of all witnesses – related to her claims of both fraud on the Court and interference with her right to counsel. For Mrs. Montgomery to depose the relevant witnesses, this matter must be reassigned to a different division of this Court. Mrs. Montgomery did not make Judge Fenner a witness to this proceeding; prior counsel did that. Once Judge Fenner became a material witness to her claims, Mrs. Montgomery had no choice but to move for reassignment. Contrary to the Government's suggestion, it is not appropriate to evaluate this pending motion by considering whether Mrs. Montgomery received constitutionally effective representation at trial and on appeal.

## VII. **Conclusion**

By the afternoon of April 20, 2006, the most experienced and knowledgeable member of Lisa Montgomery's defense team had been removed by Judge Fenner at the request of Mr. Conrad and Mr. Owen, apparently over a mere personality conflict. Ms. Hunt's feelings over the manner in which this removal was handled, the way in which her role as learned and lead counsel was disrespected in the process, and the manner in which Mrs. Montgomery was treated, caused Ms. Hunt to no longer want to work with Mr. Owen. Ultimately, this led to Ms. Hunt being asked to withdraw from the case within weeks, as Judge Fenner opted to keep the Office of the Federal Public Defender in the case. Thus, within a matter of a few weeks, Mrs. Montgomery lost the two most experienced members of her defense team and was forced to start anew. Judge Fenner is a material witness in the proceeding as to what was said in the *ex parte* off-the-record telephone call and subsequent off-the-record in chambers conference on April 20, 2006 that set this chain of events in motion.

Reassignment of this case is necessary for two separate but inter-related reasons: 1) Judge Fenner has personal knowledge of disputed evidentiary facts concerning the proceeding and 2) he is a material witness in the proceeding. If the Court finds that Mrs. Montogmery's contention as to either of these bases is correct, the Court must reassign the case. Mrs. Montgomery respectfully requests that the above-captioned case be re-assigned to a different judge for all further proceedings on her 28 U.S.C. §2255 motion.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2013, the above-captioned document was served electronically on Roseann Ketchmark and Cynthia Cordes, Assistant United States Attorneys representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Lisa G. Nouri*