## DECLARATION OF JANET SANTANA

I, JANET SANTANA, declare as follows:

I am a paralegal in the Office of the Federal Public Defender for the Middle District of Tennessee in Nashville. As part of my employment, I traveled to Kansas City, Missouri and witnessed the interview of Ray Conrad by attorneys for Lisa Montgomery on January 23rd, 2013.

Mr. Conrad stated he has been the Federal Defender for the Western District of Missouri since approximately 1980. Prior to his appointment, he was in private practice in Springfield. His office consists of fourteen attorneys other than himself.

When asked about his office's involvement in the Lisa Montgomery case, Mr. Conrad stated that in 2005 when the office was appointed he would have asked for one of his staff attorneys to handle the case. His memory is that Mr. David Owen was the person who took the case. He stated that as a matter of course the chief investigator, Ron Ninemire, would have been involved. Mr. Conrad characterized his own involvement in the case as being "the money person." He said that as head of the office, he believes in delegating authority and that in this case "it was delegated."

Mr. Conrad did not recall Ms. Burns' involvement in the case, but when pressed said she may have been involved "early on." He said that he did not recall her involvement and therefore could not speak to what had happened to cause her to be removed from the case.

Mr. Conrad said that he does not have any role in the assignment of learned counsel to a capital case. He has offered names to the judges on some occasions, but indicated that the judges "generally make the choice on their own." Mr. Conrad did not know, off the top of his head, what attorneys in the district are qualified to be learned counsel.

Mr. Conrad recalled that Fred Duchardt and John O'Connor had meetings at the Office of the Federal Defender, that David Owen was involved in the meetings. He stressed that no requests for funding given to him by David Owen were denied. "Every request for money that the lawyers wanted, I saw that they got that." He explained that he never questioned any of the requests, because by the time the request got to him, David Owen had already reviewed the request and that David Owens' ok satisfied Mr. Conrad.

Mr. Conrad could not recall whether he watched any of the Montgomery trial or not. He also said he could not recall whether David Owens or Ron Ninemire reflected on the trial or proceedings with him.

Mr. Conrad hired Mr. Ninemire in 1985. He said that investigators in his office go to NDIA trainings. He believes that Mr. Ninemire has had specialized death penalty training over the years, but did not claim to know when or whether it was prior to the Montgomery case. Mr. Conrad said, "In this office I try really hard not to have policies" about training; he generally sends investigators to NDIA but will send them to other trainings on an *ad hoc* basis.

Mr. Conrad said that the FPD puts on an annual seminar, generally on a variety of issues. He would have been the person to invite Judy Clarke to speak at that seminar. He does not recall on what issue she spoke, though he is aware that his office has not put on any trainers in capital defense. Mr. Conrad stated that one of the attorneys in his office, Larry Pace, is qualified to do death penalty cases and that he "may have a lawyer in Springfield" who may also be qualified. He clarified that generally the judges do not appoint the Office of the Federal Defender for capital cases.

When asked how he first became aware that there were problems on the Montgomery defense team, Mr. Conrad stated that he "view[s] that as a personnel matter" and that he "wouldn't want to talk about that." When asked whether his views and actions with regard to Ms. Clarke were based upon information from his employees or from some other source, Mr. Conrad responded that he "[did] not see why I should discuss that."

When asked about the *ex parte* proceeding he and Dave Owen had in chambers which resulted in the removal of Judy Clarke from the defense team and the barring of Ms. Clarke from visiting Ms. Montgomery at CCA, Mr. Conrad said that he did "not see the relevance" of those matters. When counsel for Ms. Montgomery explained that she was attempting to understand how and why Ms. Clarke was removed from the case, Mr. Conrad repeated that he "just [did] not want to get into personnel issues." When counsel stressed that the information was critical to Ms. Montgomery's current litigation, Mr. Conrad continued, "I'm sorry, I can't," and refused to answer any additional questions. When counsel inquired whether Mr. Conrad spoke with Steven Asin regarding the Judy Clarke issue, Mr. Conrad replied, "Let me say this: I won't answer that question."

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct to the best of my information and belief.

Janet Santana

Janet Santana

Signed this 15th day of March, 2013.