IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, Plaintiff, | ) | |
| vs. | ) | Case No. 12-CV-08001-GAF |
| UNITED STATES OF AMERICA, Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS

On May 6, 2013, the above-entitled cause came on before the Honorable Gary A. Fenner, United States District Judge, sitting in Kansas City.

APPEARANCES

For the Plaintiff:

Ms. Lisa G. Nouri
Attorney at Law
2526 Holmes
Kansas City, Missouri 64108

Ms. Christine M. Blegen
Blegen Law Firm, LLC
230 SW Main Street
Suite 217
Lee's Summit, Missouri 64063

Ms. Kelley J. Henry
Ms. Amy Harwell
Office of the Federal Public Defender
810 Broadway Street
Suite 200
Nashville, Tennessee 37203

Katherine A. Calvert, RMR
United States District Court Reporter
Charles Evans Whittaker Courthouse
400 East Ninth Street
Kansas City, Missouri 64106
(816) 512-5741

APPEARANCES
(continued)

For the Defendant:

Ms. Roseann A. Ketchmark
Ms. Cynthia L. Cordes
Office of the United States Attorney
Charles Whittaker Courthouse
400 East Ninth Street
Room 5510
Kansas City, Missouri 64106

MAY 6, 2013

THE COURT: Well, I want to talk to you about a few things here, then hear from counsel as to anything that you'd like to reflect upon.

There are a couple of matters that are raised in the motion to reassign the case that I would like to comment on and I think deserves some clarification.

There was a comment that I made about Ms. Clarke being nonproductive, and I think that comment is misunderstood or taken out of context in the scope of the entire matter, and those choice of words were my words. They were not the words of Mr. Owen or Mr. Conrad, and what I meant when I said that, was that the defense team was not able to be productive because of the conflict that existed between counsel, and I think that's rather obvious in the record.

Further my comment that Ms. Clarke was only appointed in an effort to see if she could assist in getting a plea worked out was really a misstatement on my part, an awkward way of conveying that assistance with negotiating the plea was one of the considerations that was addressed to me in adding Ms. Clarke to the defense team; however, no one conveyed to me Ms. Clarke should only be involved to assist with the plea, and her appointment in the case was not limited and no one at any time suggested to me that it should be.

Ms. Nouri, there are a couple of people with you at

your table that I'm not familiar with. Would you care to introduce them?

MS. NOURI: Yes, sir. I know you know Christine Blegen, Your Honor. Your Honor, this is Kelley Henry. Kelley Henry is the head attorney in the National Federal Public Defender Capital Habeas Unit. She does have a boss there who is the head of the Federal Public Defender, but she supervises the Capital Habeas Unit. Kelley is from Missouri. She was born and raised in Blue Springs.

And with her, who's a significant part of our attorney team, is Amy Harwell who's actually born and raised in Tennessee and has that smidge of that accent, Your Honor. She is not a member of the Missouri bar; however, I had told her in June we were going to get her admitted here because she's worked just as much as Christine and I have and Kelley has and she should be a participant at least on paper, Your Honor.

THE COURT: All right. Ms. Nouri, I know that you and, I believe, Ms. Cordes and Ms. Ketchmark or one of the other, had an opportunity to discuss the conversation between me and Mr. Owen and Mr. Conrad that you frame as the basis for your motion to reassign the case, and I'd like to know if anything in the course of that matter has altered your position one way or another in this motion?

MS. NOURI: I guess it's made my position more -- it's increased my desire and my reasoning for the motion to

reassign, Your Honor.

THE COURT: All right. And why don't we just start off with speaking to that.

MS. NOURI: Can I stand over there because I have a lot of papers?

THE COURT: That's fine.

MS. NOURI: And, Your Honor, and I told this to Judge Maughmer earlier today, but I'm nervous about this issue. I'm not trying to offend anyone at all. I've practiced in front of you for many years and when this was originally filed --

THE COURT: Well, you know, maybe just starting off there. I'm surprised that you allege that the public defender's office, specifically Mr. Conrad and Mr. Owen, committed a fraud on the Court, which to me if that truly were to have occurred, it clearly would be unethical and unprofessional to do that, and I understand that you had some questions about the fact as to what was said between us, actually, basically what was said by Mr. Owen and Mr. Conrad, but I don't see any basis to accuse Mr. Conrad and Mr. Owen of that type of unethical conduct and, you know, I think that's --

MS. NOURI: I apologize if you see it that way, but I think the way it was worded and if it wasn't, then it wasn't, upon information believed. But we have one reteller of the story and that is Mr. David Owen, and we tried to get the other

participant to retell the story and Mr. Conrad refused to talk to us about that issue. It wasn't until Thursday, Your Honor, that we found out there was someone additional besides yourself.

