IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. 12-8001-CV-W-GAF |
| | ) | Crim. No. 05-06002-01-CR-W-GAF |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOVANT'S SUPPLEMENTAL SUGGESTIONS IN SUPPORT OF MOTION TO REASSIGN CASE**

The respondent, the United States of America, appears by and through Tammy Dickinson, United States Attorney and Assistant United States Attorneys Roseann A. Ketchmark and Cynthia L. Cordes, and provides the following response in opposition to the movant's supplemental suggestions in support of her motion to reassign the case to a new district court judge.

## Introduction

The pending issue before the court is the defendant's motion to reassign the case to a new district court judge. [Doc. 41.] The motion is based on the defendant's claim that fraud was committed upon the court by the Federal Public Defender's Office and, as a result of that fraud, *pro hac vice* counsel Judy Clarke was removed from the case. While separately filed, Montgomery's motion to reassign is directly tied to two of her claims in her 28 U.S.C. Section 2255 motion for relief, that is: the claim that the removal and resulting deprivation of Judy Clarke as *pro hac vice* counsel resulted in a Sixth

Amendment violation and the claim that the removal and resulting deprivation of her *pro hac vice* counsel resulted in ineffective assistance of counsel. [Doc. 32.] While the defendant's Section 2255 claims are separate, they are incorporated by reference to Montgomery's motion before the court now [Doc. 41, p. 1], and offer the context for the defendant's currently sought relief for the appointment of a new judge. Because both the Sixth Amendment and ineffectiveness claim regarding Ms. Clarke are also grossly misdirected and as such, render the motion to reassign to be completely without relevance, the government offers a brief response to these claims to further demonstrate the lack of merit in Montgomery's motion to reassign.

**Relevant Procedural Background**

1. On March 19, 2013, Montgomery filed a Motion for Collateral Relief to Vacate Set Aside, or Correct Sentence and for a New Trial pursuant to 28 U.S.C Section 2255. [Doc. 32.]

2. On March 21, 2013, Montgomery filed a Motion to Reassign the Case pursuant to 28 U.S.C. Section 455(b)(5)(iv) seeking the removal of U.S. District Court Judge Gary Fenner and the assignment of a new district court judge to preside over Montgomery's Motion for Collateral Relief to Vacate Set Aside, or Correct Sentence and for a New Trial pursuant to 28 U.S.C Section 2255. [Doc. 41.]

3. On April 9, 2013, the government filed a Response in Opposition to Montgomery's Motion to Reassign the Case pursuant to 28 U.S.C. Section 455(b)(5)(iv). [Doc. 42.]

4. On April 23, 2012, Montgomery filed a reply to the government's Response in Opposition to Montgomery's Motion to Reassign the Case pursuant to 28 U.S.C. Section 455(b)(5)(iv). [Doc. 46.]

5. On May 6, 2013, the parties interviewed U.S. Magistrate Court Judge John T. Maughmer pursuant to a court order. [Doc. 49.]

6. On May 6, 2013, the district court held a hearing where current counsel for Montgomery made oral arguments and U.S. District Court Judge Gary Fenner made statements on the record. [Doc. 53.]

7. On May 20, 2013, Montgomery deposed Federal Public Defender Ray Conrad pursuant to a court order. [Doc. 52.]

8. On June 6, 2013, Montgomery filed Supplemental Suggestions in Support of her Motion to Reassign the Case. [Doc. 54.]

**Supplemental Suggestions in Opposition**

Despite the fishing expedition ensued on the U.S. District Court, the U.S. Magistrate Court, and the Federal Public Defender since the filing of her motion to reassign on March 21, 2013, Montgomery has failed to obtain any evidence warranting a claim of fraud upon the court as alleged; and failed to properly allege fraud committed upon the court with any specificity as required. Further, even assuming the claims of fraud upon the court were true, Montgomery has failed to demonstrate the necessity for her motion to reassign. Because Montgomery does not have a Sixth Amendment right to choose court appointed counsel, the court retains full and unfettered discretion to appoint, remove, and reassign counsel in court appointed cases; and because the Court properly

consulted and relied upon the Federal Public Defender's Office pursuant to 18 U.S.C. Sections 3005 and 3599 and *pro hac vice* attorney Judy Clarke lost the support of her local office and sponsoring counsel and otherwise was negatively impacting the progress of Montgomery's defense team as a whole, Montgomery also failed to show how the alleged fraud and motion to reassign is relevant.

