IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY<br>Movant | ) | |
| | ) | |
| v. | ) | Case Number 12-8001-CV-W-GAF |
| | ) | Criminal Case # 05-6002-CR-SJ-GAF |
| | ) | |
| UNITED STATES<br>Respondent | ) | |

***REQUEST FOR RECONSIDERATION AND MODIFICATION OF ORDER DIRECTING THAT DEFENSE COUNSEL PROVIDE AFFIDAVITS, WITH SUGGESTIONS IN SUPPORT***

Comes now Frederick A. Duchardt, Jr., on behalf of himself and John O'Connor, requesting that this Honorable Court reconsider and modify its December 10, 2013 Order directing that Mr. O'Connor and Mr. Duchardt "provide affidavits to the government in response to the claims raised by Movant in her 2255 motion." (Doc. 77).[1] The grounds for this request, and suggestions in support thereof, will be set forth in the subsequent numbered subparagraphs.

1. In the above captioned cause, in the midst of some 500 pages of pleadings and suggestions, Lisa Montgomery has requested, pursuant to 21 U.S.C. 2255, that this Court set aside the judgment and sentence entered in case # 05-6002-CR-SJ-GAF (Doc. 32, 71). Among the issues raised in Mrs.

[1] The Order is also directed to David Owen. Neither undersigned counsel nor Mr. O'Connor have had any contact with Mr. Owen since the end of Mrs. Montgomery's trial, and therefore do not presume to speak for him.

Montgomery's pleadings are challenges to the effectiveness of Mrs. Montgomery's trial defense team, particularly the undersigned Frederick A. Duchardt, Jr. and John O'Connor.

2. On November 25, 2013, the government filed a request specifically asking that undersigned counsel and Mr. O'Connor "prepare affidavits in response to Montgomery's claims of ineffectiveness" (Doc. 75, p. 2). The government went on to seek direction to undersigned counsel and Mr. O'Connor "to provide any and all documentary evidence and attorney notes which are relevant to the claims Montgomery raises in her Section 2255 motion" (Doc. 75, p. 3). The government additionally asked "that Mr. Duchardt and Mr. O'Connor be reimbursed, if possible with CJA funds for their time in preparing affidavits" (Doc. 75, p. 3). Finally, despite admitting that it had delayed making its request for "almost two months" (Doc. 75, p. 2), the government asked that undersigned counsel and Mr. O'Connor do all that was being asked of them "by Friday, December 21, 2013" [2] (Doc. 75, p. 4).

3. In response to the government's request, current appointed Counsel for Mrs. Montgomery asked that this Court "deny the government's motion to compel affidavits" (Doc. 76, p. 7). Though complaining that the government had not cited appropriate authority to ground the request in law, current Counsel for Mrs.

[2] It should be noted that, in the month of December of 2013, Friday was the 20th, and Saturday was the 21st.

Montgomery acknowledged the obvious, that the government's motion "is, in actuality, a request for discovery", and that there are rules of Court permitting discovery requests in habeas cases such as this one (Doc. 76, p. 2-3). Still, current Counsel for Mrs. Montgomery contended that "there is literally no authority for the proposition that prior counsel, or any non-party, may be compelled to provide pre-hearing affidavits" (Doc. 76, p. 3). Without affirming that Mrs. Montgomery has waived any of her rights, current Counsel for Mrs. Montgomery questioned whether the waiver which the Courts have found implicit in the filing of ineffective assistance claims would cover preparation of an affidavit (Doc. 76, p. 3-4). Consequently, current Counsel for Mrs. Montgomery asked to be placed in a gatekeeper role with respect to any disclosure to the government by undersigned counsel and Mr. O'Connor, either by having that disclosure made in a hearing at which she would be able to interpose objections, or by having affidavit-type disclosures first submitted to her for review and objection (Doc. 76, p. 4-5). Current Counsel for Mrs. Montgomery also chose to weigh in on the propriety of compensation to undersigned counsel and Mr. O'Connor for their work, fretting that such compensation "would be fiscally irresponsible and contrary to public policy" (Doc. 76, p. 6). It is worth noting that current Counsel for Mrs. Montgomery has advanced these latter words of her wisdom regarding payment to undersigned counsel and Mr. O'Connor *sans* authority, in other words in the same

fashion which caused her to be so critical of the government. Moreover, the suggestions by current Counsel for Mrs. Montgomery seem to lose their worth since she does not, in keeping with her professed concerns regarding fiscal responsibility, include an offer to forego payments to her for her work.

