**EMERGENCY MOTION**

**CAPITAL CASE**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | | |
|---|---|---|
| **IN RE: LISA M. MONTGOMERY** | **)** | |
| | **)** | |
| **Petitioner** | **)** | **NO. ___________** |
| | **)** | **UNITED STATES DISTRICT** |
| | **)** | **COURT WESTERN DISTRICT** |
| | **)** | **OF MISSOURI,** |
| | **)** | **NO. 12-08001-CV-W-GAF** |

**EMERGENCY MOTION FOR STAY OF COURT ORDER PENDING THE FILING OF A PETITION FOR WRIT OF MANDAMUS/PROHIBITION**

COMES NOW Petitioner, Lisa M. Montgomery, by and through undersigned counsel pursuant to Rule 8 of the Rules of Appellate Procedure and 28 U.S.C. §1651 (All Writs Act), and moves this Court for an Order Staying an Order entered in the United States District Court for the Western District of Missouri on Monday, June 16, 2014, in an action brought by Mrs. Montgomery against the United States pursuant to 28 U.S.C. §2255, which orders third party witnesses (who owe a duty of confidentiality and loyalty to Movant) to submit to *ex parte* extrajudicial interviews by another third party witness (who also owes a duty of confidentiality and loyalty to Movant). In support of her motion, Mrs. Montgomery states the following:

# I. PROCEDURAL HISTORY

1. Lisa Montgomery stands convicted of first degree murder and is currently under a sentence of death.

2. Under the authority of the United States Constitution and the United States Code, Mrs. Montgomery timely filed a Motion to Set Aside or Correct the Judgment against her pursuant to 28 U.S.C. §2255. Like many other death row inmates, Mrs. Montgomery included in her motion claims that she received constitutionally ineffective assistance of counsel. *See Sinisterra v. United States*, 600 F.3d 900 (8th Cir. 2010) (remanding case for evidentiary hearing on claims that attorney Frederick Duchardt provided constitutionally ineffective assistance of counsel). Mrs. Montgomery's motion is detailed and provides record citations and sworn declarations in support of her very serious claims of constitutional error under the Sixth and Eighth Amendments.

3. Prior to filing an Answer, the United States asked trial counsel for Lisa Montgomery to prepare affidavits in response to the allegations of ineffective assistance contained in the Motion (Attachment A). Mrs. Montgomery objected (Attachment B). The Court ordered the trial attorneys to prepare affidavits (Attachment C). One trial counsel (David Owen) has complied with that Order

(*See* Attachment F). Two other trial counsel, Frederick Duchardt and John O'Connor, moved to reconsider the Court's order (Attachment D). Mrs. Montgomery joined that motion in part (Attachment E). The United States Opposed the Motion to Reconsider (Attachment F). Mr. Duchardt replied to both filings (Attachment G). Mrs. Montgomery further responded to the Government and Mr. Duchardt (Attachment H). The Motion to Reconsider was denied (Attachment I).

4. Nearly six months passed before Mr. Duchardt, acting on behalf of himself and Mr. O'Connor, filed a motion informing the Court that they wished to interview witnesses in order to prepare their affidavits (Attachment J, p. 2-5). The motion did not claim failed memory, but rather recounted each man's clear memory of certain factual matters in dispute (Attachment J, p. 2-5). The motion identified certain witnesses that Mr. Duchardt wished to interview at this time and noted that additional interviews might be needed as he continued to work on his affidavit (Attachment J, p. 2-5). The motion asked the Court to order that current counsel for Mrs. Montgomery make available to him expert witness Dr. Robert Fucetola, Ph.D., and that current counsel for Mrs. Montgomery and Federal Public Defender Laine Cardarella be ordered to make available to him for interview current and former Public Defender staff and to produce to him certain Public Defender records (Attachment J, p. 7). Finally, Mr. Duchardt's motion requested

that the Court declare that Mrs. Montgomery has broadly waived her attorney/client privilege such that he may conduct interviews of other witnesses as needed and obtain additional records as needed as he continues working on his affidavit (Attachment J, p. 7).

5. Mr. Duchardt's motion was filed late Wednesday afternoon, June 11, 2014. On Friday morning, June 13, 2014, undersigned counsel received an email from the Court's judicial assistant advising counsel that if responses to the motion were to be filed, such responses should be filed no later than 8:00 A.M. on Monday, June 16, 2014 (Attachment K).

6. Noting the novelty of Mr. Duchardt's request and the important and complex legal and ethical questions raised by a third party witness' extrajudicial and *ex parte* questioning of witnesses who continue to have a duty of confidentiality to their former client, Mrs. Montgomery filed a motion for an extension of the Court's truncated deadline, requesting only until Tuesday, June 17, 2014, in order to respond to Mr. Duchardt's motion (Attachment L).

7. The Court took no action on counsel for Mrs. Montgomery's Motion for Extension of Time prior to 8:00 A.M. on Monday, June 16, 2014. To avoid any waiver of her objections and claims, Mrs. Montgomery's undersigned counsel filed a twelve page response to Mr. Duchardt's motion in which counsel renewed the motion for extension of time, noted that counsel was in the process of obtaining an

expert opinion, and requested a protective order to prevent Mr. Duchardt from conducting third party *ex parte* interviews of material witnesses (Attachment M).

8. Three hours later, the Court granted Mr. Duchardt's motion in a two page order devoid of any references to the ethical rules applicable in § 2255 proceedings where ineffective assistance of counsel claims have been raised, or any legal citations (Attachment N). The Order denied Mrs. Montgomery additional time to supplement her response and denied her motion for protective order. Id. Without addressing the scope of any waiver of privileges, the Court went on to order the third party, unrepresented witnesses identified in Mr. Duchardt's motion, "to consult with and cooperate with former trial counsel for Movant, Mr. Duchardt and Mr. John O'Connor, by answering their inquiries to the best of said employees' and retained expert's ability, as well as providing any records or documentation relevant to the claims raised against trial counsel." Id.

9. Mrs. Montgomery immediately filed a motion to stay the Court's order so that she may seek a Writ of Mandamus/Prohibition in this Court (Attachment O).

10. That Motion was denied on June 17, 2014. (Attachment P).

## II. REASONS WHY A TEMPORARY STAY SHOULD ISSUE

11. In *Nken v. Holder*, 556 U.S. 418 (2009), Chief Justice Roberts, writing for the court majority, observed:

> It takes time to decide a case on appeal. Sometimes a little; sometimes a lot. "No court can make time stand still" while it considers an appeal, *Scripps–Howard Radio, Inc. v. FCC,* 316 U.S. 4, 9, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), and if a court takes the time it needs, the court's decision may in some cases come too late for the party seeking review. That is why it "has always been held . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." *Id.,* at 9–10, 62 S.Ct. 875 (footnote omitted). A stay does not make time stand still, but does hold a ruling in abeyance to allow an appellate court the time necessary to review it.

Id. at 21. The lower court's unprecedented Order in Mrs. Montgomery's §2255 case raises important, novel, and serious questions warranting this Court's review. As the Chief Justice explained further:

> An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as "inherent," preserved in the grant of authority to federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," All Writs Act, 28 U.S.C. § 1651(a).

*Id*. at 426. As described below, the traditional four-part test for determining whether a stay should issue here weighs in favor of Petitioner.

12. "The authority to grant stays has historically been justified by the perceived need to 'prevent irreparable injury to the parties or to the public' pending review." *Scripps–Howard*, 316 U.S., at 9, 62 S.Ct. 875." *Id*. at 432. The four-part test requires this Court to balance the following four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 2119 (1987). These factors do not always weigh equally and require an individual determination in each case and thus "the formula cannot be reduced to a set of rigid rules." *Id.* at 777. Here, the four factors all weigh in Petitioner's favor.

***A. Likelihood of success on the merits***

13. The first factor going to the underlying merits of Movant's claim of error is satisfied by a showing of a "substantial case on the merits." *Id*. at 778. Here, Petitioner presents a substantial case on the merits. Mr. Duchardt, a witness and a non-party to Mrs. Montgomery's 2255 case, has sought and received authorization from the District Court to conduct interviews of other witnesses in an effort to bolster his version of the facts relating to his representation of Mrs. Montgomery. Mr. Duchardt's requests, as well as the Court's Order, are contrary to Mr. Duchardt's ethical obligation to reveal only the information he reasonably believes necessary relating to his representation of Mrs. Montgomery as well as his on-going duty of loyalty to his former client. (*See Jones v. United States*, 2012 WL 484663 (E.D. Mo.) (Judge Webber adopting a courtroom procedure designed to protect privileged information upon finding persuasive the ABA Formal Ethics Opinion 10-456 which "suggests that 'disclosure of client confidential information

outside court supervised proceeding undermines important interest protected by the confidentiality rule'").

14. Underlining the seriousness of allowing/requiring counsel to reveal privileged material, the Model Rules of Professional Conduct emphasize that counsel's determination of that which it is "reasonably" necessary to reveal is not merely a subjective inquiry, but rather an objective one. ABA Formal Ethics Opinion 10-456 at p.4 ("It is not enough that the lawyer genuinely believes that a particular disclosure is necessary; the lawyer's belief must be objectively reasonable"). Instead of seeking to limit the disclosure of information as he is ethically required to do, Mr. Duchardt is seeking to develop additional information outside the courtroom by interviewing other witnesses who themselves owe a duty of loyalty and confidentiality to Mrs. Montgomery.

15. It is unclear why Mr. Duchardt believes such action to be necessary. The post-conviction motion is not a direct attack on Mr. Duchardt nor is he facing potential liability. (*See* David M. Seigal, My Reputation or Your Liberty (or Your Life): The Ethical Obligations of Criminal Defense Counsel in PostConviction Proceedings, 23 J. LEGAL PROF. 85, 99 )("In the postconviction context, unlike the original trial or direct appeal, the challenge is explicitly to the integrity of the process. The postconviction petitioner is alleging that the process in his case was inadequate, thus the former lawyer for the petitioner – who as trial counsel was

part of that process – has an added responsibility beyond loyalty to the former client. 'The issue in ineffectiveness cases is not a lawyer's culpability, but rather his client's constitutional rights.'" *quoting United States v. DeCoster*, 487 F.2d 1197, 1202 n.21 (D.C. Cir. 1973)); *see also*, ABA Formal Ethics Opinion 10-456 at p.2 (prohibiting extra-judicial disclosure and finding that the self-defense exception to Model Rule 1.6(b)(5) is not apt, because "the legal controversy is not between the client and the lawyer.") Yet, both Mr. Duchardt and the District Court Judge have characterized Mrs. Montgomery's claims of ineffective assistance of counsel as an attack on Mr. Duchardt. (*See* Attachment N, p. 1) ("When a lawyer's representation is challenged as being less than honest and/or less than capable based upon the lawyer's lack of integrity, ability or effort, the lawyer should not be silenced or handicapped in defending their [sic] reputation"). The District Court's Order fails to consider the ethical rules and obligations that limit a lawyer's defense of his reputation when faced with a claim of ineffective assistance of counsel, namely the on-going duties of loyalty and confidentiality.

16. In light of this, and the supporting attachments, it is clear that Mrs. Montgomery has established that "substantial case on the merits." This factor weighs heavily in favor of a stay.

### *B. Irreparable Harm*

17. Mrs. Montgomery can only vindicate her rights through an interlocutory appeal and/or writ of mandamus/prohibition. Courts which have looked at analogous issues agree. In *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. En Banc 2003), the Court of Appeals accepted interlocutory review of a protective order barring the use of privileged materials utilized in the litigation of a federal habeas petition from any other use, including retrial. The court wrote:

> If petitioner relies on the protective order by releasing privileged materials and it turns out to be invalid, he will suffer serious prejudice during any retrial. Similar reasoning has led some of our sister circuits to accept interlocutory appeals of discovery orders under the collateral order doctrine. *See, e.g.*, *In re Ford Motor Co*., 110 F.3d 954, 962–64 (3d Cir.1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials.... [T]he cat is already out of the bag.... [T]here is no way to unscramble the egg scrambled by the disclosure...."); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1307–08 (7th Cir.1984) ("Once the Report was released, any error in releasing it would be impossible to correct."); *In re Grand Jury Investigation of Ocean Transp.*, 604 F.2d 672, 673–74 (D.C.Cir.1979) (*per curiam*) (holding that, because the district court's order "conclusively determined the question of waiver" of the attorney-client privilege, appellant "must pursue its claim of attorney-client privilege at this time in order to ensure that its claim not later become moot by reason of the documents' disclosure to third parties"); *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir.1979) ( "[B]ecause[information], once revealed, could not again be concealed, review following a decision on the merits would come too late . . .").

Id. at 718.

18. There is little doubt that Mrs. Montgomery's rights will be irreparably harmed by a failure to enter a stay of the Court's Order. If Mr. Duchardt is permitted to interview other witnesses without judicial oversight or oversight by the parties, Mrs. Montgomery will not be able to object to disclosures by her former defense team on the basis of relevance or continuing privilege. "The criminal defendant may be able to make nonfrivolous objections to the trial lawyer's [or other trial team members'] disclosures even though the ineffective assistance of counsel claim ordinarily waives the attorney-client privilege and work product protection with regard to otherwise privileged communications and protected work product relevant to the claim. For example, the criminal defendant may be able to object based on relevance or maintain that the attorney-client privilege waiver was not broad enough to cover the information sought." ABA Formal Ethics Opinion 10-456. "Even if information sought by the prosecution [or Mr. Duchardt] is relevant, it does not follow that trial counsel [or trial team members] may disclose such information outside the context of a formal proceeding, thereby eliminating the former client's opportunity to object and obtain a judicial ruling." *Id*. Such a disclosure is precisely what Mr. Duchardt is seeking from other witnesses – in contravention of his on-going duties to Mrs. Montgomery and in violation of the on-going duties of Mrs. Montgomery's trial team. This factor weighs heavily in favor of a stay.

### *C. Substantial Injury to Other Parties*

19. The only parties to this litigation are Mrs. Montgomery and the United States. Clearly, Mrs. Montgomery's interests will not be harmed by a stay for her to seek a Writ for this Court's review of this important issue. The Government's interests also will not be harmed: the Government has no legitimate interest in undermining Mr. Duchardt's continuing duty of loyalty to Mrs. Montgomery, or in his disclosure of protected information. The Government has an interest in Mr. Duchardt answering the Government's limited questions, not in his attempt to interview witnesses in order to shore up his "defense" to Mrs. Montgomery's claims.

20. Moreover, the Government's legitimate interest in answering the § 2255 motion could be served in other ways, e.g. by seeking a deposition. It was the Government's choice to seek the procedure that gave rise to this controversy. It bears noting that the District Court prioritized the interest of the non-party attorneys in defending their reputation over all else in its Order. *See*, above, Attachment N, p.1 ("the lawyer should not be silenced or handicapped in defending their (sic) reputation"). While the Court's reasoning might be well-taken in a legal malpractice action, in this context it stands in direct opposition to principles of legal ethics: "In particular, fidelity to the interests of a former client requires that predecessor counsel do more than merely be honest and candid in

answering questions posed by successor counsel. It also requires that the lawyer who is accused of ineffectiveness volunteer information that will assist the client's effort to prove the ineffectiveness claim." Tigran W. Eldred, Motivation Matters: Guideline 10.13 And Other mechanisms For Preventing Lawyers From Surrendering To Self-Interest In Responding to Allegations of Ineffective Assistance in Death Penalty Cases,42 HOFSTRA L. REV. 473, 480 (*citing* David M. Seigal, My Reputation or Your Liberty (or Your Life): The Ethical Obligations of Criminal Defense Counsel in PostConviction Proceedings, 23 J. LEGAL PROF. 85, 105-08.)

21. Seigal's article summarizes ethical opinions which hold that an attorney is required to prioritize his client over his own reputation.

> Lawyers have certain duties and obligations to former clients, and criminal defense lawyers have even greater duties to former clients than do other lawyers. (*United States v. Gerrity*, 804 F.2d 1330, 1331 (7th Cir. 1986). Only criminal practitioners have particularized standards of practice beyond those in the model rules or codes of ethics. *See* ABA Standards for Criminal Justice (1980)). Their obligations, though defined in part by the relevant disciplinary rules, also sound in the Constitution (Timothy J. Lucey, *Bellamy v. Cogdell*: The Ethical Implications of Claims of Ineffective Assistance of Counsel, 6 Geo. J. Legal Ethics 549 (1993) (arguing that ethical breaches by criminal defense lawyers should constitute per se violations of the Sixth Amendment's guarantee of effective assistance of counsel when the duty breached "intersects" with an existing common law category, but should be violations subject to the actual prejudice standard of Strickland otherwise)) and several disciplinary rules recognize these as continuing obligations even to former clients.

Id. at 95.

