IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| *Defendant/Movant,* | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-8001-SJ-GAF |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff/Respondent.* | ) | |

REPLY TO GOVERNMENT'S RESPONSE TO
RENEWED MOTION FOR PROTECTIVE ORDER

The Government characterizes Movant's motion as "absurd" and claims that Movant has "no reason or legal right" for the relief she seeks. (Doc. 120, pp. 2, 6). Movant replies as follows:

1. Movant has already provided this Court and the Government ample authority for her position that she, through her counsel, has the right to object to disclosure of attorney-client material that is not subject to the limited waiver found by this Court. It is fair to assume that this Court did not need or desire Movant to restate all of her arguments in the Renewed Motion for Protective Order, nor would it have been useful to attach documents previously provided to the Court. (*See* Doc. 76; Doc. 80; Doc. 83, Doc. 99).[1] What changed between the previous filings and the Renewed Motion was the Government's position, taken for the first time, before the United States Court Of Appeals.[2] When this Court ruled on Movant's previous motions, the Government had remained mute on the subjects addressed in the Renewed Motion: an

[1] Each of these documents is specifically incorporated by reference as if set forth fully herein.
[2] Because the Government is using sleight of hand to recast its clear position taken above, Mrs. Montgomery's Writ (minus attachments) and the Government's Response are attached as Exhibit 1 and 2. Mrs. Montgomery does so not to burden the Court, but to protect the record. The Court of Appeals decision to not entertain the writ **at this time** is not an opinion on the merits of the arguments made. To the extent that the Court of Appeals relied on the Government's response, the Government should not now be permitted to change its position.

opportunity to review the affidavits of trial counsel prior to their publication to the Government and the Court so as to be in a position to interpose objections and/or seek redactions.

2. What is "absurd" is the Government's attempt to recast its position taken in the Court of Appeals. The Government represented to the Court of Appeals that Mrs. Montgomery had two available remedies that defeated her application for writs. The first remedy would be to seek to redact the affidavits. The Government now suggests that Mrs. Montgomery would "obviously" have to seek this remedy **after** the affidavits have been "filed with this Court" (Doc. 120, p. 5). The Government fails to explain how redaction of privileged material after it has been erroneously disclosed protects the attorney-client privilege in any way. It does not. The Court, the Government and the public would have already received the information. There would be no more privilege to protect. Moreover, providing the affidavit prior to publication gives Mrs. Montgomery the option of amending her motion to delete claims she no longer wishes to prosecute should she desire to protect the privilege. That option vanishes without the "sneak preview" the Government complains of in its Response (Doc. 120, p. 6). Moreover, Mrs. Montgomery is not only concerned that Mr. Duchardt and Mr. O'Connor will disclose attorney-client material not subject to disclosure, but also with the fact that Mr. Duchardt appears to be conducting an independent investigation on behalf of the Government and that his affidavit will go beyond providing information that was within his personal knowledge at the time of his representation thereby creating grounds for objections by undersigned counsel.

The other remedy proposed by the Government is for Mrs. Montgomery to "move to have this Court review those affidavits *in camera* **before they were [sic] reviewed by either party**" (Doc. 120, p. 5)(emphasis added). The Government states that while it "observed that an *in camera* review would be a possible option, such a drastic remedy would clearly be limited to

specific instances where Montgomery's attorneys could present a reasonable, objective, good-faith basis for believing that the affidavits contained privileged material, *and* that any harm could not be cured by redaction after they had been filed with this Court" (Doc. 120, p. 5, emphasis in original). How are counsel for Mrs. Montgomery to make the showing the Government would require for seeking an *in camera* review if counsel are not provided with the affidavits before they are filed with the Court or disclosed to the Court and the Government? The Government's new addendum to the position taken by the Government in the Court of Appeals makes no logical or practical sense. In fact, it makes the point that undersigned counsel need to be afforded a brief opportunity to review the affidavits prior to the affidavits being disclosed to the Government or filed with the Court for public consumption.

3. Legal ethicist and chair of the ABA's Law Practice Management Section, Michael Downey,[3] clearly explains the harm in his affidavit, Exhibit 3, pp. 3-6, and offers a modest proposal.

> *Appropriate Means for Government to Obtain Appropriate Desired Information.* In my professional opinion, it would actually be best if Messrs. Duchardt and O'Connor were deposed or examined at hearing. This would allow the Government to decide what information it required to rebut Ms. Montgomery's claim of ineffective assistance of counsel; Messrs. Duchardt and O'Connor to limit their disclosures to the information the Government sought; and Ms. Montgomery's new legal counsel to timely object on Ms. Montgomery's behalf if new counsel believes the Government is seeking or former counsel is disclosing information that, despite the at-issue waiver, should remain confidential or otherwise protected. The Government could then, as it chose, seek additional sources of information, such as communicating with, subpoenaing, or deposing third persons who might also have information relevant to its effort to disprove the ineffective assistance claim, again within legal boundaries established for discovery and proof of a case. Support for such an approach includes *United States v. Stone,* 824 F.Supp.2d 176 (D. Me. 2011), and ABA Formal Opinion 10-456, at 2. It also appears the most effective way to limit the burden on Messrs. Duchardt and O'Connor, in sharp contrast to the 300 hours that Mr. Duchardt indicates he spent preparing an affidavit in a

[3] Mr. Downey is the expert whose affidavit Mrs. Montgomery had desired to provide to this Court in support of prior pleadings. Doc. 98, Doc. 99, p.1. This Court declined Mrs. Montgomery's request for time to present the declaration. Doc. 100, p. 2.

prior case. *Cf. also* Fed. R. Civ. P. 45 (discussing the need to protect nonparties from undue burden and expense when subpoenaed); Fed. R. Crim. P. 17(c) (allowing a subpoena to be quashed where compliance would be unreasonable or oppressive). After all, the Federal Rules of Civil Procedure generally limit depositions to seven hours, far less than the 300 hours Mr. Duchardt reports he spent on an affidavit in a prior case.

