**CAPITAL CASE**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | | |
|---|---|---|
| **IN RE: LISA MONTGOMERY** | ) | |
| | ) | |
| **Petitioner** | ) | **NO. 14-2437** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT WESTERN DISTRICT** |
| | ) | **OF MISSOURI,** |
| | ) | **NO. 12-08001-CV-W-GAF** |

# PETITION FOR WRITS OF MANDAMUS AND PROHIBITION TO THE UNITED STATES DISTRICT COURT WESTERN DISTRICT OF MISSOUI

**ORAL ARGUMENT REQUESTED**


LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

KELLEY J. HENRY, Mo. Bar No. 38849,
Tn. Bar No. 021113
AMY D. HARWELL, Tn. Bar No.18691
FEDERAL PUBLIC DEFENDER'S OFFICE
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Petitioner Lisa Montgomery*

## I. RELIEF SOUGHT

In this 28 USC §2255 action and pursuant to Fed. R. App. P. 21 and 28 U.S.C. §1651 (All Writs Act), Petitioner Lisa M. Montgomery seeks:

1) a writ of mandamus setting aside the Orders of the Court below granting discovery to a non-party, including compelling other witnesses to cooperate and confer with the non-party on issues relevant to each witnesses testimony at a later hearing, as void for want of jurisdiction;

2) a writ of prohibition forbidding witnesses in the underlying habeas action from violating the attorney-client privilege by disclosing confidential information to other witnesses or to the Government other than in a judicial proceeding after full and fair adjudication of any objection to the relevance or privileged nature of the communication; and

3) a writ of mandamus directing that all proceedings in the Court below be conducted on the record.

## II. ISSUES PRESENTED

1. Whether a District Court has Article III jurisdiction to entertain discovery motions filed by a non-party witness in the §2255 proceeding, to conduct discovery interviews of the trial team and trial experts (who owe a continuing duty of confidentiality and loyalty to the movant/petitioner) for the purpose of preparing an affidavit addressing the movant's ineffective assistance of counsel claims. *See Warth v. Seldin*, 422 U.S. 490 (1975) (Federal courts do not have jurisdiction to settle "generalized grievances;" the fact that a non-party may suffer from some action collaterally does not give that party standing); *Schlesinger v. Reservists Cmte to Stop the War*, 416 U.S. 208 (1974) (abstract injury does not confer standing); *accord*, *Oshea v. Littleton*, 414 U.S. 488 (1974).

2. Whether a District Court should allow a §2255 movant's trial attorney to interview witnesses and review witness declarations and transcripts that he did not review at the time he represented the movant, for the purpose of preparing an affidavit addressing the movant's ineffective assistance of counsel claims. *See* Fed. R. Evid. 602 (witness only competent to testify if has personal knowledge of the matter); Fed. R. Evid. 615 Advisory Committee Notes (sequestration of witnesses "has long been recognized as a means of discouraging and exposing fabrication, inaccuracy, and collusion" ); *United States v. Neely, 1996 U.S. App. LEXIS 2106 (*4th Cir. 1996) ("Rule 615 is designed to aid the truth-seeking process by denying the opportunity for witnesses to collude or for one witness to tailor his testimony to the testimony of another"); *United States v. Walker*, 613 F.2d 1349, 1354 (5th Cir.1980)("Sequestration requires that witnesses not discuss the case among themselves or anyone else, other than the counsel for the parties.") (emphasis added) (*citing Gregory v. United States*, 369 F.2d 185 (D.C.Cir.1966)); *accord United States v. Buchanan*, 787 F.2d 477, 485 (10th Cir.1986).

3. Whether a District Court abuses its discretion by refusing to grant a protective order to permit counsel for a §2255 movant the opportunity to determine whether trial counsel has properly confined his affidavit to the limited waiver of the privilege prior to the affidavit being presented to the Government, the practical effect of which leaves to a non-party witness, who is ethically encumbered by a conflict of

interest, the sole discretion of determining the scope of the waiver. *Compare Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)(scope of the waiver is ordinarily defined as being "no broader than needed to ensure the fairness of the proceedings before it."); *with* Mo. S. Ct. R. 4-1.6(a); *and* ABA Formal Ethics Opinion 10-456 (implied client waiver has effect of forgoing right to bar disclosure *in a judicial proceeding*, but standing alone does not constitute informed consent to disclosure to the opposite party prior to the proceeding)(emphasis added).

4. Whether a former client has the right to review and litigate any objections regarding the affidavit of her trial counsel, prepared in response to her allegations of ineffective assistance, before the affidavit is filed with the Court or disclosed to the Government. *See* ABA Formal Ethics Opinion 10-456 ("Even if information sought by the prosecution is relevant and not privileged, it does not follow that trial counsel may disclose such information outside the context of a formal proceeding, thereby eliminating the former client's opportunity to object and obtain a judicial ruling."), *see also* Restatement (Third) of the Law Governing Lawyers§64 cmt.c ("self-defense" exception of Model Rule 1.6(b)(5) is limited in scope and narrowly construed due to the overriding importance of encouraging candor by clients and encouraging public trust in the profession); Mo. S. Ct. R. 4-1.6(b)(5).

## III. FACTS NECESSARY FOR DETERMINATION OF THE ISSUES PRESENTED

Lisa Montgomery is a federal prisoner under sentence of death upon conviction in the United States District Court, Western District of Missouri. United States District Court Judge Gary Fenner presided over pre-trial, trial, and post-trial matters. Mrs. Montgomery filed a timely motion in the District Court to vacate, correct, or set aside the judgment in her case pursuant to 28 U.S.C. §2255. Like many other death row inmates, Mrs. Montgomery included in her motion claims that she received constitutionally ineffective assistance of counsel. *See Sinisterra v. United States*, 600 F.3d 900 (8th Cir. 2010)(remanding case for evidentiary hearing on claims that attorney Frederick Duchardt provided constitutionally ineffective assistance of counsel). Mrs. Montgomery's motion is detailed and fully supported by citations to the record, exhibits, and sworn declarations of witnesses in support of her claims of constitutional error under the Sixth and Eighth Amendments.

