**Affidavit of Michael P. Downey, Esq. for**
***Montgomery v. United States* Writ Proceeding**

**STATE OF MISSOURI** )<br>)<br>) SS.<br>)<br>**ST. LOUIS COUNTY** )

I, Michael P. Downey, Esq., after being duly sworn upon my oath, state the following regarding the Request of Frederick A. Duchardt, Jr. for Detailed Clarification regarding Implied Waiver of Privileges ("Request for Clarification") that Mr. Duchardt has filed in *Lisa M. Montgomery v. United States of America,* Case No. 12-8001-CV-W-GAF (W.D. Mo.).

1. *Law Practice.* I am a partner in the Litigation Practice at Armstrong Teasdale LLP in St. Louis, Missouri. I was admitted to practice law in Missouri in October 1998 and in Illinois in May 1999. I am also admitted to practice before the United States Supreme Court, the United States Courts of Appeal for the Seventh and Eighth Circuits, and United States District Courts and Bankruptcy Courts including the United States District Courts for the Eastern and Western Districts of Missouri.

2. I entered private practice in 1999, after a one-year clerkship with the Hon. Pasco M. Bowman, then Chief Judge of the U.S. Court of Appeals for the Eighth Circuit. Originally, I practiced civil litigation, a practice that I continue. In approximately 2003, however, I began to focus my practice on advising lawyers and their firms (as well as other professionals) on ethics, risk management, and related legal and business issues. I joined Armstrong Teasdale in August 2011 as a contract partner. A copy of a biographical statement that I use at Armstrong Teasdale is attached as Exhibit A. My practice today focuses heavily on advising lawyers and law firms on their fiduciary and ethical obligations, as well as other aspects of the law of lawyering, such as privilege-related issues.

3. *Teaching.* In addition to my full-time law practice, I teach legal ethics and law firm practice. I have taught as an adjunct professor at Washington University School of Law since 2001 and at St. Louis University School of Law since 2010. Courses that I have taught at Washington University School of Law include the legal ethics courses, *Practical Ethics for Civil Litigation (2003-05); Lawyer Ethics (2007 and 2009); and Ethics & Practice Management (2008, 2011 and 2013).* In addition, in 2010, 2012, and 2014, I taught *Legal Professions* at St. Louis University School of Law. Since 2008, I have also taught a Washington University School of Law intersession class titled *Introduction to Law Firm Practice*. This class focuses on how law firms are structured and operate, develop clients, generate revenues, and compensate employees. In both the legal ethics and law firm practice courses, I teach issues relating to lawyers fiduciary duties to clients and former clients. In my legal ethics classes, I also discuss issues relating to the duty of confidentiality, the attorney-client privilege, and work-product protection, as well as the waiver of both the attorney-client privilege and work-product protection.

4. *Relevant Bar Committee Work.* I am active and have held leadership positions in numerous national, state, and local bar association committees related to legal ethics and law firm

practice. This includes that I presently serve as Chair of the American Bar Association (ABA) Law Practice Division. I have also served on the Missouri Bar's Ethics 2005 Committee and Special Committee on Lawyer Advertising, as well as the Technology Working Group of the ABA Ethics 20/20 Commission. I have chaired the ethics committees of the Illinois State Bar Association, the Bar Association of Metropolitan St. Louis, and the ABA Law Practice Management Section (now Law Practice Division). My work on these bar committees has often included reviewing and interpreting and suggesting modifications to the rules of professional conduct. In 2014, I was named a "Most Influential Lawyer" by *Missouri Lawyers Weekly* for my bar association work as well as for being the "go-to legal ethics counsel in Missouri."

5. *Writing and Speaking.* I authored the book *Introduction to Law Firm Practice* (ABA LPM 2010), have presented on professional (mainly legal) ethics more than 250 times, and have published more than 70 articles on ethics. I am a regular ethics columnist for the ABA magazines *Law Practice* and *Litigation* as well as the *National Law Journal.* I have also been interviewed and quoted widely on professional ethics including by the *New York Times*, *ABA Journal*, *National Law Journal,* and *Missouri Lawyers' Weekly*. Many of my presentations and articles, and many of the media interviews referenced above, relate to matters relevant to this opinion, including lawyers' fiduciary duties, duties to maintain their client's confidences, and duties upon termination of a representation.

