IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| LISA M. MONTGOMERY,<br>Movant, | ) | |
| v. | ) | Case Number 12-8001-CV-W-GAF<br>Criminal Case # 05-6002-CR-SJ-GAF |
| UNITED STATES OF AMERICA,<br>Respondent. | ) | |

## ***STATEMENT OF JOHN P. O'CONNOR***

Now on this 2nd day of September, 2014 comes John P. O'Connor and does make his statement, as directed by the Court, "addressing Movant's allegations of ineffective assistance of counsel raised in her Section 2255 Motion" (Doc. 71, 77, 80).

## ***Introduction***

I was appointed to represent Lisa Montgomery on May 12, 2006. I advocated for the appointment of Second Counsel Fred Duchardt to the defense team because of his distinguished experience as a capital litigator, his outstanding litigation results, his loyalty to all the tasks in defending capital cases, and his total commitment to the clients he represents. I had the pleasure of working with Fred in another capital case in the District of Kansas where we avoided the death penalty for our client. When Fred was appointed on May 16, 2006, he joined Dave Owen, First Assistant at the Federal Public Defender's Office for the Western

District of Missouri,[1] and me. Several members of Mr. Owen's staff also joined the team, including investigators and IT support. We had complete cooperation from Ray Conrad, appointed Public Defender for the Western District of Missouri.[2] All of us collaborated on the defense of Lisa Montgomery.

As lead counsel, I take full responsibility for the tactics employed and the decisions made with regard to the defense of Mrs. Montgomery.

Mrs. Montgomery's current counsel has levied several allegations against her trial defense team. It was my opinion then, and it is my opinion today after re-reviewing the record, that the facts and the law support a finding that our representation was effective. I address the accusations raised in Mrs. Montgomery's Petition for Collateral Relief to Vacate, Set Aside, or Correct Sentence and for a New Trial as follows:

<u>1. Failure to spend the appropriate amount of time preparing for trial</u>

It appears Mrs. Montgomery's allegation that I failed to spend the appropriate amount of time on the case is based on the billing records submitted to the Court. (Doc. 71, p. 59). I worked many more hours on Mrs. Montgomery's case than are indicated in the records. From my experience in 31 years of litigating criminal cases, I was fully prepared to defend Mrs. Montgomery when her trial began in October 2006, as was the rest of the defense team.

[1] Mr. Owen has since retired from the position.
[2] Mr. Conrad has since retired from the position.

2. Failure to recognize Mrs. Montgomery had trust issues with men

It is a misstatement to say that I did not realize Lisa Montgomery's trust issues. In fact, I recognized Lisa's trust issues immediately and took measures to build rapport with her.

Stephanie Elliot and Ron Ninemire, investigators with the Federal Public Defender's Office, had been involved with Lisa well before my appointment. It was my perception in talking with them that they were able to communicate with Lisa and build a solid rapport and trust with her.

Fred also spent countless hours with Lisa building rapport. Thankfully, we had the assistance of Fred's wife, who, along with Fred, was able to build rapport with Lisa.

Over the months that we represented Lisa I, too, believe that I was able to build a relationship and gain Lisa's trust before the trial began. One of the ways that I was able to express my care for her defense was by having members of my church visit with her, pray with her, and provide her with new clothes for each day of her trial. It was easy for anyone to see Lisa did not have the appropriate attire for trial. I confess, however, that I did not know the first thing about women's fashion. I provided the expenses necessary for a group of women from my church to properly outfit Lisa. These acts seemed to uplift Lisa, and they helped Lisa to

become more comfortable with her self-image. Through all of the mental issues Lisa had, I genuinely believe she began to feel good about herself.

3. Failure to take issue with Rylan Duchardt's role in the defense team

It is my belief that Rylan's role became very important to not only our communication with Lisa, but also in gaining her trust with the defense team. I take great exception to the belief that Rylan's role was anything but meaningful, purposeful, and in the best interest of defending Lisa.

4. Failure to recognize Mrs. Montgomery's appearance as "cold, flat, and remorseless" at trial

My recollection of Lisa at trial was that she was fully engaged. She often passed notes to Fred and others raising questions about what witnesses were saying. One instance in particular illustrates her level of engagement. Dr. Mary Case, a pathologist, testified about a mark that Dr. Case claimed was sustained during the offense. Lisa grew so emotional that we had to ask the Court for a recess. During the recess, Dr. Case went back to see the mark on Lisa, which caused her (Dr. Case) to recant her testimony about the mark after the recess. I believe this single instance – pleading with us to stop the trial in the middle of testimony – was a strong gauge on Lisa's involvement in her own trial. I did not see her to be cold or remorseless in front of the jury. Nothing about her demeanor in front of the jury raised concerns for me, other than her emotional state at the time of Dr. Case's testimony.

5. Over reliance on pseudocyesis

It was my belief then, and it is my belief now in hindsight, that pseudocyesis was the best defense to put forth on Mrs. Montgomery's behalf.

