FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF MISSOURI
818 GRAND AVENUE
SUITE 300
KANSAS CITY, MISSOURI 64106

RAYMOND C. CONRAD, JR.
FEDERAL PUBLIC DEFENDER

(816) 471-8282
(FAX): (816) 471-8008
(WEB): www.fpdmow.org

May 2, 2006

Richard Burr
Capital Resource Counsel

Dear Dick,

I am extremely sorry to see you have become skeptical concerning the recruitment of someone else to join in the defense of Lisa Montgomery. This is a very difficult situation indeed. However, it saddens me deeply that your opinion is based on half-truths and innuendo. I intended to provide you a response to Susan's letter, but not engage in the he said/she said exercise. However, in light of your opinion being based on the half-truths and innuendo I will touch on those topics I feel most strongly about.

First, I have never, repeat NEVER, felt the need to control this case. I know that capital defense is different than the average criminal case. Knowing this, and knowing I have never defended a capital case before, it has always been my goal to learn as much as possible. The <u>only</u> control I have exercised is control over the budget as administered by the Federal Public Defender office. Not once have I denied any request for money, not once. I have never refused to pay any expense requested. Susan alludes to an expense for medical records for Mary Coleman and a statement, attributed to Stephanie, that I refused to authorize the expenditure to have those records forwarded to this office. I have questioned Stephanie concerning this alleged refusal and she denies ever telling Susan I have ordered her to not obtain those records. In fact, she is extremely puzzled why Susan would even claim such a thing as I have never given her any such order. Stephanie reported to me the invoices for two separate records requests came from the same records processing company. One bill was for $300.00 and the other for $700.00. Stephanie made the suggestion she call the company to remind them that Lisa Montgomery was indigent and would they work with us on the price. Stephanie informed Susan of this and Susan remarked that was a very good idea.

The only expense I have declined to pay is the stipend for a summer intern that Judy Clarke wanted to hire. Ray Conrad hired Stephanie Elliott to operate as a paralegal and do the jobs for which Judy claims the intern was needed. Now, before it appears that this is a unilateral decision on my part and interpreted as an exercise in control of the case, Susan did not want the

intern involved in this case either. However, I was not willing to spend money on a salary which was not necessary. In the same team meeting when Judy placed the idea of hiring an intern on the table, I informed the whole team that all the money necessary for the hiring of experts (even outrageously expensive experts) was available. Many times I have expressed the statement that Ray and I were willing to spend every dime necessary for the defense of Lisa Montgomery but not a nickel more.

Susan complains as lead counsel she should be control of the budget. It should not have to be pointed out to anyone, especially you Dick, that someone who is not employed by the Federal Public Defender can not administer or be in control of that budget. The reasons are too obvious and too many to enumerate here.

Susan's other complaint concerning my alleged control of the case revolves around the events of Judy's removal from the case. Problems with the "team concept" arose early in the involvement with Judy Clarke. Shortly after her entry in the case, Susan, Judy and I met to discuss the case. During this meeting, Judy, as she herself puts it, took a baseball bat to my head. We had just purchased CASEMAP, a computer program that Susan thought would be very beneficial for the case. Enough copies of the program were purchased for everyone to use. Included within this program is the ability to prioritize items. As I was putting together various portions of the program for demonstration to the team, I utilized the priority function to highlight its ability. Judy just started lambasting that I did not have the experience to establish priority to anything. It was a very ugly scene. Now, perhaps I should not have taken that attack personally but my intelligence was not only questioned but dismissed.

Shortly afer that, the attacks commenced on Ron Ninemire. Susan seemed to be comfortable with all of this until Phil Thompson was attacked. Then when Susan was attacked it took a short two weeks for her to call a "local team" meeting at her house for the purpose of discussing accepting the last of the many offers/threats by Judy to leave the case. During this meeting the pros and cons were discussed, consensus was reached and a vote was taken by all 5 persons present: Ron Ninemire, Stephanie Elliott, Phil Thompson, Susan Hunt and myself. The vote was whether to keep Judy in or out of the case. It was a <u>unanimous vote to accept Judy's offer to withdraw</u>. It was felt the defense of Lisa Montgomery would crumble on the eve of trial and therefore it was in the best interest of Lisa Montgomery to accept Judy's withdrawal from the case now while there was still time to repair any damage.

