# LOGAN & PETERSON, PC

FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY

WILLIAM S. LOGAN, MD
STEPHEN E. PETERSON, MD

☑ 428 WEST 42ND STREET
KANSAS CITY, MISSOURI 64111
TELEPHONE: (816) 842-2500
FAX: (816) 842-9980

☐ 231 S. BEMISTON
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX: (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

March 7, 2005

Susan M. Hunt
Attorney at Law
Federal Public Defenders
U.S. District Court Western Missouri
818 Grand Blvd.
Suite 300
Kansas City, Missouri 64106
Telephone: 816-471-7979
Or 816-471-8282
Fax: 816-471-8008

**Re: <u>Lisa M. Montgomery</u>**
**(Dob: 2/27/68; SSN: 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)**

Dear Ms. Hunt:

I am writing to convey my findings concerning Ms. Montgomery who I examined for one hour on March 6, 2005 at C.C.A. in Leavenworth, Kansas. Concern was expressed by you and Mr. Ninemire as well as by Dr. Hutchinson concerning Ms. Montgomery's depression and potential for suicide. Ms. Montgomery does have a prior history of an overdose in her early teens. She has been depressed for some time. Her depression has increased in severity since her incarceration in December 2004. She has chronic suicidal thoughts, which vary in intensity on a daily basis. Her sleep is disturbed. She has been experiencing intrusive recollections of a traumatic event. She also reports auditory and visual hallucinations. Some of the auditory hallucinations are derogatory in nature.

Ms. Montgomery has not responded to medications prescribed by Dr. McCandless, the psychiatrist for C.C.A. On Thursday, March 3, 2005, a room search revealed a suicide (will) letter, and six Trazodone Ms. Montgomery had hoarded for an overdose. Ms. Montgomery indicated that

while medication was initially helpful, the medication seemed to lose its effectiveness and actually seemed to worsen her intrusive traumatic memories and difficulty sleeping. This past week Ms. Montgomery's suicidal thoughts intensified in response particularly to adverse information conveyed by two of her children who visited on Tuesday. Ms. Montgomery shared that nurses and officers did not actively monitor her medication complience, particularly on the evening shift. She has been maintained in isolation status with no opportunity to go outside since her incarceration. Other than communication and visits from her defense team and evaluations, she has had no counseling, and has a weak social support system. Currently, Ms. Montgomery is on a 15-minute suicide watch, in a cell with a gown, mattress and blanket. She has been experiencing increased depression, crying episodes, feelings of helplessness and hopelessness, and has no plans for a future. She has engaged in self-abusive behavior out of frustration, and fears being placed in restraints. Restraints could be detrimental due to her prior abuse history. Isolation, while providing some measure of protection, also causes increased depressive rumination.

Ms. Montgomery's symptoms are consistent with a Major Depressive Disorder with psychotic features, complicated by post-traumatic symptoms. She is experiencing strong suicidal thoughts, and is a danger to herself at this point. It is likely Ms. Montgomery will be a chronic risk for suicide to varying degrees through her trial and sentencing, which may be some time away.

It is my recommendation that Ms. Montgomery be hospitalized for the treatment of her depression. Her psychotic thoughts (derogatory auditory hallucinations) increase her risk for suicide. Hospitalization is indicated, and is the usual and customary treatment for those with a Major depressive Disorder with psychotic features and those who are at significant risk for suicidal behavior.

My recommendation is that Ms. Montgomery be transferred for treatment to a Federal Medical center. Hospital treatment at such a facility would offer a number of advantages for treatment over her current placement at C.C.A. These would include the following:

1. Daily contact with psychologists and psychiatrists.

First, daily counseling is necessary in this case to monitor the fluctuating course of Ms. Montgomery's suicidal impulses and her reaction to external events. This has proven to be difficult at C.C.A. (outpatient setting). Second, consistent counseling could establish a better alliance with Ms. Montgomery for treatment, and increase her resolve not to act on suicidal impulses. (Her treatment relationship with C.C.A. staff is poor.) Third, psychotherapy is of benefit in treating depression, and increases the effect of psychotropic medication.

2. Ms. Montgomery needs a more aggressive and comprehensive medication regimen to address her symptoms. This is particularly important in the early stages of treatment when the patient is most at risk. This type of monitoring and medication adjustment in a complicated case cannot be done successfully on an outpatient basis by a visiting contract psychiatrist in a correctional facility. This is not a reflection on the competence of the psychiatrist, but instead a natural result of the logistical difficulties involved.

3. A psychiatric inpatient unit is designed to provide a range of restrictions to monitor suicidal behavior. An inpatient psychiatric unit is capable of providing ongoing verbal monitoring and observation of the individual, with adjustments in the level of restrictions needed, as well as activities to prevent withdrawal and isolation, which can increase depressive and suicidal thoughts. In a correctional facility there would be a greater need to rely on isolation, restraints, sedating medication, and prolonged suicide precautions, which will have detrimental affects if prolonged indefinitely. While a correctional facility can prevent suicide attempts, a psychiatric unit not only provides safety, but a more intensive focus on treating depression than a correctional facility can provide.

4. A psychiatric facility also has more staff, and will be better able to provide monitoring of the administration of medication that will make hoarding medication less likely. A psychiatric facility also has a larger formulary and more experience with providing medicine via alternate routes (liquid, mixed with food, injection.)

5. A federal medical center facility will place Ms. Montgomery in a setting where there will be less notoriety, and provide a buffer from both the external and internal attention focused on Ms. Montgomery due to the nature of the charges against her.

In conclusion, it is my opinion and recommendation that a transfer to a Federal Medical Center inpatient psychiatric unit would be the most appropriate medical response to address Ms. Montgomery's depression, and would provide the best treatment to both adequately address her depression and ensure her continued safety from self-harm.

Sincerely,

William S. Logan, M.D.

William S. Logan, M.D.
Diplomate, American Board of Psychiatry and Neurology 1982
Diplomate, American Board of Forensic Psychiatry 1987
Subspecialty in Forensic Psychiatry by the
American Board of Psychiatry and Neurology 1994 and 2003

WSL/sg