**DATE OF BIRTH:** *10/26/66* **SOCIAL SECURITY #:** *450615950* **EDUCATION:** *9th grade*

**IF INCOMPETENT, COUNTY & DATE OF COMMITMENT:** *Franklin County September 17, 2004*

**OCCUPATION:** *None* **TYPE OF RELEASE:** *Discharge (Return to court)*

**RELEASE DATE:** 3/12/05 **RELEASED TO:** *Franklin County Sheriff's Office*

**RELATIONSHIP:** *None* **ADDRESS:** *Apalachicola, Florida*

**ADMISSION DATE:** *11/09/04* **REASON FOR ADMISSION AND INITIAL CONDITION:** *Mr. Alexander was adjudicated Incompetent To Proceed (on charges of): Felony Fleeing Or Attempting To elude Officer; Aggravated Assault On Law Enforcement Officer; Attaching Improper License Plate*

**ADMISSION MENTAL AND PHYSICAL DIAGNOSIS:**

AXIS I: *296.89 R/O Bipolar II Disorder, Depressed with Psychotic Features*
*305.90 Polysubstance Abuse By History*

AXIS II: *799.9 Deferred*

AXIS III: *Asthma upon exertion*

AXIS IV: *Incarceration*

AXIS V: *Current G.A.F.- 45*

**SUMMARY OF HOSPITALIZATION:**

A. Psychiatric: *Upon admission, Mr. Alexander presented as alert and oriented. Mr. Alexander verbalized statements which appeared to be delusional in nature. Mr. Alexander exhibited a hostile mood and expressed apparent resentmnt and disagreement with the issue of any need for psychotropic medication and involuntary hospitalization. He refused to consent to receiving psychotropic medications. Throughout residency, Mr. Alexander exhibited episodes of agitation, including expressions of verbal hostilities toward staff and refusal to comply with staff requests and instructions. Mr. Alexander continued to verbalize statements of appeared to be delusional in nature. Mr. Alexander persisted in claims of working "in theIntelligence Community"-(specifically, "Christian Intelligence"). Mr. Alexander participated in scheduled programs and activities. Throughout residency, he exhibited eagerness to attain discharge. Throughout residency, Mr. Alexander participated in the Law Library program, working on his legal case. Throughout residency, Mr. Alexander maintained contact with his family, in Texas.*

**INSTRUCTIONS:** Complete within 15 days following release by the Attending Physician/Psychiatrist.

DISTRIBUTION: Original--Master record
Copy--Mental Health Clinic

**ADDRESSOGRAPH:**

**Alexander, Kenneth**

**115964 Unit 23 D**

***** CONFIDENTIAL & PRIVILEGED INFORMATION *** FOR PROFESSIONAL USE ONLY *****
***FLORIDA STATE HOSPITAL, CHATTAHOOCHEE, FL 32324***

COMPETENCY EVALUATION
Re: Kenneth Alexander, 115 964
Date of Evaluation: January 31, 2005

## I. IDENTIFYING DATA:

Kenneth Alexander, 115 964, is a thirty-eight year old (DOB: October 26, 1966), divorced, white male who reported a ninth grade education. He was committed to the Florida Department of Children and Families on September 17, 2004, by the Honorable Janet E. Ferris, Circuit Judge in the Circuit Court of the Second Judicial Circuit, in and for Franklin County, Florida, as Incompetent to Proceed. He was charged with Felony Fleeing or Attempting to Allude Officer (F2), Aggravated Assault on Law Enforcement Officer (F2), and Attaching Improper License Plate (M2), case number 04-000065CFMA, allegedly occurring May 7, 2004. Mr. Alexander was admitted to the Forensic Service of Florida State Hospital on November 9, 2004.

## II. PROCEDURES:

Mr. Alexander was evaluated to determine whether he meets the criteria for competency to proceed, as specified in Florida Statute 916.13 and Rule 3.211 of the Florida Rules of Criminal Procedure. Conclusions were based on interviews with Mr. Alexander, observations, and staff interactions with him, and a review of his records. These records contain documents received from the committing court concerning the alleged offenses, information about his behavioral status and treatment progress since admission to this facility. Mr. Alexander was advised that the results of this evaluation were not confidential.

