# *Snowy Range Consulting, LLC*

**Mark J. Watt, Ph.D., J.D., ABPP**
**Diplomate in Forensic Psychology**
***Licensed Psychologist***
**526 Regency Drive**
**Laramie, WY 82070**
**(307) 745-5414**
**FAX (307) 745-5138**

**PROHIBITION OF REDISCLOSURE**

**CONFIDENTIAL: FOR PROFESSIONAL USE ONLY**

**THIS INFORMATION HAS BEEN DISCLOSED TO YOU FROM RECORDS WHOSE CONFIDENTIALITY IS PROTECTED BY FEDERAL AND WYOMING LAW. INFORMATION WITHOUT SPECIFIC WRITTEN CONSENT OF A REPRESENTATIVE OF SNOWY RANGE CONSULTING AND OF THE PERSON TO WHOM IT PERTAINS, OR IN A BONA FIDE MEDICAL EMERGENCY. A GENERAL AUTHORIZATION FOR THE RELEASE OF MEDICAL OR OTHER INFORMATION IS NOT SUFFICIENT FOR THIS PURPOSE.**

DATE: May 29, 2009

Janice Minear
Social Security Disability Determination Services
821 W. Pershing Blvd.
Cheyenne WY 82002

RE: Kenneth Alexander
DOB: 10/26/1966
SSN: 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

Dear Ms. Minear,

On May 21, 2009, Mr. Minear was seen to determine his eligibility for Social Security Disability Insurance (SSDI). Mr. Alexander is a forty-two-year-old Caucasian male with a GED. He did not have photo identification on him. He was administered the Wechsler Memory Scale-IV (WMS-IV).

**RECORDS REVIEWED:**
San Antonio State Hospital Records Dates: 02/26/2008 – 03/25/2008

**HISTORY OF PRESENTING ILLNESS:**
Mr. Alexander is a difficult man from whom to obtain significant information regarding his background information. When asked why he was applying for Social Security Disability he responded, "you tell me." He initially stated he did not know why he was being seen for this evaluation, other than he "wanted to get SSI." Eventually, he reported that he has been treated for depression in the past with multiple psychiatric hospitalizations. Past medications have included Haldol, Risperdal, Cogentin, and Wellbutrin. He states he was last hospitalized in San Antonio. He reported he is not currently taking any medications or receiving any counseling "for several years."

Mr. Alexander reports that he was last employed several years ago, working for an excavating crew, a position he held for one month. He states that the longest that he

has ever been employed was working for six months for a utilities company. He reports he is unable to maintain stable employment because, "I will get sick or depressed, I get paranoid people are after me." He states that he usually quits before he gets fired.

Medically, Mr. Alexander reports that he suffers from compressed vertebrae as the result of work-related accident with several fractured discs. He reports his injury occurred in 2004, but he states he does not have any pain or limitations because of it. Mr. Alexander reports that he has hepatitis C. When asked how that affects him, he states, "causes me psychological problems." He reports that he still feels suspicious and paranoid about other people. He frequently gets depressed. He stated that he had suicidal ideation of approximately one week ago and his last serious suicide attempt was this past Christmas when he put a hose in the tailpipe of his truck, started the truck and fell asleep.

Mr. Alexander reports that he lives in a van by himself. He states that he has lived out of his van for the past year. He reports that he will awaken with the rising sun. He states that he subsists of off food stamps. He has limited cooking in his van. He reports that he will spend most of his time fishing. He has few friends who will go fishing with him. Otherwise, he states he does not socialize with others, "I'm antisocial." He will smoke approximately one-pack of cigarettes a day, which he reports has been stable for the past thirty years. He reports that he will drink casually. He does not use drugs due to lack of finances. He states the only time that he will take a nap is when he is sick. He reports that his primary activity is fishing. He does not read. He reports he will go to bed at approximately 9:00 PM. He does not have any difficulty sleeping, but he has occasional "weird dreams."

**RELEVANT BACKGROUND INFORMATION:**

Mr. Alexander again is a difficult person from whom to obtain a thorough, concise history, and you are referred to other information in the records for more complete information. He states that he is the youngest of two children and his parents were married. He reports that he did not have any history of stress or abuse in childhood. He reports that ever since he was a young child he had been prescribed Ritalin, but he generally refused to take it. He states that school is extremely difficult for him and he failed every grade. He had extreme difficulty getting along with others and states that he was "always fighting." He does not recall if he was ever involved in counseling in grade school or high school.

