FILED
JUL - 6 1998
9:28 am GB
CLERK OF THE DISTRICT COURT
OSAGE COUNTY, KANSAS

IN THE DISTRICT COURT OF OSAGE COUNTY, KANSAS

In the Matter of the Marriage of
LORI M. MONTGOMERY and
KEVIN W. MONTGOMERY

Case No. 97-D-192

MOTION TO CHANGE RESIDENTIAL CUSTODY

COMES NOW the Respondent, Kevin W. Montgomery, by and through counsel, Sloan, Listrom, Eisenbarth, Sloan, & Glassman, L.L.C., and moves the Court for an order changing the primary residential custody of the parties' three minor children from the Petitioner to the Respondent. In support of said Motion, Respondent alleges and states as follows:

1. That the parties have three minor children, Derek Scott Montgomery, born [redacted]; Dustin Garrett Montgomery, born [redacted]; and Dylan Kale Montgomery, born [redacted], [redacted].

2. That the Petitioner has advised the Respondent that she is moving and taking the parties' three minor children from her current home in Melvern, Kansas, to Osage City, Kansas.

3. That the parties' minor children have lived the greatest portion of their lives in Melvern, Kansas, have attended school in Melvern, Kansas, and have significant relatives on both sides of their family in Melvern, Kansas.

4. That Respondent has reason to believe that the parties' minor children would prefer to live with him in Melvern, Kansas, instead of moving to Osage City, Kansas.

5. That the Respondent is a fit and proper person to have primary residential custody of the children.

6. That not only do both parties live in Melvern, Kansas, but that the paternal grandparents live in Melvern, Kansas, and the maternal grandmother lives just outside Melvern, Kansas, and there is significant other relatives of the parties that live in Melvern, Kansas, along with the children's friends and acquaintances.

WHEREFORE, Respondent prays for an order of the Court transferring primary residential custody of the parties' three minor children from the Petitioner to the Respondent and for such other and further relief as the Court deems just and equitable in the premises.

SLOAN, LISTROM, EISENBARTH,
SLOAN & GLASSMAN, L.L.C.
[redacted]

BY ______________________
JAMES R. McENTIRE, #9390
Attorneys for Respondent

## NOTICE OF HEARING

Please be advised that the above and foregoing motion will be called for pre-hearing in the District Court of Osage County, Kansas, before The Honorable Phillip M. Fromme, Osage County Courthouse, Lyndon, Kansas, on the 4th day of August, 1998, at 1:00 o'clock p.m., or as soon thereafter as the Court may conveniently hear the same.

SLOAN, LISTROM, EISENBARTH,
SLOAN & GLASSMAN, L.L.C.
[redacted]

BY ______________________
JAMES R. McENTIRE, #9390
Attorneys for Respondent

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a true and correct copy of the above and foregoing document on counsel of record by (_) placing the same in the U.S. mail, postage prepaid, (___) facsimile, and that the transmission was reported as complete and without error and that the facsimile machine complied with Supreme Court Rule 119(b)(3), or (__) hand delivery, on this, the 1st day of July, 1998, to:

Roger B. McDaniel
Attorney at Law
[redacted]

FILED
AUG 13 2001
10:02am
CLERK OF THE DISTRICT COURT
OSAGE COUNTY, KANSAS

**IN THE DISTRICT COURT OF OSAGE COUNTY, KANSAS**

**In the Matter of the Marriage of**
**Lori M. Montgomery and Kevin W. Montgomery.** **Case No. 97 – D – 192**

**RESPONDENT'S MOTION FOR SPECIFIC PARENTING TIME**

Comes now the Respondent and moves the Court for an order for specific parenting time for Respondent with two of his minor children, Dustin G. Montgomery and Dylan K. Montgomery. In support of his motion, Respondent states and alleges:

1. That pursuant to the Journal Entry dated September 28, 1998 Respondent was to have reasonable and liberal visitation with his children.

