# SUPPLEMENTARY GUIDELINES FOR THE MITIGATION FUNCTION OF DEFENSE TEAMS IN DEATH PENALTY CASES

## INTRODUCTION

The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (2003 revision) assign to lead counsel (at Guideline 10.4(B)) the responsibility for conducting a thorough investigation relating to both guilt and penalty, regardless of any statement by the client opposing such investigation. (Guideline 10.7) To meet this responsibility, lead counsel must assemble a capital defense team consisting of no fewer than two qualified attorneys, an investigator, and a mitigation specialist – with at least one member of that team qualified by training and experience to screen for the presence of mental or psychological disorders or impairments. (Guidelines 4.1 and 10.4 C).

Inherent in the approach to competent capital defense dictated by the Guidelines is the recognition that the mitigation function is multi-faceted and multi-disciplinary, even though ultimate responsibility for the investigation of such issues rests irrevocably with counsel. Because the mitigation function is of utmost importance in the defense of capital cases, and because counsel must rely on the assistance of experts, investigators and mitigation specialists in developing mitigating evidence, these supplementary interdisciplinary performance standards are necessary to ensure that all members of the defense team perform in accordance with prevailing national norms when representing a client who may be facing execution.

These Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases were developed in cooperation with the ABA Death Penalty Representation Project to assist its work and to reflect prevailing professional norms. They are the result of a two-year drafting and review process by experts in the field of death penalty litigation. These Supplementary Guidelines provide comprehensive, up-to-date guidance for all members of the defense



Case 4:12-cv-08001-GAF Document 166-14 Filed 09/03/15 Page 1 of 16

team, and will provide useful guidance to judges and defense counsel on selecting, funding and working with mitigation specialists. Following the Guidelines will help ensure effective assistance of counsel for all persons charged with or convicted of capital crimes. These Supplementary Guidelines explain in greater detail the elements of the mitigation function of capital defense teams. Because they are consistent with, elucidate and incorporate by reference the ABA Guidelines, these Supplementary Guidelines follow the same general organizational structure as the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.

The skills, abilities, and functions outlined in these Supplementary Guidelines must be present throughout the defense team, and the responsibility for the development and presentation of mitigation evidence must be incorporated into the defense case at all stages of the proceedings from the moment the client is taken into custody, and extending to all stages of every case in which the jurisdiction may be entitled to seek the death penalty, including initial and ongoing investigation, pretrial proceedings, trial, appeal, post-conviction review, clemency proceedings and any connected litigation. The duty to investigate, develop and pursue avenues relevant to mitigation of the offense or penalty, and to effectively communicate the fruits of those efforts to the decision-makers, rests upon defense counsel.

## GUIDELINE 1.1—OBJECTIVE AND SCOPE OF GUIDELINES

**A. The objective of these Guidelines is to summarize prevailing professional norms for mitigation investigation, development and presentation by capital defense teams, in order to ensure high quality representation for all persons facing the possible imposition or execution of a death sentence in any jurisdiction. All capital defense teams must be comprised of individuals who, through their experience, training and function, strive to fulfill the constitutional mandate that the sentencer consider all evidence in support of a sentence other than death. Mitigation evidence includes, but is not limited to, compassionate factors stemming from the diverse frailties of humankind, the ability to make a positive adjustment to incarceration, the realities of incarceration and the actual meaning of a life sentence, capacity for redemption, remorse, execution impact, vulnerabilities related to mental health, explanations of patterns of behavior, negation of aggravating evidence regardless of its designation as an aggravating factor, positive acts or qualities, responsible conduct in other areas of life (e.g. employment, education, military service, as a family member), any evidence bearing on the degree of moral culpability, and any other reason for a sentence less than death.**

**B. These Guidelines apply from the moment that counsel is appointed and extend to all stages of every case in which the jurisdiction may be entitled to seek the death penalty, including initial and ongoing investigation, pretrial proceedings, trial, appeal, post-conviction review, competency-to-be-executed proceedings, clemency proceedings and any connected litigation.**

*Cross- References:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 1.1—Objective and Scope of Guidelines; 4.10—The Defense Team and Supporting Services.

