IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. 12-08001-CV-W-GAF |
| | ) | Crim. No. 05-06002-01-CR-W-GAF |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Respondent. | ) | |

**GOVERNMENT'S SUGGESTIONS IN OPPOSTION TO MOVANT'S MOTION FOR DISCOVERY**

The Government proves the following suggestions in opposition to what the movant has styled as "Petitioner's Initial Motion to Authorize Discovery," requesting an order from this Court to depose five witnesses, including attorney Fred Duchardt, and further requesting this Court "to order a subpoena *duces tecum* for the rest of Mr. Duchardt's file." (D.E. 150):

***A. Request to Take Depositions***

In her motion filed on September 3, 2015, Montgomery first request that this Court enter an order allowing her to take the depositions of Dr. Linda McCandless, a defense witness who testified at trial; attorneys Fred Duchardt and John O'Connor, who served as trial counsel; Ron Ninemire, a retired investigator with the Federal Public Defender's office, and Stephanie Elliot, a paralegal with the FPD's office. (D.E. 150 at 1.)

The Government vigorously opposes Montgomery's request, because Montgomery has not shown good cause for her request, which Government, at this point of the proceedings, views as a stalling tactic.

Rule 6(a) of the Rules Governing § 2255 Proceedings provides, in relevant part, that "[a] judge may, *for good cause*, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." (Emphasis supplied.)

This rule, then, makes discovery discretionary with this Court. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course"). Although the rules do not define "good cause," and the term does not appear to have been defined by case law, one district court has opined, in an unpublished order, that a respondent in an action under 28 U.S.C. § 2255 (or § 2254) is "entitled to discover any information tending to undermine" the allegations raised in a habeas corpus petition. *Lott v. Bradshaw*, No. 1:04-cv-822, 2005 WL 3741492 at *6 (N.D. Ohio Mar. 29, 2005).

In any event, a district court has the discretion to determine whether to allow discovery, and what forms of discovery to allow. *See Allen v. United States*, No. 4:07CV00027ERW, 2011 WL 4729819 at *2 (E.D. Mo. Oct. 7, 2001).

In the present case, unlike *Allen* and *Nelson v. United States*, No. 04-8005-CV-W-FJG (W.D. Mo. July 25, 2012), where the Government was allowed to depose witnesses in an effort to "undermine" the allegations in support of the movants' § 2255 motions, Montgomery is seeking to depose witnesses in an attempt to *support* or *bolster* its allegations that have been on record for several years. Quite simply, Montgomery's belated request to take depositions at this late date in the proceedings is not

supported by good cause, and is merely part of an effort to delay the orderly disposition of her motion.

Montgomery first alleges that she should be allowed to take the deposition of Dr. Linda McCandless, a former staff physician for Corrections Corporation of American at Leavenworth, whom the defense called at trial to support Montgomery's defense of pseudocyesis. (Tr. 2088-95.) Montgomery suggests that she should be allowed to depose Dr. McCandless because there are "[t]wo genuine issues of fact" regarding "(1) when Mr. Duchardt developed Dr. McCandless' testimony and (2) whether he was forthright with the Court and the Government at the time of trial regarding the timing of the development of that testimony." (D.E. 150 at 4.)

But the *timing* of Mr. Duchardt's decision to call a favorable witness – one whose appearance on the witness stand was vigorously opposed by the Government – is simply immaterial to any of the issues presented by Montgomery's motion. Regardless of when Mr. Duchardt decided to call her as a witness, her testimony was *favorable* to Montgomery's defense, since it supported her defense of pseudocyesis.

And although Montgomery suggests in her motion for discovery that Mr. Duchardt was derelict in failing to properly prepare her for cross-examination, when the prosecution played tapes of Montgomery joking about her mental state, it is clear from Mr. Duchardt's direct examination of the witness that he anticipated such cross-examination, since he extracted from Dr. McCandless the fact that Montgomery "even at times joke[d] with [her] about some of her symptoms and things like that." (Tr. 2084-85.)

In a death-penalty case like this one, the issue under *Strickland v. Washington*, 469 U.S. 668 (1984), with respect to this witness is whether Mr. Duchardt was derelict in either calling her as a witness to begin with, or failing to prepare her for cross-examination, and whether, as a result of these failures, Montgomery was convicted rather than acquitted. Obviously, Dr. McCandless does not have to be deposed for this Court to find that all of the answers to these questions are in the negative. Dr. McCandless's testimony was *favorable* to the accused, and any witness who testified that she suffered from some mental disease or defect would necessarily be faced with having to explain the jail tapes during which Montgomery joked about her mental state.