Now, if you're talking specifically about fraud on the Court resolving the Judy Clarke issue, it makes me wonder what could have been said to get a district judge to remove such a prominent, high profile, effective capital defense attorney.

THE COURT: Don't you think it's pretty obvious under the record that that defense team could not work together, they were not functioning, and they could not adequately represent Ms. Montgomery in the case on the basis of the record that's before you?

MS. NOURI: Yes and no. I mean, it's obvious I think now in hindsight there's a problem when Anita Burns couldn't work with David Owen in the case and she was told to get off the case.

THE COURT: Okay. But how does Anita Burns have anything to do with this?

MS. NOURI: Your Honor, there is a common denominator running through all of this. In any event, I don't know, to this day I do not know what was represented to you by Ray Conrad at that conference to push you to remove Judy Clarke from the case. I don't know.

THE COURT: Nobody pushed me to do anything. I had a case management decision to make. I was told that the team that had been composed was not able to work together. I was told that the public defender's office could not and would not work with Judy Clarke, and so I had to make a decision. Ms. Hunt had reservations about the entire process as well.

MS. NOURI: Unfortunately, I believe from the record it shows that Ms. Hunt was not included in that original decision when the order was entered to remove Judy Clarke, Your Honor.

THE COURT: I didn't say that she was. I said she had reservations about it as well.

MS. NOURI: I understand that. I just -- Your Honor, you know, I'm not trying to offend anyone here. I'm not trying to call names to attorneys that are my friends or who were my friends. I don't know if they're my friends anymore. But I had to do what I believe is the right thing for the client in this case, and there were so many ex parte off-the-record communications involving this significant issue on the right to counsel, it's like I was almost compelled to file this motion to disqualify Your Honor.

THE COURT: Well, that's not what your motion is. Your motion is to reassign the case because you claim that I'm a material witness.

MS. NOURI: That's right.

THE COURT: There are facts that you believe cannot be discovered absent calling me as a witness.

MS. NOURI: That's exactly right. I called it like that because it made me uncomfortable to implicate anything that would involve bias by the Court. I never felt like that. But these people, these attorneys running to you -- and I can go through the litany of all the dates, but these attorneys running to you with all these off-the-record communications made you a material witness.

When the government responded, I think they ended up calling it opposition to our motion to disqualify, so if that's what we want to call it, then that's what we can call it but I wasn't trying to go down that road. I was trying to implicate that you are a material witness, that you have information that was part of that meeting. Judge --

THE COURT: I told you what my recollection is of it was.

MS. NOURI: However, Judge, there are at least six off-the-record ex parte meetings, okay? I'm going to tell you what they are. And now I know there's a seventh after speaking with Judge Maughmer.

THE COURT: Isn't it to some extent part of a capital case where counsel discusses matters with the Court that the government does not have the privilege or opportunity to be privy to?

MS. NOURI: Sometimes, of course, but when it involves the right to counsel and all the counsel aren't present, I think it makes it a different issue.

THE COURT: Well, you're talking about a right to a particular counsel, not right to counsel. Ms. Montgomery was always represented as required statutorily.

MS. NOURI: And I'm talking also about the lack of presence of Ms. Hunt who I thought was lead and learned counsel as opposed to Mr. Owen, Your Honor.

THE COURT: All right. And what else do you feel supports your position? Ms. Hunt wasn't there.

MS. NOURI: Apparently there was something that happened in October of 2005, some sort of discussion whether to admit Judy Clarke to the case. This was -- I'm going from -- this is before I even had a chance to talk to Judge Maughmer today, Your Honor. I was working on this last week. However, David Owen and Susan Clarke -- I mean Susan Hunt have said Judge Fenner had no reluctance to appoint Judy Clarke. That's not accurate. She came in the case. We had your statements to the contrary that were in the record, which I know you just clarified that for us to some degree, Your Honor, but that is something that happened off the record that we're not aware of.

THE COURT: Okay. And I lost track. What is it exactly you are complaining about in October of '05? A discussion about Judy Clarke and you say that my position was

what?

MS. NOURI: The record does contain statements by you that you were reluctant to appoint Ms. Clarke, and that record is from the 4/25/06 chambers conference. I guess I surmised there must have been some discussion back in October that would have precipitated this April 25th comment.