## I. Montgomery Failed to Properly Allege Fraud Upon the Court

In both Montgomery's motion to reassign and 28 U.S.C. Section 2255 pleading, she brashly makes accusations of fraud committed upon the U.S. District Court by the Federal Public Defender's Office without any supporting evidence. Neither pleading actually outlines the details of the alleged fraud. Rather, Montgomery's pleadings include lengthy discussions and citations to affidavits about the defense team not getting along with *pro hac vice* counsel Judy Clarke. The pleadings further point to one meeting off the record with Judge Fenner, Judge Maughmer, Ray Conrad and David Owen. Everyone present at this off-the-record meeting, has since provided statements about the content of that meeting, which, like all of the other meetings on the record, was that Montgomery's court appointed counsel was not getting along with *pro hac vice* counsel Judy Clarke. Any time fraud is alleged, it should be done with care and consideration, and with, at a minimum, supporting evidence. In this case, no supporting evidence exists.

Fed. R. Civ. P. Rule 9(b) notes that when alleging fraud, the party "must state *with particularity* the circumstances constituting fraud or mistake." (emphasis added). Despite Montgomery's lengthy pleadings, numerous interviews, questioning of a U.S. District Court Judge, a U.S. Magistrate Judge, and deposing the Federal Public Defender,

Montgomery has yet to obtain any evidence which supports an allegation of fraud committed upon the court.

Alleging fraud is not something that can be done in hopes of finding evidence later or in generalities. As Rule 9(b) requires, fraud must be alleged with particularity. *Roberts v. Accenture, LLP*, 707 F.3d 1011, 1020 (8th Cir. 2012). As with fraud allegations in both criminal and civil matters, the protection is designed to prevent "frivolous accusations" and to facilitate the ability for the responding party to prepare an "appropriate response." *Id.* The heightened requirement requires great specificity. *Freitas v. Wells Fargo Home Mortgage, Inc.* 703 F.3d 436, 439 (8th Cir. 2013), citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2011). "To satisfy the particularity requirement of Rule 9(b), a claim of fraud must include such specific facts as the time, place, content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Raynor v. National Rural Utilities Cooperative Finance Corporation*, 690 F.3d 951, 955 (8th Cir.2012), citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc.* 441 F.3d 552, 556 (8th Cir. 2006). This applies also when the alleged acts are "acts of manipulation." The party making the allegation must "specify, with particularity, what manipulative acts were performed, which persons performed them, when the manipulative acts were performed…" *Public Pension Fund Group* v. KV Pharmaceutical Company, 679 F.3d 972, 986 (8th Cir. 2012).

Further, the claim must also "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Vigil v. Nelnet, Inc.*, 639 F.3d 791,

796 (8th Cir. 2011), *citing Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Based on her own investigation and interviews, Montgomery's claim that the *only* reason why Judge Fenner removed Ms. Clarke was because he believed incorrect information about her work ethic or her mental health investigation skills is not even plausible. Every person interviewed, including Judge Maughmer and Judge Fenner, stated that the district court was on notice that Judy Clarke did not get along with the defense team.

In fact, the statements obtained by Judge Fenner, John Maughmer, Federal Public Defender Ray Conrad, and prior counsel David Owen and Susan Hunt are *consistent* in the sense that everyone agrees that no one got along with Judy Clarke, and as a result, the defense team was becoming unproductive and actually at risk of becoming ineffective due to her involvement. None of the statements indicate that someone defrauded the U.S. District Court Judge into removing Judy Clarke. An *ex parte* discussion or statements which indicate that memories have faded about discussions that happened years ago do not miraculously translate into a proper allegation of fraud committed upon the court, and certainly not in any specific terms as required.

## II. Montgomery Failed to Show the Relevance of Alleged Fraud

Assuming for the sake of argument that the alleged, albeit unspecified fraud, was true, even so, Montgomery has yet to outline why it is relevant to any remedy to be sought pursuant to her 2255 motion. Even if the district court judge believed incorrectly that Judy Clarke was "not working" or "not productive," because of the lack of quality in her legal work, Montgomery did not have a Sixth Amendment right to select her counsel if counsel is court appointed. The court still retains the discretion to remove counsel for

any basis if it is in "the interests of justice." 18 U.S.C. Section 3006A(c). It is undisputed, by everyone involved, that Judy Clarke did not get along with anyone on Montgomery's defense team. The district and magistrate court retain full discretion to appoint and remove counsel that are government funded. Additionally, even if the court did not have such sweeping discretion in this area, Judy Clarke lost her support from her sponsoring local attorney, which is required as *pro hac vice* counsel.

**a. Montgomery did not have 6th Amendment Right to Choose Court Appointed Counsel**

Montgomery does not have a constitutional right to choose her own court appointed counsel. As such, Montgomery's pursuit before the Court now is not only improper and without basis, but it is also irrelevant.