4. Long ago, the Supreme Court decided that litigants in a habeas corpus proceeding should not automatically be permitted unlimited access to the full panoply of discovery tools in the fashion enjoyed by other types of civil case litigants. ***Harris v. Nelson***, 394 U.S. 286, 295, 300 (1969). Rather, at the instance of the Supreme Court, rules peculiar to habeas proceedings have been promulgated with an eye toward granting only that discovery which the Court hearing the matter deems to be required by law and justice. ***Bracy v. Gramley***, 520 U.S. 899, 904 (1997); ***Smith v. United States***, 618 F.2d 507, 509 (8th Cir. 1980). Therefore, under Rule 6(a) of the Rules governing 2255 proceedings, "(a) judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." What this means is that, in a Federal Habeas proceeding, the full panoply of civil and criminal case discovery tools are potentially available, with the proviso that the Court presiding over the matter must find good cause before resort to any such tools may be had. ***Barrett v. United States***, 2009 WL 2982670, *2 (E.D.Okla. 2009). Rule 6 and the caselaw interpreting it would

likely be enough to call into serious question the notions of current Counsel for Mrs. Montgomery about there being "literally no authority for the proposition that prior counsel, or any non-party, may be compelled to provide pre-hearing affidavits" (Doc. 76, p. 3). But there is much more than that which apparently escaped the researching eye of current Counsel for Mrs. Montgomery.

5. The Rules of Court related to habeas proceedings specifically empower a habeas case Judge to "direct the parties to expand the record by submitting additional materials relating to the motions" as well as to "require that these materials be authenticated." Rule 7(a), Rules governing Section 2255 Proceedings. The same rules go on to state, without limitation, that pursuant to requirement by a habeas case Judge, "(a)ffidavits also may be submitted and considered as part of the record." Rule 7(b), Rules governing Section 2255 Proceedings. What is more, there is considerable precedent in the Eighth Circuit for use of affidavit preparation by former counsel for the habeas movant as a form of such habeas case discovery. ***Purkey v. United States***, 729 F.3d 860, 862 (8th Cir. 2013); ***Sinisterra v. United States***, 600 F.3d 900, 905 (8th Cir. 2010); ***Nelson v. United States***, 2010 WL 3398791, *2 (W.D.MO. 2010)[3]; ***Jones v. United States***,

[3] In his opinion on the subject, Chief Judge Fernando Gaitan mentioned a host of other Districts who had similarly found affidavits prepared by former counsel to be an appropriate vehicle for moving along the habeas discovery process. ***Nelson v. United States***, supra.

2013 WL 2950071, *4 (D.S.D. 2013); ***Walking Eagle v. United States***, 2011 WL 2881596, *4 (D.S.D. 2011).

6. Though there is ample legal authority for ordering affidavit preparation by former counsel for a habeas movant, there are still some major problems with such a process the burdens of which fall predominantly upon former counsel. Those are the problems which have not been adequately addressed by the parties in this case, and which undersigned counsel and Mr. O'Connor ask that this Court consider and resolve.

7. The first of those problems arises out of the understandable tendency of habeas counsel for the movant to, as much as possible, use the attorney-client privilege and the related right to protection of attorney work product (including formulation of strategy decisions) as both a sword and a shield; standing in the way of such duality is the clear principle of law, set forth by the Supreme Court itself more than a century ago, and followed by the Federal Courts ever since, that a client who complains about the performance of her attorney impliedly waives her attorney-client privilege and work product protections with respect to the substance of her complaints. ***Hunt v. Blackburn***, 128 U.S. 464, 470-471 (1888); ***Tasby v. United States***, 504 F.2d 332, 336 (8th Cir. 1974); ***Bittaker v. Woodford***, 331 F.3d 715, 718-719 (9th Cir. 2003). The matter has been framed well in a case cited in the suggestions by current Counsel for Mrs. Montgomery (Doc. 76, p. 3).