22. This factor weighs in favor of a stay.

### *D. Public Interest*

23. Public interest favors the protection of client confidentiality and the attorney/client privilege. These principles are the foundation of the attorney/client relationship and the profession has jealously guarded them for good reason. ABA Formal Ethics Opinion 10-456 ("Although the scope of the [self-defense] exception has expanded over time, the exception is a limited one, because it is contrary to the *fundamental premise that client-lawyer confidentiality ensures client trust and encourages the full and frank disclosure necessary to an effective representation*")(emphasis added). The district court's order threatens these important, fundamental principles. This factor weighs in favor of a stay.

## III. Conclusion

22. While the exercise of this Court's jurisdiction under such a circumstance is rarely used, this is a circumstance in which the Court should intervene to protect the rights of Mrs. Montgomery.

23. Mrs. Montgomery is expeditiously drafting a Petition for Writ of Mandamus/Prohibition to file with this Court, but requires an additional few days in which to prepare the document. Mr. Duchardt has informed undersigned counsel that he will commence *ex parte*, third party interviews on Friday, June 20, 2014, absent an emergency stay from this Court. Mrs. Montgomery will be irreparably

harmed if Mr. Duchardt is allowed to conduct interviews of these third parties in an effort to bolster his version of events in that any future hearing on her §2255 Motion or retrial will be compromised.

WHEREFORE, this motion should be granted staying the Order of the United States District Court for the Western District of Missouri, Attachment N. Doc. 100.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2014, the above-captioned document was served electronically on Roseann Ketchmark and Phil Koppe, Assistant United States Attorneys representing the government in this matter, by email.

/s/ *Kelley J. Henry*

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| **LISA M. MONTGOMERY**, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Civil No. 12-08001-CV-W-GAF |
| v. | ) | Crim. No. 05-06002-01-CR-W-GAF |
| | ) | |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S MOTION TO COMPEL DEFENSE COUNSEL TO PROVIDE AN AFFIDAVIT**

The respondent, the United States of America, respectfully requests that this Court issue an order commanding defense counsel in the underlying criminal matter, Fred Duchardt, John O'Connor and David Owen, to provide affidavits to the Government. The Government provides the following suggestions in support of the motion:

## II. Argument and Authorities

1. A jury convicted the movant, Lisa M. Montgomery, of the offense of kidnapping resulting in death, and she was sentenced to death. Montgomery appealed her sentence, and the Eighth Circuit affirmed. On October 1, 2013, Montgomery filed an amended motion, under 28 U.S.C. § 2255, alleging that she received ineffective assistance of counsel in countless respects, both at trial and at sentencing.

2. On October 1, 2013, Fred Duchardt was contacted by the United States Attorney's Office to advise him that he would be asked to prepare an affidavit in the near future to respond to the allegations in Montgomery's § 2255 claims. On October 2, 2013,

Mr. Duchardt sent an e-mail to undersigned counsel explaining that it took him over 300 uncompensated hours to prepare his affidavit in another capital case, and that he did not want to prepare an affidavit in this case. He made the alternative suggestion of giving his testimony at a hearing, or deposition, or through an informal discussion, and adamantly stressed his refusal to prepare an affidavit saying, "I shall strongly resist ever being forced to such thankless slave labor again."

3. Undersigned counsel has engaged senior attorneys and supervisors in the United States Attorney's Office to evaluate the alternative suggestions given by Mr. Duchardt. After almost two months of unsuccessfully seeking an effective solution to obtain defense counsel's response to the allegation, the Government is now requesting and order compelling Mr. Duchardt, Mr. O'Connor, and Mr. Owen to prepare affidavits in response to Montgomery's claims of ineffectiveness.

4. The Rules Governing Section 2255 Cases, Rule 8, notes that the district court must review the record "*and any materials submitted under Rule 7*," to determine if an evidentiary hearing should be held. (Emphasis added.) Rule 7, Rules Governing Section 2255 Cases, cross-references the Advisory Committee Notes, Rule 7, Rules Governing Section 2254 Cases. That section emphasizes expanding the record, in part through affidavits, is an important step in the process of determining whether an evidentiary hearing is required. *See Raines v. United States*, 423 F.2d 526, 529-30 (4th Cir. 1970).

5. The United States is sympathetic to defense counsel's complaint that it is very time-consuming to prepare an affidavit that responds to a 238-page § 2255 motion that consists mainly of ineffective assistance of counsel claims. Because Mr. Duchardt and Mr. O'Connor are self-employed, and would be financially harmed by expending the time needed to properly prepare an affidavit in this case, responding to the numerous claims of ineffectiveness, the Government would suggest and recommend that Mr. Duchardt and Mr. O'Connor be reimbursed, if possible, with CJA funds for their time in preparing their affidavits.

6. Therefore, the Government respectfully requests that this Court issue an order commanding Mr. Duchardt, Mr. O'Connor, and Mr. Owen to provide affidavits to the Government in response to the claims raised by Montgomery. The Government requests that the order further require that Mr. Duchardt and Mr. O'Connor to provide any and all documentary evidence and attorney notes which are relevant to the claims Montgomery raises in her § 2255 motion, and to redact any portions of the documentary evidence and notes which are not responsive to her claims.

## II. **Conclusion**

Accordingly, for all of the reasons previously outlined, the Government respectfully requests that this Court issue an order commanding defense counsel in the underlying criminal matter, Fred Duchardt, John O'Connor, and David Owen to provide complete affidavits, documents, evidence and notes to the Government, by Friday, December 21, 2013. The Government further requests that this Court provide CJA funding for the time Mr. Duchardt and Mr. O'Connor spend on preparing the affidavits.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney

By */s/ Roseann A. Ketchmark*

ROSEANN A. KETCHMARK
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on November 25, 2013, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Roseann A. Ketchmark*
Roseann A. Ketchmark
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Movant*, | ) | |
| | ) | |
| v. | ) | Case No. 12-08001-CV-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

MOVANT'S RESPONSE TO THE GOVERNMENT'S
MOTION TO COMPEL DEFENSE COUNSEL TO PROVIDE AFFIDAVITS

Comes now movant Lisa M. Montgomery, by and through undersigned counsel, and submits the following response to the Government's pending Motion to Compel Defense Counsel to Provide an Affidavit (Doc. #75).

## I. Factual Issues

In the pending motion, the Government states that it contacted Mr. Fred Duchardt on October 1, 2013 and advised him "that he would be asked to prepare an affidavit in the near future to respond to the allegations in Montgomery's §2255 claims." According to the Government, Mr. Duchardt responded by e-mail and advised the Government that he had spent "over 300 uncompensated hours" preparing an affidavit in another capital case and "that he did not want to prepare an affidavit in this case." Mr. Duchardt suggested giving his testimony "at a hearing, or deposition, or through an informal discussion." Counsel for Mrs. Montgomery have no objection to Mr. Duchardt's testimony being given at a hearing or deposition subject to an appropriate protective order and limitations.

The Government represents, however, that it finds Mr. Duchardt's suggestions not to represent an "effective solution." (Doc. #75, p. 2). The Government then asks the Court to

compel not only Mr. Duchardt, but John O'Connor and David Owen to provide affidavits. It is not clear from the Government's motion if either Mr. O'Connor or Mr. Owen have even been asked to provide affidavits or their positions on this matter.

The Government goes on to suggest compensating Mr. Duchardt and Mr. O'Connor with CJA funds "for their time in preparing affidavits." As Mr. Owen is also self-employed, it is not clear why the Government would not seek to compensate him for his time. Regardless, the Government cites no authority for such compensation.

Finally, the Government asks that Mr. Duchardt and Mr. O'Connor, but not Mr. Owen, be required to provide "any and all documentary evidence and attorney notes which are relevant to the claims Montgomery raises in her §2255 motion, and to redact any portions of the documentary evidence and notes which are not responsive to her claims." Because there is no legal authority for the novel discovery request made by the Government, the motion should be denied.

Movant would note that the request of the Government establishes the existence of fact disputes which may only be resolved through an evidentiary hearing where counsel for both sides are present and the Court may contemporaneously resolve any disputes over the scope of the testimony of Movant's former counsel. The Court should bear in mind that former trial counsel remain under a duty of loyalty to Mrs. Montgomery and her filing of a Motion for relief under 28 U.S.C. 2255 is not a wholesale waiver of the attorney/client and work-product privileges.

<u>II. Argument and Legal Analysis</u>

First, the Government cites no authority for the proposition that trial counsel can be required to provide an affidavit. That is because there is literally no authority for the proposition that

prior counsel, or any non-party, may be compelled to provide pre-hearing affidavits. Although Mrs. Montgomery may impliedly waive portions of the attorney-client privilege by raising claims of ineffective assistance of counsel, not a single case holds that a finding of the waiver then *requires* that trial counsel provide affidavits prior to their testimony at a hearing.

Second, if the Government desires pre-hearing discovery, it should be required to comply with the established rules of discovery as codified in the Rules Governing Section 2255 Proceedings and the Federal Rules of Civil Procedure. Alleging ineffective assistance of counsel does not constitute a total waiver of the attorney-client privilege. The scope of any waiver must be narrowly tailored to insure that only information germane to the specific ineffective assistance of counsel claims is disclosed. As this narrow waiver rule is not self-enforcing, testimony of trial counsel should be obtained through either a hearing or a deposition so that the former client has an opportunity to object to potential testimony that exceeds the scope of the waiver. In fact, other courts have taken care to insure that there is no inadvertent disclosure of privileged information. *See, e.g., Johnson v. Alabama*, 256 F.3d 1156 (11th Cir. 2001). Either a hearing or a deposition allow the Government to obtain information, but in a more cost-effective manner where Mrs. Montgomery's rights can be protected.

Furthermore, the Government's request for affidavits from prior counsel is, in actuality, a request for discovery. Such requests are governed by Rules 6 and 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Neither those rules nor any case law support the proposition that a non-party to an action can or should be compelled to provide an affidavit.

Rule 6 of the 2255 Rules states that a party cannot obtain discovery absent a showing of "good cause." Rule 6(a), 2255 Rules. Here, the Government has not even attempted to make a

showing of good cause for its request. Indeed, it would be difficult for the Government to make a showing of good cause given that there is no authority to support its request. The Government is asking for the right to compel witnesses to provide it with sworn statements prior to a court proceeding. Such a request, in addition to being without authority, risks setting a dangerous precedent. While the Government can compel a witness to be present at a court proceeding, it has no right to compel witnesses to provide statements to its attorneys or agents prior to a court proceeding. Witnesses are free to decide whether or not they want to speak with the Government. The Government has no authority to coerce a witness to provide it with a sworn statement.

In contrast, a deposition at least provides some procedural safeguards. Counsel for Mrs. Montgomery would be present and could object to any disclosure of privileged communications *before* the information is disclosed. The Government has not established good cause for rejecting Mr. Duchardt's proposal of a deposition or for why it should be allowed to circumvent the ordinary manner in which discovery is conducted.

The Government's motion also fails to acknowledge or discuss the constraints imposed by the Rules of Professional Conduct and the 2010 American Bar Association ("ABA") ethics opinion that addresses precisely this question. *See* ABA Formal Opinion 10-456. "Even if information sought by the prosecution is relevant and not privileged, it does not follow that trial counsel may disclose such information outside the context of a formal proceeding, thereby eliminating the former client's opportunity to object and obtain a judicial ruling. Absent a relevant exception, a lawyer may disclose client information protected by Rule 1.6 only with the client's 'informed consent.'" *Id*. at p. 2. The Opinion also recognizes, "Permitting disclosure of client confidential information outside court-supervised proceedings undermines important

interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding." *Id*. at p. 3. In addition, "allowing criminal defense lawyers voluntarily to assist law enforcement authorities by providing them with protected client information might potentially chill some future defendants from fully confiding in their lawyers." *Id*. at p. 5. Finally, the Opinion concludes that, "Against this background, it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable." *Id*.

If the Court is inclined to compel prior counsel to provide affidavits, the Court must narrowly tailor the scope of the affidavits and should schedule a hearing for purposes of crafting an appropriate protective order. In addition, prior counsel is obligated to provide present counsel with an opportunity to raise all appropriate objections. *See* Lawrence J. Fox, Making the Last Chance Meaningful: Predecessor Counsel's Ethical Duty to the Capital Defendant, 31 Hofstra L. Rev. 1181, 1187-88 (2003). Therefore, if prior counsel are to be directed to provide affidavits, they should first be provided to current counsel for review before being disclosed to the Government. Otherwise there will be no check on what prior counsel might disclose in their written affidavits and, more importantly, there will be no remedy if the disclosures are improper and exceed the scope of the waiver.

With regard to the Government's request for portions of trial counsel's files, the Government neglects to discuss Rule 7 of the 2255 Rules. Rule 7 provides that the court may direct *the parties* to expand the record. Nothing in the rule authorizes this Court to compel *non-parties* to produce information. The motion also seeks information protected by the attorney-client

privilege and the work product doctrine. Any information to be disclosed would have to be directly relevant to a specific claim of ineffective assistance of counsel. Again, the Government has failed to show "good cause" for such disclosure. If such information is to be disclosed, undersigned counsel request an opportunity to review the material before it is disclosed to the Government.

Finally, the Government's request that the court order trial counsel to be compensated from CJA funds is without support and contrary to law. Undersigned counsel have confirmed with the Defender Services Office of the Administrative Office of the Courts ("DSO") that former counsel are not entitled to reimbursement for testimony provided in post-conviction proceedings. DSO has consistently refused to provide funding for testimony and time expended by prior trial counsel in post-conviction matters. In fact, trial counsel are fact witnesses in this matter and not entitled to compensation. Were this Court to rule otherwise, it would open the door to compensation to all CJA lawyers who are subject to 2255 lititgation. Such a precedent would be fiscally irresponsible and contrary to public policy. Former trial counsel would have a financial incentive to provide testimony and evidence favorable to the government and would thus create an intolerable conflict of interest.

## III. Conclusion

For all of the reasons stated above, counsel for Mrs. Montgomery ask the Court to deny the Government's motion to compel affidavits. Should the Court consider any other remedy other than simply denying the Government's motion, Ms. Montgomery requests a hearing on the motion.

Respectfully submitted,

/s/ *Lisa G. Nouri*

LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
OFFICE OF THE FEDERAL PUBLIC
DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 10, 2013, the above-captioned document was served electronically on Roseann Ketchmark, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Christine M. Blegen*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-8001-CV-W-GAF** |
| | ) | **Crim. No. 05-6002-01-CR-SJ-GAF** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

Now pending before the Court is the Government's Motion to Compel Defense Counsel to Provide An Affidavit (Doc. #75). The Court having fully considered said motion and the Movant's Response to the Government's Motion to Compel Defense Counsel to Provide Affidavits (Doc. #76), it is

ORDERED that Frederick A. Duchardt, Jr., John O'Connor, and David L. Owen, Jr., are to provide affidavits to the Government in response to the claims raised by Movant in her § 2255 motion. Mr. Duchardt, Mr. O'Connor, and Mr. Owen are to provide any and all documentary evidence and attorney notes which are relevant to the claims Movant raises in her § 2255 motion, and to redact any portions of the documentary evidence and notes which are not responsive to her claims.

IT IS FURTHER ORDERED that Mr. Duchardt, Mr. O'Connor, and Mr. Owen are not entitled to reimbursement for testimony provided in post-conviction proceedings from CJA funds.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 10, 2013

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Case Number 12-8001-CV-W-GAF |
| | ) | Criminal Case # 05-6002-CR-SJ-GAF |
| | ) | |
| UNITED STATES | ) | |
| Respondent | ) | |

***REQUEST FOR RECONSIDERATION AND MODIFICATION OF ORDER DIRECTING THAT DEFENSE COUNSEL PROVIDE AFFIDAVITS, WITH SUGGESTIONS IN SUPPORT***

Comes now Frederick A. Duchardt, Jr., on behalf of himself and John O'Connor, requesting that this Honorable Court reconsider and modify its December 10, 2013 Order directing that Mr. O'Connor and Mr. Duchardt "provide affidavits to the government in response to the claims raised by Movant in her 2255 motion." (Doc. 77).[1] The grounds for this request, and suggestions in support thereof, will be set forth in the subsequent numbered subparagraphs.

1. In the above captioned cause, in the midst of some 500 pages of pleadings and suggestions, Lisa Montgomery has requested, pursuant to 21 U.S.C. 2255, that this Court set aside the judgment and sentence entered in case # 05-6002-CR-SJ-GAF (Doc. 32, 71). Among the issues raised in Mrs.

[1] The Order is also directed to David Owen. Neither undersigned counsel nor Mr. O'Connor have had any contact with Mr. Owen since the end of Mrs. Montgomery's trial, and therefore do not presume to speak for him.

Montgomery's pleadings are challenges to the effectiveness of Mrs. Montgomery's trial defense team, particularly the undersigned Frederick A. Duchardt, Jr. and John O'Connor.