That said, I recognize that federal courts do sometimes compel former defense counsel whose conduct is challenged as ineffective to provide affidavits to assist the government in responding to an ineffective assistance of counsel claim. *See*, *e.g. Nelson v. United States*, Case No. 4:04-CV-8005-FJG, 2010 WL 3398791 (W.D. Mo. Aug. 24, 2010). It would seem the best method then would be, as occurred here, for the government to send questions that it wants the former defense counsel to answer. Former defense counsel (Messrs. Duchardt and O'Connor) could then prepare responses based upon their own memory and records, as appropriate. Former defense counsel would then send the responses, which would take the form of an affidavit, to the former client's new counsel – that is, the counsel pursuing post-conviction relief – so the new counsel would have an opportunity to review the affidavit with the (former) client and to raise objections or challenge disclosures as appropriate, before the affidavit (response) would be produced to the Government. Such a process would again allow the Government to choose how it wished to proceed with its case and what information it required; the former defense counsel to answer as that counsel deemed appropriate; and for the client's new counsel to have an opportunity to prevent the inappropriate disclosure of information. Additionally, it would allow the Government to decide whether it needed to seek additional sources of information if Mr. Duchardt indicated the response to some question posed by the Government was not available to him, and to use informal or formal discovery as the law allowed if the Government believed such information was appropriate for its case. This is the process deemed appropriate in *Nelson*, 2010 WL 3398791, a prior decision of the District Court, at *3, as well as by numerous other federal district courts such as the court in *Stone*.

The processes as set forth in paragraphs 20 and 21 would appropriately protect the defense counsel (Messrs. Duchardt and O'Connor) from violating any ethical or fiduciary obligations that he might owe to his former client (Ms. Montgomery), for example obligations of loyalty and confidentiality to the former client. In addition, these processes would allow the Government to assess the information that it believed it needed. These procedures would allow, for example, the Government to seek only very limited information in circumstances where it believed broad disclosures were not necessary, perhaps because a narrow disclosure would allow the Government to prove the party alleging ineffective assistance of counsel (Ms. Montgomery) had waived or procedurally defaulted on the challenge. Finally, the procedures described above would best protect the fair administration of justice by avoiding the damage that could be caused if defense counsel disclosed more than was appropriate. If disclosures are not carefully limited and the party claiming ineffective assistance is successful in challenging the conviction or sentence, there may be additional proceedings, about which the former counsel's improper disclosure of information would unduly prejudice the former client's interests including in receiving due process.

> As Mr. Duchardt's filing notes, the alternative of having the former defense counsel simply prepare an affidavit without the clear and focused direction from the Government places too great a burden upon the lawyer. As Mr. Duchardt's statement about spending 300 hours on a prior affidavit suggests he has done in a prior case, the attorney whose conduct was challenged might be inclined to conduct a thorough to review and defend the lawyer's conduct in all aspects of the case and thus avoid being ruled "ineffective." The result would be to create unnecessary and inappropriate adversity between the lawyer and the lawyer's former client, and risk potential violation of the ethics rules by former counsel as well as unnecessary injury to the client's interests, both those interests in protecting the loyalty and confidentiality of the former representation, and also in ensuring due process for any future proceeding that might occur after successful efforts to obtain post-conviction review. Accordingly, a court should not impose such an obligation upon a former defense counsel challenged for alleged ineffective assistance of counsel.

Id., pp. 6-8.

4. The Government seems to suggest that undersigned counsel for Mrs. Montgomery have some nefarious purpose for wanting a "sneak preview" of the affidavits of Mr. Duchardt and Mr. O'Connor before they are seen by the Government or the Court. Undersigned counsel would not gain any advantage in this case by having the affidavits for a brief period before they are disclosed to the Government and the Court. Undersigned counsel are not trying to delay this case by seeking a brief review of the affidavits. In fact, Mr. Duchardt and Mr. O'Connor's testimony could have been obtained several months ago and more efficiently in depositions. It was the Government who insisted on this affidavit procedure.

For the reasons stated above, an opportunity to briefly review the affidavits for privileged material or other appropriate objections is not "absurd" as suggested by the Government. Even the Government concedes that there has not been an absolute waiver of the attorney-client privilege (Doc. 120, p. 6). The fact that Mrs. Montgomery has filed a detailed and thorough Amended 2255 motion that includes more than 30 claims and describes a shocking level of ineffective assistance by prior counsel does not alter the scope of the waiver.

Undersigned counsel not only have a "reason" and "legal right" to make this modest request, (Doc. 120, p. 2), but in fact, have an obligation to make it based on the Government's position in the Court of Appeals. The Government should not be allowed to alter or explain away the position previously taken in the Court of Appeals simply because a different attorney is now writing the response. Contrary to the Government's position, there is both a rational and a legal basis upon which counsel for Mrs. Montgomery seek an opportunity to review the affidavits of Mr. Duchardt and Mr. O'Connor.

WHEREFORE, for all of the reasons stated above, Mrs. Montgomery's Renewed Motion for a Protective Order should be granted and Mr. Duchardt and Mr. O'Connor should be ordered to provide their affidavits to counsel for Mrs. Montgomery prior to disclosing them to the Government or filing them with the Court.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849,
Tn. Bar No. 021113
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, the above-captioned document was served electronically on Roseann Ketchmark and Phil Koppe, Assistant United States Attorneys representing the government in this matter, through the Court's CM/ECF filing system.

/s/ *Kelley J. Henry*