Prior to filing an Answer, counsel for the Government asked Mrs. Montgomery's trial attorneys to prepare affidavits in response to the allegations of ineffective assistance of counsel in the motion (Att. A). Mrs. Montgomery objected (Att. B). Mrs. Montgomery noted that alleging ineffective assistance of counsel does not constitute a total waiver of the attorney-client privilege and suggested that any testimony from trial counsel would best be obtained through either a hearing or a deposition so that appropriate objections could be made to any testimony that

exceeded the scope of the waiver (Att. B). The District Court overruled Mrs. Montgomery's objections and ordered the trial attorneys to prepare affidavits and provide them directly to the Government (Att. C). One trial attorney, David Owen, complied with the Order and provided an affidavit to the United States in January of 2014 (Att. F).

Trial counsel Duchardt moved the Court to reconsider (Att. D).[1] He requested that testimony be taken at either an evidentiary hearing or by deposition to reduce the chance of the disclosure of any protected attorney-client confidences and to allow Mrs. Montgomery to interpose any pertinent objections prior to the disclosure (Att. A). At that time, Mr. Duchardt stated that he would "strongly resist" preparing an affidavit (Att. A).

Mrs. Montgomery joined Duchardt's motion in part, arguing that testimony taken at a hearing or deposition would be more appropriate than an attorney-drafted affidavit, or that in the alternative Mrs. Montgomery should at least be able to review the affidavits and object to any disclosures not covered by her waiver prior to the affidavits being given to the Government (Att. E). The Government opposed the Motion to Reconsider and Montgomery's position regarding a

[1] Beginning in December and continuing through the date of this filing, Mr. Duchardt has been filing motions, requests, and responses on behalf of both himself and Mr. O'Connor. Undersigned counsel for Mrs. Montgomery questioned this practice in their Suggestions in Opposition to Frederick Duchardt's Request for Detailed Clarification of Order Regarding Implied Waiver of Privileges and Motion for Protective Order (Att. M). The District Court did not address the concern, but denied the protective order (Att. N).

protective order (Att. F). Mr. Duchardt replied to Mrs. Montgomery's and the Government's responses on behalf of himself and Mr. O'Connor (Att. G). Mrs. Montgomery replied to both the United States' and Mr. Duchardt's filings (Att. H). The District Court denied the Motion to Reconsider and ordered Mr. Duchardt and Mr. O'Connor to provide affidavits to the Government by June 1, 2014 (Att. I) and declined to issue a protective order.

On May 30, 2014, Mr. Duchardt filed a Motion for Extension of Time to file affidavits on behalf of himself and Mr. O'Connor (Att. Q). The following day, a Saturday, Mr. Duchardt filed a motion seeking the return of his files from current counsel for Mrs. Montgomery (Att. R). Counsel requested time to respond in writing to Mr. Duchardt's request, but the Court instead ordered a telephone conference on Monday morning. Without allowing an opportunity for a written response and over undersigned counsel's verbal objections, the District Court ordered undersigned counsel to return Mr. Duchardt's and Mr. O'Connor's files (Att. S).

On June 11, 2014, Mr. Duchardt, acting on behalf of himself and Mr. O'Connor, filed a "Request for Clarification" informing the Court that they wished to interview witnesses in order to prepare their affidavits and seeking a Court order authorizing such interviews (Att. J, p. 2-5). The motion did not claim that either Mr. Duchardt's or Mr. O'Connor's memories had failed, but rather outlined each

man's clear memory of certain factual matters at issue in the pending §2255 motion (Att. J, p. 2-5). The motion identified witnesses that Mr. Duchardt wished to interview and stated that additional interviews of other unnamed witnesses might be needed as Duchardt continued to work on his affidavit (Att. J, p. 2-5). The motion asked the District Court to order that current counsel for Mrs. Montgomery make available expert witness Dr. Robert Fucetola, Ph.D., and that current counsel for Mrs. Montgomery and Federal Public Defender Laine Cardarella make available to him current and former Public Defender staff for interviews and to produce to him certain Public Defender records (Att. J, p. 7). Finally, Mr. Duchardt's motion requested the District Court to declare that Mrs. Montgomery has "broadly waived" her attorney-client privilege such that he may conduct interviews of other witnesses as he deems necessary and may obtain additional records as needed as he continues working on his affidavit (Att. J, p. 7).

Less than 48 hours later, on Friday morning, June 13, 2014, undersigned counsel received an email from the District Court's judicial assistant advising counsel that if responses to the motion were to be filed, those responses should be submitted no later than 8:00 a.m. on Monday, June 16, 2014 (Att. K). Noting the novelty of Mr. Duchardt's request and the important and complex legal and ethical questions raised by a third party witness' extrajudicial and *ex parte* questioning of witnesses who continue to have a duty of confidentiality to their former client,

Mrs. Montgomery filed a motion for an extension of the Court's e-mailed deadline around noon on June 13th, requesting only until Tuesday, June 17, 2014, to respond to Mr. Duchardt's motion (Att. L).

As the Court took no action on counsel for Mrs. Montgomery's motion for extension of time prior to 8:00 a.m. on Monday, June 16, 2014, to avoid any possible waiver of her objections and claims, undersigned counsel filed a response to Mr. Duchardt's motion before 8:00 a.m. on June 16, 2014 (Att. M). Mrs. Montgomery renewed the motion for extension of time, noted that counsel was in the process of obtaining an expert opinion,[2] and requested a protective order to prevent Mr. Duchardt from conducting third party *ex parte* interviews of material witnesses (Att. M).

In her response in opposition to Mr. Duchardt's requests, Mrs. Montgomery continued to seek a procedure that would guarantee that each witness would testify only to his or her own memory which is her paramount concern. In light of Mr. Duchardt's continued representations that he is acting on behalf of himself and Mr. O'Connor, she moved that the District Court enter a protective order that each trial attorney should prepare his own affidavit (Att. M, p.13-14). Mrs. Montgomery also renewed her motion for a protective order which would preserve her right to litigate objections to the scope of the affidavit or to the relevance of the privileged

[2] The expert opinion was ultimately received and is attached as Att. BB.

material disclosed by providing her with any affidavit prepared by trial counsel prior to it being published to the Government or filed with the Court (Att. M, p.12).