6. *Education.* I graduated first in my class from Washington University School of Law in May 1998. I also earned a graduate certificate in Law Firm Management from the College of Professional Studies at George Washington University in 2006. My bachelor's degree in Classics (Humanities) is from Georgetown University.

7. *Information Reviewed for Affidavit.* In preparing this Affidavit, I have spoken with Ms. Montgomery's counsel Christina Blegen and Kelley Henry. I have also reviewed the Government's Motion to Compel Defense Counsel to Provide an Affidavit (the "Motion to Compel," Doc. 75); Ms. Montgomery's Response to the Government's Motion to Compel Defense Counsel to Provide Affidavits (the "Response," Doc. 76); the Court's Order dated December 10, 2013 (Doc. 77); Mr. Duchardt's Request for Clarification (Doc. 96); and the Suggestions in Opposition that Ms. Montgomery submitted in response to Mr. Duchardt's Request for Clarification (Doc. 99).

8. *Summary of Relevant Underlying Facts.* It is my understanding that Mr. Duchardt and John O'Connor are lawyers admitted to practice in Missouri and before the U.S. District Court for the Western District of Missouri, who defended Lisa M. Montgomery in *United States v. Lisa M. Montgomery*, Case No. 5:05-CR-6002-GAF (W.D. Mo.). In that case, with Messrs. Duchardt and O'Connor as well as the Federal Public Defender – Western District of Missouri ("Federal Public Defender – WDMO") as her counsel, Ms. Montgomery was tried before a jury in 2007 for the murder of Bobbi Jo Stinnett. Ms. Montgomery was convicted and sentenced to death. The U.S. Court of Appeals for the Eighth Circuit affirmed Ms. Montgomery's conviction and sentence on April 5, 2011. Ms. Montgomery is now seeking post-conviction review under 28 U.S.C. § 2255, and *inter alia* has asserted that Messrs. Duchardt and O'Connor as well as the Federal Public Defender – WDMO

provided ineffective assistance of counsel.

9. *Legal Principles Regulating Post-Representation Conduct of Lawyers and their Nonlawyer Assistants.* Lawyers are fiduciaries of their clients, and therefore owe their clients fiduciary duties. *Restatement (Third) of the Law Governing Lawyers* § 16 cmt b ("A lawyer is a fiduciary, that is, a person to whom another person's affairs are entrusted in circumstances that often make it difficult or undesirable for that other person to supervise closely the performance of the fiduciary."). As fiduciaries, lawyers generally should "subordinate [their] interests to those of the [client] and place the [client's] interests first as to matters connected with the [representation]." *Restatement (Third) of Agency* § 8.01 cmt b (modified to reflect the lawyer-client context).

10. The fiduciary duties that lawyers owe their clients inform the ethical rules that govern lawyers' dealings with clients, including prospective and former clients. These fiduciary duties are codified as Missouri Supreme Court Rules 4-1.1 through 4-1.18, which are based upon similarly numbered ABA Model Rules of Professional Conduct. The U.S. District Court for the Western District of Missouri has adopted the Missouri Rules of Professional Conduct, including Rules 4-1.1 to 4-1.18, as its ethics rules under Local Rule 83.5(c)(2).

11. It is my understanding that Mr. Duchardt may also seek information from nonlawyers – specifically paralegals and investigators – who work for the Federal Public Defender – WDMO. The nonlawyers who work on client cases at the Federal Public Defender – WDMO should be deemed subagents of attorneys handling the case in that office. The nonlawyer assistants would therefore also be fiduciaries of the attorney's principal, the client. *See Restatement (Third) of Agency* § 3.15 cmt d ("[A] subagent is a fiduciary, as is any agent."). Accordingly, although their conduct would not be governed by the legal ethics rules (because those rules govern only lawyers' conduct), the paralegals, investigators, and other nonlawyer assistants would owe fiduciary duties – including the duty of confidentiality set forth in *Restatement (Third) of Agency* § 8.05 – both to the principal (the client) and as well as to the appointing agent (the supervising attorney). *Id.* (stating that the subagent owes duties as defined in §§ 8.01 through 8.06 of the *Restatement (Third) of Agency* to the principal).