6. Failure by attempting to portray Mrs. Montgomery as a "good parent"

It was our duty and responsibility to put on the evidence about Mrs. Montgomery that was relevant and material to her defense. With assistance from the various personnel on the staff including the investigators, IT support, and mitigation specialist, we put forth, in my opinion, the best testimony available for Mrs. Montgomery as it relates to the issues the motion raises on this point.

7. Abandoning the "Tommy Defense"

In all criminal cases there becomes evidence or testimony that cannot be overcome, or, the belief that highlighting evidence only draws more attention to it. We took the position of not drawing attention to it. In my opinion, that was the best decision at the time in dealing with the issue of the Tommy Defense.

8. Failure by bolstering the Government's witnesses' testimony

One could argue that Miguel Laboy's testimony was bolstered. However, in light of the type of case that this was, the horrific nature of the crime, the photographs at the scene, the autopsy photo, and all of the forensic evidence surrounding the victim, Laboy's testimony was inconsequential. It is my opinion that the testimony ultimately had no effect on the jury's decision.

9. Failure to seek exclusion of Mary Case's testimony

Mrs. Montgomery's current counsel broadly complains that I was "often bringing out information damaging to Mrs. Montgomery." (Doc. 71, p. 90). In defending criminal cases, decisions are made as to what is most important to defending a client.

We knew pathologist Mary Case was going to testify that the presence of blood on the bottoms of the victim's feet proved that the victim planted her own feet into her own blood at a point in time after the cutting of her abdomen. Dr. Case further testified that the blood on the bottoms of the victim's feet could only be explained by the victim being revived from her strangulation by the cutting.

It was my belief then, and it is my belief now, that Dr. Case's testimony would have been admitted at trial. It was relevant and material to the case; therefore, merely objecting would serve no purpose. I did object to Prosecutor Matt Whitworth's foundation regarding Dr. Case's testimony, but the Court permitted Whitworth to correct his foundation.

10. Expert Witnesses

As lead counsel, in my delegation of duties to the lawyers on the case, it was my belief that the area of the expert witnesses and testimony was best suited for Fred Duchardt. Fred has extensive background and experience in capital litigation, including cases where not guilty by reason of insanity was the defense. I deferred

to Fred as it relates to the handling of the mental defense, but also did take and do take full responsibility for the defense that was put forward. I have great respect for Fred's abilities. I believe we made the right decisions as it relates to the defense of not guilty by reason of insanity.

11. Failure to prepare Dr. Ramachadan for cross-examination

Dr. Ramachadan was fully prepared for his direct and cross-examination.

12. Failure to prepare for cross-examining government witnesses

With the delegation of duties among three attorneys, Mr. Duchardt, Mr. Owen, and myself, I believe that all were fully prepared for the cross examination of government witnesses.

13. Failure to seek exclusion of the 911 tape

The 911 tape was not used in the guilt stage of litigation, when it clearly could have been. It was used in the penalty stage. Moreover, the tape was relevant and material under the law. *See* 18 U.S.C. 3593(c). The tape was prejudicial, but all evidence that is inculpatory to a defendant is prejudicial. That tape was coming in with or without objection.

14. Failure to preserve the issue of Judy Clarke's removal for appeal

That issue was not preserved for appeal. The Court vested in me the responsibility to defend Lisa Montgomery. It was my opinion that Judy Clarke's removal from the case was no longer an issue. I do recall Fred spending a

significant amount of time researching the issue and determining that it was not an issue.

15. Ineffective during jury selection

The Court allowed a jury consultant in Mrs. Montgomery's case. Fred and I both had previous experience with Dr. Steven Mandracchia, a psychologist at Western Missouri Mental Health**,** and chose him as our consultant**.** Anyone who has worked in the court system in Jackson County or the surrounding areas is aware of Dr. Mandracchia's abilities and knowledge in dealing with human beings. Dr. Mandracchia was present during the entire jury selection process. He was provided the jury questionnaires and he was in court to listen to responses given to the defense and prosecution. He was fully engaged with us during recesses and during the jury selection.

Further, I have worked on other cases with Fred. He does an outstanding and stellar job of selecting jurors, and he did so in this case. To say otherwise I take great exception.

16. Failure by ignoring plea negotiations

Given the horrific nature of the crime, and the decision of the United States Attorney to seek the death penalty, the case was going to be decided by a jury. Certainly we tried to negotiate this case to something other than the death penalty but the Government was never interested in those negotiations.

## ***Conclusion***

I believe that the foregoing answers the ineffective assistance of counsel allegations made in the Petition for Collateral Relief to Vacate, Set Aside, or Correct Sentence and for a New Trial submitted on Mrs. Montgomery's behalf by Current Counsel for her (Doc. 71). I do hereby swear that the foregoing is true and correct to the best of my knowledge and belief.

/s/ John P. O'Connor
JOHN P. O'CONNOR