You are aware of the meeting between Judy, Susan and myself where the topic of Judy withdrawing from the case was discussed. Susan did say she wanted to ponder the decision overnight and when asked I deferred to her role as lead counsel. At the conclusion of this meeting Judy made some not so veiled threats to pull the experts we had already engaged. After Judy left Susan's house, Susan was incensed and made the decision then and there to terminate Judy's involvement with the case. The next day, at a meeting with the judge, both Susan and I expressed our problems concerning the continued involvement of Judy Clarke. At no time did Susan voice any indecision or doubt. Any claim of "no time" before the judge called CCA and entered the order is spurious. This judge would have taken the time to discuss and explore fully any doubt, especially any doubt Susan may have had as she is lead counsel.

Second, I have never claimed that all the problems are centered on Judy Clarke and the abusive manner in which she treated me and Ron Ninemire. But, I was not and still am not willing to continue to be abused and will not tolerate any employee of the Federal Public Defender being abused the way Ron Ninemire was abused. You, yourself Dick, have acknowledged that Judy can be difficult and inflexible in the way she treats people. I acknowledge and respect Judy's abilities in the arena of capital defense, but that does not grant her a right or license to be abusive to the team members. Perhaps you should inquire from other districts where Judy went in and "steam rolled" local counsel. I have and we are not the only ones who have experienced this form of treatment. Deb Garvey even admitted to Ron Ninemire they have the tendency to enter into a case and overpower local counsel.

For quite some time I have pondered why Judy felt the need to single Ron and I out for such treatment. Neither one of us has tried to offend anyone. Both of us are professionals and as such, are capable of putting our personal feelings and prejudices aside in an effort to provide the client with the best possible defense of their case. However, it became very clear the root of the problem with Judy was one of gender bias. This was confirmed by the "ball buster" tag to Deb Garvey's involvement in the consultation with Judith Herman and her email address. However, even more troubling was the report of Judy's response to an email I sent out concerning the making of appointments at CCA. My email is attached. Stephanie, Susan and Judy met at Susan's house en route to the FBI office for record review. When Stephanie arrived Susan informed Stephanie that Judy was very angry about the email and felt I had attacked Deb Garvey. Her response consisted of a screaming, finger pointing outburst at Stephanie Elliott wherein she made the statement: "Tell your fucking friend I am mad at him. `Him with his little dick, just like all men are." She kept repeating this statement spitting on Stephanie and shaking her finger in her face until Susan finally got her calmed down.

Third, concerning my continued contact and emailing Judy Shaughnessy, Lisa's mother. There are a number of reasons I felt it necessary to maintain contact with her. Among those is the fact I have been the one constant in this case for her. The contact was innocuous and that email and her response is also attached. An additional reason for maintaining contact is the fact Lisa has always wanted the team members to be in close contact with her immediate family, including her mother. They are central to her grasp of life.

Finally, understanding that Judy, Susan and Holly have relegated me and the office of the Federal Public Defender to scapegoat for all the problems in this case, Ray Conrad and I visited the judge yesterday and in the supreme interest of Lisa Montgomery's defense requested our office be relieved from representation of Lisa Montgomery. The judge expressed complete disbelief the relationship between Susan and myself has deteriorated to this point. A meeting between the judge, Susan, Ray and myself is scheduled for tomorrow to further discuss this situation. Our position still remains: In the best interest of Lisa Montgomery's defense our office should be relieved from the case and Susan can request whoever she wants as her co-counsel.

Sincerely,

David L. Owen, Jr.