## III. RELEVANT HISTORY:

**A. Background Information:** Mr. Alexander was a reluctant historian. Mr. Alexander's background information was provided by Mr. Alexander and his accompanying records. Mr. Alexander reported that he was born Lackland Air Force Base in San Antonio, Texas and raised in a military family by his parents mostly in Texas. He noted that he had lived in Germany and California at times. He reported that he had one older sister. Mr. Alexander was uncertain if his mother experienced any problems during her pregnancy with him. He denied any developmental problems or delays. He denied being exposed to violence or substance abuse in his home during childhood. He also denied being abused in any way as a child. He reported that he thought he completed ninth grade as he left school to go to work. He indicated that he failed every grade but was still promoted to the next grade. He reported that he had been seen by a doctor as a young child and diagnosed with ADHD. Mr. Alexander reported having worked in construction on and off for twenty years. He also reported that he did consulting and analytical work but initially refused to discuss what type work with this. He later disclosed that this work was with various government intelligence

Confidential & Priviledged Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324

agencies. He denied any history of military service or having received any disability income. He at first disclosed that he had no current medical problems but acknowledged having received an inhaler to assist with breathing when he exerts himself. Mr. Alexander denied any history of head injury but reported that he had loss consciousness a few times fighting. Mr. Alexander reported he was married the first time in 1985 and had a subsequent divorce approximately five years later. This marriage produced on daughter who is now eighteen and has a child. His second marriage also ended in divorce. He reported that from this marriage he has a twelve year old son and an eleven year old daughter. Mr. Alexander was unwilling to discuss any of his religious interests. He was also unwilling to discuss any history of arrests or details related to his two incarcerations in a Texas prison. He was able to identify his current charges. Mr. Alexander was also unwilling to discuss his use of substances.

Regarding his mental illness history, Mr. Alexander reported that he first began receiving mental health treatment around age sixteen when he was admitted to a hospital in Texas following a suicide threat. He reported that another incident was when he held a razor blade to his wrists and during a scuffle while the sheriff was trying to take the razor from him he got cut. Mr. Alexander reported that he had been admitted to hospitals in Texas between six to ten times due to issues related to depression and dependency. He indicated that he was unwilling to discuss any details. He had received outpatient care at MHMR at Burney, Texas, on and off for a couple of years. He reported that his last suicide attempt which was a threat to harm himself occurred approximately fifteen years ago. He identified his sister as the only relative with mental illness problems.

Accompanying records indicate that Mr. Alexander was arrested and charged with Reckless Driving and Felony Fleeing and Attempting to Allude and Aggravated Assault on Law Enforcement Officer with Deadly Weapon following an incident occurring May 7, 2004. Officers were advised that a person wanted out of Texas they'd been looking for were at a location and they went to investigate. They were advised at this location of the type of vehicle Mr. Alexander drove. After leaving the location they drove pass a vehicle fitting the description and attempted to stop the vehicle. The vehicle appeared to stop and as an officer attempted to get out the vehicle took off at a high rate of speed. The vehicle was followed by the officers and noted to reach speeds of up to 100 miles an hour. Another officer in another vehicle attempted to block the intersection and eventually Mr. Alexander's car came to a stop. The officer approached with his side arm drawn yelling for Mr. Alexander to get out of the vehicle. Mr. Alexander accelerated toward the officer and the officer jumped back in front of his patrol car to protect himself from being struck. The suspect ran off the road into a ditch approximately three hundred yards away. Mr. Alexander was apprehended at that time and transported to the jail for booking.

Confidential & Priviledged
Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324

**B. Pre-Commitment Information:** On August 11, 2004, Mr. Alexander was evaluated by Terence Leland, Ph.D. During this interview Mr. Alexander was alert and fully oriented. He denied having or having had any mental illness and expressed his opposition to any attempt to use mental state as a defense in his current case. He appeared cooperative and forthright. He was quickly noted to be grossly delusional with a system of grandiose and persecutory beliefs. He apparently believed that due to inadvertent disclosure of secrete information he became the target of various assassination attempts by the Mexican Mafia, Catholics and Democrats among others. He presented with an extremely tense and serious demeanor. He was guarded at times and mildly inappropriate in his emotional expressions. His thinking was organized but sometimes loosening of associations was noted. His speech was slightly pressured. He reported eaves dropping devices in the room where the interview was being conducted. With regards to competency Dr. Leland noted that Mr. Alexander was aware of his formal charges and appeared to have factual understanding of the possible penalties and adversarial nature of the legal process. He however lacked the ability to disclose pertinent facts to attorney, to testify relevantly or to assist in planning a defense consistent with the reality of the circumstances. He was considered to have questionable ability to manifest appropriate courtroom behavior. Dr. Leland opined that Mr. Alexander was incompetent to proceed and met the criteria for involuntary hospitalization. Dr. Leland also opined that Mr. Alexander was legally insane at the time of his arrest for his current charges.