Mr. Alexander reports that he began drinking alcohol at nine years of age. He began using marijuana and IV drug use, "cocaine, methamphetamine," when he was fifteen years of age. He states that he had been dependent on the cocaine and methamphetamine "for years." He states that at seventeen, he was sent to the State Hospital in Kerrville, Texas for one week. He is unable to accurately report how many psychiatric hospitals or what length of time he had been in them, though he states he had been in the San Antonio State Hospital. He reports the longest he was ever hospitalized was for over one year in Skyview, Texas, and he states that he had been hospitalized once in Florida.

Mr. Alexander reports that he is a ninth grade dropout, though he obtained his GED in 1997. Mr. Alexander states that he stayed with his family most of his life. He does not believe that any medication that he ever took was helpful for him. He reports that he was arrested for burglary and spent one year in jail in the 1980s. He states that he spent five years in prison in Texas for cocaine possession and was discharged in 2000. However, he had a parole violation and spent several months in a "small prison" after that. Mr. Alexander reports that he has multiple other offenses since that time resulting

in incarceration including failure to pay child support, and aggravated assault of a police officer. He reports that he was sentenced to thirteen months in jail, however, the State Hospital in Florida found him incompetent to stand trial, but he does not know why.

Mr. Alexander reports that he came to Casper due to having distant relatives. He has never participated with the Division of Vocational Rehabilitation (DVR). Initially, Mr. Alexander denied hallucinations, but later he indicated that he did not want to talk about it because it resulted in him being incarcerated.

Mr. Alexander states he has been married twice. His first marriage was at the age of nineteen and resulted in one child and he was divorced after approximately one year. The second time he was married was in 2001, and he was married for three years and had two children before being divorced in 2004. He states that he is not currently on probation or parole. He states that he has had no safety problems with his memory, although, he has difficulty with concentration and attention and frequently forgets names and instructions that have been given to him. He states that he has been knocked unconscious multiple times including being pistol-whipped and being shot at with a gun with a bullet bouncing off of his skull. He denied any current suicidal ideation, though he states that approximately one week ago, he did feel suicidal.

**BEHAVIORAL OBSERVATIONS:**

Mr. Alexander is a forty-two-year-old Caucasian male of average height and average build. He was dressed in old, dirty work clothes. He appeared to be sunburned with several days' growth of beard and unkempt. The quality of his speech was articulate of estimated at least borderline to low average ability. Initially, he was taciturn, quiet, somewhat resistant and oppositional in the interview, however, as the interview and assessment progressed, he became somewhat more cooperative. However, when he did not know the answer to a question, he would remain quiet. He maintained emotional control. He appeared to be in contact with reality. There were no other unusual mannerisms or behaviors observed, and it was felt that a limited but adequate rapport was established with Mr. Alexander.

**ORIENTATION:**

Mr. Alexander was oriented to person, place, time, and purpose of the evaluation.

**AFFECT:**

Mr. Alexander had generally flat, muted affect during the interview. He stated that he still suffered from depression. He suffers from irritability, anger, and mood swings.

**THOUGHT CONTENT:**

Mr. Alexander admitted to having past suicide attempts and suicidal ideation within the past week, but none on the day of this evaluation. He stated that he has had hallucinations in the past, but refused to comment whether he still has active hallucinations. He reported that he does feel suspicious and paranoid against other people and is "antisocial."

**ABILITY TO ABSTRACT, CALCULATE, AND REMEMBER:**

Mr. Alexander's ability to abstract as measured by proverbs is in the estimated extremely low to borderline range. He was unable to interpret the proverb, "Strike while the iron is hot." In response to the proverb, "Don't count your chickens before they hatch," he responded, "how much money am I going to get from Social Security?" In response to the proverb, "People who live in glass houses shouldn't throw stones," he gave a literal response. Mr. Alexander's ability to abstract as measured by similarities is

in the estimated at least borderline to low average range. She stated that an orange and a banana were alike in being "fruit;" a boat and an automobile, "transportation;" and an eye and an ear, "senses." He was unable to state in what way a poem and a statue or a fly and a tree were alike.

Mr. Alexander's knowledge of social norms, expectations, and judgment is in the estimated at least borderline to low average range. He stated that if he were the first person to see smoke and fire in a movie theater he would "yell fire." He stated that some people prefer to borrow money from a bank rather than from a friend because, "it is easier to get bailed out by a bank than a friend." He reported that the State requires people to get a license in order to get married "for tax purposes, census." He stated that people should pay taxes, "because the government says so." He reported that if he were lost in the forest in the daytime he would find his way out by "rely upon the rise and follow the sun (he was unable to explain further)."