2. That Petitioner has failed to live up to the Court's expectation that she should grant reasonable and liberal visitation to the Respondent.

3. That during the summer of 2000 Petitioner agreed to let Respondent have Dustin and Dylan for the month of July but after ten (10) days she took them back and refused to allow the Respondent to have them for the remainder of the month.

4. The Respondent repeatedly requested to have parenting time with the children during January, February, March and April of 2001 but Petitioner allowed the Respondent to have parenting time with the children only once during the months of January, February March and April of 2001.

5. That it would be in the best interest of Dustin and Dylan for the Respondent to have regular parenting time with them.

6. That Derek is 16 years old and has a job and Respondent's parenting time with Derek should be when Respondent and Derek can arrange the time.

7. That Respondent should have specific parenting time with Dustin and Dylan as follows:

(a) every other weekend from 5:00 p.m. on Fridays until 5:00 p.m. on Sundays;

(b) Labor Day weekend; the weekend after Thanksgiving Day, Easter weekend and from July 3 at 5:00 p.m. to July 5 at 5:00 p.m., in all odd numbered years; New Year's Day, Memorial Day weekend, Thanksgiving Day and Christmas Day, in all even numbered years;

(c) the first half of Spring Break in even numbered years; the second half of Spring Break in odd numbered years; the first half of Christmas break in all even numbered years; the second half of Christmas break in odd numbered years;

(d) in the summers starting one week after school is out in the spring until one week before school commences in the fall, subject to Petitioner having the children every other weekend from Fridays at 5:00 p.m. until Sundays at 5:00 p.m. and Petitioner having the children for a period of 10 consecutive days.



Case 4:12-cv-08001-GAF Document 162-12 Filed 09/03/15 Page 5 of 21

**WHEREFORE,** Respondent requests the Court to make an order allowing him the specific parenting time with Dustin and Dylan set forth hereinabove and for such other and further relief as the Court deems just and equitable in the premises.

Respectfully submitted by:

Bryan K. Joy # 10966
JOY & JONES, P.A.
[redacted]
Attorney for Respondent.

**VERIFICATION**

STATE OF KANSAS, COUNTY OF COFFEY, ss: I swear under penalty of perjury that the statements made in the foregoing Respondent's Motion for Specific Parenting Time are true and correct.

**Kevin W. Montgomery**

Subscribed and sworn to before me this 13th day of August, 2001.

Glenda Bronson
Notary Public.

**Glenda Bronson**
**Notary Public**
**State of Kansas**
**My Appt. Expires** 12-28-2004

**NOTICE OF PREHEARING**

A Prehearing on the Respondent's Motion for Specific Parenting Time will be on the 13th day of August, 2001 at 10:15 a.m. in the Courtroom of the Osage County Courthouse, Lyndon, Kansas.

Bryan K. Joy, #10966
Attorney for Respondent.

**CERTIFICATE OF SERVICE**

I certify that I served a true and correct copy of the foregoing Respondent's Motion for Specific Parenting Time and Notice of Prehearing by facsimile to Patrick G. Walsh, BURNS BURNS, WALSH & WALSH, P.A. [redacted] and by United States mail to Patrick G. Walsh, BURNS BURNS, WALSH & WALSH, [redacted], attorney for the Petitioner, all on the 9th day of August, 2001.

Bryan K. Joy, #10966
Attorney for Respondent.

Dionne A.L. Carter #18552
Staff Attorney, DynTek
Townsite Plaza IV
[redacted]

FILED
11:11am MAY - 1 2002 JB
CLERK OF THE DISTRICT COURT
OSAGE COUNTY, KANSAS

**IN THE DISTRICT COURT OF OSAGE COUNTY, KANSAS**

IN THE MATTER OF THE MARRIAGE OF:

LORI M. MONTGOMERY,
Petitioner,

and CASE NO. 97 D 192

KEVIN MONTGOMERY,
Respondent.