**GUIDELINE 4.1—THE CAPITAL DEFENSE TEAM: THE ROLE OF MITIGATION SPECIALISTS**

**A. In performing the mitigation investigation, counsel has the duty to obtain services of persons independent of the government and the right to select one or more such persons whose qualifications fit the individual needs of the client and the case. Applications to the court for the funding of mitigation services should be conducted ex parte, in camera, and under seal.**

**B. Counsel has a duty to hire, assign or have appointed competent team members; to investigate the background, training and skills of team members to determine that they are competent; and to supervise and direct the work of all team members. Counsel must conduct such investigation of the background, training and skills of the team members as will determine that they are competent and must ensure on an ongoing basis that their work is of high professional quality.**

**C. All members of the defense team are agents of defense counsel. They are bound by rules of professional responsibility that govern the conduct of counsel respecting privilege, diligence, and loyalty to the client. The privileges and protections applicable to the work of all defense team members derive from their role as agents of defense counsel. The confidentiality of communication with persons providing services pursuant to court appointment should be protected to the same extent as if such persons were privately retained. Like counsel, non-attorney members of the defense team have a duty to maintain complete and accurate files, including records that may assist successor counsel in documenting attempts to comply with these Guidelines.**

**D. It is counsel's duty to provide each member of the defense team with the necessary legal knowledge for each individual case, including features unique to the jurisdiction or procedural posture. Counsel must provide mitigation specialists with knowledge of the law affecting their work, including an understanding of the capital charges and**

**available defenses; applicable capital statutes and major state and federal constitutional principles; applicable discovery rules at the various stages of capital litigation; applicable evidentiary rules, procedural bars and "door-opening" doctrines; and rules affecting confidentiality, disclosure, privileges and protections.**

*Cross- References:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 4.1—The Defense Team and Supporting Services.
ABA Model Rules of Professional Conduct 1.3—Diligence; 1.6—Confidentiality of Information; 1.7—Conflict of Interest: Current Clients; 1.8—Conflict of Interest: Current Clients: Specific Rules; 1.9—Duties to Former Clients; 1.10—Imputation of Conflicts of Interest: General Rule; 1.11—Special Conflicts of Interest for Former and Current Government Officers and Employees; 1.14—Client with Diminished Capacity; 2.3—Evaluations for Use by Third Person.

**GUIDELINE 5.1—QUALIFICATIONS OF THE DEFENSE TEAM**

**A. Capital defense team members should demonstrate a commitment to providing high quality services in the defense of capital cases; should satisfy the training requirements set forth in these Supplementary Guidelines; and should be skilled in the investigation, preparation and presentation of evidence within their areas of expertise.**

**B. The defense team must include individuals possessing the training and ability to obtain, understand and analyze all documentary and anecdotal information relevant to the client's life history. Life history includes, but is not limited to: medical history; complete prenatal, pediatric and adult health information; exposure to harmful substances in utero and in the environment; substance abuse history; mental health history; history of maltreatment and neglect; trauma history; educational history; employment and training history; military experience; multi-generational family history, genetic disorders and vulnerabilities, as well as multi-generational patterns of behavior; prior adult and juvenile correctional experience; religious, gender, sexual orientation, ethnic, racial, cultural and community influences; socio-economic, historical, and political factors.**

**C. Mitigation specialists must be able to identify, locate and interview relevant persons in a culturally competent manner that produces confidential, relevant and reliable information. They must be skilled interviewers who can recognize and elicit information about mental health signs and symptoms, both prodromal and acute, that may manifest over the client's lifetime. They must be able to establish rapport with witnesses, the client, the client's family and significant others that will be sufficient to overcome barriers those individuals may have against the disclosure of sensitive information and to assist the client with the emotional impact of such disclosures. They must have the ability to advise counsel on appropriate mental health and other expert assistance.**

**D. Team members must have the training and ability to use the information obtained in the mitigation investigation to**

**illustrate and illuminate the factors that shaped and influenced the client's behavior and functioning. The mitigation specialist must be able to furnish information in a form useful to counsel and any experts through methods including, but not limited to: genealogies, chronologies, social histories, and studies of the cultural, socioeconomic, environmental, political, historical, racial and religious influences on the client in order to aid counsel in developing an affirmative case for sparing the defendant's life.**