Montgomery also seeks to depose Montgomery's trial attorneys, Mr. Duchardt and John O'Connor, even though both attorneys, at the direction of this Court, and over Montgomery's strenuous objections, submitted detailed affidavits concerning the allegations of ineffectiveness and misconduct leveled against them.

Mr. Duchardt's affidavit is particularly detailed and is more than 100 pages long. Although Mr. O'Connor's is not as extensive, it, too, responds in detail to many of the allegations leveled against him by Montgomery. Those affidavits have been on file for months, and, if Montgomery believed they were lacking in some respect, she could have requested a court order directing them to respond to any particular issues that the affidavits failed to discuss. Instead, Montgomery seeks to delay the proceedings by moving to depose them.

And the questions Montgomery seeks answers to are either addressed in those affidavits, or too insignificant to require additional discussion. For example,

Montgomery wants to depose Mr. Duchardt regarding his decision not to raise on appeal this Court's decision to remove Judy Clarke from the trial team. But that issue is covered at considerable length in his affidavit, and has been the subject of countless hearings. Since, as a matter of law, this Court did not err in removing Ms. Clarke from the defense team, further questioning along these lines would be futile.

Montgomery also seeks to question Mr. Duchardt about issues such as his decision to call Dr. McCandless as a guilt-phase witness, his decision to raise pseudocyesis as a guilt-phase defense, rather than just present it during the penalty phase; his decision not to employ a "mitigation specialist"; his decision to take his wife to a meeting with Montgomery; why and when he decided to abandon the so-called "Tommy defense" and how Montgomery came to claim that Tommy assisted her with the kidnapping and murder; whether the defense team was "cohesive"; whether he "overstated" Dr. Gur's testimony to the court; whether he failed to adequately prepare Dr. Ramachandran for his testimony; whether his cross-examination of the Government's witnesses was inadequate; whether he was ineffective in failing to "file motions which should have been filed"; and whether Mr. Duchardt observed symptoms of Montgomery's incompetence to proceed, but "failed to appreciate their significance." (D.E. 150 at 7-18.)

Again, these are all issues that are addressed in extensive detail in Mr. Duchardt's affidavit, and a deposition of Mr. Duchardt is not likely to add anything of significance of substance to what he already has sworn to in that affidavit. If Montgomery seriously believed that anything of significance had been overlooked by Mr. Duchardt in his affidavit, she could have requested an order from this Court directing Mr. Duchardt to file a

supplemental affidavit addressing issues that he supposedly failed to discuss in his affidavit. But, instead, Montgomery waited until after she had filed her traverse, and now seeks to take Mr. Duchardt's deposition. If this were a football game, Montgomery would be flagged for delay of game.

Her request to depose Mr. O'Connor is just as senseless. Her principal reason is to determine how many hours Mr. O'Connor actually put in on the case. (D.E. 150 at 19.) But an attorney's effectiveness obviously is not determined by how many hours he or she spent preparing the case, particularly where, as here, that attorney is not lead counsel.

Montgomery also seeks to depose Mr. O'Connor concerning his failure to object to testimony regarding a possible "struggle" between Montgomery and the victim, and how and when the "Tommy defense" was developed and then abandoned. (D.E. 150 at 18-20.) But this would be a colossal waste of everyone's time: It was undisputed that there was a "struggle" when Montgomery strangled Bobbie Jo Stinnett, and it was undisputed that Tommy Kleiner had an airtight alibi that caused Mr. Duchardt and Mr. O'Connor to abandon that defense during the course of their investigation. Further rehashing these issues would serve no purpose.

Finally, Montgomery asserts that she needs to depose Mr. Ninemire, a former investigator with the Federal Public Defender's Office, and Stephanie Elliott, a paralegal with the FPD. (D.E. 150 at 20-22.) Montgomery asserts that Mr. Ninemire needs to be deposed because he has given conflicting statements on the Judy Clarke removal issue, whether Montgomery's medication caused her to have a "flat" appearance before the jury, and Mr. Duchardt's interactions with Dani Waller, the trial team's "putative mitigation

expert." (D.E. 150 at 20-21.) Montgomery furnishes a one-paragraph explanation for her desire to take Ms. Elliott's deposition, asserting, essentially, that, as a paralegal, she had some familiarity with the facts of the case. (D.E. 150 at 22.)