THE COURT: No, there was not. It's my general position that I try to appoint local counsel. My experience has been that things run smoother with local counsel involved in the case, and this may very well be a case in point that bears that out, and that was my reluctance was to involve outside counsel with whom I had no familiarity and no experience with.

MS. NOURI: This doesn't specifically relate to you but it does to some degree. We know that on April 17th David Owen went and spoke with Judge Maughmer regarding, I'm going to call it the Judy Clarke issue, and to my knowledge nothing was done with that except for the fact that I believe Judge Maughmer mentioned that to you.

THE COURT: I don't really have any recollection of that one way or another.

MS. NOURI: There's an April 20th, 2006, phone call from Ray Conrad to you and David Owen was on the other end of the phone call in the Federal Public Defender Office. So we have David Owen's version. We do not have a version from Ray

Conrad or you, Your Honor.

THE COURT: Well, they wanted to come talk to me because there were problems in the case.

MS. NOURI: Then we also have on April 20th the meeting with David Owen, Ray Conrad, you, and Judge Maughmer. I guess the point is none of this was recorded, Your Honor. And the further point is Ms. Hunt was not heard from on this issue, and when they came in here April 20th, Judy Clarke was actually in town and could have presented herself to the courthouse if requested to do so. Susan Hunt was actually in the building and could have presented herself.

THE COURT: Ms. Nouri, it wasn't my purpose to try to judge right or wrong or who was at fault and who could possibly behave better than they did. It was my purpose to deal with the dysfunction that existed and resolve that so that Ms. Montgomery could be adequately represented in the case and it could be moved forward.

MS. NOURI: I understand that. There's yet another unrecorded meeting after that meeting, the same date of April 20th, 2006, with David Owen, Ray Conrad, Susan Hunt, and yourself. Then we go to April 25th, 2006.

THE COURT: There's an unrecorded meeting between me and Susan Hunt and David Owen and Ray Conrad?

MS. NOURI: After Judy Clarke was already taken off the case. That's what we believe.

THE COURT: Where do you gather that from?

MS. NOURI: From information from David Owen and Susan Hunt, Your Honor.

THE COURT: I thought that we had a transcript of that meeting.

MS. NOURI: There's a meeting later, April 25th, 2006, where it's you, David Owen, Susan Hunt and there's a transcript of that April 25th, 2006 date, but then at the end of the transcript --

THE COURT: Okay. And if this unrecorded meeting took place, what do you represent happened there?

MS. NOURI: I don't know, Your Honor.

THE COURT: And nobody can tell you. Ms. Hunt, Mr. Owen, no one can tell you. All they can do is tell you that they met with me and there wasn't any record made and nobody remembers what it was about?

MS. NOURI: I can read the record of April 25th up to the point where at the very end there's some talk about Judy Clarke and then it says, Let's go off the record, and then it comes back on and the last sentence is something to the effect of David Owen saying, I want this under seal. I'm serious about that. So we don't know what happened in that window, Your Honor, but I know it was preceded the last sentence by something about Judy Clarke.

THE COURT: I think it's obvious from the record

there were personality issues and no one wanted to paint another person uncharitably.

MS. NOURI: That's how I feel right now, exactly how I feel right now.

THE COURT: Well, I don't understand what you mean by that.

MS. NOURI: It means it makes me uncomfortable to talk about these people when they won't answer the questions to me and it might resolve my questions, Your Honor.

THE COURT: Well, Ms. Nouri, they were not functioning as a team. They were at odds with each other. It seemed pretty apparent that the public defender's office here was deeply offended by Ms. Clarke. Now, whether that was Ms. Clarke's fault or Mr. Owen's fault or Mr. Conrad's fault or Ms. Hunt's fault, I did not launch a full-scale investigation to make that determination. I accepted the situation for what it was. It wasn't good. It wasn't what it should have been but it had to be resolved and that was what was done.

MS. NOURI: I understand that, Judge. And the final unrecorded ex parte conference was Ray Conrad and David Owen coming back to you on May 1st and I recall that as the complaint about Susan Hunt conference. I don't know what was said at that at all but for the fact I know just a glimmer because on May 3rd of 2006, there's a transcript where you reference David and Ray coming in on Monday, two days prior.

THE COURT: You know -- and, quite frankly, I don't remember all of that. This was a long time ago. I can tell you, though, that nobody, you know, suggested that I do anything off the record that wasn't discussed on the record. And there were no considerations undertaken by me that were not expressed on the record. No one really, quite frankly, sought to exclude someone else from the case as opposed to them. It seemed to me that to some extent they all recognized that there was a problem. By saying all, with the exclusion of Ms. Clarke because I never spoke to her about it. Ms. Hunt recognized that they weren't functioning and something had to be done. Mr. Owen recognized that. Mr. Conrad recognized that. And clearly I recognized it as well. And there was nothing that anyone said to me other than basically they could not work together.