Montgomery relied on one case, both in her 2255 motion and in her oral argument to the court on May 6, 2013, as the basis for why the drastic measure of removing the district court judge should be taken: *United States v. Gonzalez-Lopez,* 548 U.S. 140 (2006). *Gonzalez-Lopez* clearly states that the Sixth Amendment only guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant for free. *Id*. at 145. Unlike the *Gonzalez-Lopez* case, all counsel in Montgomery's case were court appointed and government funded.

Montgomery attempts to blur the lines claiming that Judy Clarke, a government funded court appointed attorney, was offering her services for "free", and therefore Montgomery's Sixth Amendment right to select her was triggered. But, while Ms. Clarke

was not going to bill Montgomery for her services, that does not mean that she was offering her services for free. Ms. Clarke was an employee of the Federal Public Defender's Office in San Diego, California, and was paid for by the Administrative Office of the United States Courts with government funding. Pursuant to 18 U.S.C. Section 3006A(g)(2)(A), attorneys employed by a Federal Public Defender are prohibited from working in separate legal work on their own in private practice. This was again confirmed by local Federal Public Defender Ray Conrad. [Depo. p. 51.] As a FPD employee paid for by the government, Ms. Clarke cannot offer her services for "free" as she is a salaried employee under court appointment. Ms. Clarke, therefore, is entirely different from a retained or *pro bono* attorney obtained by the defendant in *Gonzalez-Lopez.*

Further, unlike the defendant in *Gonzalez-Lopez*, Montgomery never made any efforts to either bring Ms. Clarke on board in the first place or have her return after she was removed.

While defendants have a Sixth Amendment right to choose their own counsel if the counsel selected are not court appointed, all of Montgomery's counsel were court appointed. Thus, *Gonzalez-Lopez* is inapplicable in her case. As such, Montgomery's zealous pursuit to have the district court judge removed from this case to have a new judge preside over the *Gonzalez-Lopez* issue, is without basis. However, even if Montgomery had passionately sought the representation of Ms. Clarke after her removal, because Ms. Clarke was both court appointed and *pro hac vice*, the court maintained complete discretion to choose Montgomery's representation.

### b. Courts Retain Discretion for all CJA Appointed Counsel

Pursuant to the Criminal Justice Act (CJA) the district court is provided discretion to appoint and replace counsel as the court sees fit, or "in the interests of justice." 18 U.S.C. Section 3006A(c). This is a subjective standard left to the discretion of the court. Section 3006A(c), specifically gives the court the discretion to remove even the sole and primary counsel for a defendant and to replace him or her with new counsel the court believes will serve the interests of justice. In Montgomery's case, it was not even her primary counsel being removed, it was only secondary counsel brought in to assist lead counsel on a *pro hac vice* basis.

While Congress enacted 18 U.S.C. Section 3599 to govern the appointment of counsel in capital cases, thus supplementing Section 3006A for persons facing execution, the "interests of justice" standard still applies in death penalty cases. *Martel v. Clair*, 132 S.Ct. 1276, 1287 (2012). There is not a heightened standard in death penalty cases. A magistrate or district court's discretion to remove or appoint new counsel utilizing the "the interests of justice" standard also applies for persons facing execution. *Id*. Further, one of the factors that a court should consider when deciding whether the removal of counsel will aid in the "interests of justice," is the "need to thwart abusive delay." *Id.*, *quoting Hunter v. Delo,* 62 F.3d 271, 274 (8th Cir.1995), *citing United States v. White*, 451 F.2d 1225, 1226 (6th Cir.1971). Regardless of whether Ms. Clarke was "doing work" on her own, because of her involvement in the case, the entire defense team had

become conflict ridden and unproductive as a whole. Within all of the interviews, affidavits and depositions obtained, the witnesses' statements consistently include the fact that the defense team was not getting along subsequent to Judy Clarke's participation. A district court not only has the discretion, but also an obligation, to intervene if information is obtained indicating that a defense team appointed on behalf of a defendant charged with a capital crime, for whatever reason, is not working productively together. Otherwise, the team is not serving the best interests of the defendant and is not properly utilizing the allocation of government funding.

Further, even if, hypothetically, Montgomery had retained Judy Clarke as private counsel, a defendant's Sixth Amendment right is not absolute and comes with limitations. A court still has the right to remove retained counsel if the court finds counsel to be disruptive. "[T]he right to retain counsel of one's choice is not absolute… The right of choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice…. Therefore, courts must balance the defendant's right to counsel of his own choosing against the court's interest in the administration of justice." (internal quotations and citations omitted). *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006) (quoting *United States v. Gonzalez-Lopez*, 399 F.3d 924, 929 (8th Cir. 2005), aff'd and remanded, *Gonzalez-Lopez*, 548 U.S. at 140.