> Although the precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court, there should be no confusion that a habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of communications with counsel relevant to assessing the reasonableness of those decisions in the circumstances.

***Johnson v. Alabama***, 256 F.3d 1156, 1179 (11th Cir. 2001)

8. When faced with such imperatives, habeas counsel generally approach the matter of discovery in fashion similar to that of current Counsel for Mrs. Montgomery. That is habeas counsel will raise general objections and begrudgingly let the affidavit preparation process go forward; then, after former counsel is required to expend the tremendous time and effort required to answer wide-ranging accusations leveled in a lengthy petition, habeas counsel will leap in to question the integrity and professional ethics of former counsel in not divining some stopping point short of the revelations made in the affidavit (Doc. 76, p. 5). ***Purkey v. United States***, supra; ***Sinisterra v. United States***, supra. While it is understandable that habeas Counsel for a Movant would wish to hedge bets in this fashion, the law simply does not require such a torturous, cart-before-the-horse process.

9. The Courts who have specifically addressed this aspect of this issue have found that, while alleging ineffective assistance of counsel in a petition implies a waiver, that filing alone does not effectuate the waiver; rather, it is when it comes time to join the fight over the effectiveness allegations that the petitioner should be

put to a choice, either protect the privileges and suffer dismissal of the allegations of ineffectiveness, or explicitly abandon the privileges, and allow former counsel to specifically address the accusations made. ***Bittaker v. Woodford***, supra; ***Jones v. United States***, supra. The Ninth Circuit put things this way.

> The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. ***Bittaker v. Woodford***, 720.

Thus, undersigned counsel and John O'Connor request that, prior to their expenditure of effort in answering the multifarious accusations made in the petition and suggestions filed in this case, an explicit waiver of the attorney-client and work product privileges be obtained from Mrs. Montgomery and her Counsel regarding the substance of the petition's accusations. Undersigned counsel and Mr. O'Connor further ask that any requests for limitations on answers by them be requested by current Counsel for Mrs. Montgomery with specificity and prior to the beginning of their endeavors. In that way, the responsibility for crafting the length and breadth of the waiver will be placed where it should be placed, with current Counsel for Mrs. Montgomery.

10. In fairness to current Counsel for Mrs. Montgomery, it must be noted that the government as well is trying to hedge bets in this process. That is the

second problem in the process. Counsel for the government rightly accounts in her motion that undersigned counsel had suggested that the best way to approach discovery on Mrs. Montgomery's ineffective counsel claims would be by her posing questions to undersigned counsel and John O'Connor in the presence of current Counsel for Mrs. Montgomery (Doc. 75, p. 2). However, Counsel for the government does not go on to explain that various District Courts have found that such a procedure is the best way to make discovery happen in a way which concomitantly fashions a waiver which goes no further than what is required by the particular contours of the case. ***United States v. Stone***, 824 F.Supp.2d 176, 186-189 (D.Me. 2011); ***United States v. Soomai***, 928 F.Supp.2d 170, 173 (D.D.C. 2013). Since the government does not try to explain why it finds such a question and answer procedure not to its liking, it is safe to assume that the government wishes to put upon undersigned counsel and Mr. O'Connor, not only to bear their own burden of providing information, but also to bear the government's burden of formulating the proper questions to get at that information. Undersigned counsel and Mr. O'Connor respectfully suggest that, just as it should be the responsibility of current Counsel for Mrs. Montgomery to give advance warning of the parameters of their waivers of attorney-client and work product privileges, it should similarly be the responsibility of the government to be familiar enough with its case to put the questions which it wishes answered. Thus, undersigned counsel

requests that this Court modify its order to require that the government pose questions to be answered by him and by Mr. O'Connor. It would be preferred that this be done, as suggested by undersigned counsel, in a deposition or similar oral question and answer format, with current Counsel for Mrs. Montgomery present to interpose objections. However, if the government still prefers responses in writing, the government could prepare written questions, which would first be submitted to current Counsel for Mrs. Montgomery for objection.