2. On November 25, 2013, the government filed a request specifically asking that undersigned counsel and Mr. O'Connor "prepare affidavits in response to Montgomery's claims of ineffectiveness" (Doc. 75, p. 2). The government went on to seek direction to undersigned counsel and Mr. O'Connor "to provide any and all documentary evidence and attorney notes which are relevant to the claims Montgomery raises in her Section 2255 motion" (Doc. 75, p. 3). The government additionally asked "that Mr. Duchardt and Mr. O'Connor be reimbursed, if possible with CJA funds for their time in preparing affidavits" (Doc. 75, p. 3). Finally, despite admitting that it had delayed making its request for "almost two months" (Doc. 75, p. 2), the government asked that undersigned counsel and Mr. O'Connor do all that was being asked of them "by Friday, December 21, 2013" [2] (Doc. 75, p. 4).

3. In response to the government's request, current appointed Counsel for Mrs. Montgomery asked that this Court "deny the government's motion to compel affidavits" (Doc. 76, p. 7). Though complaining that the government had not cited appropriate authority to ground the request in law, current Counsel for Mrs.

[2] It should be noted that, in the month of December of 2013, Friday was the 20th, and Saturday was the 21st.

Montgomery acknowledged the obvious, that the government's motion "is, in actuality, a request for discovery", and that there are rules of Court permitting discovery requests in habeas cases such as this one (Doc. 76, p. 2-3). Still, current Counsel for Mrs. Montgomery contended that "there is literally no authority for the proposition that prior counsel, or any non-party, may be compelled to provide pre-hearing affidavits" (Doc. 76, p. 3). Without affirming that Mrs. Montgomery has waived any of her rights, current Counsel for Mrs. Montgomery questioned whether the waiver which the Courts have found implicit in the filing of ineffective assistance claims would cover preparation of an affidavit (Doc. 76, p. 3-4). Consequently, current Counsel for Mrs. Montgomery asked to be placed in a gatekeeper role with respect to any disclosure to the government by undersigned counsel and Mr. O'Connor, either by having that disclosure made in a hearing at which she would be able to interpose objections, or by having affidavit-type disclosures first submitted to her for review and objection (Doc. 76, p. 4-5). Current Counsel for Mrs. Montgomery also chose to weigh in on the propriety of compensation to undersigned counsel and Mr. O'Connor for their work, fretting that such compensation "would be fiscally irresponsible and contrary to public policy" (Doc. 76, p. 6). It is worth noting that current Counsel for Mrs. Montgomery has advanced these latter words of her wisdom regarding payment to undersigned counsel and Mr. O'Connor *sans* authority, in other words in the same





Case 4:12-cv-08001-GAF Document 111-1 Filed 06/25/14 Page 32 of 109
Case 4:12-cv-08001-GAF Document 78 Filed 12/27/13 Page 3 of 16
Appellate Case: 14-2437 Page: 3 Date Filed: 06/18/2014 Entry ID: 4166245

fashion which caused her to be so critical of the government. Moreover, the suggestions by current Counsel for Mrs. Montgomery seem to lose their worth since she does not, in keeping with her professed concerns regarding fiscal responsibility, include an offer to forego payments to her for her work.

4. Long ago, the Supreme Court decided that litigants in a habeas corpus proceeding should not automatically be permitted unlimited access to the full panoply of discovery tools in the fashion enjoyed by other types of civil case litigants. ***Harris v. Nelson***, 394 U.S. 286, 295, 300 (1969). Rather, at the instance of the Supreme Court, rules peculiar to habeas proceedings have been promulgated with an eye toward granting only that discovery which the Court hearing the matter deems to be required by law and justice. ***Bracy v. Gramley***, 520 U.S. 899, 904 (1997); ***Smith v. United States***, 618 F.2d 507, 509 (8th Cir. 1980). Therefore, under Rule 6(a) of the Rules governing 2255 proceedings, "(a) judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." What this means is that, in a Federal Habeas proceeding, the full panoply of civil and criminal case discovery tools are potentially available, with the proviso that the Court presiding over the matter must find good cause before resort to any such tools may be had. ***Barrett v. United States***, 2009 WL 2982670, *2 (E.D.Okla. 2009). Rule 6 and the caselaw interpreting it would

likely be enough to call into serious question the notions of current Counsel for Mrs. Montgomery about there being "literally no authority for the proposition that prior counsel, or any non-party, may be compelled to provide pre-hearing affidavits" (Doc. 76, p. 3). But there is much more than that which apparently escaped the researching eye of current Counsel for Mrs. Montgomery.

5. The Rules of Court related to habeas proceedings specifically empower a habeas case Judge to "direct the parties to expand the record by submitting additional materials relating to the motions" as well as to "require that these materials be authenticated." Rule 7(a), Rules governing Section 2255 Proceedings. The same rules go on to state, without limitation, that pursuant to requirement by a habeas case Judge, "(a)ffidavits also may be submitted and considered as part of the record." Rule 7(b), Rules governing Section 2255 Proceedings. What is more, there is considerable precedent in the Eighth Circuit for use of affidavit preparation by former counsel for the habeas movant as a form of such habeas case discovery. ***Purkey v. United States***, 729 F.3d 860, 862 (8th Cir. 2013); ***Sinisterra v. United States***, 600 F.3d 900, 905 (8th Cir. 2010); ***Nelson v. United States***, 2010 WL 3398791, *2 (W.D.MO. 2010)[3]; ***Jones v. United States***,

[3] In his opinion on the subject, Chief Judge Fernando Gaitan mentioned a host of other Districts who had similarly found affidavits prepared by former counsel to be an appropriate vehicle for moving along the habeas discovery process. ***Nelson v. United States***, supra.

2013 WL 2950071, *4 (D.S.D. 2013); ***Walking Eagle v. United States***, 2011 WL 2881596, *4 (D.S.D. 2011).

6. Though there is ample legal authority for ordering affidavit preparation by former counsel for a habeas movant, there are still some major problems with such a process the burdens of which fall predominantly upon former counsel. Those are the problems which have not been adequately addressed by the parties in this case, and which undersigned counsel and Mr. O'Connor ask that this Court consider and resolve.

7. The first of those problems arises out of the understandable tendency of habeas counsel for the movant to, as much as possible, use the attorney-client privilege and the related right to protection of attorney work product (including formulation of strategy decisions) as both a sword and a shield; standing in the way of such duality is the clear principle of law, set forth by the Supreme Court itself more than a century ago, and followed by the Federal Courts ever since, that a client who complains about the performance of her attorney impliedly waives her attorney-client privilege and work product protections with respect to the substance of her complaints. ***Hunt v. Blackburn***, 128 U.S. 464, 470-471 (1888); ***Tasby v. United States***, 504 F.2d 332, 336 (8th Cir. 1974); ***Bittaker v. Woodford***, 331 F.3d 715, 718-719 (9th Cir. 2003). The matter has been framed well in a case cited in the suggestions by current Counsel for Mrs. Montgomery (Doc. 76, p. 3).

> Although the precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court, there should be no confusion that a habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of communications with counsel relevant to assessing the reasonableness of those decisions in the circumstances.
>
> ***Johnson v. Alabama***, 256 F.3d 1156, 1179 (11th Cir. 2001)

8. When faced with such imperatives, habeas counsel generally approach the matter of discovery in fashion similar to that of current Counsel for Mrs. Montgomery. That is habeas counsel will raise general objections and begrudgingly let the affidavit preparation process go forward; then, after former counsel is required to expend the tremendous time and effort required to answer wide-ranging accusations leveled in a lengthy petition, habeas counsel will leap in to question the integrity and professional ethics of former counsel in not divining some stopping point short of the revelations made in the affidavit (Doc. 76, p. 5). ***Purkey v. United States***, supra; ***Sinisterra v. United States***, supra. While it is understandable that habeas Counsel for a Movant would wish to hedge bets in this fashion, the law simply does not require such a torturous, cart-before-the-horse process.

9. The Courts who have specifically addressed this aspect of this issue have found that, while alleging ineffective assistance of counsel in a petition implies a waiver, that filing alone does not effectuate the waiver; rather, it is when it comes time to join the fight over the effectiveness allegations that the petitioner should be

put to a choice, either protect the privileges and suffer dismissal of the allegations of ineffectiveness, or explicitly abandon the privileges, and allow former counsel to specifically address the accusations made. ***Bittaker v. Woodford***, supra; ***Jones v. United States***, supra. The Ninth Circuit put things this way.

> The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it. ***Bittaker v. Woodford***, 720.

Thus, undersigned counsel and John O'Connor request that, prior to their expenditure of effort in answering the multifarious accusations made in the petition and suggestions filed in this case, an explicit waiver of the attorney-client and work product privileges be obtained from Mrs. Montgomery and her Counsel regarding the substance of the petition's accusations. Undersigned counsel and Mr. O'Connor further ask that any requests for limitations on answers by them be requested by current Counsel for Mrs. Montgomery with specificity and prior to the beginning of their endeavors. In that way, the responsibility for crafting the length and breadth of the waiver will be placed where it should be placed, with current Counsel for Mrs. Montgomery.

10. In fairness to current Counsel for Mrs. Montgomery, it must be noted that the government as well is trying to hedge bets in this process. That is the

second problem in the process. Counsel for the government rightly accounts in her motion that undersigned counsel had suggested that the best way to approach discovery on Mrs. Montgomery's ineffective counsel claims would be by her posing questions to undersigned counsel and John O'Connor in the presence of current Counsel for Mrs. Montgomery (Doc. 75, p. 2). However, Counsel for the government does not go on to explain that various District Courts have found that such a procedure is the best way to make discovery happen in a way which concomitantly fashions a waiver which goes no further than what is required by the particular contours of the case. ***United States v. Stone***, 824 F.Supp.2d 176, 186-189 (D.Me. 2011); ***United States v. Soomai***, 928 F.Supp.2d 170, 173 (D.D.C. 2013). Since the government does not try to explain why it finds such a question and answer procedure not to its liking, it is safe to assume that the government wishes to put upon undersigned counsel and Mr. O'Connor, not only to bear their own burden of providing information, but also to bear the government's burden of formulating the proper questions to get at that information. Undersigned counsel and Mr. O'Connor respectfully suggest that, just as it should be the responsibility of current Counsel for Mrs. Montgomery to give advance warning of the parameters of their waivers of attorney-client and work product privileges, it should similarly be the responsibility of the government to be familiar enough with its case to put the questions which it wishes answered. Thus, undersigned counsel

requests that this Court modify its order to require that the government pose questions to be answered by him and by Mr. O'Connor. It would be preferred that this be done, as suggested by undersigned counsel, in a deposition or similar oral question and answer format, with current Counsel for Mrs. Montgomery present to interpose objections. However, if the government still prefers responses in writing, the government could prepare written questions, which would first be submitted to current Counsel for Mrs. Montgomery for objection.

11. Counsel for the government correctly accounted the words of undersigned counsel that he would "strongly resist" having to perform discovery for the government in the terribly time-consuming way as requested by government Counsel (Doc. 75, p. 2). Those words came in response to the explanation by Counsel for the government that she was seeking from undersigned counsel precisely the same sort of affidavit as was prepared in the case of ***Purkey v United States***, supra. In the ***Purkey*** case, after the parties agreed to it, Chief Judge Fernando Gaitan entered an affidavit production order similar to the one which the government has sought in this case. Undersigned counsel complied with that order, and spent 144.5 hours of his time reading Mr. Purkey's 56 page petition and 84 page suggestions, reviewing materials, researching and writing

what turned out to be a 116 page affidavit.[4] Since the pleadings submitted on behalf of Mrs. Montgomery are nearly three times longer than those submitted on behalf of Mr. Purkey, it is more than safe to say that the time needed to prepare a similar affidavit for this case would be at least 144.5 hours., and very likely much, much more. Undersigned counsel has made the recommendations that the parties be required to engage in the preparatory work which they should so that the time investment by undersigned counsel and Mr. O'Connor in properly answering properly framed discovery requests can be somewhat more manageable.

12. The government misses the mark by not heeding the suggestions of undersigned counsel, and by requesting instead "that Mr. Duchardt and Mr. O'Connor be reimbursed, if possible, with CJA funds for their time in preparing their affidavits" (Doc. 75, p. 2). Because undersigned counsel and Mr. O'Connor are no longer counsel of record for Mrs. Montgomery, there is no justification for payment to them per the dictates of 18 U.S.C. 3599(a)(2). And, because it is the government and not current Counsel for Mrs. Montgomery making the request for

---

[4] Undersigned counsel indeed also used the word "thankless" to describe to government Counsel his endeavors in the ***Purkey*** case. That was not only because there was no compensation paid to him for the 144.5 hours he spent, but also because all that work was useless, since the Eighth Circuit essentially sustained the after-affidavit-preparation objections raised by habeas Counsel for Purkey, deciding that it could find against Purkey without any resort to the affidavit. ***Purkey v. United States***, 866, fn. 2.

services to be performed by undersigned counsel and by Mr. O'Connor, there is no justification for payment for that work under 18 U.S.C. 3599(f).

13. That is not to say, as does current Counsel for Mrs. Montgomery, that there is anything wrong with compensating undersigned counsel and Mr. O'Connor for their time. It would be appropriate to order such compensation, but not from CJA funds. Instead, since the United States Attorney's Office is the party requesting that the work be done, it should be held responsible for proper payment. The Court would be fully justified in directing the United States Attorney's Office to make payment for affidavit preparation by undersigned counsel and by Mr. O'Connor per the dictates of F.R.Civ.P. 26(b)(4)(E)(i). That provision of the civil rules permits the Court to Order that a party seeking discovery from an expert pay that expert "a reasonable fee for time spent in responding to discovery" of expert opinions. ***Marcelli v. Ace American Ins. Co.***, 2012 WL 3744635, *1-*2 (D.Colo. 2012). What the government seeks is precisely the sort of expert services contemplated in F.R.Civ.P. 26(b)(4). Whether a defendant has been deprived effective assistance of counsel so as to merit relief under 28 U.S.C. 2255 is not simply a question of fact, but rather a mixed question of fact and law. ***New v. United States***, 562 F.3d 949, 952 (8th Cir. 2011). If the government wished to merely get at facts related to the claims made by Mrs. Montgomery, it could pose interrogatories or take a deposition to get at

such specific matters of fact. Instead, it looks to tap the legal acumen of undersigned counsel and Mr. O'Connor, to identify issues and resolve them. This will clearly require independent research by undersigned counsel and Mr. O'Connor beyond anything done in preparation for Mrs. Montgomery's trial. Put another way, by asking for the preparation of affidavits, the government seeks expert opinions from undersigned counsel and from Mr. O'Connor of the sort contemplated under F.R.Civ.P. 26(b)(4)(E). Thus, though the government is entitled under the law to ask for affidavits, if it persists with such a request, it should be ordered to pay for the work it requests.

14. In whatever manner the Court ultimate has undersigned counsel and Mr. O'Connor respond to the government's discovery request, it is requested that this Court permit undersigned counsel and Mr. O'Connor until June 16, 2014 to formulate that response. As detailed above, the amount of time required for response to the discovery request will be substantial. At this time, and over the next several months, both undersigned counsel and Mr. O'Connor are fully engaged in other matters which were set for trial long ago. Undersigned counsel is engaged in preparation for the capital case trial of ***United States v. Wesley Coonce and Charles Hall***, WDMO Case #10-3029-01/02/CR-S-GAF. That case is to begin trial on April 28, 2014, and pretrial preparations for that matter are underway and scheduled throughout the next four months. Mr. O'Connor is

likewise booked up, for his part with three State Court matters. The first is ***State of Missouri v. Steven Johnson***, Jackson County Case # 1316-CR01414-01, scheduled for a three day trial beginning January 27, 2014 upon a charge of assault upon a law enforcement officer. The second is ***State of Missouri v. Dayqwan Sykes***, Jackson County Case # 1216-CR03294-01, scheduled for a four day trial beginning the second week in February of 2014 upon a charge of murder in the second degree. The third is ***State of Missouri v. Austin Pelley***, Greene County case # 1231-CR06135-01, scheduled to begin a 2-3 week trial on March 10, 2014 upon a capital charge of murder in the first degree. By directing that the responses of undersigned counsel and Mr. O'Connor be made by June 16, 2014 this Court will allow them to complete both the discovery response work and the casework which they already have scheduled.