Three hours later, the District Court authorized Mr. Duchardt's investigation in a two-page order without reference to the ethical rules or legal citations stating, that "[n]othing should be more important to a lawyer than his or her reputation for honesty and capable representation of the interests of their clients to the best of their ability." (Att. N).[3] The District Court ordered members of the former trial team, including an expert witness, to comply with Mr. Duchardt's investigation ostensibly to allow Mr. Duchardt to defend his reputation. *Id*. Specifically, the Court ordered the witnesses identified in Mr. Duchardt's motion "to consult with and cooperate with former trial counsel for Movant, Mr. Duchardt and Mr. John O'Connor, by answering their inquiries to the best of said employees' and retained expert's ability, as well as providing any records or documentation relevant to the claims raised against trial counsel." (Att. N, p.2). Though the Order did not weigh, or consider, the scope of Mrs. Montgomery's limited waiver, subsequent events, as described below, indicate that Mr. Duchardt has interpreted the order as a grant of his request for a broad waiver.

The District Court further denied Mrs. Montgomery's motion for a protective order ensuring that Mr. Duchardt and Mr. O'Connor each write their

[3] District Court also denied Mrs. Montgomery's counsel time to supplement her response (Att. N).

own affidavits. (*Compare* Att. N *with* Att. M). As it stands, the District Court implicitly authorized Mr. Duchardt and Mr. O'Connor to work together – and in consultation with other members of the former defense team – on their affidavits by denying Mrs. Montgomery's request, risking that their memories will be forever altered in a way that will prejudice Mrs. Montgomery. (*Compare,* Att. N (denying protective order without explanation) *with* Att. M (requesting protective order that each witness prepare his own affidavit)).

Movant immediately filed a motion to stay the District Court's Order so that a writ of mandamus/prohibition could be sought in this Court (Att. O). The District Court denied the motion on June 17, 2014(Att. P).

While Mr. Duchardt's other requests were being litigated, Mr. Duchardt e-mailed counsel for Mrs. Montgomery and counsel for the Government on Friday, June 13, 2014, asking that he and Mr. O'Connor be provided with copies of the affidavit of trial counsel David Owen (Att. T). Mrs. Montgomery does not know whether counsel for the Government provided Mr. Duchardt with a copy of this affidavit.

Mr. Duchardt next sent three emails to the District Court's judicial assistant on the morning of June 20, 2014 just prior to this Court's Stay Order (Att. U). He requested a transcript of an interview that the parties to the §2255 proceeding were allowed to conduct of Magistrate Judge John Maughmer (Att. U). Next, a copy of

the transcript of a May 6, 2013 hearing that "Judge Fenner used . . . to address his recollections about the Judy Clarke matter." (Att. U).[4] Finally, Mr. Duchardt requested copies of the transcript of a hearing on April 21, 2006 and transcripts of chambers conferences on April 25, 2006 and May 3, 2006 relating to the "Clarke matter." (Att. U). At approximately 8:30 a.m. that morning this Court issued a stay of the District Court's order. Undersigned counsel responded to the email string and stated that in light of the stay, undersigned counsel objected to Mr. Duchardt and Mr. O'Connor being provided with any additional materials at that time (Att. V).

An hour and a half later the District Court's judicial assistant responded that, "Judge Fenner doesn't believe that his Order (Doc. #100) pertains to transcripts being provided to Mr. Duchardt, therefore, he does not believe the Stay Order is applicable to transcripts which are a matter of public record." (Att. W). The email further stated that Judge Fenner did not believe there was a transcript of the Judge Maughmer interview and that the other transcripts being requested were "on ECF and a matter of public record." *Id.*

Given this Court's Order staying the proceedings, undersigned counsel responded that the writ would address the denial of the requested protective order and, as such, no materials should be provided to Mr. Duchardt (Att. X).

[4] Several of the claims raised in Mrs. Montgomery's §2255 Motion relate to the removal of Judy Clarke as one of her attorneys. Neither Duchardt nor O'Connor were counsel at the time.

Undersigned counsel expressed concern about the continued use of email to litigate matters in this case, and moved the District Court for an opportunity to respond on the record (Att. X).

On Monday, June 23, 2014, the District Court issued an Order directing the parties to file any objections to Mr. Duchardt's "discovery requests" no later than 11:00 a.m. on June 25, 2014 (Att. Y). Counsel for the Government responded on June 23, 2014, not raising any objections, but disclosing both her and her former co-counsel's notes of the interview with Magistrate Judge Maughmer (Att. Z). Undersigned counsel responded to the order on June 25, 2014, objecting to the Court's entertainment of Mr. Duchardt's Motion as Mr. Duchardt is not a party to the litigation and has no standing; arguing that the only materials relevant to Mr. Duchardt and Mr. O'Connor's putative affidavits are the contents of their own trial files; and renewing her motion that all litigation in the case should be conducted on the record through the ECF system (Att. AA).

The District Court denied Mrs. Montgomery's motion for all litigation to be conducted on the record via ECF and granted each of Mr. Duchardt's requests (Att. CC). In so doing, the District Court noted – but did not address – Mrs. Montgomery's argument that Duchardt lacked standing to move for discovery. (Att. CC). The Court similarly did not address the jurisdictional question. Again emphasizing the potential professional ramifications and "potential of serious

personal consequences" Mr. Duchardt will suffer should Mrs. Montgomery prove her claims the District Court ordered – despite this Court's stay order – that Mrs. Montgomery "immediately" provide documents to Mr. Duchardt to assist him in his efforts to rebut her claims. (*Compare* Att. CC *with* Att. N ("when a lawyer's representation is challenged as being less than honest and/or less than capable based upon the lawyer's lack of integrity, ability, or effort, the lawyer should not be silenced or handicapped in defending their reputation")).