12. Significant in this matter, the fiduciary obligations of lawyers and nonlawyer subordinates – that is, the obligation to place the interests of the client first – continue after termination of a client-lawyer relationship, albeit with some modification. Missouri's Rules of Professional Conduct, as well as legal authorities interpreting the legal obligations of lawyers and other agents and subagents, reflect the continuing nature of many obligations lawyers owe even to former clients.

13. *Request to Ms. Montgomery's Former Counsel.* When the Government requests that Messrs. Duchardt and O'Connor provide information about the effectiveness of their representation, it asks Messrs. Duchardt and O'Connor to take action adverse to their (former) client Ms. Montgomery, because Ms. Montgomery is seeking to prove the representation was inadequate and thus avoid a possible execution. Messrs. Duchardt's and O'Connor's taking such action remains limited by their

own on-going fiduciary obligations to Ms. Montgomery. This is reflected in Missouri Rules 4-1.7(a)(2) and 4-1.9(a) and (b), wherein the duties of loyalty and confidentiality that a lawyer owes to a former client limit the actions that a lawyer may take on behalf of a current client (Rule 4-1.7) and adverse to a former client (Rule 4-1.9). Such limitations are the strongest where, as here, the lawyer is being asked to take adverse action in a matter that is substantially related to the matter the lawyer originally handled for the now former client. *See* Mo. S. Ct. R. 4-1.9(a) and (b).

14. Also, as part of the lawyer's fiduciary and ethical obligations, a Missouri lawyer owes a broad duty under Rule 4-1.6 to protect as confidential any information received by the lawyer relating to the representation. Mo. S. Ct. R. 4-1.6(a). This duty continues after the termination of the representation, as reflected in Rule 4-1.9(c). *See also* Restatement (Third) of the Agency § 8.05 cmt c ("An agent's duties concerning confidential information do not end when the agency relationship terminates."); Mo. S. Ct. R. 4-1.9 cmt [8] ("Rule 4-1.9(c) provides that information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client."); Mo. S. Ct. R. 4-1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests . . . ."); Mo. S. Ct. R. 4-1.16 cmt [9] ("Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client."); ABA Formal Opinion 10-456 at 1 (2010) ("In general, a lawyer must maintain the confidentiality of information protected by Rule 1.6 for former clients as well as current clients and may not disclose protected information unless the client or former client gives informed consent"). Ordinarily, under Rule 4-1.9(c), a lawyer may not disclose information relating to the representation even of a former client, unless some exception applies. As ABA Formal Opinion 10-456 emphasizes, "In general, [a] lawyer may not voluntarily disclose any information, even non-privileged information, relating to the defendant's representation without the defendant's informed consent." *Id.* at 2.

15. Ms. Montgomery has brought a claim of ineffective assistance of counsel. This causes an "at-issue" waiver of her attorney-client privilege regarding the matters where she alleges the representation she received by Messrs. Duchardt and O'Connor and the Federal Public Defender for the Western District of Missouri was inadequate. The at-issue waiver triggered by Ms. Montgomery's claim of ineffective assistance of counsel is not, however, without limits. Rather, the scope of the waiver is ordinarily defined as being "no broader than needed to ensure the fairness of the proceedings before it." *United States v. Pinson*, 584 F.3d 972, 979 (10th Cir. 2009) (quoting *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)); *see also Walking Eagle v. United States*, Case No. Civ. 11-5016, 2011 WL 2881596 (D.S.D. July 15, 2011) (noting that, in each of four cited cases where counsel was directed to prepare an affidavit, the affidavit was limited to the "specific issues raised in the habeas petition"). Accordingly, Messrs. Duchardt and O'Connor – as well as the lawyers or nonlawyers who worked on Ms. Montgomery's representation at the Federal Public Defender – WDMO – may be compelled to answer questions. But they should be compelled to disclose client information only to the extent necessary to ensure the fairness of the § 2255 proceedings. Thus, it is appropriate for a court to issue – as the District Court presiding over *Montgomery v. United States* has issued – orders directing defense counsel such as

Messrs. Duchardt and O'Connor to disclose certain information based upon Ms. Montgomery's at-issue waiver of privilege, but only with regard to the issues raised by Ms. Montgomery's claims of ineffective assistance of counsel.