On September 8, 2004, Mr. Alexander was evaluated by James G. Brown, Ph.D. During this interview Mr. Alexander presented in standard jail attire, appeared to be in good health and his hygiene was appropriate. His attitude was cooperative but noted to be defensive. His intelligence estimate was found to be Average based on the vocabulary and comprehension subsets of the Wechsler Adult Intelligence Scale, Third Edition. His ability to sustain attention was markedly impaired by delusional thoughts and apparent inability to distinguish essential from non-essential details in communicating information. His judgment and insight into his irrational thinking was poor. He denied auditory hallucinations, and was vague in his suggestion that he had a history of visual hallucinations. He claimed to have the gift of prophesy. With regards to competency he demonstrated that he understood the adversary nature of the criminal proceedings, the role of the judge, jury, prosecuting attorney, and defense counsel. He did not demonstrate the capacity for sustained attention for the duration of the trial and his delusional thinking would markedly impair his ability to assist in his own defense. His obsessive delusional preoccupations would likely interfere with his capacity to testify, answer questions clearly, and maintain appropriate courtroom behavior. Dr. Brown opined that Mr. Alexander was incompetent to proceed and met the criteria for involuntary commitment. Dr. Brown also opined that Mr. Alexander was probably insane at the time of his arrest on the instant offenses.

Confidential & Priviledged
Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324

## IV. COURSE OF HOSPITALIZATION:

**A. Admission Findings:** At the time of admission the initial diagnostic impression was R/O Bipolar II Disorder, Depression with Psychotic Features. Mr. Alexander was interviewed on November 9, 2004, for the purpose of an initial clinical assessment. Mr. Alexander came willingly to the interview. He was dressed appropriately and his personal hygiene and grooming were adequate. He was oriented to person, place and time. He was aware that he was admitted to this facility due to being adjudicated Incompetent to Proceed. He insisted that he was not mentally ill. He denied any auditory or visual hallucinations. He acknowledged a history of depressed mood and racing thoughts. He indicated that other people attributed his reaction to situations as mood swings. He denied any paranoid ideations but later disclosed that he believed that people were putting thoughts in his head and also were broadcasting these thoughts. He somehow connected this to being an election year. He also disclosed that he has been involved and is a part of the intelligence community for the government. However he was unwilling to disclose any further details. He reported no problems with sleeping, eating, energy or motivation. His psychomotor behavior was within normal limits. However his social behavior was guarded and suspicious. His observed mood was anxious and tense while his affect was serious. He denied any current thoughts about self-injury or suicide. His memory functions were grossly intact and likely contaminated by delusional material. His attention and concentration were adequate. His judgment and insight into his mental illness problem was impaired. His ability to abstract and generalize was impaired. Mr. Alexander's general intellectual functioning was considered to be in the Average to High Average range based on verbal behavior.

**B. Response to Treatment:** Three days after admission Mr. Alexander was placed on restrictions due to making a comment to a peer about escaping. He explained that he was joking at the time. Later during his first month of hospitalization he was also involved in an altercation with a peer. During the second month of hospitalization Mr. Alexander was noted to be easily over aroused, exhibiting irritability and or hostility when provided instructions or given information of which he disapproved. He also continued to express delusional ideas associated with his legal situation. He was again involved in an altercation with a peer. In the past month staff has described Mr. Alexander's behavior as generally calm and cooperative. However, he was verbally abusive to a staff member when the staff member gave him instructions to which he complied. Pod staff also noted that Mr. Alexander was over heard making a threat to harm the evaluator/writer if he were not found competent after the competency evaluation was done. Mr. Alexander has been recently referred for Freedom of Movement Level I due to his overall cooperation and participation in activities. His involvement in therapeutic activities have included attending recreation, computer, and weight lifting classes, as well as attending competency training sessions. Mr.

Confidential & Privileged
Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324

Alexander recently began receiving psychotropic medication and signed consent for the same on January 24, 2005. This medication is Lithium 600 mgs. daily.

His current DSM-IV Multiaxial Assessment is as follows:

| | |
|---|---|
| Axis I: | 296.89 Bipolar II Disorder, Depressed, Psychotic |
| Axis II: | V71.09 No Diagnosis |
| Axis III: | Hepatitis C Antibody Positive, History; Mass above right testes; Asthma, History; S/P Removal right benign breast mass. |
| Axis IV: | Incarceration |
| Axis V: | Current GAF = 45 |

**C. Current Mental Status:** Mr. Alexander was interviewed on January 31, 2005 for the purpose of a mental status examination and competency evaluation. He was dressed appropriately and manifested adequate levels of personal hygiene and grooming. Mr. Alexander cooperated with the examination process and interacted well with the examiner. He was oriented to person, place, time and situation. His recent and remote memory functions were grossly intact. He was able to concentrate adequately on the task at hand and did not become uncomfortable with the rather intensive and long evaluation process. He presented his thoughts in a goal directed manner and his thinking was reality based. He denied any mental health problems and indicated that the medication was helping him to feel "mellow". When asked about a prior delusional account of events leading up to his arrest he responded "I feel a lot better Dr. Taylor. I'm not thinking about those issues anymore." He described his mood as "mellow" and his observed mood an affect were within normal limits.