Mr. Alexander's ability to concentrate and do mental calculations is in the estimated at least borderline to low average range. He was able to do serial sevens slowly. He was able to do double-digit addition and subtraction problems using decimal points. He stated that 8 x 9 = "53," but he was able to state that 3 x 4 = "12." He was unable to state how long it would take him to walk twenty-four miles at the rate of three miles an hour, though he was able to state that if four boys shared sixteen dollars equally they would each get "four dollars."

Mr. Alexander's fund of basic cultural information is in the estimated at least low average range. He was able to identify the current and past three presidents, Abraham Lincoln, Shakespeare, Michelangelo, and the main theme of the book of Genesis. He was unable to identify the governor of Wyoming or a current major news story.

**MEMORY FUNCTIONING:**

On this basic assessment of Mr. Alexander's memory functioning, he obtained the following scores.

**Index Score Summary**

| Index | Sum of Scaled Scores | Index Score | | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|---|---|
| Auditory Memory | 17 | AMI | 65 | 1 | 61-73 | Extremely Low |
| Visual Memory | 33 | VMI | 89 | 23 | 84-95 | Low Average |
| Visual Working Memory | 18 | VWMI | 94 | 34 | 87-102 | Average |
| Immediate Memory | 20 | IMI | 67 | 1 | 62-75 | Extremely Low |
| Delayed Memory | 30 | DMI | 82 | 12 | 76-90 | Low Average |

These scores would indicate that Mr. Alexander's memory functioning is in the Extremely Low range in his Auditory and Immediate Memory range of functioning as compared with other adults his age in the general population.

**INSIGHT:**

Mr. Alexander appears to have adequate insight into his condition stating that he suffers from attention deficit disorder, mood swings, and depression.

**SUMMARY:**

In summary, Mr. Alexander is a forty-two-year-old Caucasian male currently functioning in the estimated at least borderline to low average range of intellectual ability and in the Extremely Low range in his Auditory and Immediate Memory functioning. He appears to have a long chronic history of attention deficit disorder, multiple psychiatric hospitalizations, and substance abuse. He has a very limited work history. He has been incarcerated several times. He is currently living out of a van with no significant daily activities other than fishing. He is not in counseling. He is not taking medication. He is socially isolated.

Based upon observations made during the current mental status evaluation, Mr. Alexander would be able to learn, remember, and carry out simple instructions in a patient, understanding work setting. He would have difficulty dealing with other than very patient, understanding coworkers and work supervisor on a limited basis. He would have difficulty dealing with change and stress in a routine competitive work setting on a sustained basis. This does not take into consideration any limitations due to possible orthopedic problems.

Thus based upon his self-reported history, current mental status evaluation, and records reviewed, his DSM-IV diagnoses are as follows:

**(CONSIDER SWITCHING HIS DIAGNOSIS TO SCHIZOAFFECTIVE DISORDER, BIPOLAR TYPE WITH PSYCHOTIC FEATURES)**

| | |
|---|---|
| **AXIS I:** | 296.80 Bipolar disorder not otherwise specified with psychotic traits |
| | 304.80 Polysubstance dependence in possible remission |
| **AXIS II:** | 301.90 Personality disorder not otherwise specified with avoidant, antisocial, schizoid, schizotypal traits |
| **AXIS III:** | Reported compressed vertebrae |
| **AXIS IV:** | Socially isolated, unemployed, homeless living in van, ex-convict |
| **AXIS V:** | Global Assessment of Functioning 45 |

**ABILITY TO HANDLE OWN FUNDS:**
Mr. Alexander's ability to handle his own funds remains intact.

**PROGNOSIS:**
Prognosis for improvement for Mr. Alexander is guarded.

Thank you for referring this interesting client to this office. If there is any further information that you require, please do not hesitate to contact me at your earliest convenience.

Sincerely,

Mark J. Watt, Ph.D., J.D., ABPP
Licensed Psychologist

Electronic Records Express Attestation: This document was electronically signed

Social Security Number: 459615950
Request ID: 0003108946062650O1
SiteID: S57
Route: DMA

Sender Name: Watt, Mark
Date: Sat May 30 16:44:59 EDT 2009

The following affirmation was electronically signed:

I am certifying, under penalty of perjury, that I have been authorized or contracted by the Disability Determination Services to examine the claimant named in the attached, and produced a consultative examination report for that claimant. The report is accurate. By clicking on the "Agree" button below, I am certifying that I personally conducted, or personally participated in conducting, the consultative examination and have electronically signed the report contained within.