**PETITIONER'S RESPONSE TO RESPONDENT'S MOTION TO MODIFY CHILD SUPPORT ORDER**

**COMES NOW** the Kansas Department of Social and Rehabilitation Services, assignee of child support right herein, by and through its attorney, Dionne A.L. Carter, and it's response to Respondent's Motion to Modify Child Support, states as follows:

1. That on the 11th day of September, 2001, the matter of child support was reviewed and child support was increased to $900.00 per month and was based on Respondent's ability to pay said amount.

2. That Respondent has a history of unemployment that has been taken into consideration by this court in the past, but that child support should not be based on times when Respondent is voluntarily unemployed.

3. That the Respondent is a skilled laborer who graduated from Vocational-Technical School, therefore child support should be based on his pay history and income ability.

4. That the child support amount previously ordered herein should remain at $900.00 per month.

**WHEREFORE,** the Petitioner prays that Respondent's Motion be denied, and for such other relief as the court deems necessary.

Dionne A.L. Carter, #18552

CERTIFICATE OF MAILING

I hereby certify that on the 29th day of April, 2002, a true and correct copy of the foregoing Motion to decrease Child Support and Notice of Hearing was deposited in the U.S. Mail, first class postage prepaid, addressed to the following:

Frederick Godderz
Godderz Law Firm
[redacted]

Sue Devoe
Devoe & Neff
[redacted]

Lori Montgomery
Last Known Address

Dionne A.L. Carter

Sue DeVoe, #13314
DeVoe & Neff, Lawyers, LLC
[redacted]
Petitioner's Lawyer

FILED
MAY - 6 2002
8:49 am
CLERK OF THE DISTRICT COURT
OSAGE COUNTY, KANSAS

**IN THE DISTRICT COURT OF OSAGE COUNTY, KANSAS**

In the Matter of the Marriage of:
LORI MONTGOMERY
and
KEVIN MONTGOMERY

Case No. 97 D 192

**PETITIONER'S RESPONSE TO MOTION FOR CHANGE OF CUSTODY AND MODIFICATION OF CHILD SUPPORT**

The petitioner, through counsel Sue DeVoe, DeVoe & Neff, Lawyers, LLC, and in response to the Motion for Change of Custody filed April 2, 2002, states:

1. The Journal Entry of Divorce, filed June 12, 1998, designated petitioner as the primary residential parent of the parties children: Derek (now age 17), Dustin (now age 12 ½) and Dylan (now age 10).

2. Respondent immediately filed a Motion to Change Residential Custody (of Derek only) on July 6, 1998, because the petitioner was moving from Melvern to Osage City. A Journal Entry denying the respondent's 1st Motion to Change Residential was filed October 14, 1998. Respondent was granted "reasonable and liberal visitation".

3. Respondent married Lisa in March of 2000. Lisa eventually obtained custody of her 4 children. Six people now reside in respondent's household.

4. After petitioner filed a Motion to Increase Child Support on June 27, 2001, respondent

filed a Motion for Specific Parenting Time on August 13, 2001. In the September 11, 2001, Journal Entry, respondent's request for reduced child support because he supports Lisa's children was denied and child support was set at $900.00 per month. Respondent received no adjustment for health insurance because petitioner had low cost health and dental insurance through Healthwave. Petitioner was specifically ordered to continue to provide health insurance for the children. Respondent was granted mutually agreed parenting time with Derek and specific parenting time with Dustin and Dylan, including six weeks in the summer.

5. On April 2, 2002, respondent filed his 2nd Motion for Change of Custody. This Motion pertains only to Dustin and Dylan.

6. Respondent also filed a Motion to Modify Child Support requesting his child support be lowered because he is about to become voluntarily unemployed. Petitioner joins DynTek in objecting to respondent's motion and requests that the child support case be set on DynTek's next docket.