**E. At least one member of the team must have specialized training in identifying, documenting and interpreting symptoms of mental and behavioral impairment, including cognitive deficits, mental illness, developmental disability, neurological deficits; long-term consequences of deprivation, neglect and maltreatment during developmental years; social, cultural, historical, political, religious, racial, environmental and ethnic influences on behavior; effects of substance abuse and the presence, severity and consequences of exposure to trauma. Team members acquire knowledge, experience, and skills in these areas through education, professional training and properly supervised experience.**

**F. Mitigation specialists must possess the knowledge and skills to obtain all relevant records pertaining to the client and others. They must understand the various methods and mechanisms for requesting records and obtaining the necessary waivers and releases, and the commitment to pursue all means of obtaining records.**

*Cross- References:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 10.7—Investigation; 4.1—The Defense Team and Supporting Services; 5.1—Qualifications of Defense Counsel.

## GUIDELINE 6.1—WORKLOAD

**Counsel should ensure that the workload of defense team members in death penalty cases is maintained at a level that enables counsel to provide each client with high quality legal representation in accordance with these supplementary Guidelines and the ABA Guidelines as a whole. In the case of mitigation specialists on the staff of an institutional defender office, the office should implement mechanisms to ensure that their workload is maintained at a level that enables them to provide each client with high quality services and assistance in accordance with these Guidelines.**

*Cross- Reference:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 6.1—Workload.

## GUIDELINE 8.1—TRAINING

**A.** **All capital defense team members should attend and successfully complete, at least once every year, a specialized training program that focuses on the defense of death penalty cases offered by an organization with substantial experience and expertise in the defense of persons facing execution and committed to the national standard of practice embodied in these supplemental Guidelines and the ABA Guidelines as a whole.**

**B.** **Funding should be provided for team members to receive effective training and continuing professional education in their respective fields of expertise.**

*Cross- Reference:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 8.1—Training.

## GUIDELINE 9.1—FUNDING AND COMPENSATION

**Non-attorney members of the defense team should be fully compensated at a rate that is commensurate with the provision of high quality legal representation and reflects the specialized skills needed to assist counsel with the litigation of death penalty cases. Flat fees, caps on compensation, and lump-sum contracts are improper in death penalty cases.**

*Cross- Reference:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 9.1—Funding and Compensation.

## GUIDELINE 10.3—OBLIGATIONS OF TEAM MEMBERS RESPECTING WORKLOAD

**All members of the defense team in death penalty cases should limit their caseloads to the level needed to provide each client with high quality legal representation in accordance with these supplementary Guidelines and the ABA Guidelines as a whole.**

*Cross Reference:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 10.3—Obligations of Counsel Respecting Workload.

## GUIDELINE 10.4—THE DEFENSE TEAM: THE ROLE OF COUNSEL WITH RESPECT TO MITIGATION SPECIALISTS

**A. Counsel bears ultimate responsibility for the performance of the defense team and for decisions affecting the client and the case. It is the duty of counsel to lead the team in conducting an exhaustive investigation into the life history of the client. It is therefore incumbent upon the defense to interview all relevant persons and obtain all relevant records and documents that enable the defense to develop and implement an effective defense strategy.**

**B. Counsel guides the defense team and, based on consultation with team members and experts, conducts ongoing reviews of the evidence, assessments of potential witnesses, and analyses of the most effective manner in which to convey the mitigating information. Counsel decides how mitigation evidence will be presented.**

*Cross- References:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 10.4—The Defense Team. ABA Model Rules of Professional Conduct 5.3—Responsibilities Regarding Nonlawyer Assistant.