Again, Montgomery has not established "good cause" to take either person's deposition at this late date, since the voluminous record that already exists in this case, including the Judy Clarke removal issue, the effect of the medication Ms. Montgomery was taking, and Mr. Duchardt's handling of Montgomery's mitigation defense. Montgomery does not allege that these supposed witnesses have failed to talk to them, nor has she, as far as the record shows, requested that they provide affidavits relating to these issues.

Again, the Government believes that Montgomery has not established "good cause" for her request to depose any of the five individuals identified in her motion, and that her request should be denied as untimely and made in bad faith.

This Court should likewise deny Montgomery's request for a subpoena *duces tecum* "for the rest of Mr. Duchardt's file." (D.E. 150 at 17.) As Montgomery concedes, Mr. Duchardt already has supplied current counsel with his entire case file. (D.E. 129 at 17.) But Montgomery asserts that it must not be complete because it apparently does not contain the pretrial letters and notes written by Montgomery that Mr. Duchardt referred to in his affidavit. (D.E. 150 at 17.)

Absent some showing that there is actually some parts of the file that Mr. Duchardt has failed to turn over to current defense counsel, Montgomery's motion for a subpoena *duces tecum* should be denied.

### *B. Request for an Evidentiary Hearing*

In the 28-page traverse filed by Montgomery on September 1, 2015, Montgomery asserts, among other things, that an evidentiary hearing is needed to resolve numerous factual disputes that supposedly are present in this case. Montgomery cites several examples of cases where appellate courts, including the Eighth Circuit, have overturned the denial of an evidentiary hearing in death penalty cases. *See*, *e.g.*, *Nelson v. United States*, 297 Fed.Appx. 563, 565-66 (8th Cir. 2008). On the other hand, the Eighth Circuit upheld, in a death-penalty case, the district court's decision not to conduct an evidentiary hearing in a case, incidentally, that involved multiple claims of ineffectiveness against Mr. Duchardt. *Purkey v. United States*, 729 F.3d 860, 869 (8th Cir. 2013).

In *Purkey*, the Eighth Circuit found that Purkey was not entitled to an evidentiary hearing because Purkey's factual allegations, even accepted as true, failed to establish the "prejudice" required by the *Strickland* test:

> Purkey also argues that the district court abused its discretion by denying his request for an evidentiary hearing. No evidentiary hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). We review the denial of a § 2255 evidentiary hearing for an abuse of discretion, but this standard is "somewhat misleading . . . because review of the determination that no hearing was required obligates us to look behind that discretionary decision to the court's rejection of the claim on its merits, which is a legal conclusion that we review de novo." *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001)). Thus, when reviewing the denial of Purkey's motion for an evidentiary hearing, we must review the district court's conclusion that the evidence Purkey presented along with his § 2255 motion, taken as true, was insufficient to establish a violation of his Sixth Amendment right to effective assistance of counsel. As explained above, our *de novo* review of the record conclusively shows Purkey is unable to establish prejudice as required by *Strickland*. We therefore hold that the district court did not abuse its discretion by denying Purkey's request for an

> evidentiary hearing. *See Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test, the District Court did not err in declining to hold a hearing on petitioner's ineffective assistance of counsel claim.").

*Purkey*, 729 F.3d at 869.

Nevertheless, as the Eighth Circuit also has pointed out, evidentiary hearings are favored in § 2255 cases since a district court cannot resolve disputed factual issues in post-conviction cases based upon conflicting affidavits:

> Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists. *See Grady v. United States*, 269 F.3d 913, 919 (8th Cir. 2001); *United States v. Peltier*, 731 F.2d 550, 554 (8th Cir. 1984). The district court is not permitted to make a credibility determination on the affidavits alone; thus if the decision turns on credibility, the district court must conduct a hearing. *Kingsberry v. United States*, 202 F.3d 1030, 1032-33 & n. 6 (8th Cir. 2000). An evidentiary hearing may be denied, however, if the motion, files, and records of the case conclusively show that the movant is not entitled to relief. 28 U.S.C. § 2255(b). The court may find this conclusive showing if either "(1) the [petitioner's] allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Buster v. United States*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)) (internal quotation marks omitted).

*Thomas v. United States*, 737 F.3d 1202, 1206-07 (8th Cir. 2013).

In reviewing the files and records of the case, the district court is entitled to review the affidavits submitted by counsel, and may base its decision on such affidavits, provided the court does not base credibility determinations on those affidavits. *Thomas*, 737 F.3d at 1206-07.