MS. NOURI: Well, I mean, if that's the way it was, that's the way it was. Obviously I wasn't present. It just seemed like something that needed to be raised, Your Honor, when none of these other people have a coherent recollection and Ray Conrad would refuse to answer our questions on the matter.

THE COURT: I don't know. I haven't spoken to Mr. Conrad about it. But my sense of it is is that he was probably offended by the strong language that was used, and obviously from the comments on the record he sees it as something

different than you do. His characterization was that it was irrelevant because to him it was a personality issue, I take it.

MS. NOURI: That was the answer, Your Honor. Let me clarify. That was well before this because maybe if he answered the questions, we would have had a better picture of what had transpired.

THE COURT: Well, you would have the same picture you would have right now.

MS. NOURI: But I didn't have that before, Your Honor.

THE COURT: I understand that. And if I thought that you needed additional information from Mr. Conrad or needed to talk to him, I could certainly direct that be done, but all you want to ask Mr. Conrad -- what do you want to ask Mr. Conrad? Did he say anything other than what Mr. Owen says was said? Did he say anything -- I don't know what Judge Maughmer had to say today, but does he say anything different than what Judge Maughmer said today?

MS. NOURI: To a degree. Mr. Owen really doesn't have a recollection of what happened in that chambers conference. He does recollect the phone call that was initiated by Ray Conrad to you on April 20th which is essentially the bitching about Judy phone call, and he doesn't recall exactly what was said in chambers.

Now we've had the benefit of talking with Judge Maughmer earlier today, and essentially Judge Maughmer advised that Mr. Conrad spoke for about -- the whole thing wasn't more than 15 or 20 minutes. Mr. Conrad spoke most of the time. He didn't have any recall of David Owen saying anything and that it was -- I would characterize it as him saying that Mr. Conrad called it a breakdown in communication or something to that effect. That's a -- 15 minutes is a long time to talk about a breakdown in communication, and it just seems like someone should be able to have a recollection of what was said during that meeting.

Now, you've answered what you did afterwards and that it was your decision and that there was -- I think it was made clear by Judge Maughmer, and it sounds like it's made clear to you, that nobody said anything about Ms. Clarke's work product or anything of that nature. It was essentially this breakdown in communication is what I heard from Judge Maughmer today.

THE COURT: And there's another stone that you want to turn over being Mr. Conrad.

MS. NOURI: Yes, sir.

THE COURT: And what do you believe that you're going to discover by discussing this further with Mr. Conrad now that you have my version of it, Judge Maughmer's version of it, Mr. Owen's version of it?

MS. NOURI: I'm not sure, Your Honor, until we get to talk to him, but there is --

THE COURT: Well, I mean, doesn't there have to be some good faith -- I mean, the government's paying you to do all of this, right?

MS. NOURI: Yes, sir.

THE COURT: And, you know, shouldn't any client want some good-faith basis for the actions of their attorney that are being paid for to pursue something?

MS. NOURI: Well, Your Honor, I guess what I'm trying to find out is if really Mr. Owen was the instigator of all of this. From our information I don't believe Mr. Conrad was involved in team meetings or discussion amongst the --

THE COURT: The instigator of what? Judy Clarke being removed?

MS. NOURI: Complaining about Judy Clarke to the Court.

THE COURT: Well, there's no dispute that Mr. Owen had serious issues with Ms. Clarke.

MS. NOURI: Except he can't remember exactly what happened then, and that's why I thought it would be significant to be able to talk to Ray Conrad about that, Your Honor, because there's numerous, numerous issues in that office that we have, I guess you would call it, uncovered that relate to the prior representation and then the final defense team.

THE COURT: Well, it's not a question of how well the public defender's office functioned, is it, or whether everybody got along in the public defender's office or whether there were some personality clashes within the office itself? I just don't see how that --

MS. NOURI: Your Honor, there's a case and I think it's called Gonzalez Lopez and that's the basis of this, okay, at the root ultimately.

THE COURT: Is that one of the cases you gave me?

MS. NOURI: No, because honestly it goes to the 2255.

THE COURT: You said, yes, it is one of the cases you gave me or no?