### c. Clarke was Properly Removed as *Pro Hac Vice* Counsel

Judy Clarke appeared as *pro hac vice* counsel. As such, she did not represent Montgomery at the discretion of Montgomery, but at the grace and discretion of the court and the sponsoring local Federal Public Defender's Office.

### i. *Pro Hac Vice* Counsel Require Sponsorship

In order to appear in the Western District of Missouri, outside counsel must be sponsored as *pro hac vice*. Ray Conrad and David Owen served as Judy Clarke's sponsors in the Western District of Missouri. Thus, regardless of other co-counsel's opinions or the defendant's opinions, if the sponsoring attorney no longer wants to sponsor outside counsel *pro hac vice*, then they can seek the court's release of their sponsorship and the appointment of outside counsel *pro hac vice*. The basis for local counsel's decision is subjective and requires no objective showing to the court. [1] Further, as an employee from another Federal Public Defender's Office, Judy Clarke's participation in a case with the Western District of Missouri's Federal Public Defender's Office required the approval and consent of the local FPD's office.

### ii. Courts Retain Broad Discretion for *Pro Hac Vice* Counsel

Even when *pro hac vice* counsel are *retained* by the defendant, the district court still maintains the discretion to revoke his or her *pro hac vice* status and can do so without a hearing. *Johnson v. Trueblood*, 629 F.2d 302, 304 (3d Cir. 1980). Formal notice may even be inappropriate in some circumstances. *Id.* Of course, in Montgomery's case as previously discussed, Judy Clarke was not retained, but even if she had been, the Court had no requirement to even have a hearing or provided formal notice and maintained full discretion to remove her at will.

[1] Some Circuits have even found that the *only* way to terminate the appointment of a public defender is if the federal magistrate judge or district judge determines that the defendant is no longer indigent and can afford to retain counsel. *United States v. Dangdee* 608 F.2d 807, 809 (9th Cir.1979).

### iii. Sections 3005 and 3599 Supports Court's Choice of Local Counsel

Pursuant to 18 U.S.C. Section 3005, in death penalty cases with court appointed counsel, the court is mandated to utilize the Federal Public Defender's Office as a resource, including seeking their advice and input regarding the appointment of counsel. "In assigning counsel under this section, the court *shall* consider the recommendation of the Federal Public Defender organization, or if no such organization exists in the district, of the Administrative Office of the United States Courts." 18 U.S.C. Section 3005 (emphasis added). Thus, Judge Fenner properly sought the recommendation and input from the local Federal Public Defender's Office.

Further, pursuant to 18 U.S.C. Section 3599, in death penalty cases, "if the appointment is made before judgment, at least one attorney so appointed must have been admitted to the practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions that court. 18 U.S.C. Section 3599(b). Even if the court had preferred to select Judy Clarke over counsel for the local Federal Public Defender's office, the court would have been compelled to select the Federal Public Defender's Office since Judy Clarke did not meet the required qualifications outlined in Section 3599(b).

## **Conclusion**

Montgomery has failed to obtain evidence which supports fraud upon the court and has further failed to properly allege fraud with any particularity. Further, Montgomery does not enjoy a Sixth Amendment right to choose court appointed counsel, and the Court retains broad discretion regarding the assignment of both court appointed counsel and counsel appearing *pro hac vice*. Finally, the Court properly consulted and relied upon the Federal Public Defender's Office pursuant to 18 U.S.C. Sections 3005 and 3599 and Ms. Clarke otherwise lost the support of her local Federal Public Defender's Office and sponsoring agency to appear *pro hac vice*.

WHEREFORE, because Montgomery has failed to show why U.S. District Court Judge Gary Fenner is a material witness regarding any issue of relevance to her sought relief, and has failed, therefore, to show why Judge Fenner should be disqualified or recused from presiding over her pending 28 U.S.C. Section 2255 motion, Montgomery's motion to reassign the case to a new district court judge should be denied.

Respectfully submitted,

Tammy Dickinson
United States Attorney

By *<u>/s/ Roseann A. Ketchmark</u>*
ROSEANN A. KETCHMARK
Assistant United States Attorney

*<u>/s/ Cynthia L. Cordes</u>*
CYNTHIA L. CORDES
Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on June 18, 2013, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Roseann A. Ketchmark*
Roseann A. Ketchmark
Assistant United States Attorney