11. Counsel for the government correctly accounted the words of undersigned counsel that he would "strongly resist" having to perform discovery for the government in the terribly time-consuming way as requested by government Counsel (Doc. 75, p. 2). Those words came in response to the explanation by Counsel for the government that she was seeking from undersigned counsel precisely the same sort of affidavit as was prepared in the case of ***Purkey v United States***, supra. In the ***Purkey*** case, after the parties agreed to it, Chief Judge Fernando Gaitan entered an affidavit production order similar to the one which the government has sought in this case. Undersigned counsel complied with that order, and spent 144.5 hours of his time reading Mr. Purkey's 56 page petition and 84 page suggestions, reviewing materials, researching and writing

what turned out to be a 116 page affidavit.[4] Since the pleadings submitted on behalf of Mrs. Montgomery are nearly three times longer than those submitted on behalf of Mr. Purkey, it is more than safe to say that the time needed to prepare a similar affidavit for this case would be at least 144.5 hours., and very likely much, much more. Undersigned counsel has made the recommendations that the parties be required to engage in the preparatory work which they should so that the time investment by undersigned counsel and Mr. O'Connor in properly answering properly framed discovery requests can be somewhat more manageable.

12. The government misses the mark by not heeding the suggestions of undersigned counsel, and by requesting instead "that Mr. Duchardt and Mr. O'Connor be reimbursed, if possible, with CJA funds for their time in preparing their affidavits" (Doc. 75, p. 2). Because undersigned counsel and Mr. O'Connor are no longer counsel of record for Mrs. Montgomery, there is no justification for payment to them per the dictates of 18 U.S.C. 3599(a)(2). And, because it is the government and not current Counsel for Mrs. Montgomery making the request for

[4] Undersigned counsel indeed also used the word "thankless" to describe to government Counsel his endeavors in the ***Purkey*** case. That was not only because there was no compensation paid to him for the 144.5 hours he spent, but also because all that work was useless, since the Eighth Circuit essentially sustained the after-affidavit-preparation objections raised by habeas Counsel for Purkey, deciding that it could find against Purkey without any resort to the affidavit. ***Purkey v. United States***, 866, fn. 2.

services to be performed by undersigned counsel and by Mr. O'Connor, there is no justification for payment for that work under 18 U.S.C. 3599(f).

13. That is not to say, as does current Counsel for Mrs. Montgomery, that there is anything wrong with compensating undersigned counsel and Mr. O'Connor for their time. It would be appropriate to order such compensation, but not from CJA funds. Instead, since the United States Attorney's Office is the party requesting that the work be done, it should be held responsible for proper payment. The Court would be fully justified in directing the United States Attorney's Office to make payment for affidavit preparation by undersigned counsel and by Mr. O'Connor per the dictates of F.R.Civ.P. 26(b)(4)(E)(i). That provision of the civil rules permits the Court to Order that a party seeking discovery from an expert pay that expert "a reasonable fee for time spent in responding to discovery" of expert opinions. ***Marcelli v. Ace American Ins. Co.***, 2012 WL 3744635, *1-*2 (D.Colo. 2012). What the government seeks is precisely the sort of expert services contemplated in F.R.Civ.P. 26(b)(4). Whether a defendant has been deprived effective assistance of counsel so as to merit relief under 28 U.S.C. 2255 is not simply a question of fact, but rather a mixed question of fact and law. ***New v. United States***, 562 F.3d 949, 952 (8th Cir. 2011). If the government wished to merely get at facts related to the claims made by Mrs. Montgomery, it could pose interrogatories or take a deposition to get at

such specific matters of fact. Instead, it looks to tap the legal acumen of undersigned counsel and Mr. O'Connor, to identify issues and resolve them. This will clearly require independent research by undersigned counsel and Mr. O'Connor beyond anything done in preparation for Mrs. Montgomery's trial. Put another way, by asking for the preparation of affidavits, the government seeks expert opinions from undersigned counsel and from Mr. O'Connor of the sort contemplated under F.R.Civ.P. 26(b)(4)(E). Thus, though the government is entitled under the law to ask for affidavits, if it persists with such a request, it should be ordered to pay for the work it requests.