WHEREFORE, Frederick A. Duchardt, Jr., on behalf of himself and John O'Connor, prays that this Honorable Court set aside its Order of December 10, 2013 regarding affidavit preparation (Doc. 77). It is further prayed that this Court direct that Mrs. Montgomery and her Counsel make explicit, written election regarding whether and to what extent Mrs. Montgomery will waive her attorney-client and work product privileges with respect to the accusations of ineffectiveness which she raises in her petition. It is also prayed that, to the extent that a waiver is filed by and on behalf of Mrs. Montgomery, the Court direct

that discovery from Mr. Duchardt and Mr. O'Connor be obtained by way of deposition to be conducted by Counsel for the government, subject to objection by Counsel for Mrs. Montgomery. In the alternative, it is prayed that, to the extent this Court believes that affidavits should be prepared as the means of discovery, that such affidavits be limited to answering of written questions propounded by Counsel for the government, with those written questions culled in advance by proper objections interposed by Counsel for Mrs. Montgomery. It is additionallyprayed that Mr. Duchardt and Mr. O'Connor be given until June 16, 2014 to complete their responses to the discovery sought by the government. It is finally prayed that this Court order that the United States Attorney's Office for the Western District of Missouri pay for the time expended by Mr. Duchardt and Mr. O'Connor in responding to the government's discovery request.

Respectfully submitted

//s/Frederick A. Duchardt, Jr.

FREDERICK A. DUCHARDT, JR.
Mo.Bar Enrollment Number 28868
P.O. Box 216
Trimble MO 64492
Phone: 816-213-0782
Fax: 816-635-5155
e-mail: fduchardt@yahoo.com

## ***<u>CERTIFICATE OF SERVICE</u>***

I hereby certify that a copy of the foregoing was provided to the following

Roseann Ketchmark
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, MO 64106
Roseann.ketchmark@usdoj.gov

Christine Blegen
230 SW Main St., Suite 217
Lees Summit MO 64063
Christine@blegenlawfirm.com

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Movant*, | ) | |
| | ) | |
| v. | ) | Case No. 12-08001-CV-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

MOVANT'S RESPONSE TO MR. DUCHARDT'S AND MR. O'CONNOR'S REQUEST FOR RECONSIDERATION AND MODIFICATION OF ORDER DIRECTING THAT DEFENSE COUNSEL PROVIDE AFFIDAVITS AND MOTION FOR PROTECTIVE ORDER

COMES NOW movant Lisa M. Montgomery, by and through undersigned counsel, and submits the following response to the Request for Reconsideration (Doc. #78) filed by Mr. Duchardt on December 27, 2013.

In an Order entered on December 10, 2013, this Court ordered Mr. Duchardt, Mr. O'Connor and Mr. Owen "to provide affidavits to the Government in response to the claims raised by Movant in her §2255 motion." Mr. Duchardt has raised multiple concerns about preparing such an affidavit.[1]

Undersigned counsel agrees with Mr. Duchardt that either (1) having the Government prepare written questions to be answered by Mrs. Montgomery's trial attorneys after they have been reviewed for any attorney-client or work product privilege objections or (2) having the Government pose questions to former counsel in a deposition setting with at least one of Mrs.

[1] Undersigned counsel is well aware that there is precedent in this District and in the United States Court of Appeals for the Eighth Circuit for the use of affidavits by former counsel for the habeas movant. Undersigned counsel stands by the assertion that there is no direct authority for *compelling* the preparation of such pre-hearing affidvits. Rule 7 merely recognizes that affidavits "***may*** be submitted and considered as part of the record."

Montgomery's current attorneys present to interpose any appropriate objections would be more efficient and cost-effective than asking former counsel to prepare affidavits of unspecified scope. Given the record in this case, it does seem unduly burdensome to task former counsel with preparing an affidavit of an unspecified nature. It also places former counsel in the somewhat unethical position of doing the Government's work for them while at the same time acting as Mrs. Montgomery's counsel in deciding on their own what is and is not waived by virtue of the claims raised in the §2255 motion.

The Government has filed a Response to Mr. Duchardt's Request for Reconsideration and attached to the Response as Exhibit A is a list of questions the Government would like for Mr. Duchardt and Mr. O'Connor to address. If the Court is inclined to Order former counsel to respond to these written questions, counsel for Mrs. Montgomery would ask to have through Thursday, January 16th at 5:00 p.m. to file any objections to the proposed questions. This request is made due to the fact that lead counsel Lisa Nouri is currently in trial and expects to be in trial through at least January 10th.

With regard to the matter of compensation, the Government had requested payment of Mr. Duchardt and Mr. O'Connor through CJA funds. Undersigned counsel correctly noted that there was no authority for payment of former counsel through CJA funds. Mr. Duchardt now states that he seeks payment from the United States Attorney's Office as an expert witness. Mr. Duchardt is not an expert witness in this case. He is a fact witness.

Should the Court deny Mr. Duchardt's Request for Reconsideration, undersigned counsel asks that the Court enter a Protective Order requiring that the affidavits of former counsel be first provided to current counsel for Mrs. Montgomery for review prior to their disclosure to the Government. This will afford Mrs. Montgomery's current counsel an opportunity to make a

determination as to whether certain claims should be withdrawn in order to protect the attorney-client privilege or, in the alternative, to object if the affidavit violates the privilege because it addresses matters not raised in Mrs. Montgomery's Amended Motion.

In sum, Mrs. Montgomery renews her request that the discovery of former counsel's position on the claims raised in her Amended Motion be conducted via deposition or, in the alternative, through written interrogatories to be answered by former counsel. If the Court is inclined to treat the list of questions provided by the Government as Exhibit A to its Response as the written interrogatories, then counsel for Mrs. Montgomery would ask to have through January 16th at 5:00 p.m. to file any objections to the proposed questions. In the alternative, should the Court deny Mr. Duchardt's Request for Reconsideration, undersigned counsel asks that the Court enter a Protective Order requiring that the affidavits of former counsel be first provided to current counsel for Mrs. Montgomery for review prior to their disclosure to the Government.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No.
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9th, 2014, the above-captioned document was served electronically on Roseann Ketchmark, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system and on Fred Duchardt via email.

/s/ *Christine M. Blegen*





Case 4:12-cv-08001-GAF Document 111-1 Filed 06/25/14 Page 49 of 109
Case 4:12-cv-08001-GAF Document 80 Filed 01/09/14 Page 4 of 4
Appellate Case: 14-2437 Page: 4 Date Filed: 06/18/2014 Entry ID: 4166245

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Civil No. 12-08001-CV-W-GAF |
| v. | ) | Crim. No. 5-06002-01-CR-W-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S RESPONSE TO**
**DUCHARDT'S REQUEST FOR RECONSIDERATION AND**
**MODIFICATION OF ORDER FOR AFFIDAVITS**

The respondent, the United States of America, respectfully provides the following response to Fred Duchardt's "Request for Reconsideration and Modification of Order Directing that Defense Counsel Provide Affidavits, with Suggestions in Support":

1. On November 25, 2013, the Government filed a motion to compel Montgomery's trial attorneys, Fred Duchardt and John O'Connor, to provide affidavits responding to the ineffectiveness of counsel claims the movant, Lisa Montgomery, raised against them in her § 2255 motion.

2. On December 10, 2013, Montgomery filed a response in opposition to the Government's motion.

3. On December 10, 2013, this Court ordered O'Connor and Duchardt to provide affidavits.

4. On December 27, 2013, Duchardt filed a request for reconsideration and modification of the order directing O'Connor and Duchardt to provide affidavits. Specifically, Duchardt requests the order to be set aside and that O'Connor and Duchardt be deposed rather than be ordered to prepared affidavits. In the alternative, Duchardt requests the order to be modified to direct the Government to prepare written questions for Montgomery's review (to see if she had any valid Sixth Amendment objections) and to pay O'Connor and Duchardt for their time spent in preparing their written responses.[1] Duchardt further requests that O'Connor and Duchardt be given until June 16, 2014, to complete their affidavits.

5. On January 8, 2014, the Government received a 21-page affidavit from David Owen, who was co-counsel at Montgomery's trial with O'Connor and Duchardt.

6. After receiving David Owen's affidavit, the Government e-mailed Duchardt and O'Connor inquiring about the status of their affidavits. Duchardt responded that he is waiting for a ruling on his motion. (See Attachment "B")

**7.** Duchardt and O'Connor have long been aware that the Government's response is due on January 15, 2014. Duchardt's motion requests an affidavit deadline of June 16, 2014. The Government is somewhat sympathetic to Duchardt's and O'Connor's difficulty in prioritizing Montgomery's non-paying task over other casework in which they are involved. The Government is, however, opposed to their request for such a

[1] Previous to Duchardt filing his 12/17/13 request that this Court direct the Government to prepare questions, the Government had already e-mailed Duchardt and O'Connor a list of 81 questions on 12/3/13. (See Attachment "A")

protracted extension to June 16, 2014. The Government believes a 30-to-60 day extension would be more reasonable in light of all the circumstances involved.

Accordingly, the Government respectfully requests that this Court issue an order denying Duchardt's motion reconsideration and modification. The Government further requests that this Court issue an order directing Duchardt and O'Connor to submit their affidavits and supporting documents on a date certain on or before April 1, 2014, and that, as part of its order, this Court extend the time for filing the Government's response to Montgomery's § 2255 motion to May 1, 2014.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney

By *<u>/s/ Roseann A. Ketchmark</u>*

ROSEANN A. KETCHMARK
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on January 9, 2014, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

*/s/ Roseann A. Ketchmark*
Roseann A. Ketchmark
Assistant United States Attorney

**Ketchmark, Roseann (USAMOW)**

| | |
|---|---|
| **From:** | Frederick Duchardt <fduchardt@yahoo.com> |
| **Sent:** | Tuesday, December 03, 2013 8:08 PM |
| **To:** | Ketchmark, Roseann (USAMOW); joconnor@wcllp.com |
| **Cc:** | Koppe, Phil (USAMOW); Mahoney, Kate (USAMOW) |
| **Subject:** | Re: Montgomery questions |

Good evening Roseann

Per your request, I have reviewed the list of questions which you provided. John and I certainly understand your concerns regarding your deadlines looming. However, as I trust you understand, John and I must still await direction from Lisa's legal team and Judge Fenner. We shall look for that.

Fred

On Tuesday, December 3, 2013 7:00 PM, "Ketchmark, Roseann (USAMOW)" <Roseann.Ketchmark@usdoj.gov> wrote:
Hello Fred and John: The Government's 2255 response is due 1/15/14. As you know, I have motioned the court to order that you both prepare affidavits with supporting documents, and recommended and requested that you be reimbursed for your time. Montgomery's attorneys are asking to have until 12/12/13 to file oppositions to my order to compel affidavits.

Because we are already running into a time crunch, I thought I'd put together questions that we would like addressed in an affidavit (and at an evidentiary hearing if need be). Will you please review the questions and start pulling your notes, thoughts, documents together to answer the attached questions? It won't be a waste of your time since you will eventually be asked these questions in some form/forum.

Please let me know if you want me to send you the 238-page 2255 motion, so that you better understand the context of the questions.

FYI - I'm not sure that I will be asking David Owen to prepare an affidavit since he has already supplied an 18-page declaration to the defense in which he is very harsh to other members of the defense team.

Thank you for your attention to this matter. Roseann

# Questions for Fred / John / David

1. What information were you given about Judy Clarke when you were first appointed to represent Ms. Montgomery (LM)?
2. Did you ever speak with Judy Clarke? (Fred called her and she was willing to get back on the case..p.66)
3. Did LM ever speak to you about Judy Clarke?
4. Did prior counsel ever discuss Judy Clarke with you? (Fred spoke with Susan…p.66)
5. What documents/material did you review that Judy Clarke was involved with?
6. Why didn't you follow up with Judy's experts (Dr. Dean Delis and Judith Herman)? (p.26)
7. Did you review the medical records of Mary Coleman (LM's father's sister) who had epilepsy, seizures, migraines AVM and an aneurism/stroke? (p.32)
8. Why did Fred and John not preserve for appeal the issue of Judy Clarke's removal? (p. 56)
9. Who did John ask to be co-counsel before Fred? Anyone refuse? (p.62)
10. Why did John, Fred and David have very few team meetings? (p.63)
11. Why didn't John meet with LM more often? (p.63)
12. Why did Fred jump to hire Dr. Gur? (p.66)
13. Why did Fred choose to hire Robert Fucetola over Dr. Delis? (p.67)
14. Why did Fred not meet with Lisa Rickert, Holly Jackson, Debra Garvey or David Freeman , or Judith Herman ? (p.70)
15. Was Fred unaware of the contract Judy Clarke had sent to Dr. Herman? (p.70)
16. What did Fred mean when he said, someone calling themselves a mitigation "expert" is almost laughable? (P.70)(see also exhibit 19)
17. Did Fred want LM to think of him as a "girl" like page 72 says? The underlying exhibit says, "not think of me as a guy" instead (p. 72)
18. What did Fred and his wife say to LM to get her to say Tommy was with her at the time of the offense? (p. 72)
19. Did Fred press Lisa over and over until she finally said Tommy was the culprit? (p.73)
20. Did Fred ever consider the Tommy story as a planted memory? (p. 73)
21. Did Fred ignore all the evidence that pointed to the fact that Tommy wasn't there (p. 73)
22. How did the theory of pseudocyesis develop into a defense without being diagnosed first? (p. 73)

23. What does Fred say about Dr. Logan's claim that Fred's theory was clinically incomplete, myopic and misguided?" (p. 74)
24. Did Fred lie to the Court on April 3, status conference regarding diagnosis and expert reports? (p. 75)
25. Did Fred lie to the Court on April 3 by claiming there was a previous prohibition about talking to Lisa about the crime? (P.76)
26. Did Fred continue with pseudocyesis defense just because he didn't want to be "found out" by the court he had "lied"? (p. 76)
27. Why did Fred tell the court about the Tommy defense when it then destroyed the relationship between LM's family and the defense team? (p. 77)
28. Is the Tommy defense and the Pseudocyesis defense inconsistent? If not why? (p. 81)
29. Is it true that Fred "created a situation in which her fourth defense team never figured out what was really going on with her psychologically and neurologically?" (p. 81)
30. Did Fred persuade Dr. Logan to agree with Ramanchdran's somatoform disorder?(p. 82)
31. Did Fred ignore the fact that LM never told anyone that she believed that the baby was hers? (p.82)
32. Did Fred minimize LM's confession? (p.82)
33. Why didn't Fred ask for a continuance when Dr. Gur was excluded as a witness? (p. 84)
34. What efforts did Fred make , if any, to negotiate a plea? (p.84)
35. Did the defense team encourage LM to talk about the Tommy defense to the experts? Even though they later abandoned that defense? (p. 85)
36. Who originated the Tommy defense? Was it defense team rather than LM? (p. 85)
37. Did Fred fail to engage in pretrial motion practice outside of a few boiler-plate form motions? (p. 85)
38. What efforts did Fred/John/David make to insure the jury selection process was carried out in a fair way? (p.86)
39. Why did defense not move to have LM declared incompetent to stand trial? (p.133)
40. How did the defense insure they had retained competent mental health and neurological experts? (p. 135)
41. How did the defense insure they conducted a mitigation investigation that complied with the ABA guidelines and prevailing professional norms? (p. 136)



55 of 109
Case 4:12-cv-08001-GAF Document 111-1 Filed 06/25/14 Page 55 of 109
Case 4:12-cv-08001-GAF Document 79-1 Filed 01/09/14 Page Attachment A
Appellate Case: 14-2437 Page: 6 Date Filed: 06/18/2014 Entry ID: 4166245

42. Did the defense team understand the importance of a mitigation investigation? If so, how did they insure their mitigation investigation was complete? (p. 136)
43. Was Fred/John/David familiar with the ABA guidelines, basic principles of penalty phase investigation, and how to analyze mitigation information? (p. 139)
44. Did Fred insist that he was the only one to visit with LM's children? If so, why? (p. 140)
45. What efforts were made to investigate LM's social and mental health history? Was there something of importance that was not investigated before the trial? (p. 141)
46. What, if any, serious brain damage did LM have that Fred's team missed? (p. 143)
47. What, if anything, was missing (or was not presented to the jury) in the "life history" that has now been assembled by LM's appellate team? (What details about LM's life that should have been presented at trial that were not?) (p. 144)
48. Did LM have problems communicating with men? If so, what did Fred's team do, besides having Ryland attend meetings with LM to remedy the problem? (p. 149)
49. Was Fred's team aware that the USAO was not going to negotiate a plea, and was only going to seek a sentence of death?
50. Why did the defense file notice of intent to rely on a defense of mental illness on March 30, 2007? (p. 152)
51. What is Fred's response to the allegation that he made misrepresentations to the court (p. 152)
52. Why did Fred announce the "Tommy defense" as early as April of 2007 to the Court, and then not go forward with it? (p. 162)
53. What is Fred's response to the allegation that he maintained too big of a caseload? (p. 162)
54. Why did Fred believe pseudocyesis was a valid mental defense? (p. 163)
55. What is Fred's response to the allegation that he was overreaching with Dr. Gur's neuroimaging opinion? (p. 163)
56. Why didn't Fred's team try to exclude Dr. Case from the case? (p. 167)
57. What is Fred's response to the allegation that he was ineffective during voir dire? (p. 170)
58. What is Fred's response to the allegation that there was no cohesive theory of defense for trial? (p. 178)