Constrained by the District Court's Order to "immediately" provide documents to the Government and Mr. Duchardt, Mrs. Montgomery complied, noting her objection to this encroachment on this Court's Stay of the Proceedings (Att. DD).

## IV. REASONS WHY THE WRIT SHOULD ISSUE

The District Court misapprehends the ethical constraints which limit trial counsel's advocacy against his former client – particularly in a proceeding related to counsel's representation of the client. Mrs. Montgomery's claims of ineffective assistance of counsel and fraud on the court do not relieve Mr. Duchardt of his continuing duty of loyalty nor do they provide a broad waiver of the attorney client privilege. Before any member of the defense team covered by the attorney-client relationship can reveal any matter relevant to his representation of Mrs. Montgomery, a judicial determination as to the relevance of the information to a

germane issue in Mrs. Montgomery's §2255 motion must be made (Att. BB, *Affidavit of Ethics Expert, Michael Downey*).

The District Court improperly broadened Mrs. Montgomery's implied waiver without instituting appropriate judicial safeguards (Att. I (finding implied wavier); Att. N (permitting discovery by former trial counsel)). As a consequence, the District Court has left to Mr. Duchardt, the subject of Mrs. Montgomery's ineffectiveness claims, the task of determining the scope of the waiver without judicial oversight or input from Mrs. Montgomery, who has the right to object (or even to withdraw a claim should she decide to retain her privilege) (Att. BB). This scenario is especially untenable here as Mr. Duchardt has already signaled his inability to put Mrs. Montgomery's due process rights ahead of his own professional interests (Att. J, wherein trial counsel construed the court's order as a "broad mandate"). Mr. Duchardt's apparent determination to respond to Mrs. Montgomery's claims with inadmissible hearsay learned through his own investigation further exposes his conflict of interest. It is precisely because an attorney, such as Mr. Duchardt, faces this inevitable conflict of interest that the appropriate procedure for resolution of the scope of Mrs. Montgomery's waiver would be on the record, with resolution of any objections made prior to any disclosure by Mr. Duchardt (Att. BB).

### A. Mr. Duchardt Lacks Standing to Request Discovery As a Result the District Court Lacks Jurisdiction Over Duchardt's Discovery Requests.

Article III of the United States Constitution limits the jurisdiction of all federal courts to actual cases and controversies which may be brought under the United States Code or the United States Constitution. *Warth v. Seldin*, 422 U.S. 490 (1975). The case brought by Mrs. Montgomery pursuant to 28 USC §2255 is a case and controversy between Mrs. Montgomery and the Government of the United States involving the vindication of Mrs. Montgomery's rights to due process and a fair trial. This case is not a "controversy" between Mrs. Montgomery and Messrs. Duchardt and O'Connor. *See* ABA Formal Op. 10-456 ("When a former client calls the lawyer's representation into question by making an ineffective assistance of counsel claim . . . the legal controversy is not between the client and the lawyer")(*citing* Utah State Bar Eth. Adv. Op. Committee Eth. Op. 05-01, 2005 WL 5302775 at *6).

Federal courts do not have jurisdiction to settle "generalized grievances." The fact that a non-party may suffer (or benefit) from some action collaterally does not give that party standing. *Warth*, *supra*. To acquire standing, a party seeking access to the Court "must allege a distinct and palpable injury to himself." *Id*. at 501. Mr. Duchardt and Mr. O'Connor do not stand to suffer a distinct or palpable injury in this case. Should their representation be found to be constitutionally

ineffective, such a finding is not *res judicata* in a legal malpractice case. Nor does such a finding automatically result in sanction by the bar. As non-parties, a finding that any attorney rendered ineffective assistance cannot be used against the non-party in subsequent action under principles of non-party preclusion. *Taylor v. Sturgell*, 533 U.S. 880 (2008).

Mere abstract injury does not create access to the federal courts. *Schlesinger v. Reservists Cmte to Stop the War*, 416 U.S. 208 (1974); *Oshea v. Littleton*, 414 U.S. 488 (1974). Standing to access the courts is fundamentally what is lacking in the discovery requests for interviews and documents made by Mr. Duchardt.

> This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . ..' *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). *See Data Processing Service v. Camp*, 397 U.S. 150, 151—154, 90 S.Ct., 827, 829—830, 25 L.Ed.2d 184 (1970).

*Warth*, 422 U.S. at 498-99 (internal footnote omitted).

Only litigants in a lawsuit may request discovery. FRCP 26 by its terms applies only to parties. FRCP 45 permits discovery to be obtained from a third

party *only* by a party to the case in controversy. The only right provided to third parties by Rule 45 is the right to move to quash or modify a subpoena. FRCP 45(d). The rule does not confer standing to a non-party to file motions seeking production of documents or to take depositions or compel witness interviews.[5] The Rules Governing §2255 actions expressly allow for discovery only by a "party." Fed. R. Habeas, Rule 6 ("A judge may, for good cause, authorize a *party* to conduct discovery")(emphasis added).

All of Mr. Duchardt's requests to the District Court (whether by email or motion) are properly construed as Discovery Requests and have been labeled as such by the District Court (Att. Y). Neither the District Court nor Mr. Duchardt cites any authority for these novel requests. There is none. Because Duchardt lacks standing, the District Court did not have jurisdiction to grant him discovery.

The District Court's Orders allowing Mr. Duchardt to conduct discovery in this matter (Att. N, Att. S, and Att. CC) are therefore void and must be vacated.

### B. The District Court's Order Threatens Mrs. Montgomery's Legitimate Right to Protect Her Attorney/Client Privilege and Right to Client Confidentiality.

Mr. Duchardt's requests are improper and the Court Order granting his requests is in error and threatens important principles of legal professionalism. The District Court ordered Mr. Duchardt to provide an affidavit, over Mrs.

[5] Discovery under the rules of criminal procedure is even more limited.