16. Under Rule 4-1.6(b)(4), the court orders issued by the District Court excuse Messrs. Duchardt and O'Connor to a limited extent from complying with the confidentiality obligations imposed by Rule 4-1.6(a) and 4-1.9(c). Under Rule 4-1.6(b)(4) and 4-1.9(c)(1), Messrs. Duchardt and O'Connor (and Ms. Montgomery's other counsel) may reveal information relating to their representation of Ms. Montgomery as they reasonably believe necessary to comply with the Court's orders compelling disclosure. The attorneys' disclosures, however, should be limited only to what the attorneys (Messrs. Duchardt and O'Connor) reasonably believe they need to disclose to comply with the Court's orders. *See* Mo. S. Ct. R. 4-1.6(b)(3). Such a reasonable belief requires both that the lawyer "genuinely believe[] that the particular disclosure is necessary and that this belief is "objectively reasonable." Mo. S. Ct. R. 4-1.0(i); *see also* ABA Formal Opinion 10-456 (2010) at 4 & n.22. The Court orders themselves in turn – and thus the lawyers' disclosures pursuant to those court orders – should be limited as discussed in paragraph 15 above to require disclosure only regarding those matters actually raised by Ms. Montgomery's claims of ineffective assistance of counsel. Unless the client indicates to the contrary, a lawyer still has an obligation to assert non-frivolous claims of privilege on behalf of the client, for example in response to a court order requiring too broad a disclosure, and to respect a client's decision regarding whether to appeal a court order that may require the disclosure of too much confidential information. *See* Mo. S. Ct. R. 4-1.6 cmt [11]. This obligation may require the attorney to challenge the scope of a disclosure order, if the order appears patently overbroad. *Cf.* ABA Formal Opinion 10-456 at 2. More likely, and at minimum, these obligations should cause the lawyer to give a client reasonable opportunity to seek a final court resolution of privilege claims, instead of having the lawyer act prematurely and thus compromise the (former) client's interests.

17. In addition to the permissive disclosures under Rule 4-1.6(b)(4) discussed in the prior paragraph, Rule 4-1.6(b)(3) permits Messrs. Duchardt and O'Connor to disclose confidences to the extent they – not the Government – reasonably believe necessary to "respond to allegations . . . concerning the lawyer's representation of the client." The post-conviction review proceeding that Ms. Montgomery has initiated, however, is not a direct attack upon Messrs. Duchardt or O'Connor or her other former legal counsel. No lawyer is facing potential disciplinary, legal malpractice, or other liability in this case. Even if the District Court concludes Ms. Montgomery's former counsel failed to provide effective assistance of counsel, this would not conclusively subject such former counsel to discipline or malpractice liability, particularly because former counsel are not a party to this case. Rather, Ms. Montgomery's former counsel would have due process rights to marshal evidence – including by using and revealing confidential information as permitted by Rule 4-1.9(c) and 4-1.6(b)(3) relating to their prior representation of Ms. Montgomery – to protect themselves from liability or discipline, if in fact a malpractice case or disciplinary charge were ever actually filed against them. *See also* ABA Formal Opinion 10-456 at 5 (concluding that, due to the absence evidence establishing courts' resolutions of ineffective

assistance claims have been prejudiced "when the prosecution has not received [former defense] counsel's information outside the proceeding, "it will be extremely difficult for defense counsel to conclude that there is a reasonable need in self-defense to disclose client confidences to the prosecutor outside any court-supervised setting").