## V. COMPETENCY ISSUES:

**A. Appreciation of Legal Status:** Mr. Alexander displayed a good appreciation of his charges stating that he was charged with "Aggravated Assault with Deadly Weapon, Fleeing/Eluding, Illegal Car Tag or Registration Attached to Vehicle." He identified the former two as second degree felonies and the latter as a misdemeanor. He spontaneously noted that the maximum sentence for a second degree felony was "both carry up to fifteen years." He identified alternative sentences to incarceration as "community supervision, probation, and time served." Mr. Alexander was able to provide adequate descriptions for the roles of key courtroom personnel such as the judge, jury, state attorney and public defender. He identified the possible pleas as "Guilty, Not Guilty, No Contest, and Not Guilty by Reason of Insanity" and provided the following respective definitions "they did it", "you're not guilty", "you're not contesting the state's evidence, allows you to preserve the right to appeal", "It's like an admission of guilt but didn't find a culpable state of mind." Mr. Alexander explained that Plea Bargain was "an agreement between the defendant and state which is negotiated by the defendant's attorney and is non binding if refused by the Court, can be retracted and proceed to trial." Mr. Alexander understood that the defendant would be required


Confidential & Privileged Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324
Case 4:12-cv-08001-GAF Document 157-4 Filed 09/03/15 Page 6 of 8

to plead Guilty or No Contest in such an arrangement and that the defendant could refuse deals presented to him. Mr. Alexander believed that if a defendant accepted a plea bargain that the defendant would waive his right to appeal but if he pleaded No Contest in this arrangement he could preserve the right to appeal. Mr. Alexander was able to purpose three hypothetical plea bargain options and was able to select the option that would be in his best interest. In sum, Mr. Alexander was considered to have an adequate appreciation of his legal status.

**B. Ability to Participate:** Mr. Alexander was able to provide the evaluator with a brief but coherent account of events leading up to his arrest. He indicated that he would be able to work with his attorney and would trust the attorney with his defense. Mr. Alexander was able to identify alternative defense strategies he would discuss with his attorney. Mr. Alexander's behavior during contacts with the service team in the past month suggests that he has the ability to manifest appropriate courtroom behavior at this time. He was also able to provide a broad description of appropriate courtroom behavior and indicate an appropriate means of dealing with an errant witness in the court proceedings. In regard to testifying in his own defense, Mr. Alexander is judged to have the capacity to do this if it becomes a viable option. Mr. Alexander appears to have the motivation to avoid legal sanction and appears eager to move the legal process forward. In sum, Mr. Alexander is considered to be stable and now is able to meaningfully participate in his defense.

## VI. CONCLUSIONS REGARDING COMPETENCY:

Mr. Alexander's psychiatric symptoms have improved since his admission to the hospital. In the past month has exhibited appropriate behavior when meeting with his service team and during the interview for the current evaluation. He was cooperative and attentive and was able to bring acceptable levels of concentration and attention to focus on the task at hand and his ideas were goal directed and rational. Mr. Alexander demonstrated an understanding of the nature and object of the proceedings against him and is considered to be able to assist an attorney in his own defense. Hence, Mr. Alexander currently appears Competent to Proceed.

## VII. RECOMMENDATIONS:

A. Since Mr. Alexander appears Competent to Proceed, he should be returned to the Franklin County Jail to await further litigation of his charges.

B. Jail medical staff should review the After Care Form which will accompany Mr. Alexander upon discharge. This form details his current medication regiment and physical status.

Confidential & Priviledged Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324

C. Follow-up in the jail by community mental health forensic case managers is highly recommended in order to counsel Mr. Alexander during this stressful time.

D. Continued mental health treatment is recommended wherever Mr. Alexander is placed following the resolution of his case.

If you have any questions, please contact me at (850) 663-7201.

MTaylor PhD

Marcellus Taylor, Ph. D.
Senior Psychologist
Unit 23, Forensic Service
Florida State Hospital

Typed: 02/01/05
jo/115964ce1

Confidential & Priviledged Information
For Professional Use Only
FLORIDA STATE HOSPITAL
Chattahoochee, FL 32324