RESPONDENT'S ALLEGATIONS REGARDING DUSTIN

7. Petitioner has consistently monitored and attended to Dustin's "behavioral problems". Dustin was first diagnosed with AD/HD (Attention Deficit/Hyperactivity Disorder) in September of 1997 by Dr. Douglas L. Geenens. The parties, who were married, were both present at the appointment. Dustin was prescribed 5 mg. Ritalin two times a day for school use only. The letter from Dr. Geenens, attached as Exhibit 1, states that Dustin chief complaint was of school related

difficulties such as "decreased attention span, trouble sitting still and being forgetful." Dustin's attitude in school immediately improved.

8. Dustin was evaluated again in 1998 by Dr. Geenans. No change in medication was recommended. During the 1998/99 school year, 3rd grade, Dustin's grades remained consistent although he still struggled with assignments and staying on task.

9. During the first semester of the 1999/2000 school year, 4th grade, Dustin again had problems with his school work. Dr. James Seeman increased Dustin's medication to 10 mg. Ritalin twice daily during the school week. Dustin's performance in school immediately improved. Dustin attended summer school to help him maintain his reading level.

10. Brian L.N. Muench, LSCSW, of the Mental Health Center of East Central Kansas began providing outpatient services for Dustin in September of 1999. Mr. Muench agreed that Dustin presented with many of the characteristics of Attention Deficient/Hyperactivity Disorder. He recommended "possible medication management in addition to the appropriate structures already provided by the parent and school." Exhibit 6 attached.

11. In the 2000/2001 school year, 5th grade, Dustin's teachers complained of late or missing classroom assignments. Petitioner repeatedly met with the teachers and the school principal about Dustin's AD/HD. Eventually, the school developed an Individual Development Plan for Dustin that included a behavioral component. The Individual Development Plan was revised in January of 2001. Dustin was placed in summer school for reading at the end of the 2000/2001 school year at petitioner's

request.

12. In January of 2001, Dr. Seeman referred Dustin to Dr. Daniel Katz, Stormont-Vail Health Care. Dustin told Dr. Katz that he benefitted from taking Ritalin and informed the doctor that "Ritalin affects my growth and my appetite." Dr. Katz reports states that "It would be important that the school acknowledge the diagnosis of AD/HD and continue to make appropriate adaptions." Dustin's medication was changed to 18 mg. Concerta, a more expensive drug that may have fewer side effects than Ritalin. Exhibit 10 is the diagnostic report from Dr. Katz. Petitioner could not return to Dr. Katz because Healthwave Insurance requires participants to go through their Mental Health Consorta.

13. Respondent either directly or through his wife Lisa has actively interfered with Dustin's medical treatment. Respondent and/or his wife began telling Dustin that taking Ritalin would affect his growth and that taking drugs (Ritalin) was just an excuse for not being able to control himself. Although Dustin believes Ritalin was helping him, respondent's remarks upset and confused the child.

14. In October, 2001, Dustin began counseling sessions with Brian Muench at the Mental Health Center of East Central Kansas. The Intake Assessment is Exhibit 46. Mr. Muench again diagnosed Dustin with AD/HD, inattentive type, and recommended continued medication and bi-weekly counseling. In a counseling session with petitioner and respondent, Dustin told both his parents that he "did not want to be told about the divorce stuff".

15. In January, 2002, Dr. Mauricio Masferrer, Mental Health Center of East Central

Kansas, reviewed Dustin's previous medication history and placed Dustin on 36 mg. Concerta. Incredibly, respondent, who has been present and participated in Dustin's medical visits and is now complaining about Dustin's behavior, refuses to consistently give Dustin his medication during his parenting time.

16. Respondent, in direct violation of the September 11, 2001, Journal Entry, obtained health insurance for the children. Respondent and/or Lisa demanded lists of all the children's doctors. The respondent and/or Lisa then delivered their insurance cards to the doctors and informed Healthwave that the children had medical insurance coverage. When petitioner requested insurance cards and a list of approved providers, respondent refused stating he wanted to be in control of their appointments.