## GUIDELINE 10.11—THE DEFENSE CASE: REQUISITE MITIGATION FUNCTIONS OF THE DEFENSE TEAM

**A. It is the duty of the defense team to aid counsel in coordinating and integrating the case for life with the guilt or innocence phase strategy.**

**B. The defense team must conduct an ongoing, exhaustive and independent investigation of every aspect of the client's character, history, record and any circumstances of the offense, or other factors, which may provide a basis for a sentence less than death. The investigation into a client's life history must survey a broad set of sources and includes, but is not limited to: medical history; complete prenatal, pediatric and adult health information; exposure to harmful substances in utero and in the environment; substance abuse history; mental health history; history of maltreatment and neglect; trauma history; educational history; employment and training history; military experience; multi-generational family history, genetic disorders and vulnerabilities, as well as multi-generational patterns of behavior; prior adult and juvenile correctional experience; religious, gender, sexual orientation, ethnic, racial, cultural and community influences; socio-economic, historical, and political factors.**

**C. Team members must conduct in-person, face-to-face, one-on-one interviews with the client, the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death. Multiple interviews will be necessary to establish trust, elicit sensitive information and conduct a thorough and reliable life-history investigation. Team members must endeavor to establish the rapport with the client and witnesses that will be necessary to provide the client with a defense in accordance with constitutional guarantees relevant to a capital sentencing proceeding.**

**D. Team members must provide counsel with documentary evidence of the investigation through the use of such methods as genealogies, social history reports, chronologies and reports on relevant subjects including, but not limited to, cultural, socioeconomic, environmental, racial, and**

**religious issues in the client's life. The manner in which information is provided to counsel is determined on a case by case basis, in consultation with counsel, considering jurisdictional practices, discovery rules and policies.**

**E. It is the duty of the defense team members to aid counsel in the selection and preparation of witnesses who will testify, including but not limited to:**

**1. Expert witnesses, or witnesses with specialized training or experience in a particular subject matter. Such experts include, but are not limited to:**

**a. Medical doctors, psychologists, toxicologists, pharmacologists, social workers and persons with specialized knowledge of medical conditions, mental illnesses and impairments; substance abuse, physical, emotional and sexual maltreatment, trauma and the effects of such factors on the client's development and functioning.**

**b. Anthropologists, sociologists and persons with expertise in a particular race, culture, ethnicity, religion.**

**c. Persons with specialized knowledge of specific communities or expertise in the effect of environments and neighborhoods upon their inhabitants.**

**d. Persons with specialized knowledge of institutional life, either generally or within a specific institution.**

**2. Lay witnesses, or witnesses who are familiar with the defendant or his family, including but not limited to:**

**a. The client's family, extending at least three generations back, and those familiar with the client;**

**b. The client's friends, teachers, classmates, co-workers, employers, and those who served in the military with the client, as well as others who are familiar with the client's early and current development and functioning, medical history, environmental history, mental health history, educational history, employment and training history, military experience and religious, racial, and cultural experiences and influences upon the client or the client's family;**

**c. Social service and treatment providers to the client and the client's family members, including doctors, nurses, other medical staff, social workers, and housing or welfare officials;**

**d. Witnesses familiar with the client's prior juvenile and criminal justice and correctional experiences;**

**e. Former and current neighbors of the client and the client's family, community members, and others familiar with the neighborhoods in which the client lived, including the type of housing, the economic status of the community, the availability of employment and the prevalence of violence;**

**f. Witnesses who can testify about the applicable alternative to a death sentence and/or the conditions under which the alternative sentence would be served;**

**g. Witnesses who can testify about the adverse impact of the client's execution on the client's family and loved ones.**

**F. It is the duty of team members to gather documentation to support the testimony of expert and lay witnesses, including, but not limited to, school, medical, employment, military, and social service records, in order to provide medical, psychological, sociological, cultural or other insights into the client's mental and/or emotional state, intellectual capacity, and life history that may explain or diminish the client's culpability for his conduct, demonstrate the absence of aggressive patterns in the client's behavior, show the client's capacity for empathy, depict the client's remorse, illustrate the client's desire to function in the world, give a favorable opinion as to the client's capacity for rehabilitation or adaptation to prison, explain possible treatment programs, rebut or explain evidence presented by the prosecutor, or otherwise support a sentence less than death.**

**G. It is the duty of the team members to aid counsel in preparing and gathering demonstrative evidence, such as photographs, videotapes and physical objects (e.g., trophies, artwork, military medals), and documents that humanize the client or portray him positively, such as certificates of earned awards, favorable press accounts and letters of praise or reference.**

*Cross References:*

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases 4.1—The Defense Team and Supporting Services; 10.7—Investigation; 10.10.1—Trial Preparation Overall; 10.11—The Defense Case Concerning Penalty.