At the conclusion of its response to Montgomery's voluminous § 2255 motion, the Government took the position that no evidentiary hearing was necessary in this case, because the files and records of the case conclusively demonstrated that Montgomery was entitled to no relief. After reviewing Montgomery's traverse, the Government continues to believe that, while evidentiary hearings are favored in § 2255 cases in general, and death-penalty cases in particular, the issues in this case may be resolved without the necessity of an evidentiary hearing.

The record, for instance, is fully developed on the Judy Clarke removal issue and the question whether Montgomery was competent to stand trial. Furthermore, as the Government noted in its response, Montgomery forfeited those purported errors by failing to raise them on direct appeal, and while ineffective assistance of counsel might support the "cause" for failing to raise these issues on direct appeal, *see McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986), Mr. Duchardt's affidavit – which Montgomery cannot dispute – indicates that Mr. Duchardt had a legitimate reason for believing that raising such issues on direct appeal would have been fruitless.

The record also rejects Montgomery's claims that Mr. Duchardt was ineffective in failing to employ a "mitigation specialist" or that he and his team failed to tell the "true story" of Montgomery's life and background. As the Government noted in its response, the record was replete with evidence showing the abuse Montgomery had suffered, and the Government did not dispute it. Rather, the prosecution's position was that thousands of people have suffered from similar abuse, but that it does not turn them into cold-blooded murderers. To the extent that Montgomery can point to any evidence of her past that was

not presented by her trial attorneys during the penalty phase of the trial, it could only have been cumulative to the mountains of mitigation evidence that was presented on Montgomery's behalf. Therefore, such additional evidence, even if it existed, would merely have been cumulative to that which was presented during the penalty phase of Montgomery's trial. *See Purkey*, 729 F.3d at 869.

Montgomery also points to its evidence that Mr. Duchardt's personal distain for a "mitigation expert" makes him an "outlier" and allegedly contradicts American Bar Association standards applicable to death penalty cases. (D.E. 149 at 20-23.) But, as Mr. Duchardt's affidavit points out, he is one of the most experienced and successful death penalty litigators in Missouri, he was familiar with "mitigation experts," and declined to use one in this case. This decision, obviously, involves a tactical decision that may not be second-guessed under the guise of a claim of "ineffective assistance of counsel." Regardless, the record is fully developed on this issue – an evidentiary hearing would serve no purpose other than to delay the resolution of this case.

Montgomery also claims that the affidavit of David Owen, which the Government chose not to file as part of its response, "[c]ontradicts the [s]tatements [p]roffered by [Mr.] Duchardt and [Mr.] O'Connor." (D.E. 149 at 15.) For example, in Mr. Owen's affidavit he claims that "[a]ll of the defense team believed she met the definition of incompetent as she was incapable of assisting in her defense," a claim refuted by Mr. Duchardt and Mr. O'Connor, who indicated to the contrary. Moreover, given all the evidence in the record showing that Montgomery *was* competent to stand trial, Montgomery cannot show either "cause or prejudice" for her failure to raise this issue on direct appeal.

In summary, then, the Government continues to believe that an evidentiary hearing is not required in this case because there are no *meaningful* facts in dispute, and that the files and records of the case conclusively show that Montgomery is entitled to no relief. However, if this Court were to disagree, the Government would urge that this Court hold a reasonably prompt hearing limited to those issues where there is a *material* dispute of facts. But at this point, however, the Government is at a loss to identify what those material disputed issues might be.

### ***C.*** ***Conclusion***

Accordingly, for the reasons outlined above, the Government requests that (1) this Court deny Montgomery's motion for discovery, and (2) deny Montgomery's § 2255 motion without an evidentiary hearing. In the alternative, the Government would request that this Court grant an evidentiary hearing limited to those material, disputed issues that this Court might identify from the files and records of the case.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney

By /s/ *Philip M. Koppe*

PHILIP M. KOPPE
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

*Attorneys for Respondent*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was delivered on October 13, 2015, to the CM-ECF system of the United States District Court for the Western District of Missouri, a copy of the foregoing document will be hand-delivered to the defendant at his first appearance before a judicial officer.

Kelley J. Henry
Office of the Federal Public Defender
810 Broadway Street Suite 200
Nashville , Tennessee 37203

Lisa G. Nouri
2526 Holmes
Kansas City, Missouri 64108

/s/ *Philip M. Koppe*
Philip M. Koppe
Assistant United States Attorney