MS. NOURI: It's not in this, no. It's the leading case and it's not about reassignment because that's what we're here about today. It's about the client's right to counsel and this issue will become significant because of Gonzalez Lopez down the road. It just seemed prudent to raise this issue, Your Honor, about reassignment when you are the one who clearly removed Ms. Clarke from the case, and we are going to contend down the road that the right to counsel issue is a significant issue.

THE COURT: Anything else you want to say?

MS. NOURI: The supplemental notice of authority, it has the leading cases. All the other -- the first motion we

filed, then the response to the government's and even the government's -- there's not a lot of cases on this, Your Honor. They're all in there. It's pretty clear. And we are contending that you're a material witness, that we don't know what happened to those and, therefore, the case should be reassigned. If you're not inclined to reassign it, which it's obvious you're not, then we're asking that we be allowed to have an evidentiary hearing on this issue or at least to have discovery to be able to talk to Ray Conrad, then have another judge make the decision on the reassignment.

THE COURT: Is there anything else that you have not apprised me of that you believe supports your motion?

MS. NOURI: Your Honor, some of the things that the government raised in their response. One was that there's apparent -- I think it's on page 6 of their response. I can't remember right now. But it says something about Ron Ninemire was abused, then in parens it has by Judy Clarke. There is nothing like that in the record. We've spoken with Ron Ninemire. Ron Ninemire has never said that.

THE COURT: Ron Ninemire was what?

MS. NOURI: Abused. And David Owen did say that Judy Clarke was abusive. This is another matter that we feel is relevant to our being able to talk with Mr. Conrad, Your Honor. All these allegations of how abusive this woman is, but yet Ron Ninemire said she wasn't abusive. David Owen said she

was. I guess my inference is I wanted to know what Ray Conrad had heard about that.

THE COURT: My only concern was the dysfunctional relationship between counsel.

MS. NOURI: Okay.

THE COURT: And I don't remember anybody saying anything else about Ron Ninemire. That was never a consideration of mine to go into -- we talked about one mitigation person and I told them to work it out but they weren't able to do that.

MS. NOURI: Yes, sir. I know exactly what you are talking about. So for us to be clear, it's obvious the reason Ms. Clarke was released from the case was because of the dysfunction or lack of communication or inability of this group of defense attorneys to work productively for Ms. Montgomery?

THE COURT: That's correct.

MS. NOURI: I think that that is it. I think that's it. And, again, Your Honor, I apologize if it was offensive to you. It wasn't designed like that. The whole purpose is to do what is the right thing representing Ms. Montgomery.

THE COURT: Well, the thing that really concerns me is you're accusing these people of unethical behavior without a base of fact to support it. It's not just that this could have been or it's possible. Your motion accuses the public defender's office of committing fraud on the Court, and maybe

you wondered if that had happened or not. But you don't have any facts to support that in any of the allegations that you make or any of the information you have. And I understand you say, Well, Ray Conrad wouldn't talk to you about it for whatever his reasons are, but you've talked to Judge Maughmer and you've talked to Judge Owen (sic) and now I've told you what my recollection of the situation was, and I realize that probably you think that I should submit myself to a deposition or to testify in front of someone else as to my case management decision. I do think that you don't use that kind of language unless you've got something to back it up.

MS. NOURI: Your Honor, Mr. Owen told us that Ray Conrad is the one who did this, that he didn't do it.

THE COURT: Did what?

MS. NOURI: Called you, told you to take Judy Clarke off the case.

THE COURT: And told me that David Owen couldn't work with Judy Clarke?

MS. NOURI: Yes, Your Honor.

THE COURT: And somehow or another that's Mr. Conrad's initiating that conversation? Don't you think that Mr. Conrad has some responsibility to inform the Court if there's that kind of a conflict that exists between counsel?

MS. NOURI: Yes, I do think he does have that responsibility, but it makes me wonder, Your Honor, when Dave

and Mr. Conrad came to you about Susan Hunt, you made them get Susan Hunt and you had her in two days later to hear what Susan Hunt had to say. They came to you complaining about her. I'm guessing you said, We need to hear what Susan has to say about this because that's how the May 3rd transcript starts. Well, Susan, I guess you know that Dave and Ray were in here two days ago. And she said, Yeah, I know now. I didn't know that then. That's what made me wonder what happened on the prior occasion.

THE COURT: Well, I don't think you have to wonder too much anymore because I think you know everything that took place.

MS. NOURI: I understand, Judge.

THE COURT: You may very well feel that you need to pursue it further with Mr. Conrad and I guess that's something that I'll have to give some consideration to.

MS. NOURI: I understand that.

THE COURT: Ms. Cordes or Ms. Ketchmark, do either of you have anything that you want to say on any of this? Do you have any reflections upon the discussion of Judge Maughmer this morning?