14. In whatever manner the Court ultimate has undersigned counsel and Mr. O'Connor respond to the government's discovery request, it is requested that this Court permit undersigned counsel and Mr. O'Connor until June 16, 2014 to formulate that response. As detailed above, the amount of time required for response to the discovery request will be substantial. At this time, and over the next several months, both undersigned counsel and Mr. O'Connor are fully engaged in other matters which were set for trial long ago. Undersigned counsel is engaged in preparation for the capital case trial of ***United States v. Wesley Coonce and Charles Hall***, WDMO Case #10-3029-01/02/CR-S-GAF. That case is to begin trial on April 28, 2014, and pretrial preparations for that matter are underway and scheduled throughout the next four months. Mr. O'Connor is

likewise booked up, for his part with three State Court matters. The first is ***State of Missouri v. Steven Johnson***, Jackson County Case # 1316-CR01414-01, scheduled for a three day trial beginning January 27, 2014 upon a charge of assault upon a law enforcement officer. The second is ***State of Missouri v. Dayqwan Sykes***, Jackson County Case # 1216-CR03294-01, scheduled for a four day trial beginning the second week in February of 2014 upon a charge of murder in the second degree. The third is ***State of Missouri v. Austin Pelley***, Greene County case # 1231-CR06135-01, scheduled to begin a 2-3 week trial on March 10, 2014 upon a capital charge of murder in the first degree. By directing that the responses of undersigned counsel and Mr. O'Connor be made by June 16, 2014 this Court will allow them to complete both the discovery response work and the casework which they already have scheduled.

WHEREFORE, Frederick A. Duchardt, Jr., on behalf of himself and John O'Connor, prays that this Honorable Court set aside its Order of December 10, 2013 regarding affidavit preparation (Doc. 77). It is further prayed that this Court direct that Mrs. Montgomery and her Counsel make explicit, written election regarding whether and to what extent Mrs. Montgomery will waive her attorney-client and work product privileges with respect to the accusations of ineffectiveness which she raises in her petition. It is also prayed that, to the extent that a waiver is filed by and on behalf of Mrs. Montgomery, the Court direct

that discovery from Mr. Duchardt and Mr. O'Connor be obtained by way of deposition to be conducted by Counsel for the government, subject to objection by Counsel for Mrs. Montgomery. In the alternative, it is prayed that, to the extent this Court believes that affidavits should be prepared as the means of discovery, that such affidavits be limited to answering of written questions propounded by Counsel for the government, with those written questions culled in advance by proper objections interposed by Counsel for Mrs. Montgomery. It is additionallyprayed that Mr. Duchardt and Mr. O'Connor be given until June 16, 2014 to complete their responses to the discovery sought by the government. It is finally prayed that this Court order that the United States Attorney's Office for the Western District of Missouri pay for the time expended by Mr. Duchardt and Mr. O'Connor in responding to the government's discovery request.

Respectfully submitted

//s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.
Mo.Bar Enrollment Number 28868
P.O. Box 216
Trimble MO 64492
Phone: 816-213-0782
Fax: 816-635-5155
e-mail: fduchardt@yahoo.com

## ***CERTIFICATE OF SERVICE***

I hereby certify that a copy of the foregoing was provided to the following

Roseann Ketchmark
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, MO 64106
Roseann.ketchmark@usdoj.gov

Christine Blegen
230 SW Main St., Suite 217
Lees Summit MO 64063
Christine@blegenlawfirm.com

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.