59. What is Fred's response to the allegation that the defense of pseudocyesis was "unsustainable" and implausible, and that Dr. Ramachandran wasn't prepared for trial testimony? (p. 180)
60. What is Fred's response to the allegation that the defense should have focused more on the mitigating evidence in the guilt phase? (p. 182)
61. What is Fred's response to the allegation that he should have presented evidence that Judy, Carl and Kevin all abused LM? LM now says she was treated as a slave and tortured by Judy. Both Carl and Kevin physically abused her with forced sexual violence. (p. 183)
62. What is Fred's response to the allegation that he should have presented LM brain damage without trying to have Dr. Gur fit it into pseudocyesis theory? (p. 183)
63. What is Fred's response to the allegation that LM's medication had a negative impact on her demeanor at trial, and the jury should have been told of this? (p. 184)
64. What steps did Fred's team take to insure LM had an appropriate demeanor at trial? (p. 184)
65. What is Fred's response to the allegation that he failed to prepare witnesses for trial testimony? (p. 185)
66. What is Fred's response to the allegation that he should not have announced the Tommy defense so soon. (p. 186)
67. What is Fred's response to the allegation that he should not have reached out to McCandless during trial (p. 186)
68. What is Fred's response to the allegation that he failed to prepare McCandless for her testimony? (p. 187)
69. What is John's response to the allegation that he ineffectively questioned Dr. Laboy during trial? (p. 188)
70. What is John's response to the allegation that he should have objected to question posed to Ben Espey? (P. 189
71. What is John's response to the allegation that he ineffectively questioned Paul Gatewood during trial? (p. 190)
72. What is Fred's response to the allegation that he failed to confirm expert opinion that LM was unable to conform her behavior to the law as a result of her mental illness? (p. 190)
73. What is Fred's response to the allegation that he failed to learn of the abuse of LM by Judy and Carl and its impact on the gov't experts testimony? (p. 191)
74. What is Fred's response to the allegation that he should have objected to Dietz commenting about other notorious cases he was involved in? (p. 191)

75. What is Fred's response to the allegation that he should have objected to Dietz testimony regarding his profiling of women who kidnap? (p. 191)
76. What is Fred's response to the allegation that the defense failed to object to Dietz giving character testimony of LM? (p. 191)
77. What is Fred's response to the allegation that the defense should have investigated Dietz testimony in the Yates case? (p. 192)
78. What is Fred's response to the allegation that the defense failed to tell LM's story during the penalty phase? (p. 192)
79. What is Fred's response to the allegation that he should have objected to the 911 tape during trial and on appeal? (p. 194)
80. What is Fred's response to the allegation that LM was given inappropriate medicine (not Risperdal), was incompetent during trial, and was unable to participate in her trial and assist in her own defense? (p. 196)
81. When, and how, did the defense discover that Tommy Kleiner was at his probation officer's office during the crime? (p. 212)



58 of 109
Case 4:12-cv-08001-GAF Document 111-1 Filed 06/25/14 Page 58 of 109
Case 4:12-cv-08001-GAF Document 79-1 Filed 01/09/14 Page Attachment A
Appellate Case: 14-2437 Page: 9 Date Filed: 06/18/2014 Entry ID: 4166245

**Ketchmark, Roseann (USAMOW)**

---

| | |
|---|---|
| **From:** | Frederick Duchardt <fduchardt@yahoo.com> |
| **Sent:** | Wednesday, January 08, 2014 5:36 PM |
| **To:** | Ketchmark, Roseann (USAMOW); joconnor@wcllp.com |
| **Subject:** | Re: Montgomery affidavits |

Good afternoon Roseann

I trust you have seen and read my motion regarding the affidavits. For the reasons I set forth in the motion, John and I are waiting for Judge Fenner to rule on that before we decide what to do and how to do it.

Fred

On Wednesday, January 8, 2014 1:56 PM, "Ketchmark, Roseann (USAMOW)" <Roseann.Ketchmark@usdoj.gov> wrote:
Hello John and Fred. I received David's affidavit today, and am curious where you are with yours. Thanks, Roseann

---

**From:** David Owen [mailto:davidowen@lodopc.com]
**Sent:** Wednesday, January 08, 2014 12:33 PM
**To:** Ketchmark, Roseann (USAMOW)
**Subject:** Affidavit

Ms. Ketchmark,

Attached is my Affidavit as requested.

*Dave*

718 Huntington Place
Highlands Ranch, CO 80126-4730
phone: 303-993-7092
fax: 720-242-8907
http://www.lodopc.com/
davidowen@lodopc.com

**Licensed in Colorado & Missouri**

NACDL MEMBER

National Association of Criminal Defense Lawyers

The information contained in this e-mail and any attachments hereto are for the exclusive use of the addressee and may contain confidential, privileged and nondisclosable information. If the recipient of this e-mail is not the addressee, or a person responsible for delivering this e-mail to the addressee, such recipient is strictly prohibited from reading, printing, photocopying, distributing or otherwise using this e-mail or any attachments hereto in any way. If the recipient has received this e-mail in error, please send return e-mail immediately notifying us of your receipt of this e-mail and delete the e-mail from your inbox. Thank you.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY<br>Movant | ) | |
| | ) | |
| v. | ) | Case Number 12-8001-CV-W-GAF |
| | ) | Criminal Case # 05-6002-CR-SJ-GAF |
| | ) | |
| UNITED STATES<br>Respondent | ) | |

***REPLY TO RESPONSES BY MOVANT AND RESPONDENT TO REQUEST FOR RECONSIDERATION AND MODIFICATION OF ORDER DIRECTING THAT DEFENSE COUNSEL PROVIDE AFFIDAVITS***

Comes now Frederick A. Duchardt, Jr., on behalf of himself and John O'Connor, and does hereby reply to the responses by Movant and Respondent to the request that this Honorable Court reconsider and modify its December 10, 2013 Order directing that Mr. O'Connor and Mr. Duchardt "provide affidavits to the government in response to the claims raised by Movant in her 2255 motion." (Doc. 77).

1. Undersigned counsel began his motion by doing what the parties had not, citing to the overwhelming authority confirming that this Court possesses the discretion to order all forms of discovery in a habeas proceeding, including preparation of affidavits by the former counsel for the movant (Doc. 78, p. 4-6). Naturally, the government, in its response, takes no issues with these legal premises. On the other hand, current Counsel for Mrs. Montgomery dutifully

stands by her "assertion that there is no direct authority for compelling the preparation of such pre-hearing affidavits" (Doc. 80, p. 1, fn. 1). Counsel's trouble is that she cannot find anyone else to stand with her.

2. Undersigned counsel went on in his motion to explain that preparation of the sort of all-encompassing response to Mrs. Montgomery's petition requested by the government puts former counsel into the position of having to do the work of the government, a Herculean task, requiring overwhelming factual and legal research and writing (Doc. 78, p. 10-11). Undersigned counsel suggested that, instead, the government develop and pose particularized inquiry to undersigned counsel and Mr. O'Connor, preferably in an oral question-and-answer session, or at least by formulating specific written questions for specific written response (Doc. 78, p. 10).

3. The government responds that it has already propounded "a list of 81 questions" (Doc. 79, p. 2, fn. 1, Attachment A). Fortunately, the government seems to imply in this response what it did not say in its original communication to undersigned counsel and to Mr. O'Connor, that answering of the 81 questions would completely satisfy the government's needs for information. If, indeed, the government's current position is that it only wishes answers to the 81 questions it has propounded, that is a major step in the direction suggested by undersigned counsel. However, undersigned counsel finds it unlikely that that is truly the

government's position. Many of 81 questions could be answered with a simple yes or no, and the list does not include follow-up question to elicit explanations which the government surely would want after succinct yes or no answers. Thus, undersigned counsel would respectfully suggest that the government take another look at its list to make sure it is really to its satisfaction. Undersigned counsel would also reiterate that an oral question and answer session would be the best way of handling things since such a format would allow necessary formulation of follow-up questions based upon answers obtained.

4. For Mrs. Montgomery's part, her Counsel requests a week to interpose objections to the government's 81 questions prior to the formulation of answers by undersigned counsel and Mr. O'Connor (Doc. 80, p. 3). This is precisely the preparatory process which undersigned counsel suggested in his motion, and undersigned counsel continues with his request for that process (Doc. 78, p. 15).

5. The key request in the motion of undersigned counsel was for an order by the Court that Movant be required to provide explicit waivers of her attorney-client and work product privileges to permit undersigned counsel and Mr. O'Connor to answer whatever discovery is ordered (Doc. 78, p. 8). Undersigned counsel explained that, though the filing of the petition in this case certainly implied a waiver of those privileges, Mrs. Montgomery's current Counsel had, to that point in time, deliberately muddied the water, implying that she would exercise Mrs.

Montgomery's right to hold undersigned counsel and Mr. O'Connor fast to the privileges, even if that might cost Mrs. Montgomery full consideration of her petition (Doc. 78, p. 7-8). ***Bittaker v. Woodford***, 331 F.3d 715, 718-720 (9th Cir. 2003).

6. In her response to the motion by undersigned counsel, as if on cue, current Counsel for Mrs. Montgomery has brought the problem to a head by claiming that undersigned counsel and Mr. O'Connor are in a "somewhat unethical position" by carrying forward with answers to discovery (Doc. 80, p. 2). Of course, undersigned counsel and Mr. O'Connor would be breaching ethics only if Mrs. Montgomery, through her Counsel, is not waiving but instead standing by her privileges, even at the cost of defaulting her claims. Under these circumstances, whatever waiver might otherwise be implied by the law appears to have been countermanded by current Counsel for Mrs. Montgomery.

7. As noted by undersigned counsel in his original motion, certain Courts have chosen to end the sorts of cat-and-mouse games being played here by putting the movant to a stark choice: either make an explicit waiver of the privileges to permit former counsel to answer discovery regarding petition claims or suffer default of those claims (Doc. 78, p. 8). ***Bittaker v. Woodford***, supra; ***Jones v. United States***, 2013 WL 2950071, *4 (D.S.D. 2013). Undersigned counsel respectfully continues with his request that this Court follow the lead of these other

Courts and order that current Counsel for Mrs. Montgomery provide such explicit waivers prior to having undersigned counsel and Mr. O'Connor make any answer to discovery. Undersigned counsel also continues with his suggestion that the waiver correspond to a set of questions agreed upon by the parties (Doc. 78, p. 8). Now that the parties appear to be on the road toward formulating a set of questions, it would seem appropriate for this Court to wait for that process to conclude, and then direct that current Counsel for Mrs. Montgomery, should they wish to continue to pursue Movant's petition, provide explicit waivers regarding the answers to those questions.

8. In his motion, undersigned counsel also noted that this Court had not put a deadline for production of discovery, and suggested that he and Mr. O'Connor be given until June 16, 2014 to complete the tasks assigned to them (Doc. 78, p. 14). Undersigned counsel explained that the June 16 deadline was appropriate, not only because the discovery production task is a large one, but also because he and Mr. O'Connor have heavy trial schedules they are handling through the spring of 2014 (Doc. 78, p. 13-14). The government voices opposition to what it describes as a "protracted extension", but does not explain how such an extension would prejudice either of the parties in this case. The government also does not explain how undersigned counsel and Mr. O'Connor can complete the monumental tasks desired by the government any sooner without causing prejudice to the clients of



64 of 109
Case 4:12-cv-08001-GAF Document 111-1 Filed 06/25/14 Page 64 of 109
Case 4:12-cv-08001-GAF Document 81 Filed 01/10/14 Page 5 of 8
Appellate Case: 14-2437 Page: 5 Date Filed: 06/18/2014 Entry ID: 4166245

undersigned counsel and Mr. O'Connor whose trials are upcoming. Put simply, there is every good reason to grant, and no good reason to deny, the request that undersigned counsel and Mr. O'Connor be given until June 16, 2014 to complete whatever discovery work which might ultimately be assigned to them.

9. Undersigned counsel additionally explained in his motion that the sort of all-encompassing affidavit originally requested by the government called for the sort of expert work which would justify requiring the government to pay for the efforts pursuant to F.R.Civ.P. 26(b)(4)(E)(i) (Doc. 78, p. 12). Only current Counsel for Mrs. Montgomery responds to this point, standing again upon no authority, but only her assertions; this time the assertions are that former counsel should be considered only to be fact witnesses and not expert witnesses (Doc. 80, p. 2). The trouble with this assertion is that it does not account the mixed law and fact nature of questions about ineffectiveness of counsel. ***New v. United States***, 562 F.3d 949, 952 (8th Cir. 2011). What is more, the assertion flies in the face of the concession, made by current Counsel for Mrs. Montgomery, that preparation of an all-encompassing affidavit, as requested by the government, necessarily calls upon both the factual recollection and legal expertise of former counsel (Doc. 80, p. 2). Certainly, the parties can, should they so choose, fashion their discovery requests to seek only facts and not expert opinions requiring additional independent research. It may well be that, because of the motion by undersigned

counsel, the discovery process is now moving toward, and may eventually become, one which seeks only facts. If that becomes the case, that will be a good thing.

WHEREFORE, in light of the foregoing, and in light of the premises set forth in his original motion on the subject (Doc. 78), Frederick A. Duchardt, Jr., on behalf of himself and John O'Connor, prays that this Honorable Court set aside its Order of December 10, 2013 regarding affidavit preparation (Doc. 77). It is further prayed that this Court direct that Mrs. Montgomery and her Counsel make explicit, written election regarding whether and to what extent Mrs. Montgomery will waive her attorney-client and work product privileges with respect to the accusations of ineffectiveness which she raises in her petition. It is also prayed that, to the extent that a waiver is filed by and on behalf of Mrs. Montgomery, the Court direct that discovery from Mr. Duchardt and Mr. O'Connor be obtained by way of deposition to be conducted by Counsel for the government, subject to objection by Counsel for Mrs. Montgomery. In the alternative, it is prayed that, to the extent this Court believes that affidavits should be prepared as the means of discovery, that such affidavits be limited to answering of written questions propounded by Counsel for the government, with those written questions culled in advance by proper objections interposed by Counsel for Mrs. Montgomery. It is additionally prayed that Mr. Duchardt and Mr. O'Connor be given until June 16, 2014 to complete their responses to the discovery sought by the government. It is

finally prayed that this Court order that the United States Attorney's Office for the Western District of Missouri pay for the time expended by Mr. Duchardt and Mr. O'Connor in responding to the government's discovery request.

Respectfully submitted

//s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.
Mo.Bar Enrollment Number 28868
P.O. Box 216
Trimble MO 64492
Phone: 816-213-0782
Fax: 816-635-5155
e-mail: fduchardt@yahoo.com

## ***CERTIFICATE OF SERVICE***

I hereby certify that a copy of the foregoing was provided to the following

Roseann Ketchmark
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, MO 64106
Roseann.ketchmark@usdoj.gov

Christine Blegen
230 SW Main St., Suite 217
Lees Summit MO 64063
Christine@blegenlawfirm.com

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Movant*, | ) | |
| | ) | |
| v. | ) | Case No. 12-08001-CV-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

MOVANT'S SUPPLEMENTAL RESPONSE TO MR. DUCHARDT'S AND MR. O'CONNOR'S REQUEST FOR RECONSIDERATION AND MODIFICATION OF ORDER DIRECTING THAT DEFENSE COUNSEL PROVIDE AFFIDAVITS; THE GOVERNMENT'S REPLY THERETO; AND IN FURTHER SUPPORT OF MOVANT'S THUSFAR UNOPPOSED MOTION FOR PROTECTIVE ORDER

COMES NOW movant Lisa M. Montgomery, by and through undersigned counsel, and submits the following supplemental response to Mr. Duchardt's Request for Reconsideration (Doc. #78) filed by Mr. Duchardt[1] on December 27, 2013, the Government's Response thereto, and Mr. Duchardt's further Reply.

In an Order entered on December 10, 2013, this Court ordered Mr. Duchardt, Mr. O'Connor and Mr. Owen "to provide affidavits to the Government in response to the claims raised by Movant in her §2255 motion." Mr. Duchardt has raised multiple concerns about preparing such an affidavit. Movant objected to, and continues to object to, this novel form of discovery from a non-party fact witness which appears to occur only in the Western District of Missouri. In response, the Government filed a motion opposing Mr. Duchardt's request for relief

[1] Mr. Duchardt represents that he is filing on behalf of himself and Mr. John O'Connor. Movant has no reason to dispute this fact. Movant would note that Mr. Duchardt has added himself as a party to this case. Movant disputes Mr. Duchardt's claimed status as a party. He plainly is not. He is a non-party fact witness. We address his motion in that context. His motion should be viewed as a non-party motion to quash.

and attached eighty questions which it would like to have answered in the form of an affidavit. Many of the questions are directed to matters which appear appropriate for discovery, but not for an affidavit. Many call for speculation and hearsay.[2] Further, the responses called for may result in answers which are not subject to the limited attorney/client waiver engendered by Movant's 2255 motion.