Montgomery's objection, responding to the allegations of ineffective assistance of counsel in the Amended Petition that pertain only to his representation of Mrs. Montgomery. It now appears that Mr. Duchardt perceives the District Court's Order to mandate that he launch an independent investigation, and provide an affidavit that includes legal research and writing, rather than simply providing an affidavit outlining his version of events in representing Mrs. Montgomery at trial and on appeal (Att. AA-Exhibit B). In addition to seeking witness interviews and to review documents while the request for a stay was pending in this Court, Mr. Duchardt sought additional documents and transcripts.

As legal ethics expert, Michael Downey explains, it was improper for Mr. Duchardt to be seeking to expand the scope of his affidavit:

> Because Messrs. Duchardt and O'Connor – as well as the Federal Public Defender – WDMO – continue to owe fiduciary obligations to their former client, it is my professional opinion that Messrs. Duchardt's and O'Connor's ethical and fiduciary obligations as stated previously in this affidavit should cause Messrs. Duchardt and O'Connor at most to be reluctant participants in the Government's formulation of its case. Unless Ms. Montgomery authorizes further action with informed consent, her former lawyers should not seek to gather evidence and witnesses to prove the Government's case. Messrs. Duchardt and O'Connor should not, for example, request information from the other people – other lawyers, paralegals, investigators, and the like – who participated in Ms. Montgomery's prior defense to assist the Government in challenging Ms. Montgomery's claims of ineffective assistance of counsel. Ms. Montgomery's former counsel also should not seek information from the Court or its staff to supplement what the lawyer has in his (or her) own file. Rather, Ms. Montgomery's former lawyers only should provide the information sought by the Government

> and known to the respective lawyer personally, and then only to the extent that privilege has been waived.

(Att. BB, p. 6).

Mrs. Montgomery's concerns are based on history and not abject speculation. Mr. Duchardt has been the subject of criticism for the extensive "adversarial briefing" he filed in the §2255 proceeding pertaining to Wesley Ira Purkey. *See* Motivation Matters: Guideline 10.13 and Other Mechanisms for Preventing Lawyers From Surrendering to Self-Interest in Responding to Allegations of Ineffective Assistance in Death Penalty Cases, Tigran W. Eldred, 42 Hofstra L. Rev. 473 (Winter 2013). "Instead of filing a limited affidavit, narrowly tailored to the allegations in the petition for habeas corpus, the lawyer filed an extensive 117-page affidavit that, according to Purkey, far exceeded the allegations in dispute. Even more remarkably, twenty-five pages of the affidavit were dedicated to legal analysis, including extensive citation of legal authority arguing why the lawyer's conduct was not constitutionally defective." *Id*. at p. 1.

**1. Requests Violate Principles of Legal Professionalism.**

Mr. Duchardt's motions to interview witnesses and review additional documents, as well as his subsequent e-mails seeking documents and transcripts, are in direct opposition to his ethical and legal obligations as former counsel, even where claims of ineffective assistance of counsel have been raised in a habeas petition. As the Restatement (Third) of Agency mandates: lawyers, as fiduciaries,

should "subordinate [their] interests to those of the [client] and place the [client's] interests first as to matters connected to the [representation]." Restatement (Third) of Agency §8.01 cmt b (modified to reflect the lawyer-client context). The obligation of counsel to place his client's interests above his own does not terminate at the conclusion of the formal representation. *See* Att. BB at 3.

In a §2255 proceeding, when a former client raises claims of ineffective assistance of counsel, the client "ordinarily waives the attorney-client privilege with regard to some otherwise privileged information;" however, "that information is still protected by Model Rule 1.6(a) unless the defendant gives informed consent to its disclosure or an exception to the confidentiality rule applies." *See* American Bar Association Formal Opinion 10-456 (July 14, 2010); *cf.* Mo. S.Ct. R. 4-1.6(a).

> Ms. Montgomery has brought a claim of ineffective assistance of counsel. This causes an "at-issue" waiver of her attorney-client privilege regarding the matters where she alleges the representation she received by Messrs. Duchardt and O'Connor and the Federal Public Defender for the Western District of Missouri was inadequate. The at-issue waiver triggered by Ms. Montgomery's claim of ineffective assistance of counsel is not, however, without limits. Rather, the scope of the waiver is ordinarily defined as being "**no broader than needed to ensure the fairness of the proceedings before it**." *United States v. Pinson*, 584 F.3d 972, 979 (10th Cir. 2009) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)); *see also Walking Eagle v. United States*, Case No. Civ. 11-5016, 2011 WL 2881596 (D.S.D. July 15, 2011) (noting that, in each of four cited cases where counsel was directed to prepare an affidavit, the affidavit was limited to the "specific issues raised in the habeas petition"). Accordingly, Messrs. Duchardt and O'Connor – as well as the lawyers or nonlawyers who worked on Ms. Montgomery's representation at the Federal Public Defender – WDMO – may be compelled to answer questions, but only

> those questions the answers for which are necessary to ensure the fairness of the § 2255 proceedings. Thus, it is appropriate for a court to issue – as the District Court presiding over *Montgomery v. United States* has issued – orders directing defense counsel such as Messrs. Duchardt and O'Connor to disclose certain information based upon Ms. Montgomery's at-issue waiver of privilege, but only with regard to the issues raised by Ms. Montgomery's claims of ineffective assistance of counsel.

(Att. BB, p. 4-5 emphasis added).

Further, even where there is an at-issue waiver of the privilege, "[u]nder Rule 1.6(b)(5), a lawyer may disclose information protected by the rule ***only if the lawyer 'reasonably believes [it is] necessary' to do so in the lawyer's self-defense.*** The lawyer may have a reasonable need to disclose relevant client information in a judicial proceeding to prevent harm to the lawyer that may result from a finding of ineffective assistance of counsel." American Bar Association Formal Opinion 10-456 (July 14, 2010) (emphasis added). "[I]f a lawyer is called *as a witness* in a deposition, hearing, or other formal judicial proceeding, the lawyer may disclose information protected by Rule 1.6(a) only if the court requires the lawyer to do so *after adjudicating any claims of privilege or other objections raised by the client or former client*." (American Bar Association Formal Opinion 10-456, p. 2, emphasis added). In addition, the "criminal defendant may be able to make non-frivolous objections to the trial lawyer's disclosures even though the ineffective assistance of counsel claim ordinarily waives the attorney-client privilege and work product protection with regard to

otherwise privileged communications and protected work product relevant to the claim." *Id*. This is the reason that counsel for Mrs. Montgomery supported Mr. Duchardt's request that his testimony be taken in a deposition with counsel for both parties present.