18. In this case, the responsibility falls to the Government, not Ms. Montgomery's former lawyers Messrs. Duchardt and O'Connor, to prove that the conviction and sentence imposed on Ms. Montgomery should be affirmed. The Government may conduct discovery and put on a case as the Government is permitted by law (for example Rule 6 of the Rules on Motion Attacking Sentence under Section 2255) and as the Government deems appropriate to do. The Government, and not Messrs. Duchardt or O'Connor, may also decide whom it wants to interview and what information it wants to collect to prove that Ms. Montgomery's conviction and sentence should be affirmed.

19. Because Messrs. Duchardt and O'Connor – as well as the Federal Public Defender – WDMO – continue to owe fiduciary obligations to their former client, it is my professional opinion that Messrs. Duchardt's and O'Connor's ethical and fiduciary obligations as stated previously in this affidavit should cause Messrs. Duchardt and O'Connor at most to be reluctant participants in the Government's formulation of its case. Unless Ms. Montgomery authorizes further action with informed consent, her former lawyers should not seek to gather evidence and witnesses to prove the Government's case. Messrs. Duchardt and O'Connor should not, for example, request information from the other people – other lawyers, paralegals, investigators, and the like – who participated in Ms. Montgomery's prior defense to assist the Government in challenging Ms. Montgomery's claims of ineffective assistance of counsel. Ms. Montgomery's former counsel also should not seek information from the Court or its staff to supplement what the lawyer has in his (or her) own file. Rather, Ms. Montgomery's former lawyers only should provide the information sought by the Government and known to the respective lawyer personally, and then only to the extent that privilege has been waived.

20. *Appropriate Means for Government to Obtain Appropriate Desired Information.* In my professional opinion, it would actually be best if Messrs. Duchardt and O'Connor were deposed or examined at hearing. This would allow the Government to decide what information it required to rebut Ms. Montgomery's claim of ineffective assistance of counsel; Messrs. Duchardt and O'Connor to limit their disclosures to the information the Government sought; and Ms. Montgomery's new legal counsel to timely object on Ms. Montgomery's behalf if new counsel believes the Government is seeking or former counsel is disclosing information that, despite the at-issue waiver, should remain confidential or otherwise protected. The Government could then, as it chose, seek additional sources of information, such as communicating with, subpoenaing, or deposing third persons who might also have information relevant to its effort to disprove the ineffective assistance claim, again within legal boundaries established for discovery and proof of a case. Support for such an approach includes *United States v. Stone*, 824 F.Supp.2d 176 (D. Me. 2011), and ABA Formal Opinion 10-456, at 2. It also appears the most effective way to limit the burden on Messrs. Duchardt and O'Connor, in sharp contrast to the 300 hours that Mr. Duchardt

indicates he spent preparing an affidavit in a prior case. *Cf. also* Fed. R. Civ. P. 45 (discussing the need to protect nonparties from undue burden and expense when subpoenaed); Fed. R. Crim. P. 17(c) (allowing a subpoena to be quashed where compliance would be unreasonable or oppressive). After all, the Federal Rules of Civil Procedure generally limit depositions to seven hours, far less than the 300 hours Mr. Duchardt reports he spent on an affidavit in a prior case.

21. That said, I recognize that federal courts do sometimes compel former defense counsel, whose conduct is challenged as ineffective, to provide affidavits to assist the government in responding to an ineffective assistance of counsel claim. *See, e.g. Nelson v. United States*, Case No. 4:04-CV-8005-FJG, 2010 WL 3398791 (W.D. Mo. Aug. 24, 2010). It would seem the best method then would be, as occurred here, for the government to send questions that it wants the former defense counsel to answer. Former defense counsel (Messrs. Duchardt and O'Connor) could then prepare responses based upon their own memory and records, as appropriate. Former defense counsel would then send the responses, which would take the form of an affidavit, to the former client's new counsel – that is, the counsel pursuing post-conviction relief – so the new counsel would have an opportunity to review the affidavit with the (former) client and to raise objections or challenge disclosures as appropriate, before the affidavit (response) would be produced to the Government. Such a process would again allow the Government to choose how it wishes to proceed with its case and what information it required; the former defense counsel to answer as that counsel deemed appropriate; and for the client's new counsel to have an opportunity to prevent the inappropriate disclosure of information. Additionally, it would allow the Government to decide whether it needed to seek additional sources of information if Mr. Duchardt indicated the response to some question posed by the Government was not available to him, and to use informal or formal discovery as the law allowed if the Government believed such information was appropriate for its case. This is the process deemed appropriate in *Nelson*, 2010 WL 3398791, a prior decision of the District Court, at *3, as well as by numerous other federal district courts such as the court in *Stone*.