17. In February, 2002, Dustin received 3 days in school suspension for taking a 12 ga. shotgun shell to school. Later in the month Dustin was disciplined for drawing a picture in school of a stick man shooting another stick man. In early March, 2002, Dustin was again disciplined for biting another student on the hand.

18. In March, 2002, Dr. Masferrer reviewed Dustin's medication, behavior, grades and his teachers evaluations. Dr. Masferrer increased Dustin's dosage of Concerta to 54 mg. in the morning on a trial basis. Respondent was provided a note from the doctor explaining the need for the medication and instructing the respondent to call the doctor if he had questions, Exhibit 48. Respondent did not bother to attend the doctor's appointment and to petitioner's knowledge has not contacted the doctor.

19. On March 20, 2002, respondent informed petitioner that he had scheduled an

appointment for Dustin to see Dr. Brian Joseph in Topeka. Dr. Joseph does not accept Healthwave. Dr. Joseph told respondent that Dustin's medicine is not causing his growth to be stunted, that counseling in most cases was a waste of money and offered to write Dustin a prescription for Adderall XR.

20. Respondent refused to accept his own doctor's recommendations and made an appointment for Dustin to see Dr. Bud Dale. This appointment was not kept because it is not in Dustin's best interests to be drug from doctor to doctor.

21. Contrary to respondent's allegations, Dustin's latest school report, Exhibit 57, shows improvement since earlier in the year. Amy Fitch, Dustin's 6th grade reading teacher notes improvement in behavior and grades since the beginning of the quarter.

22. All of the doctors, including respondent's physician Dr. Joseph, recommend Dustin treat his AD/HD with medication. Petitioner has appropriately managed Dustin's medical needs both before and after the divorce.

23. Respondent refuses to accept the treatment recommended by Dustin's doctors. Instead of helping Dustin to cope with his AD/HD, respondent and his wife Lisa, frighten Dustin by making unfounded comments on the medication necessary for Dustin.

RESPONDENT'S ALLEGATIONS REGARDING DEREK

24. Petitioner has never permitted Derek to engage in "inappropriate conduct within her home involving another minor child".

25. 02 JV 7, charges Derek, Dustin told Dr. Katz that he benefitted from taking Ritalin.

dob [redacted] with 1 count of Unlawful Voluntary Sexual Relations with BLT, dob [redacted]. BLT was Derek's girlfriend. Derek and BLT went to the school play, Saturday, March 9, 2002. After the play was over, Derek and BLT went to BLT's house. BLT did not want to stay at her house so they went to Derek's house to watch a movie around 10:30 p.m. Petitioner went out to dinner after the school play and was not home when Derek and BLT arrived. BLT alleges she and Derek then had sexual intercourse.

26. Petitioner has been a responsible parent and discussed intimacy issues with Derek. At no time did petitioner encourage Derek to engage in random, sexual acts.

27. Derek is a fine young man who is entitled to the support of both of his parents during this difficult period in his life. Exhibit A is a group of letters from Derek's teachers, coaches, employers etc. who are apparently more familiar with Derek than the respondent.

28. Respondent has filed papers with the court indicating he is about to become unemployed. He currently appears to be unable to financially support Lisa, his wife, and her 4 children currently living in the home. Lisa Montgomery has been sued by debt collectors for unpaid bills. Respondent's home lacks the facilities necessary for 6 children and 2 adults.

29. Respondent allows his wife Lisa to harass petitioner. Respondent has refused all requests to communicate directly with petitioner, who he was married to for 16 years.

30. All of the children complain to petitioner that during parenting time with the respondent they are required to do farm work and chores and little else. They are

frequently left in the care of Lisa's older daughter. Respondent and his wife Lisa continually criticize petitioner directly to the children, including comments on how bad their financial situation is because of the child support respondent pays.

31. It is not in the best interests of Dylan and Dustin to be uprooted from a stable, loving environment and placed with the respondent. The respondent lacks the financial, emotional and psychological stability to be the residential parent of his children.