MS. KETCHMARK: Yes, Your Honor. Thank you for allowing the defense to interview Judge Maughmer. I thought it was very enlightening and not surprising that I think it confirmed what we all are assuming that the record is simply -- there was a conflict and you made a decision to remove one of

the parties.

Since it wasn't recorded, if it's okay with you, I'd like to just relay, since everyone that was in Judge Maughmer's chambers is here in the courtroom, as well as Judge Maughmer, just to relay so the record's clear that there is no hidden agendas or any fraud on the Court taking place if you'd allow me to just make about five or six points.

THE COURT: All right.

MS. KETCHMARK: Judge Maughmer his best memory is that the meeting of April 20th was fairly brief, approximately 15 to 20 minutes. Nothing that he told us this morning is inconsistent with the points you made on the record that we already have that is in the transcript. Everything is consistent with everything you have said on the record.

He also remembered that funding was not an issue in the decision to remove Judy Clarke, that someone had to go. That it was clear that someone had to go, that there was -- that the strong preference for you and the strong preference in the courthouse historically is to have local control of the cases for a variety of reasons and that when asked about was there input from Ms. Montgomery or Judy Clarke, that the view was that this was a matter for the Court to determine.

Judge Maughmer also recalls -- he believes he was present during the May 3rd discussion which was transcribed, but that transcription does not reflect Judge Maughmer was

there.

And he does recall that the federal public defenders are the ones that wanted Judy Clarke brought in on the case in the first place.

He recalls that before the April 20th discussion in your chambers that prior to that, we believe April 17th, that David Owen did mention to him that there were problems between his office and Judy Clarke. He couldn't remember any detail but it was just a general we're having problems as if it's just what I interpret as a heads up.

He does remember that you invited him then to your chambers on April 20th when Ray Conrad and David Owen came up to discuss the problems the team was having. And repeatedly the emphasis was that it was a breakdown in communication of relationship. That it was a broken relationship.

Counsel for the defendant asked Judge Maughmer if there was any -- if you had any reservations initially with having Judy Clarke become part of the defense team. His memory is that you did have reservations with bringing someone in from outside the area, and that that just is true with most every case that there's a comfort level with the courts on who to trust, what their abilities are, what their comfort level is.

They asked if it was uncommon for a judge to have ex parte communication that aren't recorded. He says, It's not common but it's not atypical. The lawyers come in and seek

guidance from him. That's not atypical.

And he did say that this was all brought to his attention -- when this issue was brought to his attention, that it was he who notified you, that he remembered being in that meeting in your chambers and that he assumed you would ask -- he would be asked to be interviewed and in fact that's what you thought may be a good idea for counsel for the defendant to interview Judge Maughmer.

And, Your Honor, I would just refer to my response, the arguments that I made in the government's response.

THE COURT: All right. Thank you.

MS. NOURI: Your Honor.

THE COURT: Yes.

MS. NOURI: Can we add something additional?

THE COURT: All right.

MS. HENRY: Your Honor, thank you for the opportunity to make a few additional points. I do want to point out a few things. Since the Court isn't familiar with me, I'd like to mention a little bit about my experience. First I am a Kansas City attorney. I practiced here in state court and I was a trial attorney doing capital trial work for the Missouri State Public Defender System. My entire career has been death penalty cases since 1989, and I have experience in habeas cases, which was why -- part of the reason why you appointed our office to come in on the case to assist Ms. Nouri

and Ms. Blegen; and while Ms. Nouri, of course, remains lead counsel, she has relied a lot upon our expertise, and I want to shed some light through my expertise as to why some things were pled the way they were, the basis for our pleadings, and why we do -- we hesitate to have to come here. This is an unusual circumstance. And while I've done capital cases for over 20 years, I have never experienced a situation where lawyers were constantly going to the Court to complain about personality conflicts if in fact that's all what was going on.

THE COURT: I haven't either, Ms. Henry.

MS. HENRY: So this is unusual and this is not something that we did casually, and it's not something that I put Ms. Nouri and Ms. Blegen up to. It's something that we pored over the record and we conducted as much investigation as we could.

One of the things that I counseled Ms. Nouri and Ms. Blegen about is that in these capital habeas cases under 2255 there is a thing called the statute of limitations which is very important, and by March 19th of this year we had to plead every claim we had on the basis of the record that we had, doing the investigation we were able to do without process of court. We didn't have the ability to come to get a subpoena from Mr. Conrad's deposition. We're certainly going to seek that later on, but we had to look at the record, and what the record said was -- and I understand Your Honor's explained it

now to the best of his memory, but what you said to counsel on the record on April 25th was, Hey, look, you represented to me that this woman was being unproductive in the case. Well, that is demonstrably untrue.