Following Mr. Duchardt's Request for Reconsideration,, Movant's counsel reached out to Assistant United States Attorney Roseann Ketchmark in an effort to resolve the pending dispute over the requsted Affidavits. Movant's counsel suggested that the Government turn the list of questions into interrogatories which Movant's counsel would review for objections. Then, the interrogatories could be presented to Mr. Duchardt and Mr. O'Connor for written responses. Ms. Ketchmark explained that the list of questions did not define the scope of her inquiry[3] and declined Movant's suggestion.

All of this back and forth lends support for Mr. Duchardt's request for relief and Movant's request for a protective order. It also makes plain the wisdom of the ABA ethical opinion that any determination of the scope of the waiver is to be made in a judicial proceeding where current counsel may interpose objection.

The inherent problem with the Government's request for affidavits is that it places a heavy burden on Mr. Duchardt and Mr. O'Connor, particularly as the proposed list of questions is apparently not exhaustive, and it turns Mr. Duchardt and Mr. O'Connor into agents of the

---

[2] To be fair to the Government, these questions are not interrogatories and were represented to be a working memo of counsel's thoughts provided to Mr. Duchardt and Mr. O'Connor to provide some scope for the requested affidavits.

[3] As such, it would seem to be a waste of movant's counsels' time as well as the Court's time for movant's counsel to address each of the questions, many of which are not in proper form; however, counsel for Movant remain willing to do so if that is the Court's preferred method for resolving the pending dispute..

Government, which is clearly unethical.[4] Trial counsel have a duty of loyalty to their former client and are obligated to zealously protect the attorney/client privilege. Movant has not made a wholesale waiver of the attorney/client privilege. Nor will she make such a waiver as no such wholesale waiver is required in a 2255 proceeding.

Movant understands that the Government has a right to seek discovery. Movant respects that the Government is trying to do so in what they believe is an efficient means and one that has been utilized in the past in this District. Yet, the rules of civil discovery apply to this case as discussed by Movant in her previous response.. The Government is permitted to file requests for production, serve interrogatories, or request depositions. The whole point of the discovery procedures set forth for 2255 proceedings is to afford the opposing party an opportunity to review any such discovery requests and make timely objections before any privileged information is disclosed . Here, the vague instruction to draft an affidavit that includes responses to approximately eighty specified questions as well as apparently other unspecified information is unworkable. Movant may not have any objections to the content of the affidavit once she sees it,but Movant cannot interpose hypothetical objections.

Movant stands by her position that a deposition would be a much more effective method of obtaining the information sought by the Government and it is an approved method for doing so under the civil rules of discovery applicable to 2255 motions. In the alternative, Movant would suggest that the Government be required to turn its list of questions into interrogatories to be reviewed by Movant's counsel and then answered by former counsel. If the Court decides to stand by its original Order and direct Mr. Duchardt and Mr. O'Connor to provide affidavits, then

[4] It is unethical to pay fact witnesses for their time. Here there is a request for former trial counsel to be paid to provide testimony in an affidavit to oppose Movant's motion. Such payment would be unethical and could create an appearance of bias.

counsel would note that the Government has not objected to Movant's request that the Court enter a Protective Order requiring that the affidavits of former counsel be first provided to current counsel for Mrs. Montgomery for review prior to their disclosure to the Government and the CourtThis will afford Mrs. Montgomery's current counsel an opportunity to make a determination as to whether certain claims should be withdrawn in order to protect the attorney-client privilege or, in the alternative, to object if the affidavit violates the privilege because it addresses matters not raised in Mrs. Montgomery's Amended Motion.

Accordingly, Mrs. Montgomery renews her request that the discovery of former counsel's position on the claims raised in her Amended Motion be conducted via deposition or, in the alternative, through written interrogatories to be answered by former counsel. In the alternative, should the Court deny Mr. Duchardt's Request for Reconsideration, undersigned counsel asks that the Court enter a Protective Order requiring that the affidavits of former counsel be first provided to current counsel for Mrs. Montgomery for review prior to their disclosure to the Government.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No.
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2014, the above-captioned document was served electronically on Roseann Ketchmark, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Christine M. Blegen*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-08001-CV-W-GAF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER**

Now before the Court is Frederick A. Duchardt ("Mr. Duchardt") and John O'Connor's ("Mr. O'Connor") Motion for Reconsideration. (Doc. # 78). Movant Lisa M. Montgomery ("Movant") does not oppose the Motion, while Respondent United States of America (the "Government") opposes. (Docs. ## 79, 80).

Movant filed a Motion to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion"). (Doc. # 71). In her § 2255 Motion, Movant makes allegations of ineffective assistance of counsel against her former attorneys, Mr. Duchardt, Mr. O'Connor, and David Owen ("Mr. Owen"). (*Id.*). The Government filed a Motion to Compel Mr. Duchardt, Mr. O'Connor, and Mr. Owen to provide affidavits to the Government in response to Movant's § 2255 Motion. (Doc. # 75). On December 10, 2013, the Court granted the Government's request and compelled Mr. Duchardt, Mr. O'Connor, and Mr. Owen to provide affidavits. (Doc. # 77).

Mr. Duchardt and Mr. O'Connor seek reconsideration of the Court's Order compelling production of affidavits. (Doc. # 78). Rather than submitting affidavits, Mr. Duchardt and Mr. O'Connor contend that a different means of discovery is more suitable in light of the time and effort needed to respond to Movant's § 2255 Motion and Movant's attorney-client privilege.

Case 4:12-cv-08001-GAF Document 84 Filed 01/17/14 Page 1 of 3

(*Id*.). Specifically, Mr. Duchardt and Mr. O'Connor request an explicit, written waiver of Movant's attorney-client privilege to discern "whether and to what extent [Movant] will waive her attorney-client . . . privilege[] with respect to the accusations of ineffectiveness which she raises in her [§ 2255 Motion]." (*Id*. at 14).

It is well recognized among federal courts that when habeas petitioners allege claims of ineffective assistance of counsel, those petitioners impliedly waive their attorney-client privilege with respect to communications with their attorneys to the extent necessary to address those allegations. *See United States v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009); *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005); *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974); *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967); *United States v. Stone*, 824 F. Supp. 2d 176, 186-87 (D. Me. 2011); *Walking Eagle v. United States*, No. CIV. 11-5016, 2011 WL 2881596, at *5 (D.S.D. July 15, 2011); *Dible v. United States*, Nos. C09-4065-LRR, CR08-4060-LRR, 2010 WL 2652202, at *2 (N.D. Iowa June 28, 2010); *Nelson v. United States*, No. 4:04-CV-8005-FJG, 2010 WL 3398791, at *1 (W.D. Mo. Aug. 24, 2010); *Purkey v. United States*, Civil No. 06-8001-CV-W-FJG, 2009 WL 3160774, at *3 (W.D. Mo. Sept. 29, 2009); *Hayes v. United States*, No. 4:09CV531 CDP, 2009 WL 2071244, at *1 (E.D. Mo. July 13, 2009); *United States v. Lossia*, No. 04-80422, 2008 WL 192274, at *2 (E.D. Mich. Jan. 23, 2008); *Stobaugh v. United States*, Civil No. 06-3317-CV-S-RED, 2007 WL 628420, at *1 n.1 (W.D. Mo. Feb. 27, 2007).

Further, there is ample support among federal courts for compelling former attorneys to produce affidavits in response to a habeas petitioner's ineffective assistance of counsel allegations. *See Pinson*, 584 F.3d at 979 (holding it was not an abuse of discretion for the district

court to order a movant's former attorney "to provide an affidavit addressing the issues raised in [the movant's] § 2255 Motion"); *Jones v. United States*, No. CIV. 13-5008, 2013 WL 2950071, at *4 (D.S.D. June 14, 2013); *Walking Eagle*, 2011 WL 2881596, at *5; *Dible*, 2010 WL 2652202, at *2; *Nelson*, 2010 WL 3398791, at *2; *Clock v. United States*, Civil No. 09-cv-379-JD, 2010 WL 890445, at *2 (D.N.H. Mar. 8, 2010); *Purkey*, 2009 WL 3160774, at *3.

The Court recognizes the time and effort Mr. Duchardt and Mr. O'Connor will expend to produce such affidavits with no means of compensation. While such a result may be unfortunate, it is deemed part of their responsibility as former counsel under such circumstances. The Court greatly appreciates Mr. Duchardt and Mr. O'Connor's willingness to make themselves available for CJA appointments in these most difficult cases. Accordingly, after due consideration, it is

**ORDERED** Mr. Duchardt and Mr. O'Connor's Motion for Reconsideration is DENIED.

**IT IS FURTHER ORDERED** that Movant impliedly waives her attorney-client privilege to the extent necessary to address all allegations of Movant's claims of ineffective assistance of counsel in her § 2255 Motion.

**IT IS FURTHER ORDERED** that Mr. Duchardt and Mr. O'Connor have until June 1, 2014, to submit their affidavits addressing Movant's allegations of ineffective assistance of counsel raised in her § 2255 Motion.

**IT IS LASTLY ORDERED** the Government has until June 30, 2014, to submit its response to Movant's § 2255 Motion.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: January 17, 2014

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Case Number 12-8001-CV-W-GAF |
| | ) | Criminal Case # 05-6002-CR-SJ-GAF |
| | ) | |
| UNITED STATES | ) | |
| Respondent | ) | |

***REQUEST FOR DETAILED CLARIFICATION OF ORDER REGARDING IMPLIED WAIVER OF PRIVILEGES (DOC. 84, P. 3)***

Comes now Frederick A. Duchardt, Jr. and does hereby request from this Court certain detailed clarifications regarding its determination about the implied waiver of privileges which have occurred in this case. The grounds for this request will be set forth in the subsequent numbered subparagraphs.

1. This Court has issued the broad mandate that undersigned counsel and John O'Connor, by June 30, 2014, prepare and file "affidavits addressing Movant's allegations of ineffective assistance of counsel raised in her Section 2255 Motion" (Doc. 84, 91).

2. In an effort to facilitate the assigned task, this Court has found and ordered that "Movant impliedly waives her attorney-client privilege to the extent necessary to address all allegations of Movant's claims of ineffective assistance of counsel in her Section 2255 Motion" (Doc. 84, p. 3).

3. Undersigned counsel and Mr. O'Connor have embarked upon the assigned task. At this point in time, there are certain Petition allegations which have been identified by undersigned counsel and Mr. O'Connor for each of which proper answer necessitates consultation with other members of the defense team who worked with undersigned counsel and Mr. O'Connor to provide representation for Mrs. Montgomery. Those with whom consultation is necessary are current Federal Public Defender Office employees Stephanie Elliott, and Troy Schnack, former Federal Public Defender Office employee Ron Ninemire, and retained expert Robert Fucetola, Ph.D. Answer of certain of the allegations also necessitates obtaining of records in the possession of the Federal Public Defender Office.

4. One of the issues identified concerns complaints expressed by Dani Waller, who was employed to act as a mitigation specialist in the case. According to allegations in the petition, Ms. Waller currently claims that "she was allowed to do only minimal work on the case" (Doc. 71, p. 64), she found other members of the defense team "obstructive to the work [she] was allowed to conduct" (Doc. 71, p. 69, fn. 16), she detected "witness fatigue" in certain defense witnesses (Doc. 71, p. 140), she felt she was "iced out of the case" (Doc. 71, p. 92), and she generally found her experience in working on the case to be "frustrating" (Doc. 71, p. 71, 140). Undersigned counsel and Mr. O'Connor know for certain that, though they

perceived that Ms. Waller put forth her best efforts, she did not develop any information worthy of use at time of trial. They also know that they personally placed no restrictions upon Ms. Waller, and heard from her no expressions of anything other than admiration for the way in which the case for the defense was being orchestrated. That having been said, undersigned counsel and Mr. O'Connor realize that they were directing the defense, and therefore would be responsible for knowing if others had placed any roadblocks in the way of Ms. Waller, or if Ms. Waller expressed to other team members any disgruntlement over the conduct of the defense. It is the recollection of undersigned counsel and Mr. O'Connor, and it is admitted by Ms. Waller (Doc. 71, p. 69, fn. 16), that Ms. Waller worked very closely with Ron Ninemire. Thus, undersigned counsel and Mr. O'Connor wish to inquire of Mr. Ninemire if anything untoward had happened with respect to Ms. Waller's work or attitude. Also, because contract and payment for Ms. Waller's services were handled by the Federal Public Defender's Office, that documentation would provide indication of whether Ms. Waller was unduly restricted by way of some sort of unfair limitation of funding for her work. Therefore, in order to answer these claims, it would be necessary for undersigned counsel and Mr. O'Connor to discuss the matter with Mr. Ninemire and to have the records regarding contract and payment for Ms. Waller's services.

5. Another of the issues identified concerns complaints by Dr. George

Woods, M.D. regarding his perception that necessary neuropsychological testing of Mrs. Montgomery was not conducted, and that Dr. Robert Fucetola, Ph.D., the expert actually employed to conduct neuropsychological testing, "recognized the limitations of his battery" (Doc. 71, p. 132). Undersigned counsel never detected in his consultations with Dr. Fucetola or his review of Dr. Fucetola's reports any belief that additional neuropsychological testing was in order, particularly in light of the fact that extensive brain imaging followed up the neuropsychological testing. However, in light of Dr. Woods' professed expertise and opinions, it would be prudent for undersigned counsel to directly inquire of Dr. Fucetola if there were any significant "limitations" in the overall testing of Ms. Montgomery which was actually conducted. It is therefore the intention of undersigned counsel to put these questions to Dr. Fucetola.

6. Yet another of the issues identified concerns alleged failure to provide "proper materials" to Dr. William Logan, M.D. making it such that Dr. Logan "could not properly diagnose Mrs. Montgomery" (Doc. 71, p. 61). It is further reported that Dr. Logan himself complains about wanting "much more information" than what he was provided (Doc. 71, p. 87), specifically complaining about not receiving information about "Mrs. Montgomery's computer use" and particularly "deletions in her internet history" for which he felt "unprepared" upon cross-examination (Doc. 71, p. 88). Letters which undersigned counsel authored to

Dr. Logan refer to Dr. Logan being provided all of the raw data pertaining to the case. As well, undersigned counsel recalls that summaries of computer usage were not completed by Public Defender Office computer expert Troy Schnack until near to the time of trial, but that once those summaries of the computer usage were completed, they were provided to experts, including Dr. Logan. The recollection of undersigned counsel seems to be supported by the fact that Dr. Ramachandran showed his familiarity with the raw data, including the raw computer data, in answering the same sorts of questions for which Dr. Logan felt he was "unprepared" (Doc. 71, p. 88). Additional support for this recollection may be available through Stephanie Elliott and Troy Schnack. Mr. Schnack actually prepared the usage summaries and Mrs. Elliott assisted with providing copies of materials to team members, including experts. It would be the intention of undersigned counsel to inquire of Mr. Schnack and Mrs. Elliott regarding these matters.

7. Work on affidavits is ongoing, and it is anticipated that additional issues will be identified requiring, in the future, consultation with members of the defense team and resort to other records.

8. In light of this Court's determination that Mrs. Montgomery's privileges have been waived "to the extent necessary to address ALL (emphasis added) allegations of Movant's claims of ineffective assistance of counsel in her Section

2255 Motion", undersigned counsel sought cooperation from current Counsel for Mrs. Montgomery with respect to the requests for team contact and records revelation. Yesterday, current Counsel for Mrs. Montgomery responded to the requests as follows.

> Over our objection you and John have been ordered to produce an affidavit which is to be based on your own personal recollections of your involvement in the case. Nothing in the Court's order authorizes you to interview witnesses or conduct an independent investigation. Our position is that if you were to engage in such interviews it would constitute tampering with the witnesses' memory. To be clear, this applies to all witnesses, including the expert witnesses. We do not waive Lisa's privilege with respect to Dr. Fucetola or any other expert witness.

9. Undersigned counsel has also communicated to Federal Public Defender Laine Cardarella that, in light of this Court's broad determination upon the issue of waiver, it would be his intention to interview her current and former staff and have from her certain records maintained by her office. Mrs. Cardarella has communicated to undersigned counsel that she perceives the Court's order to not apply to her and her staff, and that she therefore will not comply with any requests of the sort posed by undersigned counsel without a particularized Court order directed to her and her staff.