The ABA has recognized that "[w]hen a former client calls the lawyer's representation into question by making an ineffective assistance of counsel claim, . . . the lawyer may not respond in order 'to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client,' because *the legal controversy is not between the client and the lawyer*." *Id.* p.4 (emphasis added). Rather, the attorney "may respond to the allegations only insofar as the lawyer reasonably believes it is *necessary* to do so." *Id.* p.4 (emphasis in original). "It is not enough that the lawyer genuinely believes the particular disclosure is necessary; the lawyer's belief must be objectively reasonable." *Id*.

In fact, the "Comment explaining Rule 1.6(b)(5) cautions lawyers to take steps to limit 'access to the information to the tribunal or other persons having a need to know it' and to seek 'appropriate protective orders or other arrangements . . . to the fullest extent practicable.'" *Id.* "Judicial decisions addressing the necessity for disclosure under the self-defense exception to the attorney-client privilege recognize that when there is a legitimate need for the lawyer to present a defense, the lawyer may not disclose all the information relating to the representation, but

only particular information that reasonably must be disclosed to avoid adverse legal consequences." *Id.* In other words, former counsel are obligated to seek to limit any perceived waiver of the attorney-client privilege, not to actively seek to broaden the waiver as Mr. Duchardt has done in the District Court proceedings. Mr. Duchardt has an on-going duty of loyalty to Mrs. Montgomery and should disclose only information that is necessary to respond to the specific allegations of ineffective assistance of counsel against him.

Based upon Mr. Duchardt's requests to the District Court, both in his motion and in subsequent e-mails,[6] counsel for Mrs. Montgomery are concerned about the scope of the affidavit Mr. Duchardt intends to provide to the Government. In keeping with the ABA Guidelines, the District Court initially found that Mrs. Montgomery waived her attorney-client privilege "to the extent necessary to address all allegations of Movant's claims of ineffective assistance of counsel." (Att. I, p.3). Yet, Mr. Duchardt returned to the District Court seeking a ruling that Mrs. Montgomery has waived her privileges to such an extent that Mr. Duchardt, now in the role of a witness in the case, should be able to interview other witnesses about claims raised in the Amended Petition filed by Mrs. Montgomery (Att. J). Now that the request was granted, Mrs. Montgomery fears that Mr. Duchardt is

[6] For instance, in an email to Laine Cardella, Mr. Duchardt described his inquiry: "Basically, I want to find out if they believe my recollections are correct, and more importantly what they believe the actual facts of these matters are." (Att. AA-Exhibit B).

taking on the role of agent for the Government in an effort to protect his own reputation.

### 2. Duchardt's Requests Implicate the Ethical Duties of the Former Defense Team

Each witness Duchardt seeks to interview is a former member of Mrs. Montgomery's trial defense team. As such they owe a duty of loyalty and confidentiality to Mrs. Montgomery. Michael Downey explains in his affidavit:

> The nonlawyers who work on client cases at the Federal Public Defender – WDMO should be deemed subagents of attorneys handling the case in that office. The nonlawyer assistants would therefore also be fiduciaries of the attorney's principal, the client. *See Restatement (Third) of Agency* § 3.15 cmt d ("[A] subagent is a fiduciary, as is any agent."). Accordingly, although their conduct would not be governed by the legal ethics rules (because those rules govern only lawyers' conduct), the paralegals, investigators, and other nonlawyer assistants would owe fiduciary duties – including the duty of confidentiality set forth in *Restatement (Third) of Agency* § 8.05 – both to the principal (the client) and as well as to the appointing agent (the supervising attorney). *Id.* (stating that the subagent owes duties as defined in §§ 8.01 through 8.06 of the *Restatement (Third) of Agency* to the principal).

(Att. BB, p.3). These individuals should not be compelled by the District Court to submit to interviews by Mr. Duchardt, a non-party in the §2255 litigation, and to breach their duties to Mrs. Montgomery by "consult[ing] with and cooperat[ing] with former trial counsel for Movant, Mr. Duchardt and Mr. John O'Connor, by answering their inquiries to the best of said employees' and retained expert's ability, as well as providing any records or documentation relevant to the claims raised against trial counsel." (Att. N, p.2). .

Mr. Duchardt specifically claims that the allegations in the Amended Petition "necessitate[] consultation with other members of the defense team." (Att. J, p.2). Yet, Mr. Duchardt was able to provide both his and Mr. O'Connor's memories pertaining to the claims. (*Id*.) Despite his memory, Mr. Duchardt requested that he and Mr. O'Connor be permitted to interview former Federal Public Defender employees and expert witness Dr. Fucetola as well as access Federal Public Defender's records (*Id*.).

As Mr. Duchardt was able to recite his own memories, as well as Mr. O'Connor's, it is not relevant to any claim of ineffective assistance of counsel for Mr. Duchardt to now determine whether "they believe my recollections are correct" as he has requested to do. Mr. Ninemire, Ms. Elliot, Mr. Schnack, and Dr. Fucetola are witnesses in this proceeding. If they are to be interviewed about defense team actions or decisions, such an interview should be conducted by the parties to the litigation, not another witness.

Furthermore, if Mr. Duchardt intends to include the results of the interviews in his affidavit, those references will be inadmissible hearsay. If Mr. Duchardt were to obtain witness declarations and attach them to his affidavit, that would directly violate Rule 4-1.6(b)(3) of the Missouri Supreme Court Rules; the ABA Guidelines; and *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)(scope of the waiver is defined as being "no broader than needed to ensure fairness of the

proceeding"), *accord*, *United States v. Pinson*, 584 F.3d 972, 979 (10th Cir. 2009). Rather than limiting the information to be disclosed, Mr. Duchardt is seeking to expand the record in this case by conducting interviews of other witnesses and, presumably, presenting their testimony to the Court.