22. The processes as set forth in paragraphs 20 and 21 would appropriately protect the defense counsel (Messrs. Duchardt and O'Connor) from violating any ethical or fiduciary obligations that he might owe to his former client (Ms. Montgomery), for example obligations of loyalty and confidentiality to the former client. In addition, these processes would allow the Government to assess the information that it believed it needed. These procedures would allow, for example, the Government to seek only very limited information in circumstances where it believed broad disclosures were not necessary, perhaps because a narrow disclosure would allow the Government to prove the party alleging ineffective assistance of counsel (Ms. Montgomery) had waived or procedurally defaulted on the challenge. Finally, the procedures described above would best protect the fair administration of justice by avoiding the damage that could be caused if defense counsel disclosed more than was appropriate. If disclosures are not carefully limited and the party claiming ineffective assistance is successful in challenging the conviction or sentence, there may be additional proceedings, about which the former counsel's improper disclosure of information would unduly prejudice the former client's interests including in receiving due process.

23. As Mr. Duchardt's filing notes, the alternative of having the former defense counsel simply prepare an affidavit without the clear and focused direction from the Government places too great a burden upon the lawyer. As Mr. Duchardt's statement about spending 300 hours on a prior affidavit suggests he has done in a prior case, the attorney whose conduct was challenged might be inclined to conduct a thorough to review and defend the lawyer's conduct in all aspects of the case and thus avoid being ruled "ineffective." The result would be to create unnecessary and inappropriate adversity between the lawyer and the lawyer's former client, and risk potential violation of the ethics rules by former counsel as well as unnecessary injury to the client's interests, both those interests in protecting the loyalty and confidentiality of the former representation, and also in ensuring due process for any future proceeding that might occur after successful efforts to obtain post-conviction review. Accordingly, a court should not impose such an obligation upon a former defense counsel challenged for alleged ineffective assistance of counsel.

**FURTHER, AFFIANT SAITH NOT.**

Subscribed and Sworn to me this 26th day of June, 2014.

Notary Public

SUSAN A. HOVEN
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Jan. 11, 2018
Commission # 13419041




# Michael P. Downey

Partner, St. Louis, Missouri

P: 314.342.8072

mdowney@armstrongteasdale.com


## Law Practice

Michael Downey is a Litigation partner at Armstrong Teasdale, LLP whose practice focuses on advising law firms on legal, ethics and risk management issue, and representing lawyers, their clients, and other professionals in high stakes and complex civil litigation and disciplinary proceedings. Mike serves as outside general counsel to numerous law firms. In addition, his legal ethics and law firm risk management practice includes:

- Preparing opinion letters on conflicts of interest, lawyer advertising and solicitations, law-related businesses, and law firm mergers
- Conducting law firm compliance audits and reviews on client intake, matter risk management, legal billing, and business development systems and practices
- Defending lawyers in disciplinary proceedings including responding to bar complaints, litigating cases before disciplinary hearing panels, and arguing cases for lawyer-respondents before the Missouri Supreme Court and Illinois ARDC Review Board
- Assisting clients in filing ethics complaints, resolving fee disputes, and prosecuting claims against legal counsel
- Representing lawyers in sanctions and contempt proceedings
- Counseling law firms and clients on privilege issues and assisting with privilege reviews
- Advising law firms and lawyers regarding legal and ethical issues that arise in client terminations and law firm departures and dissolutions
- Counseling outside and corporate counsel on conflicts of interest and preparing conflict waivers
- Preparing or revising law firm partnership agreements to incorporate new governance, partner compensation and risk management provisions
- Providing expert testimony and legal counsel on legal ethics, legal malpractice, and legal fee and billing issues

In 2013, *Missouri Lawyers Weekly* named Mike a 2014 Most Influential Lawyer as the "go-to legal ethics counsel in Missouri."