WHEREFORE, petitioner prays this court deny respondent's Motion, reinstate the health insurance provisions of the September 11, 2001, Journal Entry, deny extended summer visitation with the respondent until he completes a psychological testing and/or individual counseling on parenting, order the respondent to reimburse petitioner for her legal fees in defending this baseless Motion and such other relief as the Court deems just and equitable.

DeVoe & Neff, Lawyers, LLC

Certificate of Service

DeVoe & Neff, Lawyers, LLC, state that on May 6, 2002, they HAND DELIVERED a copy of the above to:

Rick Godderz
Counsel for respondent

DeVoe & Neff, Lawyers, LLC

AMY S. RAYMOND# 20839
STAFF ATTORNEY
[redacted]

FILED
2004 MAR 12 AM 11:04
CLERK OF THE DIST COURT
OSAGE COUNTY KANSAS

IN THE DISTRICT COURT OF OSAGE COUNTY, KANSAS
DOMESTIC DEPARTMENT

IN THE MATTER OF THE MARRIAGE OF
LORI M MONTGOMERY
AND
KEVIN W MONTGOMERY

Case No. OS97D*000192

## MOTION FOR MODIFICATION OF CHILD SUPPORT

COMES NOW the Kansas State Department of Social and Rehabilitation Services, hereinafter SRS and moves the court to modify the child support obligation herein. In support of this motion SRS alleges:

1. That KEVIN W. MONTGOMERY is presently ordered to pay $389.33 MONTHLY effective 07/01/2003, for current support.

2. There has been a material change of circumstance sufficient to justify a modification of the Child Support Order as evidenced by the attached Domestic Relations Affidavit and Child Support Worksheet. Income generates at least a 10% increase in Basic Parental Child Support Obligation. Additionally child Derek Montgomery, DOB [redacted] emancipated.

3. That current child support should be set at $553.00 pursuant to the attached child support worksheet.

4. That a total of $3245.16 is owing in past due support, and a payment of $165.90 per month should be paid until arrears are paid in full.

WHEREFORE, SRS moves the court to modify the child support obligation in accordance with the Kansas Child Support Guidelines.

WHEREFORE, SRS moves the court to modify the child support obligation in accordance with the Kansas Child Support Guidelines.

FURTHER, movant prays that an immediate income withholding order be issued for $718.90, $553.00 per month current child support and $165.90 per month towards arrears pursuant to K.S.A. 23-4,107 and to provide such other and further relief as the court deems just and necessary.

AMY S. RAYMOND, SC # 20839
STAFF ATTORNEY, DYNTEK

**IN THE MATTER OF THE MARRIAGE OF:**

**LORI M. COLWELL**
**and**
**KEVIN W. MONTGOMERY**

**Case Number: 97-D-192**

| CHILD SUPPORT WORKSHEET OF SRS | | LORI M. COLWELL | KEVIN W. MONTGOMERY |
|---|---|---|---|
| A. INCOME COMPUTATION-WAGE EARNER | | PARENT A | PARENT B |
| 1. Domestic Gross Income (Insert on Line C.1. below)* | | 1491.00 | 2427.00 |
| B. INCOME COMPUTATION-SELF EMPLOYED | | | |
| 1. Self-Employment Gross Income* | | 0.00 | 0.00 |
| 2. Reasonable Business Expenses | (-) | 0.00 | 0.00 |
| 3. Domestic Gross Income (Insert on line C.1. below) | | 0.00 | 0.00 |
| C. ADJUSTMENTS TO DOMESTIC GROSS INCOME | | | |
| 1. Domestic Gross Income | | 1491.00 | 2427.00 |
| 2. Court-Ordered Child Support Paid | (-) | 0.00 | 0.00 |
| 3. Court-Ordered Maintenance Paid | (-) | 0.00 | 0.00 |
| 4. Court-Ordered Maintenance Received (Insert on line D1) | (+) | 0.00 | 0.00 |
| 5. Child Support Income (Insert on Line D.1. below) | | 1491.00 | 2427.00 |
| D. COMPUTATION OF CHILD SUPPORT | | | |
| 1. Child Support Income | | 1491.00(+) | 2427.00 |
| | | (=) | 3918.00 |
| 2. Proportionate Shares of Combined Income (Each parent's income divided by combined income) | | 38.1% | 61.9% |
| 3. Gross Child Support Obligation** (Using combined income from Line D.1., find amount for each child and enter total for all children) | | | |