We also interviewed David Owen who told us -- and I'm not sure if it's in his declaration because I don't have it committed to memory, but one of his complaints about Ms. Clarke is that he claimed she was not getting expert witnesses. She wasn't moving the case along. She wasn't getting evaluations. And that was a specific complaint about her work product. He told us that when we interviewed him in Denver. We know that to be untrue because we have copies of the contracts where she had actually made contact with expert witnesses. So if he had represented that to you or if Mr. Conrad had represented that to you, that would be untrue.

We have the record that says Mrs. Clarke was described as abusive to staff. That's a loaded word. It's a conclusory word. But it is a word based on our investigation having spoken to Ms. Elliott and Mr. Ninemire who we also believe to be untrue. That's what we believe. Our motion was filed based on information and belief, and we have an obligation to Ms. Montgomery to make those allegations because if we don't, under the law, they would be waived forever. And one of the things that I have learned through hard experience is that when we don't make allegations, as uncomfortable as it

may be our --

THE COURT: I understand your limitations.

MS. HENRY: And so that's why I would -- there was an allegation earlier about this making one of the examples our case in point as to why the Court doesn't like outside counsel coming in, and I just wanted the Court to be aware that there's no rabble-rousing going on here, and everything that we have pled we have pled on the basis of good faith.

Our interview of Judge Maughmer this morning, frankly, for me raises even more questions than it provided answers. Mr. Conrad, he says, spoke for 15 to 20 minutes. I disagree with the government's characterization of that as brief. Fifteen minutes of complaints about a lawyer is not brief.

We disagree that this is simply a case management issue. This was -- and that there was only one option. Our feeling is that if the Court was led to believe that that was the only option that you had, it had to be based on something more than just Ms. Clarke had been unkind or had said to Mr. Owen, quite truthfully, Mr. Owen, you're not experienced. You can't make this decision --

THE COURT: I don't believe that was the only option I had. I had whatever option I felt was best to exercise, which could have meant removing all of them or removing one of them, removing two of them, starting over again. I had to

decide how best to manage the case and that's what I did.

MS. HENRY: And as the Court is aware, that's one of our lead issues in the motion is error in making that choice and that decision and we have to --

THE COURT: I understand that. That's a different issue.

MS. HENRY: We have to make as much of a record and put as many facts in the record as we can to support that, and Your Honor will rule or some other judge will rule, depending on how this motion to reassign goes, then we'll have to move up from there, but our obligation is to make the record as best that we can at the time.

THE COURT: Well, what do you think about accusing attorneys of unethical conduct when you don't have a clear basis to do that when I guess, at best, it would be a supposition? Do you think that's appropriate?

MS. HENRY: Your Honor, I believe we had a basis for it. I believe the record as it existed at the time we reviewed it, which was not a record we created, but the record that was there was when Your Honor is saying to Mr. -- apparently to Mr. Conrad and to Mr. Owen, You all represented to me that this woman was unproductive. You all represented --

THE COURT: I never said that. The truth of it is they were all unproductive. Ms. Clarke was unproductive. Mr. Owen was unproductive. Ms. Hunt was unproductive. They were

all unproductive given the circumstances that existed at that time because they could not function together, and so maybe that was not as artfully stated as it possibly could have been, but it certainly is not the basis for accusing someone of committing fraud.

MS. HENRY: Your Honor, we have evidence to prove Mrs. Clarke was being productive, that she was being incredibly productive.

THE COURT: I'm sure they would all say that they were productive to whatever extent I believe that they were.

MS. HENRY: I'm not talking about their words. I'm talking about documents, proof that they were actually being productive.

THE COURT: It's unproductive in a different sense than what you're choosing to imply.

MS. HENRY: The reason we're having to make those inferences is because Mr. Owen and Mr. Conrad chose to come to you off the record --

THE COURT: You make the inferences. I'm not critical of that so much as I am critical of the conclusion that you're so quick to draw from your suppositions about what that phraseology meant and, I guess, my misstatement that she was just brought in to settle the case because that was never my impression and I just misspoke when I said that. It was a consideration and everyone was hopeful that she might be able

to facilitate that, and I believe it was represented to me that she had been successful in doing that in the past.

MS. HENRY: Very successful.

THE COURT: It didn't work out.