10. Undersigned counsel is admittedly at a loss to reconcile what seems to be the clear, broad wording of the Court's order with the narrow interpretations of that order ventured by current Counsel for Mrs. Montgomery and the Federal Public Defender. Nevertheless, impeded the objections which have been raised,

undersigned counsel requests that this Court issue a followup order clarifying matters. First, undersigned counsel requests that this Court particularly clarify that its broad finding of waiver includes the matters mentioned in subparagraphs 4, 5, and 6 above. Second, undersigned counsel requests that this Court order that current Counsel for Mrs. Montgomery make available Dr. Robert Fucetola, Ph.D. for the sort of interview outlined in subparagraph 5, and that current Counsel for Mrs. Montgomery and Federal Public Defender Laine Cardarella make available for interview current and former Public Defender staff and produce certain Public Defender records, all as delineated under subparagraphs 4 and 6 of this motion. Third, undersigned counsel requests that this Court broadly confirm that the Court's order is just as broad as the plain English meaning of its wording would imply, and not as narrow as interpreted by current Counsel for Mrs. Montgomery. The latter clarification is requested because of the high likelihood that additional requests of the sort made here will come as preparation of the affidavits continues.

WHEREFORE, it is prayed that this Honorable Court make certain detailed clarifications regarding its determination about the implied waiver of privileges which have occurred in this case.

Respectfully submitted

//s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.
Mo.Bar Enrollment Number 28868
P.O. Box 216
Trimble MO 64492
Phone: 816-213-0782
Fax: 816-635-5155
e-mail: fduchardt@yahoo.com

## ***CERTIFICATE OF SERVICE***

I hereby certify that a copy of the foregoing was provided to the following

Roseann Ketchmark
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 E. 9th St., Fifth Floor
Kansas City, MO 64106
Roseann.ketchmark@usdoj.gov

Christine Blegen
230 SW Main St., Suite 217
Lees Summit MO 64063
Christine@blegenlawfirm.com

/s/Frederick A. Duchardt, Jr.
FREDERICK A. DUCHARDT, JR.

## 12-cv-08001-GAF Montgomery v. United States of America

Lisa Mitchell to: christine, fduchardt, kelley_henry, lisanouri_atty, roseann.ketchmark, teresa.moore2 06/13/2014 08:33 AM

From: Lisa Mitchell/MOWD/08/USCOURTS@USCOURTS

To: christine@blegenlawfirm.com, fduchardt@yahoo.com, kelley_henry@fd.org, lisanouri_atty@hotmail.com, roseann.ketchmark@usdoj.gov, teresa.moore2@usdoj.gov,

Counsel:

In regard to Mr. Duchardt's pending Request for Detailed Clarification of Order Regarding Implied Waiver of Privileges (Doc. #96), please be advised that if you wish to file a response, please do so by 8:00 a.m., on Monday, June 16, 2014.

Lisa Mitchell
Judicial Assistant to Judge Gary A. Fenner
8452 Charles Evans Whittaker United States Courthouse
400 East Ninth Street
Kansas City, MO 64106
Telephone: 816.512.5660
Fax: 816.512.5673

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Defendant/Movant,* | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-8001-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff/Respondent.* | ) | |

MOTION TO EXTEND FILING DEADLINE UNTIL 5:00 P.M. ON TUESDAY, JUNE 17, 2014 FOR RESPONSE TO WITNESSES' MOTION FOR CLARIFICATION OF COURT'S ORDER OF JANUARY 17, 2014

Lisa M. Montgomery, by and through counsel, requests and an extension of time until 5:00 p.m. on Tuesday, June 17, 2014 to respond to the motion filed by the witnesses for clarification of the Court's January 17, 2014 Order that Mrs. Montgomery's "attorney/client privilege" has been impliedly waived, "**to the extent necessary** to address all allegations of Movant's claims of ineffective assistance of counsel in her §2255 Motion." Order, Docket Entry No. 84, p. 3 (emphasis added).

1. Nearly six months after this Court ordered witnesses Duchardt, O'Connor, and Owen to prepare responsive affidavits to Mrs. Montgomery's motion, Witness Frederick Duchardt, on behalf of himself and Witness O'Connor, seeks clarification of this Court's Order regarding the extent of the implied waiver of attorney/client privilege previously found by this Court.

2. The witnesses' motion was filed on June 11, 2014. Under the local rules of this Court, Mrs. Montgomery would normally have until June 25, 2014 to respond. On June 13,

counsel received an email from this Court's judicial assistant advising that any response to Mr. Duchardt's request be filed no later than 8:00 a.m. on Monday, June 16, 2014.

3. Counsel have begun researching the issues presented by the motion and wish to file a thoughtful and thorough response. While the witnesses' motion may seem simple on its face, research into the issue reveals that the matter is complex and involves the interplay of former counsels' ethical duty of loyalty to their client; obligation to limit disclosures; right to defend against allegations of ineffective assistance of counsel; and the apparent novel request of former counsel to broaden a limited waiver in order to conduct an independent investigation in a matter to which they are not parties.

4. Given the complexity of the issues, counsel seek leave of court to have until Tuesday, June 17, at 5:00 p.m. in which to respond to the witnesses' motion. The request for additional time is modest and in keeping with this Court's apparent desire to expedite consideration of the motion. The additional time will benefit the Court by providing the Court with a concise analysis of the serious and weighty legal issues at stake and will prejudice no party to this litigation.

WHEREFORE, the Court should allow Mrs. Montgomery to have until 5:00 p.m. on June 17, 2014 in which to respond to the witnesses' motion.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217

Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2014, the above-captioned document was served electronically on Roseann Ketchmark, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Kelley J. Henry*


Case 4:12-cv-08001-GAF Document 98 Filed 06/13/14 Page 3 of 3

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Movant,* | ) | |
| | ) | |
| v. | ) | Case No. 12-8001-CV-W-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent.* | ) | |

MOVANT'S SUGGESTIONS IN OPPOSITION TO FREDERICK A. DUCHARDT, JR.'S REQUEST FOR DETAILED CLARIFICATION OF ORDER REGARDING IMPLIED WAIVER OF PRIVILEGES AND
MOTION FOR PROTECTIVE ORDER

COMES NOW Movant, Lisa M. Montgomery, by and through undersigned counsel, and submits the following Suggestions in Opposition to Frederick A. Duchardt, Jr.'s "Request for Detailed Clarification of Order Regarding Implied Waiver of Privileges" (Doc. #96).[1] As an initial matter, Movant filed a Motion for Extension of Time (Doc. No. 98) asking to have until 5:00 p.m. on Tuesday, June 17, 2014 to file Suggestions in Opposition to Mr. Duchardt's Request. Pursuant to the Local Rules, Mrs. Montgomery would ordinarily have through June 25, 2014 to respond. Based upon the Court's e-mail on Friday, June 13, 2014, directing that any response be filed by 8:00 a.m. on Monday, June 16, 2014, and the absence of a ruling on the Motion for Extension of Time, Movant is filing these Suggestions in Opposition in compliance with the Court's e-mailed directive; however, Movant anticipates having an affidavit that further supports her position by Tuesday, June 17, 2014, and would

[1] It should be noted that Mr. Duchardt purports to be filing motions on behalf of himself and Mr. John O'Connor. It is unclear if Mr. Duchardt is acting as Mr. O'Connor's attorney. Such an attorney/client relationship would be wholly improper as discussed more fully below.

renew her request for an extension of time and leave to file a brief supplement to these Suggestions in Opposition by 5:00 p.m. on Tuesday, June 17, 2014.

## I. Background

1. On November 25, 2013, the Government sought an Order from this Court compelling Mr. Duchardt and Mr. O'Connor to provide affidavits to assist the Government in responding to Mrs. Montgomery's pending 2255 Petition after both Mr. Duchardt and Mr. O'Connor initially declined to provide such affidavits (*See* Doc. No. 75). The Court granted the Government's motion, over Mrs. Montgomery's objection (Doc. No. 76), on December 10, 2013 (Doc. No. 77).

2. On December 27, 2013, Mr. Duchardt filed a Request for Reconsideration of the Court's December 10, 2013 Order (Doc. No. 78). After renewing his request to be deposed in lieu of being required to prepare an affidavit, Mr. Duchardt stated:

> In the alternative, it is prayed that, to the extent this Court believes that affidavits should be prepared as the means of discovery, ***that such affidavits be limited to answering of written questions propounded by Counsel for the government***, with those written questions culled in advance by proper objections interposed by Counsel for Mrs. Montgomery.

(Emphasis added).

3. In response to Mr. Duchardt's Request for Reconsideration, the Government acknowledged that it had emailed Mr. Duchardt and Mr. O'Connor a list of 81 questions (Doc. No. 79, Fn. 1).

4. Mr. Duchardt filed a Reply brief on January 10, 2014 (Doc. No. 81). In that brief, Mr. Duchardt complained that "preparation of the sort of all-encompassing response to Mrs. Montgomery's petition requested by the government puts former counsel into the position of having to do the work of the government, a Herculean task, requiring

overwhelming factual and legal research and writing" (citing Doc. No. 78, his own prior filing). Mr. Duchardt went on to state that if "the government's current position is that it only wishes answers to the 81 questions it has propounded, that is a major step in the direction" he had suggested as many "of the questions could be answered with a simple yes or no . . . ." (Doc. No. 81, p. 2-3). In fact, Mr. Duchardt asked the Court to order that the "affidavits be limited to answering of written questions propounded by Counsel for the government" (Doc. No. 81, p. 7). Finally, Mr. Duchardt requested a finding that Mrs. Montgomery had explicitly waived her attorney-client and work product privileges (Doc. No. 81, p. 3, 7).

5. The Court issued an Order on January 17, 2014 (Doc. No. 84, p. 3) denying Mr. Duchardt's Motion for Reconsideration and finding that Mrs. Montgomery had "impliedly waive[d] her attorney-client privilege ***to the extent necessary*** to address all allegations of Movant's claims of ineffective assistance of counsel in her §2255 Motion." (Emphasis added).

## II. Mr. Duchardt's Current Request

After initially seeking to limit the scope of his affidavit, Mr. Duchardt has returned to the Court seeking "certain detailed clarifications regarding [the Court's] determination about the implied waiver of privileges which have occurred in this case." (Doc. No. 96). In sum, Mr. Duchardt, now in the role of a witness in the 2255 proceedings, is seeking a Court ruling that would allow him to interview other witnesses in the case in an effort to attack Mrs. Montgomery's 2255 Petition. Notably, Mr. Duchardt does not claim a failed memory on his part, or on the part of Mr. O'Connor. Rather, as discussed more fully below, Mr. Duchardt seeks to interview witnesses in an effort to affirmatively attack Mrs. Montgomery's 2255 claims.

Mr. Duchardt's motion is itself in direct opposition to the ethical and legal obligations of a client's former counsel, even where claims of ineffective assistance of counsel have been raised in a habeas petition. In a 2255 proceeding, when a former client raises claims of ineffective assistance of counsel, the client "ordinarily waives the attorney-client privilege with regard to some otherwise privileged information;" however, "that information is still protected by Model Rule 1.6(a) unless the defendant gives informed consent to its disclosure or an exception to the confidentiality rule applies." *See* American Bar Association Formal Opinion 10-456 (July 14, 2010). Further, "[u]nder Rule 1.6(b)(5), a lawyer may disclose information protected by the rule ***only if the lawyer 'reasonably believes [it is] necessary' to do so in the lawyer's self-defense.*** The lawyer may have a reasonable need to disclose relevant client information in a judicial proceeding to prevent harm to the lawyer that may result from a finding of ineffective assistance of counsel." *Id.* (Emphasis added).

American Bar Association Formal Opinion 10-456 states "if a lawyer is called *as a witness* in a deposition, hearing, or other formal judicial proceeding, the lawyer may disclose information protected by Rule 1.6(a) only if the court requires the lawyer to do so *after adjudicating any claims of privilege or other objections raised by the client or former client*." (P. 2, emphasis added). In addition, the "criminal defendant may be able to make non-frivolous objection to the trial lawyer's disclosures even though the ineffective assistance of counsel claim ordinarily waives the attorney-client privilege and work product protection with regard to otherwise privileged communications and protected work product relevant to the claim." *Id.* This is the reason that counsel for Mrs. Montgomery supported Mr. Duchardt's request that his testimony be taken in a deposition with counsel for both parties present.

The ABA has recognized that "[w]hen a former client calls the lawyer's representation into question by making an ineffective assistance of counsel claim, the first two clauses of Rule 1.6(b)(5) [the "self-defense exception"] do not apply. The lawyer may not respond in order 'to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client,' because *the legal controversy is not between the client and the lawyer.*" *Id.* p. 4 (emphasis added). Rather, where ineffective assistance of counsel claims are raised, an attorney "may respond to the allegations only insofar as the lawyer reasonably believes it is *necessary* to do so." *Id.* p. 4 (emphasis in original). "It is not enough that the lawyer genuinely believes the particular disclosure is necessary; the lawyer's belief must be objectively reasonable." *Id.*

In fact, the "Comment explaining Rule 1.6(b)(5) cautions lawyers to take steps to limit 'access to the information to the tribunal or other persons having a need to know it' and to seek 'appropriate protective orders or other arrangements . . . to the fullest extent practicable.'" *Id.* "Judicial decisions addressing the necessity for disclosure under the self-defense exception to the attorney-client privilege recognize that when there is a legitimate need for the lawyer to present a defense, the lawyer may not disclose all the information relating to the representation, but only particular information that reasonably must be disclosed to avoid adverse legal consequences." *Id.* In other words, former counsel are obligated to seek to limit any perceived waiver of the attorney-client privilege, not to actively seek to broaden the waiver as Mr. Duchardt has done in his current request. Mr. Duchardt has an on-going duty of loyalty to Mrs. Montgomery and should disclose only information that is necessary to respond to the allegations of ineffective assistance of counsel against him in the Amended Petition.[2]

---

[2] Mr. Duchardt's affidavit should not discuss claims that do not pertain to his representation of Mrs. Montgomery nor should he be filing a joint response on behalf of himself and Mr. O'Connor as each was directed to provide an affidavit.

Based upon Mr. Duchardt's current request to the Court, counsel for Mrs. Montgomery have become concerned about the scope of the affidavit Mr. Duchardt intends to provide to the Government in these proceedings. In keeping with the ABA Guidelines, this Court has found that Mrs. Montgomery waived her attorney-client privilege "to the extent necessary to address all allegations of Movant's claims of ineffective assistance of counsel." (Doc. No. 84, p. 3). Counsel for Mrs. Montgomery interpret that ruling as directing Mr. Duchardt and Mr. O'Connor to separately and individually draft affidavits responding to the allegations of ineffective assistance directed at each of them. The Order does not suggest that either Mr. Duchardt or Mr. O'Connor should take on the "preparation of [an] all-encompassing response to Mrs. Montgomery's petition . . . that [would] put former counsel into the position of having to do the work of the government, a Herculean task, requiring overwhelming factual and legal research and writing" (quoting Doc. No. 78 submitted by Mr. Duchardt). Yet, Mr. Duchardt has returned to the Court seeking a ruling that Mrs. Montgomery has waived her privileges to such an extent that Mr. Duchardt, now in the role of a witness in the case, should be able to interview other witnesses relevant to the claims raised in the Amended Petition filed by Mrs. Montgomery.

To address Mr. Duchardt's motion specifically, he claims that the allegations in the Amended Petition "necessitate[] consultation with other members of the defense team." (Doc. No. 96, p. 2). Yet, in paragraph 4 of his Request, Mr. Duchardt is able to provide both his and Mr. O'Connor's memories pertaining to their working relationship with mitigation specialist Dani Waller.[3] Mr. Duchardt goes on to request that he and Mr. O'Connor be permitted to interview former Federal Public Defender employee Ron Ninemire about Mr. Ninemire's

[3] Again, it is unclear why Mr. Duchardt purports to be acting on behalf of himself and Mr. O'Connor or why they appear to be collaborating on their affidavits. Mr. Duchardt and Mr. O'Connor took on different roles in the representation of Mrs. Montgomery at trial. Each of these attorneys should be working on an independent affidavit.

working relationship with Ms. Waller and whether Mr. Ninemire "placed any roadblocks in the way of Ms. Waller". Similarly, Mr. Duchardt seeks access to the Federal Public Defender's records and Ms. Waller's contract and payment records.

As Mr. Duchardt is able to give his own memories, as well as Mr. O'Connor's, pertaining to their working relationship with Ms. Waller at the beginning of paragraph 4, it is unclear why any such interview or record review is necessary. It is not relevant to any claim of ineffective assistance of counsel against either Mr. Duchardt or Mr. O'Connor for Mr. Duchardt to now determine whether Mr. Ninemire "placed any roadblocks in the way of Ms. Waller" or "if anything untoward . . . happened with respect to Ms. Waller's work or attitude" (Doc. No. 96, p. 3). Mr. Ninemire is a witness in this proceeding. If he is to be interviewed about his working relationship with Ms. Waller, such an interview should be conducted by the parties to the litigation, not another witness.