Similarly, it is not relevant to any claim of ineffective assistance of counsel for Mr. Duchardt to review Federal Public Defender records. Mr. Duchardt appears to be attempting to find hindsight justifications for his failure to utilize mitigation services rather than simply responding to the allegations in the Amended Petition based upon his own memory of the events as he perceived them at the time of his representation of Mrs. Montgomery.

The very tone of Mr. Duchardt's motion indicates that he is not seeking to provide only the information reasonably necessary to respond to the allegations of ineffective assistance of counsel, but rather that he intends to take on the task of doing the Government's work by trying to gather "additional support" for his version of events. This approach is contrary to Rule 1.65 and the ABA Guidelines discussed above.

Mr. Duchardt anticipates that additional issues will be identified that will require him to "consult" with other members of the defense team (Att. J). Admittedly, the District Court's order did not give Mr. Duchardt permission to interview witnesses beyond those identified in the motion; however, the District

Court did not foreclose the possibility that Mr. Duchardt would be given permission to interview additional witnesses upon further request and given subsequent events this week Movant is seeking this Court's intervention to prohibit this from occurring (Att. N ("the lawyer should not be silenced or handicapped in defending their reputation"); Att. CC).

Mrs. Montgomery's current counsel submits that the District Court lacks the authority to order the witnesses to breach their ethical duty to Mrs. Montgomery or the authority to order undersigned counsel and Federal Public Defender Cardarella to make witnesses and documents available to Duchardt.

The District Court erred in entering the Order allowing Mr. Duchardt to interview witnesses in preparation for the filing of his affidavit. The Protective Order sought by Mrs. Montgomery is necessary to prevent needless introduction of hearsay and irrelevant information into the record in violation of Mrs. Montgomery's Sixth Amendment Right to counsel, including to the on-going loyalty and confidentiality of her trial team.

### C. Mr. Duchardt Seeks To Learn Inadmissible Hearsay, Ostensibly for the Purpose of Admitting That Hearsay into the Record in His Testimonial Affidavit Which Threatens Mrs. Montgomery's Rights to a Due Process and A Fair Adjudication of Her Motion

Anything Mr. Duchardt might learn from another witness or from an after acquired document is not relevant to his affidavit. *See Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994) (testimony not based on personal knowledge of facts held

to be inadmissible);4 Handbook of Fed. Evid. §602:1 (7th ed.). Mr. Duchardt's memory regarding his actions and decisions with respect to what he did and did not do on Mrs. Montgomery's behalf at trial and on appeal are what is relevant. Fed. R. Evid., Rule 602 (personal knowledge required); Rule 802(prohibition against introduction of hearsay). The *post hoc* investigation Mr. Duchardt seeks to conduct is not only irrelevant to the inquiry before the District Court, it is improper as it violates Mr. Duchardt's continuing duty of loyalty to Mrs. Montgomery, because it places him in the position of attempting to prove the Government's case.

After initially, properly resisting the preparation of an affidavit (Att. D), Mr. Duchardt returned to the District Court several times this month seeking various ways to garner support for his version of the events: an opportunity to interview witnesses, an opportunity to review documents, an opportunity to review the declaration of one of his fellow trial attorneys, and an opportunity to review the transcripts reflecting what Magistrate Judge John Maughmer and District Court Judge Gary Fenner have said about the removal of Judy Clarke as one of Mrs. Montgomery's trial attorneys.[7] (*See* Att. J, Att. R, Att. T, Att. U).

[7] As Mr. Duchardt was not a member of the defense team at the time Ms. Clarke was removed, he cannot have his own memories of what transpired to result in her removal. Mr. Duchardt is the subject of an ineffectiveness claim relating to his failure to raise the removal of Ms. Clarke on direct appeal. While Mr. Duchardt may respond to the allegations of ineffectiveness with what he knew and considered at the time of his failure to raise that issue on appeal, his request for transcripts to supplement his affidavit with reference to Judge Fenner or Judge Maughmer's comments regarding the removal of Ms. Clarke is improper.

In his formal motion that prompted this writ, Mr. Duchardt sought "certain detailed clarifications regarding [the Court's] determination about the implied waiver of privileges which have occurred in this case."(Att. J, p. 1).[8] Duchardt explained his motive in interviewing former members of his trial team:

> It would be well for me also to explain my reasoning behind wanting to discuss certain matters with you[r] staff. While I am the predominant target of the claims set forth in the petition and amended petition filed on Lisa's behalf, that large target on my back consistent with my overarching role in trial and appeal in the case, no one is spared from invective, including everyone who I mentioned in my original e-mail to you. If this only involved legitimate claims, supported by legitimate facts, I would be more than happy to concede those[,] for Lisa's sake. Unfortunately, there are host of hearsay attributions to many of the Federal Public Defender staff, hearsay attributions which are contrary to information I believe I have received from those very people. Those hearsay attributions, which I believe to be false, are then the critical foundation for claims which I believe to be specious. Those are the matters I want to address with your staff in proper manner. **Basically, I want to find out if they believe my recollections are correct, and more importantly what they believe the actual facts of these matters are.**

(Att. AA- Exhibit B (email correspondence with Federal Public Defender Laine Cardenella)(emphasis added)).