The litigation matters Mike handles often garner considerable media attention, particularly from the legal press. Mike has completed formal training in media relations, and often assists clients in preparing and implementing public relations strategies as part of work on high-visibility, high-stakes matters.

An experienced litigator, Mike has represented lawyers and other clients in state and federal trial and appellate courts. Prior to focusing his practice on professional ethics, Mike tried complex class action, employment, environmental, and product liability cases primarily for global consumer products, pharmaceutical and refining companies. Mike continues his involvement in such complex litigation matters, including serving as lead counsel, assisting in strategy preparation, or dealing with specific aspects related to legal ethics, sanction, or privilege issues.

Mike has also served as an expert witness – testifying primarily on legal ethics, lawyer malpractice, and legal billing matters – in cases pending in Missouri, Kansas and the District of Columbia.

## Teaching, Writing & Speaking

For the past decade, Mike has taught legal ethics and law firm practice as an adjunct professor at Washington University School of Law. He now also teaches professional responsibility as an adjunct professor at St. Louis University School of Law. He has presented on professional ethics more than 250 times, including for global corporations and law firms, throughout the United States as well as in the United Kingdom and Canada.

Mike's first book, *Introduction to Law Firm Practice*, was published in 2010. He has also contributed chapters to two other book-length publications, and published more than 70 articles in publications including the *ABA Journal*, *National Law Journal*, *For the Defense*, and the *Missouri Bar Journal*. Mike is a regular ethics columnist for the *National Law Journal*, ABA's *Litigation* and *Law Practice* magazines, and the *St. Louis Lawyer.* In 2013, the Burton Foundation recognized Mike with a Distinguished Legal Writing Award for an article on lawyers' ethical limitations on communications with the media.

Popular and legal publications frequently quote Mike as an expert on legal ethics and law firm practice issues. He has been interviewed more than 75 times, and has been quoted in the *New York Times*, *WSJ Law Blog*, *National Law Journal*, *ABA Journal, Illinois Bar Journal, Missouri Lawyers Weekly*, *St. Louis Post Dispatch*, and *St. Louis Business Journal*. In 2009, Mike appeared as a guest on *NPR's Talk of the Nation*.

## Bar Leadership

Mike has served on and chaired national, state, and local bar association committees focused on legal ethics and law firm practice issues. Notable posts include:

- Chair of the ABA Law Practice Division 2013-14; former Chair Elect, Vice Chair, and Secretary of the Division, which was previously called the ABA Law Practice Management Section
- Ethics columnist for *Litigation* magazine, 2011-present
- Ethics columnist for *Law Practice* magazine, 2014-present
- Ethics columnist for the *St. Louis Lawyer*, 2003-present; regular columnist, 2012-present
- Past member of the Technology Working Group for the ABA Commission on Ethics 20/20
- Past Chair of the Ethics & Technology Committee in the ABA Center Professional Responsibility

- Past Chair and current member of the Illinois State Bar Association's Standing Committee on Professional Conduct, which prepares ISBA Ethics Opinions
- Former member of the Missouri Bar's Ethics 2005 Committee, responsible for suggesting revisions to the Missouri Rules of Professional Conduct
- Former member of the Missouri Bar's Special Committee on Lawyer Advertising, responsible for suggesting revisions to Missouri Rules of Professional Conduct governing lawyer advertising
- Former hearing officer for Missouri lawyer discipline cases

## Background

After graduating first in his class from Washington University School of Law, Mike spent one year clerking for the Honorable Pasco M. Bowman, then Chief Judge of the U.S. Court of Appeals for the Eighth Circuit. Mike also earned a graduate certificate in Law Firm Management from George Washington University in 2006. The Hildebrandt Institute coordinated and provided instructors for this program.

Mike joined Armstrong Teasdale in 2011 from the national lawyer ethics and risk management practice of a large national law firm.

Prior to law school, Mike taught Latin and Ancient Greek and coached soccer and chess at Ladue Horton Watkins High School, a public school in St. Louis County.