| Age of Children | 0-6 | 7-15 | 16-18 | |
|---|---|---|---|---|
| Number Per Age Category | 0 | 2 | 0 | |
| Total Amount | 0.00 | 876.00 | 0.00(=) | 876.00 |

* Cost of Living Differential Adjustment NOT applied
** Multiple Family Adjustment NOT applied

| | | PARENT A | PARENT B |
|---|---|---|---|
| 4. Health and Dental Insurance Premium | | 0.00(+) | 0.00 |
| | | (=) | 0.00 |
| 5. Work-Related Child Care Costs<br>Formula: Amt. - ((Amt × %) + (.25 × (Amt × %)))<br>for child care credit<br>**Example: 200 - ((200 x .30%) + (.25 x (200 x .30%)))** | | 0.00(+)<br><br>(=) | 0.00<br><br>0.00 |
| 6. Parents' Total Child Support Obligation<br>(Line D.3. plus Lines D.4. & D.5.) | | | 876.00 |
| 7. Parental Child Support Obligation<br>(Line D.2. times Line D.6. for each parent) | | 334.00 | 542.00 |
| 8. Adjustment for Insurance and Child Care<br>(Subtract for actual payment made for items D4. and D5.) | (-) | 0.00 | 0.00 |
| 9. Basic Parental Child Support<br>Obligation (Line D7 minus line D8; Insert on Line F1) | | 334.00 | 542.00 |

E. CHILD SUPPORT ADJUSTMENTS

| | Applicable | N/A | Category | | AMOUNT ALLOWED PARENT A | PARENT B |
|---|---|---|---|---|---|---|
| 1. | ☐ | ☐ | Long Dist. Visitation Costs | (+/-) | 0.00(+/-) | 0.00 |
| 2. | ☐ | ☐ | Visitation Adjustment | (+/-) | 0.00(+/-) | 0.00 |
| 3. | ☐ | ☐ | Income Tax Considerations | (+/-) | 0.00(+/-) | 0.00 |
| 4. | ☐ | ☐ | Special Needs | (+/-) | 0.00(+/-) | 0.00 |
| 5. | ☐ | ☐ | Agreement Past Minority | (+/-) | 0.00(+/-) | 0.00 |
| 6. | ☐ | ☐ | Overall Financial Condition | (+/-) | 0.00(+/-) | 0.00 |
| 7. | TOTAL (Insert on Line F.2. below) | | | | 0.00 | 0.00 |

F. DEVIATION(S) FROM REBUTTABLE PRESUMPTION AMOUNT

| | AMOUNT ALLOWED PARENT A | PARENT B |
|---|---|---|
| 1. Basic Parental Child Support Obligation<br>(Line D.9. from above) | 334.00 | 542.00 |
| 2. Total Child Support Adjustments<br>(Line E.7. from above) | 0.00 | 0.00 |
| 3. Adjusted Subtotal<br>(Line F.1. +/- Line F.2.) | 334.00 | 542.00 |
| 4. Enforcement Fee Allowance<br>(Applied only to Non-custodial Parent)<br>((Line F.3. x Collection Fee %) x .5)<br>or (Monthly Flat Fee x .5) | 0.00 | 11.00 |
| 5. Net Parental Child Support Obligation<br>(Line F.3. + F.4.) | 334.00 | 553.00 |

**Percentage** 4.0%
**Flat Fee** $