MS. HENRY: Mrs. Montgomery would have pled to life without parole. Mrs. Montgomery would plead to life without parole right now. It is legitimate to have that as a consideration. Of course, in a case like that you want to bring in a lawyer who's going to be able to plead the case.

THE COURT: Okay. That's a different question.

MS. HENRY: I don't quibble with that fact being in the record. But, Your Honor, when you say they were quick to draw these suppositions, there was nothing quick about it. Nothing quick whatsoever. There are hours and hours that we spent turning this over looking at the record and thinking very carefully about the claims that we needed to plead and then having to make a decision as lawyers who have a client's life on the line as to are we going to waive a claim that we believe to be true? And, quite frankly, I still believe to be true.

The discussion with Judge Maughmer earlier, just to correct some of the things the government said, she's going to have a problem with doing things off the record. I understand that Judge Maughmer said that he felt that the canons of ethics prohibited him from discussing anything with us being recorded. It should be clear that we did ask for that to be recorded, but

she said that he had spoken with you about it and that he did not believe that he could speak to us on the record. So we didn't -- we weren't going to argue with him. We were happy to be in his chambers.

He has no specific memory of anything that Mr. Conrad said to you. Again, it's another individual who doesn't have a specific memory other than he was in the room and that there was a general concern about breakdowns, but he doesn't remember what that general concern was; and, again, it's our position you're a federal district court judge, you're not going to remove the most successful capital defense lawyer in this country simply because she's not from here.

THE COURT: Well, I understand you think that I made the wrong decision.

MS. HENRY: Judge, what we're saying is that we think somebody said something to you to cause you to make that decision without calling her in and without calling the client in and having a hearing like you did with Susan Hunt and David Owen.

THE COURT: I didn't really see it as her decision to make. I saw it as my decision to make.

MS. HENRY: I'm sorry. Just so the record is clear, when you say it's not her decision, are you talking about Susan Hunt, Judy Clarke, or Lisa Montgomery or all three?

THE COURT: I thought you were referencing the fact

that Ms. Montgomery was not consulted about Ms. Clarke being removed.

MS. HENRY: Well, I mean, that's also part of our claims and basis for our belief that you took that extraordinary step without talking to her because the case law sort of requires it.

THE COURT: I didn't see it as Ms. Montgomery's decision and I didn't see it as any of counsel's decision as to how to resolve that circumstance. I saw it as my responsibility, not theirs.

MS. HENRY: I just want the record to be clear as to what the basis for everything we said was and also because I wanted, again, sort of the feeling from the record earlier about this motion being a case in point about the problems with out-of-state lawyers. I felt I needed to address that.

Again, I'm sort of familiar with the Kansas City bar, but I am now an outsider although I was born and bred in Missouri. This was not something that we all put each other up to. It was not something we took lightly. It was not a decision we made quickly. It was decision based on the case law and our ethical requirements to Mrs. Montgomery.

THE COURT: All right. Thank you, Ms. Henry.

Ms. Ketchmark, what's your position on the need for further discovery, specifically from Mr. Conrad?

MS. KETCHMARK: Your Honor, I see no need to force

Mr. Conrad to be deposed or interviewed. This seems like a wild goose chase. They're just slinging allegations that aren't supported, and now we have two judges that have said there was nothing mysterious about the decision to take an attorney off when there was a breakdown that could not be resolved with those two attorneys working together. I don't think we'll get any further. There is no contradiction that is uncontradicted that there was an unworkable relationship between those two attorneys.

THE COURT: All right. Thank you.

I think I'm going to take it under advisement. I have some reservation about Mr. Conrad being deposed or otherwise interviewed based upon what counsel might choose to inquire about. I certainly don't want to create a situation that is a limitless review of practices and policies within the office and who got along with who and what everybody's function was. If I was to allow that, allow Mr. Conrad to be interviewed, it would be -- or direct, I guess. It's not allowed because he's already decided he doesn't want to talk to you, it would be in relation to what took place in the meeting on April the 20th, it was, of '06?

MS. NOURI: Yes, sir.

THE COURT: I'm going to take it under advisement and I'll let you know what my decision is. Thank you.

(Adjournment)

REPORTER'S CERTIFICATE

I, Katherine A. Calvert, Registered Merit Reporter, hereby certify that I am a duly appointed, qualified, and acting official court reporter for the Western District of Missouri; that on May 6, 2013, I was present and reported all of the proceedings in LISA M. MONTGOMERY, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant, No. 12-CV-08001-GAF.

________________________________, RMR
Registered Merit Reporter

Dated this 9th day of May, 2013.