More problematic is the matter of how Mr. Duchardt intends to present Mr. Ninemire's testimony, as well as that of the other witnesses identified in his Request, if the Court allows him to begin conducting interviews of material witnesses in this 2255 proceeding. If Mr. Duchardt merely includes his version of the interview in his affidavit, it will be hearsay. Is Mr. Duchardt intending to obtain witness declarations and attach them to his affidavit? This approach runs directly contrary to Rule 1.6(b)(5) and the ABA Guidelines. Rather than limiting the information to be disclosed, Mr. Duchardt, a witness, is seeking to expand the record in this case by conducting interviews of other witnesses and, presumably, presenting their testimony to the Court.

Similarly, it is not relevant to any claim of ineffective assistance of counsel for Mr. Duchardt to review Ms. Waller's contract or payment records. Mr. Duchardt is not alleging in

his Request that there were matters he asked Ms. Waller to investigate or tasks he asked her to perform that she refused to do based upon her contract or a limitation on her work hours. Mr. Duchardt appears to be attempting to find hindsight justifications for his failure to utilize Ms. Waller's services as a mitigation specialist rather than simply responding to the allegations in the Amended Petition based upon his own memories.

The information identified as subjects for investigation in Mr. Duchardt's Request bears no relevance to what Mr. Duchardt knew at the time of trial and, therefore, could have had no impact on his decision-making or trial strategy as Mrs. Montgomery's attorney. Mr. Duchardt has been asked to draft an affidavit based upon his personal knowledge. He has not been asked to interview witnesses to see if they corroborate or dispute his recollection of events. Nor for that matter has he been asked to engage in any legal research and writing. If there are factual disputes between members of the defense team, who are now witnesses for the purpose of the habeas litigation, then the existence of such factual disputes supports Mrs. Mongomery's request for a hearing.

Next, in paragraph 5, with regard to Dr. Robert Fucetola, Mr. Duchardt is again able to give his version of his interactions with Dr. Fucetola during the pendency of the criminal case (Doc. 96, p. 4). Yet, based upon an affidavit submitted by one of Mrs. Montgomery's expert witnesses, Mr. Duchardt wants to interview Dr. Fucetola about his testing of Mrs. Montgomery at the time of trial. Again, Mr. Duchardt does not claim a failed memory with respect to Dr. Fucetola's testing or their interactions at the time of trial. Mr. Duchardt is in possession of Dr. Fucetola's report. By definition, anything Mr. Duchardt could learn now would not be relevant to what Mr. Duchardt knew at the time of trial. Furthermore, Dr. Fucetola has a separate ethical obligation to Mrs. Montgomery via-á-vis his role as a physician. If any additional testimony is

needed from Dr. Fucetola in order for the Court to resolve a claim of ineffective assistance of counsel, it should be obtained at an evidentiary hearing or, at a minimum, by one of the parties in the case, not by Mr. Duchardt in an *ex parte* interview.

In paragraph 6, Mr. Duchardt is able to provide his memories regarding the information provided to Dr. William Logan, M.D. as well as his own memories as to when "summaries of computer usage were" completed by Troy Schnack, an employee of the Federal Public Defender's Office, and provided to the defense experts. Mr. Duchardt believes that additional support for his version of the facts may be available through Stephanie Elliott, another employee of the Federal Public Defender's Office, and Mr. Schnack. Again, Mr. Duchardt is not the appropriate person to be interviewing these witnesses. The very tone of Mr. Duchardt's Request indicates that he is not seeking to provide only the information reasonably necessary to respond to the allegations of ineffective assistance of counsel, but rather that he intends to take on the Herculean task of doing the Government's work. This approach is contrary to Rule 1.65 and the ABA Guidelines discussed above.

In paragraph 7, Mr. Duchardt states that since work on his affidavit is on-going, he anticipates that additional issues will be identified that will require him to "consult" with other members of the defense team. Again, it is improper for Mr. Duchardt to be interviewing other witnesses in the case to rally support for his version of the facts relating to his defense of Mrs. Montgomery.

In addition, Mr. Duchardt's request ignores the fact that even if this Court finds that Mrs. Montgomery has waived her privileges to such an extent that a third party witness, Mr. Duchardt, should be allowed to interview other witnesses and somehow present their testimony to this Court, the order could not obligate those witnesses to submit to voluntary interviews by Mr.

Duchardt. Each of the witnesses identified by Mr. Duchardt, as well as other witnesses, has the right to decline an interview. These particular witnesses identified in the current Request have their own ethical duty of confidentiality to Mrs. Montgomery. The duty to keep client confidences is broader than the limited evidentiary privilege. The attorney-client privilege protects communications between attorney and client from disclosure in a legal proceeding. While an attorney may divulge certain communications in a court proceeding, the extent of the disclosures must be limited. Here, Mr. Duchardt is seeking extrajudicial, *ex parte*, inerviews with witnesses who have an ethical duty to resist disclosures of client confidences. The Court is without authority to order them to breach their ethical duty.

As Mr. Duchardt has sought the Court's intervention and clarification, counsel for Mrs. Montgomery would also ask the Court to clarify that Mr. Duchardt is not being directed to respond to "ALL allegations" (Mr. Duchardt's emphasis at page 5) in the Amended Petition, as he seems to believe, but only to the allegations pertaining to ***his*** representation of Mrs. Montgomery. While he may be permitted to defend himself against the allegations of ineffective assistance of counsel directed at him, the self-defense exception set forth in Rule 1.6(b)(5) does not empower Mr. Duchardt in any other manner. He should not be conducting interviews to resolve what he perceives as disputed facts in this case. Every fact set forth in Mrs. Montgomery's Amended Petition was supported by a citation to the record in the case or a witness declaration. If Mr. Duchardt has a different recollection of the events that transpired during the representation, then he should disclose them to the extent reasonably necessary to defend himself with respect to the claims of ineffective assistance of counsel and no more. Attempts to augment his own memory, or that of others, only hinders the adjudication of Mrs. Montgomery's Amended Petition as this Court will be placed in the position of trying to parse

what Mr. Duchardt knew at the time of trial from what was learned later in Mr. Duchardt's independent investigation.

Mr. Duchardt has been directed to provide an affidavit, over Mrs. Montgomery's objection, responding to the allegations of ineffective assistance of counsel in the Amended Petition that pertain only to his representation of Mrs. Montgomery. According to the Government, David Owen was able to complete this task by January 8, 2014, in 21 pages and without the need to interview witnesses or conduct an independent investigation (Doc. No. 79, ¶ 5). Mr. Duchardt and Mr. O'Connor have had over six months to provide affidavits. After seeking another extension of time based upon their existing workloads, Mr. Duchardt now wants to launch an independent investigation, and apparently provide an affidavit that includes legal research and writing, rather than simply providing an affidavit outlining his version of events in representing Mrs. Montgomery at trial and on appeal.

Mr. Duchardt has already been the subject of criticism for the extensive "adversarial briefing" he filed in the 2255 proceeding pertaining to Wesley Ira Purkey. *See* Motivation Matters: Guideline 10.13 and Other Mechanisms for Preventing Lawyers From Surrendering to Self-Interest in Responding to Allegations of Ineffective Assistance in Death Penalty Cases, Tigran W. Eldred, 42 Hofstra L. Rev. 473 (Winter 2013). "Instead of filing a limited affidavit, narrowly tailored to the allegations in the petition for habeas corpus, the lawyer filed an extensive 117-page affidavit that, according to Purkey, far exceeded the allegations in dispute. Even more remarkably, twenty-five pages of the affidavit were dedicated to legal analysis, including extensive citation of legal authority arguing why the lawyer's conduct was not constitutionally defective." *Id*. at p. 1. Such an action is not in keeping with the continuing obligations Mr. Duchardt owes to Lisa Montgomery. *See Id.*

In light of Mr. Duchardt's current Request, counsel for Mrs. Montgomery move for a Protective Order directing Mr. Duchardt to refrain from interviewing witnesses in this case and to provide his affidavit to counsel for Mrs. Montgomery prior to disclosing it to the Government. For the reasons stated above, Mr. Duchardt should not be permitted to conduct interviews and include hearsay in his affidavit or to attach witness statements to his affidavit. In addition, given that Mrs. Montgomery's action in filing a 2255 action has not waived the attorney-client privilege except to the limited extent necessary for Mr. Duchardt and Mr. O'Connor to respond to the allegations of ineffective assistance of counsel against them, counsel for Mrs. Montgomery request an opportunity to review the affidavits of Mr. Duchardt and Mr. O'Connor and interpose objections prior to the affidavits being disclosed to the Government. "Permitting disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding. Disclosure of such information might prejudice the defendant in the event of a retrial." ABA Formal Opinion 10-456, p. 5. Therefore, counsel for Mrs. Montgomery ask the Court to Order Mr. Duchardt and Mr. O'Connor to provide their affidavits to counsel for Mrs. Montgomery prior to disclosure to the Government.

Finally, on Friday, June 13, 2014, Mr. Duchardt sent an email to counsel for Mrs. Montgomery and counsel for the Government requesting a copy of David Owen's affidavit. Counsel assumes Mr. Duchardt is referring to the affidavit that was provided to the Government on January 8, 2014. Undersigned counsel objects to Mr. Duchardt reviewing the affidavit of

David Owen prior to preparing his own affidavit. Each witness statement should be based on the witness' own memories.

Along those lines, undersigned counsel are increasingly concerned that Mr. Duchardt appears to be litigating on behalf of both himself and Mr. O'Connor. Mr. Duchardt has filed pleadings purporting to be filing on behalf of both himself and Mr. O'Connor, yet Mr. O'Connor's name does not appear in the signature block of any of these pleadings. While Mr. Duchardt is identified as an "interested party" on the Court's Docket Sheet, Mr. O'Connor is not and therefore does not receive ECF notices when documents are filed in this case. It appears that Mr. Duchardt does email Mr. O'Connor courtesy copies of the filings, but Mr. O'Connor was not included on the telephone conference request from the Court or on the actual telephone conference pertaining to Mr. Duchardt's motion for the return of his files (and Mr. O'Connor's files). As it is clear from the record that Mr. Duchardt and Mr. O'Connor took on different roles in the defense of Mrs. Montgomery, each should be preparing his own affidavit responding to the allegations of ineffective assistance of counsel in the Amended Petition as did Mr. Owen back in January. In an abundance of caution, due to Mr. Duchardt's apparent litigation on behalf of Mr. O'Connor, counsel for Mrs. Montgomery request a Court Order clarifying that each attorney should be drafting his own affidavit in response to the Amended Petition.

Accordingly, for the reasons stated above, Movant Lisa Montgomery respectfully requests that the Court deny Mr. Duchardt's "Request" (Doc. No. 96). It is further requested that the Court enter a Protective Order prohibiting Mr. Duchardt from interviewing witnesses in this case for the purpose of investigating to discover facts not known to him at the time of trial or substantiating his own position on disputed facts in this case. It is further requested that in light of the Court's Order that Mr. Duchardt and Mr. O'Connor are to provide affidavits to the

Government, over Mrs. Montgomery's objection, the Court enter an Order clarifying that Mr. Duchardt and Mr. O'Connor are each to prepare their own affidavits, based on their own memories and recollection of events, to the extent permitted by Rule 1.6(b)(5) and the ABA Guidelines.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2014, the above-captioned document was served electronically on Roseann Ketchmark, Assistant United States Attorney, representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Christine M. Blegen*

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-8001-CV-W-GAF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Nothing should be more important to a lawyer than his or her reputation for honesty and capable representation of the interests of their clients to the best of their ability. When a lawyer's representation is challenged as being less than honest and/or less than capable based upon the lawyer's lack of integrity, ability or effort, the lawyer should not be silenced or handicapped in defending their reputation. A former client waives attorney-client privilege to the extent necessary for a lawyer accused of ineffective assistance to respond fully to the allegations against them. In a difficult and complex case, such as any death penalty case, it is only reasonable that a lawyer might find it necessary to consult with some or all of their defense team to fully and adequately respond to allegations against them.

Having fully considered the Request for Detailed Clarification of Order Regarding Implied Waiver of Privileges (Doc. 84, P. 3) (Doc. #96), filed by Frederick A. Duchardt, Jr., as well as Movant's Suggestions in Opposition, it is hereby ORDERED that Federal Public Defender Office employees Stephanie Elliott and Troy Schnack, former Federal Public Defender Office employee Ron Ninemire, and retained expert Robert Fucetola, Ph.D., consult with and cooperate with former trial counsel for Movant, Mr. Duchardt and Mr. John O'Connor, by

answering their inquiries to the best of said employees' and retained expert's ability, as well as providing any records or documentation relevant to the claims raised against trial counsel. Records to be provided are to include records of The Federal Public Defender or any employee thereof regarding contact and payment for the services of Ms. Dani Waller, and records of computer usage summaries prepared by Mr. Troy Schnack, or anyone under his supervision, on behalf of the office of The Federal Public Defender, which reflect on whether such usage summaries were provided to experts before or during trial.

IT IS FURTHER ORDERED that Movant's request for an extension of time to 5:00 p.m., on Tuesday, June 17, 2014, to further respond herein is denied. Movant's motion for protective order is likewise denied.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 16, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Defendant/Movant,* | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-8001-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff/Respondent.* | ) | |

## EMERGENCY MOTION TO STAY ORDER

Lisa M. Montgomery, by and through counsel, moves this Court to stay its order of June 16, 2014, Docket Entry 100, in order for Mrs. Montgomery to seek a writ of mandamus/prohibition in the United States Court of Appeals for the Eighth Circuit. Mrs. Montgomery has no other remedy at law other than to seek the immediate intervention of the higher court since the harm will have already occurred. Fed. R. App. P. 8. The rules of appellate procedure require counsel to first seek a stay from the district court before moving for a stay in the Court of Appeals. All parties are advised that should this Court deny a stay, Mrs. Montgomery will immediately move for a stay in the Eighth Circuit.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063

(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2014, the above-captioned document was served electronically on Roseann Ketchmark, Assistant United States Attorney representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Kelley J. Henry*

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 12-8001-CV-W-GAF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ORDER DENYING EMERGENCY MOTION TO STAY ORDER**

Now pending before the Court is Movant's Emergency Motion to Stay Order (Doc. #101). The Court having fully considered said motion, it is

ORDERED that Movant's Emergency Motion to Stay Order (Doc. #101) is DENIED.

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 17, 2014

**United States Court of Appeals**
***For The Eighth Circuit***
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
***Clerk of Court***

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

June 18, 2014

Ms. Kelley J. Henry
Suite 200
810 Broadway Street
Nashville, TN 37203

RE: 14-2437 In re: Lisa Montgomery

Dear Counsel:

We have assigned your petition for a writ the case number shown above. Your case will be referred to a panel of judges for review. We will promptly advise you of the Court's ruling.

Please note that the filing fee of $500 is due to the court. Checks are to be made payable to "Clerk for the Eighth Circuit Court of Appeals".

On June 1, 2007, the Eighth Circuit implemented the appellate version of CM/ECF. Electronic filing is now mandatory for attorneys and voluntary for pro se litigants proceeding without an attorney. Information about electronic filing can be found at the court's web site www.ca8.uscourts.gov. In order to become an authorized Eighth Circuit filer, you must register with the PACER Service Center at https://www.pacer.gov/psco/cgi-bin/cmecf/ea-regform.pl. Questions about CM/ECF may be addressed to the Clerk's office.

Michael E. Gans
Clerk of Court

EDG

Enclosure(s)

cc: Ms. Christine M. Blegen
Honorable Gary A. Fenner
Ms. Roseann A. Ketchmark
Mr. Philip M. Koppe
Ms. Lisa G. Nouri
Ms. Ann Thompson

District Court/Agency Case Number(s): 4:12-cv-08001-GAF

**Caption For Case Number: 14-2437**

In re: Lisa M. Montgomery

Petitioner

**Addresses For Case Participants: 14-2437**

Ms. Kelley J. Henry
Suite 200
810 Broadway Street
Nashville, TN 37203

Ms. Christine M. Blegen
BLEGEN LAW FIRM
Suite 217
230 S.W. Main Street
Lee's Summit, MO 64063

Honorable Gary A. Fenner
Room #8452
U.S. Courthouse
400 E. Ninth Street
Kansas City, MO 64106-2689

Ms. Roseann A. Ketchmark
U.S. ATTORNEY'S OFFICE
5510 Charles Evans Whittaker Courthouse
400 E. Ninth Street
Kansas City, MO 64106-2149

Mr. Philip M. Koppe
U.S. ATTORNEY'S OFFICE
816-426-4288
5510 Charles Evans Whittaker Courthouse
400 E. Ninth Street
Kansas City, MO 64106-2149

Ms. Lisa G. Nouri
2526 Holmes
Kansas City, MO 64108-0000

Ms. Ann Thompson
U.S. DISTRICT COURT- Western Missouri
Western District of Missouri Clerk's Office
Room 1510
400 E. Ninth Street
Kansas City, MO 64106-0000