Duchardt's investigation is completely improper. Mr. Duchardt is a witness. This attempt by Duchardt to develop evidence against his former client violates his on-going duty of loyalty and highlights the conflict of interest which has attached

[8] Although Mr. Duchardt titled his document a "Request for Clarification," it is essentially a motion for permission to interview witnesses and documents. Therefore, undersigned counsel has referred to it as a motion.

to any determination by Duchardt of that which is relevant to the Government's Response. To look at it from another angle, if Mr. Duchardt were to be hired by the United States Attorney's office, all would agree that he could not represent the Government here. By seeking to interview witnesses to shore up testimony in response to Mrs. Montgomery's claims, Mr. Duchardt is acting as an arm of the Government as surely as if he received a paycheck.[9]

Further, Mrs. Montgomery's §2255 Amended Motion seeks an evidentiary hearing. To allow Mr. Duchardt to conduct a pre-hearing investigation, interviewing other witnesses and reviewing other documents that he did not have access to at the time of trial will taint everything Mr. Duchardt could potentially testify to at a hearing as there will be no way of sorting out what he actually knew at the time he was engaging in his decision-making process as Mrs. Montgomery's defense counsel as opposed to how his memories may be shaped by information he now seeks to uncover.

### D. The Failure to Adopt a Procedure Necessary to Protect the Limited Nature of the Scope of the Waiver at Bar is Fraught with Peril

To be sure, Mrs. Montgomery has waived her privilege with respect to information necessary to fully adjudicate her claim of ineffective assistance of trial counsel, but that begs the question of what information is necessary for that

[9] In fact, Mr. Duchardt suggested that the United States Attorney's Office should pay him as an expert witness for the time spent preparing an affidavit (Att. D, p. 12-13).

adjudication. ABA Formal Op. 10-456 ("permitting disclosure of client confidential information outside court-supervised proceeding undermines important interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding."; "If the lawyer's evidence is required, the lawyer can provide evidence fully, subject to judicial determinations of relevance and privilege that provide a check on the lawyer disclosing more than is necessary to resolve the defendant's claim"). As even Mr. Duchardt has recognized, "while alleging ineffective assistance of counsel in a petition implies a waiver, that filing alone does not effectuate the waiver." (Att. D at p. 7). Even Duchardt advised the District Court that the "various District Courts have found that [a procedure which allows for objection prior to disclosure of privileged information] is the best way to make discovery happen in a way that concomitantly fashions a waiver that goes no further than what is required by the particular contours of the case." (*Id*. at p. 9)(citing *United State v. Stone*, 824 F.Supp. 2d 176, 186-189 (D. Me. 2011); *United States v. Soomai*, 928 F. Supp. 2d 170, 172 (D.D.C. 2013).

Mr. Downey suggests a reasonable, conservative, and appropriate process that would accomplish the goals of protecting the privilege, permitting Mr.

Duchardt to provide relevant information to the Court, and permit the Government access to information necessary to assess the claims in the §2255 motion (Att. BB). Movant urges this Court to issue an opinion adopting these procedures.

### E. Mrs. Montgomery Is Entitled to a Fair and Reliable Determination Of Her Claims In Accord With Due Process.

In this capital case, public policy dictates that the adjudication of Mrs. Montgomery's claims must be reliable and in accord with due process. *Strickland v. Washington*, 466 U.S. 668, 704, (1984); *Barefoot v. Estelle*, 463 U.S. 880, 913 (1983) (Marshall, J., dissenting); *Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978) (plurality opinion); *Woodson v. N. Carolina*, 428 U.S. 280, 305 (1976). The procedure for the development of the proof as set forth by the District Court not only does not accord Mrs. Montgomery due process, it violates public policy by undermining the reliability of any judicial determination by allowing witnesses to confer and get their stories straight (*Compare* Att. J at p.2 (answer of allegations "necessitates consultation" with other witnesses); *Id*. at p.4 ("additional support" for Duchardt's memory may be available through other witnesses); Att. AA-Exhibit B ("Basically, I want to find out if they believe my recollections are correct"); *with States v. Lyon*, 567 F.2d 777, 784 (8th Cir. 1977), *cert denied* 435 U.S. 918 (1978)(Rule 602 excludes "testimony concerning matter the witness did not observe or had no opportunity to observe"); *Kemp v. Balboa*, 23 F.3d 211, 213 (8th Cir. 1994) (testimony excluded for lack of personal knowledge)).

Transparency is the touchstone of the public's faith in the judicial system. That faith is undermined when case-related events are conducted off-the-record. In this death penalty case, it is of paramount importance that all matters be conducted on the record and in accord with the Federal Rules. W.D.Mo. L.R. 5.1 (requiring all filings to be filed with ECF).

## IV. CONCLUSION

Accordingly, for the reasons stated above, petitioner Lisa Montgomery respectfully requests that this Court issue a writ of mandamus/prohibition vacating the District Court's order of June 16, 2014. Petitioner further requests that this Court issue an Order :

1) directing the District Court to vacate the previous Order and to prohibit Mr. Duchardt and Mr. O'Connor from conducting interviews of any witnesses, including the trial team and trial experts, or reviewing documents. This should include documents and transcripts of proceedings, as well as the declaration of his former co-counsel, that he did not review at the time he represented Mrs. Montgomery, but that Mr. Duchardt has sought by e-mailing the District Court's judicial assistant for the purpose of identifying "additional support" for the position he intends to take in his affidavit;

2) directing the District Court to enter a protective order requiring that Mr. Duchardt's and Mr. O'Connor's affidavits be provided first to undersigned counsel to afford them an opportunity to review the affidavits and interpose objections prior to the affidavits being disclosed to the Government and the District Court;

3) order oral argument; and

4) any other relief necessary.

Respectfully submitted,

/s/ *Lisa G. Nouri*
LISA G. NOURI, Mo. Bar No. 32800
2526 Holmes
Kansas City, MO 64108
(816) 471-1000

/s/ *Christine M. Blegen*
CHRISTINE M. BLEGEN, Mo. Bar No. 43758
BLEGEN LAW FIRM, LLC
230 SW Main Street, Suite 217
Lee's Summit, MO 64063
(816) 213-0384

/s/ *Kelley J. Henry*
KELLEY J. HENRY, Mo. Bar No. 38849
/s/ *Amy D. Harwell*
Amy D. Harwell, Tn, Bar No. 18691
OFFICE OF THE FEDERAL PUBLIC DEFENDER
810 Broadway Street, Suite 200
Nashville, TN 37203
(615) 736-5047

*Attorneys for Movant Lisa Montgomery*