## Significant Accomplishments

The nature of Mike's practice means that many of his greatest accomplishments involve claims that were not brought or problems that were avoided. Yet Mike has achieved a number of public professional successes, including:

- Obtaining dismissal of lawyer discipline charges from Missouri lawyer discipline hearing panels on multiple occasions
- Obtaining summary judgment, affirmed by the Missouri Court of Appeals for the Western District, on claims that a national law firm had alleged mishandling an adverse party's confidential information
- Obtaining summary judgment, affirmed by the U.S. Court of Appeals for the Eighth Circuit, on claims relating to an accounting firm's alleged breach of a HIPAA business associate agreement
- Arguing successfully to protect lawyer-clients from having more serious disciplinary sanctions imposed at hearings before the Missouri Supreme Court
- Helping bar applicants complete character and fitness reviews successfully and obtain licensure despite past criminal convictions and academic misconduct
- Serving as primary author of the Missouri Public Service Commission's ex parte communication rules, now codified as 4 Missouri Code of State Regulations 240-4.020

Mike has also been recognized as an authority on legal ethics issues, particularly on matters at the intersections of legal ethics and emerging technology and of legal ethics and law practice. His writings have appeared in numerous legal industry publications including the *National Law Journal*, *ABA Journal*, *For the Defense*, and *Law Practice.* Mike has presented on legal ethics in the United States, Canada, and

the United Kingdom, including at in-house programs for global law firms and corporations, and been quoted on the front page of the *New York Times* and by the *ABA Journal, Accounting Today, Lawyers USA, Illinois Bar Journal, Missouri Lawyers' Weekly* and *The National Law Journal*.

Heavily involved in national, state, and local bar activities relating to professional ethics, Mike is now Chair of the ABA Law Practice Division for 2013-14. The 16,000-member Law Practice Division hosts the ABA TECHSHOW® and is a major publisher and provider of continuing legal education on law firm practice issues relating to law firm marketing, finance, technology, and management. Mike previously worked on Division's Publishing and Education Boards.

Mike has also chaired the Illinois State Bar Association's Standing Committee on Professional Ethics, the Ethics & Technology Committee of the ABA Center for Professional Responsibility, and the Ethics Committee for the Law Practice Management Section. He is a past member of the Technology Task Force for the ABA Commission on Ethics 20/20, and also of the Missouri Bar's Ethics 2005 Committee.

AV® Peer Review Rate by Martindale-Hubbell.

Recipient of a 2013 Distinguished Legal Writing Award from the Burton Foundation.

"2014 Most Influential Lawyer*,*" *Missouri Lawyers Weekly*.

## Publications/Presentations

As previously noted, Mike has published a book and more than 60 articles, and has presented on professional ethics more than 250 times. His list of publications and presentations generally increases monthly. Some recent writing and speaking of note include:

- Author, *Online Pretrial PR – Protected but Risky*, National Law Journal (January 27, 2014)
- Author, *The Delicate Balance of Booting Judges*, National Law Journal (November 4, 2013)
- Author, *Hiding or Removing Harmful Social Media Posts*, St. Louis Lawyer (September 2013)
- Author, *Navigating* LinkedIn *Ethically and Effectively*, St. Louis Lawyer (July 2013)
- Author, *The Lying Client*, Litigation (Summer 2013)
- Speaker, *Social Media: The Impact on Lawyer Ethics, Malpractice, and Professionalism*, Missouri Bar (May 2013)
- Speaker, *Drafting and Implementing Ethical Law Firm Technology Policies*, American Law Institute-American Bar Association Webinar (September 2011)
- Speaker, *Ethics in the Wireless World*, Association of Legal Administrators Annual Conference (2011)
- Author, *Introduction to Law Firm Practice* (Book: ABA Law Practice 2010)
- Author, *Serious About Confidentiality*, National Law Journal (October 2010)
- Author, *12 Tips for Reducing Online Dangers and Liabilities*, Law Practice (July/August 2010)
- Author, *Law Firm Online Activity Policy*, The Professional Lawyer (2009)