IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| **LISA M. MONTGOMERY,** <br> **Movant,** <br> **vs.** <br> **UNITED STATES OF AMERICA,** <br> **Respondent.** | ) | **Case No. 12-08001-CV-SJ-GAF** <br> **Crim. No. 05-06002-CR-SJ-GAF** |

## ORDER

Presently before the Court is Movant Lisa M. Montgomery's ("Movant") Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255, which includes a request for an evidentiary hearing. (Civ. Case[1], Doc. # 71 ("2255 Mtn")). Respondent United States of America (the "Government") opposes. (Civ. Case, Doc. # 140). Also before the Court is Movant's Motion to Authorize Discovery. (Civ. Case, Doc. # 150). The Government opposes. (Civ. Case, Doc. # 171). For the reasons set forth below, Movant's Motion to Vacate is DENIED in part, Request for Hearing is GRANTED in part, and Motion to Authorize Discovery is DENIED.

## DISCUSSION

### I. FACTS

### A. Procedural History

On March 3, 2007, Movant was indicted pursuant to a Superseding Indictment, charging her with the interstate kidnapping of Victoria Jo Stinnett and resulting death of Bobbie Jo

[1] "Civ. Case" refers to the present civil case, Case No. 12-08001-CV-SJ-GAF.

Stinnett. (Crim. Case[2], Doc. # 154). The Superseding Indictment alleged Movant had prematurely cut Victoria Jo from the womb of her mother, Bobbie Jo. (*Id.*). In October 2007, following a jury trial in this Court, Movant was found guilty of kidnapping Victoria Jo resulting in the death of Bobbie Jo and was sentenced to death. (Crim. Case, Docs. ## 341, 354). The Eighth Circuit affirmed Movant's conviction and sentence of death. *See United States v. Montgomery*, 635 F.3d 1074 (8th Cir. 2011). The Supreme Court denied her petition for a writ of certiorari on March 19, 2012. *See Montgomery v. United States*, -- U.S. --, 132 S. Ct. 174 (2012). Thereafter, Movant initiated the present Motion to Vacate her judgment and sentence. (*See* Civ. Case, Docket Sheet).[3]

**B. Appointment of Counsel**

On December 28, 2004, Magistrate Judge Maughmer appointed the Office of the Federal Public Defender (the "FPD") as Movant's counsel. (Crim. Case, Doc. # 8). Two days later, the FPD notified the Court that it had internally assigned Anita Burns, an attorney in its office, to the case. (Crim. Case, Docket Sheet, 12/30/04 text entry). On January 30, 2005, Judge Maughmer appointed Susan Hunt as learned counsel pursuant to 18 U.S.C. § 3005. (Crim. Case, Docs. ## 16, 69, p. 13). On April 25, 2005, Burns's motion to withdraw was granted, and David Owen, First Assistant Federal Public Defender, assumed the FPD's representation in the case. (Crim. Case, Docs. ## 41, 43, 69, pp. 13-14). Historically, Judges in Western District of Missouri, including the undersigned, generally prefer to appoint local counsel because proceedings tend to

[2] "Crim. Case" refers to the underlying criminal case, Case No. 05-06002-01-CR-SJ-GAF.

[3] Other facts will be referenced in conjunction with the respective issues relevant to them. The Court is aware that Movant included copious facts in her brief; however, most of these facts relate to issues that the Court cannot rule on prior to an evidentiary hearing, and therefore are not included herein.

run smoother with attorneys familiar with the Court's procedures.[4] (Civ. Case, Doc. # 53 ("Reassign Hearing Tr."), 10:7-13, 23:17-22). But here, upon Owen's request, the Clerk of Court admitted Judy Clarke, a veteran capital defense attorney licensed in the State of California, *pro hac vice* to appear in the case on October 7, 2005. (Crim. Case, Doc. # 63; Civ. Case, Doc. # 151-3 ("Clarke Decl."), ¶¶ 1, 3).

Almost immediately following Clarke's appointment to the case, she and Owen began having difficulty working together. (Civ. Case, Doc. # 151-1 ("Hunt Decl."), p. 6; Civ. Case, Doc. # 151-2 ("Owen Decl."), p. 6; Clarke Decl., ¶¶ 17-19). In early November, Hunt, Owen, and Clarke met at a restaurant and Clarke loudly stated Owen did not possess the requisite experience and abilities to make decisions in the case, which he found embarrassing and offensive. (Owen Decl., pp. 6-7; Clarke Decl., ¶¶ 17-18). Their relationship continued to deteriorate following this exchange. (Hunt Decl., p. 6; Owen Decl., p. 5). Owen found Clarke abusive and demeaning while Clarke found Owen controlling and inexperienced. (Civ. Case, Doc. # 41-5 ("Chambers Conf. Tr."), 10:13-15; Civ. Case, Doc. # 151-7, pp. 2-3; Clarke Decl., ¶ 16). Hunt described the situation as "doomed to fail." (Civ. Case, Doc. # 151-5, p. 6).

On April 19, 2006, Hunt, Owen, and Clarke met to discuss the ongoing friction between the defense team members. (Hunt Decl., p. 7; Owen Decl., p. 7; Clarke Decl., ¶ 20). They also discussed the possibility of Clarke leaving the case. (Hunt Decl., p. 7; Owen Decl., p. 7). At the conclusion of the meeting, Hunt and Owen agreed to meet with the undersigned the next day about the situation. (Hunt Decl., p. 8; Owen Decl., p. 8).

The next morning, on April 20, 2006, Owen relayed the prior evening's events to his supervisor, Ray Conrad, the then-appointed Federal Public Defender. (Hunt Decl., p. 8; Owen

[4] It should also be noted that local counsel is more readily available without the extra expense of travel from out of state.

Decl., p. 8). Owen and Conrad, without Hunt, then met with the undersigned and Judge Maughmer regarding Clarke's involvement in the case. (Hunt Decl., p. 8; Owen Decl., p. 8; Reassign Hearing Tr. 22:21-25:8). By the end of the meeting, it was clear that there was a significant breakdown in communication within the defense team and that serious personality conflicts between the various members of the defense team existed. (Reassign Hearing Tr. 7:1-6; 13:10-18, 16:1-18; 21:12-19; 22:17-25:8; Civ. Case, Doc. # 65). While there was not a problem expressed with Clarke's work product, the defense team was becoming unproductive due to the ongoing conflicts, and the FPD was recommending termination of Clarke's appointment as a resolution. (Reassign Hearing Tr. 3:8-15, 7:1-6; 13:10-18, 16:1-18; 21:12-19; 22:17-25:8; Civ. Case, Doc. # 65). Nothing occurred off the record that was not later discussed on the record. (Reassign Hearing Tr. 14:2-6). Nothing in the record contradicts that the defense team was dysfunctional at that point.

On April 20, 2006, the Court entered the following order:

> Upon good cause shown, and finding that it is no longer necessary for Judy Clarke, Federal Defenders of San Diego, Inc., to continue in a *pro hac vice* status as additional counsel representing the defendant herein, the appointment of Judy Clarke in this cause is hereby terminated effective immediately."

(Crim. Case, Doc. # 79). The next day, the Court conducted an ex parte hearing regarding the termination of Clarke's appointment, with Movant, Hunt, and Owen present. (Civ. Case, Doc. # 113-1 ("4/21/2006 Tr.")). The Court addressed the situation concerning Clarke's removal as counsel and asked Movant if she had any questions or concerns or if she wanted to speak to the matter. (4/21/2006 Tr. 2:1-3:22). Movant responded that she did not. (*Id.* at 3:25-4:15). Hunt, as well as FPD investigator Ron Ninemire, explained that Movant was upset but had not expressed any complaints. (*Id.* at 4:1-25).

On April 25, 2006, Hunt and Owen met with the undersigned about Clarke's removal. (Chambers Conf. Tr. 2:1). Hunt explained the unforeseen consequences of Clarke's removal and the necessity of having an attorney with mental health experience on the team. (*Id.* at 2:1-4:19, 5:13-6:21). Hunt proposed two options: the FPD office could withdraw and Clarke could be reinstated to the case or the FPD's office could remain on the case, find a new mitigation specialist, and be given additional time to "rebuild" the mental health defense. (*Id.* at 7:7-21, 10:24-11:4). The Court preferred the second option. (*Id.* at 11:11-15).

Nearly two weeks later, on May 3, 2006, Movant submitted a letter explaining her preference for Clarke as her attorney. (Crim. Case, Doc. # 84). Also on May 3, 2006, and in an effort to address lingering case management issues between defense counsel, the Court met with Hunt, Owen, and Conrad to discuss any progress or lack thereof (*i.e.*, "where things stand") in their representation of Movant. (Chambers Conf. Tr. 16:1-13). At this meeting, Hunt expressed that there were "fundamental problems with our continuing on." (*Id.* at 18:8-13). Owen and Conrad acknowledged that there were problems between them and Hunt. (*Id.* at 23:17-24:13, 31:7-33:1). At this point, Hunt and Owen both stated they could not work together in Movant's interest. (*Id.* at 23:17-21, 25:8-15, 27:6-18). Owen suggested that the FPD withdraw from the case. (*Id.* at 26:6-9). Hunt then advised the Court that, in her opinion, it would be in Movant's best interest for her to withdraw from the case. (*Id.* at 33:8-12).

On May 12, 2006, Judge Maughmer granted Hunt's motion to withdraw and appointed John O'Connor as learned counsel. (Crim. Case, Doc. # 86). Four days later, Judge Maughmer appointed Fred Duchardt as additional counsel in the "interests of justice." (Crim. Case, Doc. # 87). Neither Hunt, Clarke, nor any of Movant's other attorneys filed any written request with the

Court seeking Clarke's reinstatement to the case or for a hearing on the issue. (*See* Crim. Case, Docket Sheet).

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a movant may collaterally attack her sentence on four grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States', (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Arguments that might warrant reversal on direct appeal do not necessarily support collateral attack. *United States v. Frady*, 456 U.S. 152, 165 (1982). A basis for collateral attack is ineffective assistance of counsel. *See United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

Generally, ineffective assistance of counsel claims raised in a § 2255 motion are examined under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the Supreme Court established a two-part test to determine whether counsel's purported "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. First, the defendant must show that counsel's performance was deficient, *i.e.* that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must show the deficient performance so prejudiced the defense to affect the outcome of the trial. *Id.*

Some circumstances, however, are so likely to prejudice the defendant that it is unnecessary for the defendant to prove actual prejudice. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Courts have uniformly presumed prejudice "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* (collecting cases); *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002). It is only in "circumstances of that magnitude" that the Court may "forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." *Mickens*, 535 U.S. at 166. Accordingly, the Court must first determine if the alleged error is a "structural defect," which "is presumptively prejudicial and requires reversal," or if the harmless-error analysis applies. *Sweeney v. United States*, 766 F.3d 857, 860 (8th Cir. 2014) *cert. denied*, 135 S. Ct. 1841 (2015); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 146-48 (2006).

## III. ANALYSIS

A number of Movant's claims have factual issues that need to be resolved before they can be considered by this Court. (2255 Mtn, Grounds V – VII, XII – XIII, XV, XVIII, and XXII). Accordingly, as discussed below, the Court will reserve ruling on these claims until after an evidentiary hearing.

Additionally, some claims currently raised by Movant were not raised on direct appeal, but should have been. (*Id.* at Grounds I – III, VI – IX, portions of X, XI – XIII, portions of XVI, XVII, XX). Claims not raised on direct appeal are waived. *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997). This waiver is excused if there is cause and prejudice. *Id.* Ineffective assistance of counsel can establish both cause and prejudice. *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). Because many of the ineffective assistance of counsel claims cannot be addressed at this juncture, the Court reserves judgment on whether claims were procedurally defaulted until after the evidentiary hearing.

### A. Grounds I – IV: The Clarke Issues

In her § 2255 motion, Movant argues the removal of Clarke as one of Movant's co-counsel deprived her of effective assistance of counsel throughout the trial proceedings and on appeal, unconstitutionally interfered with the attorney/client relationship, and resulted in a purported fraud on the court and conflicts of interests for remaining counsel. (2255 Mtn, Grounds I – IV). Movant further argues that appellate counsel was ineffective for failing to raise these issues on direct appeal. (*Id.* at Ground IV). While not explicitly arguing such, Movant seemingly implies that only a defense team including Clarke could have provided her effective assistance of counsel. Accordingly, Movant contends that the termination of Clarke's appointment resulted in structural error, thus prejudice must be presumed and a new trial granted.

#### *1. Authority to Terminate Appointment/Attorney-Client Relationship (Ground I)*

Movant argues the Court exceeded its authority when terminating Clarke's appointment, thereby violating her constitutional right to effective assistance of counsel. (2255 Mtn, pp. 39-47). Movant contends that, as a capital defendant, she is entitled to an "enhanced" right to counsel. In addition to Movant's constitutional right to counsel, Congress has enacted statutory provisions which enhance the rights of representation for capital defendants "in light of what it calls 'the seriousness of the possible penalty and . . . the unique and complex nature of the litigation.'" *Martel v. Clair*, -- U.S. --, --, 132 S. Ct. 1276, 1284-85 (2012) (quoting 18 U.S.C. § 3599(d)). Under these enhanced rights, a court must assign a capital defendant two attorneys upon her request. 18 U.S.C. § 3005. Of those two attorneys, at least one must be knowledgeable in and have experience with death penalty cases. *Id.* Courts are directed to consider the recommendation of the Federal Public Defender organization when assigning counsel to such cases. *Id.* At least one attorney appointed before judgment must have been admitted to practice before the court in which the case is tried for not less than five years and have at least three years

of actual trial experience in felony cases in that court. 18 U.S.C. § 3599(b). Courts may appoint additional counsel should it be deemed warranted under the circumstances of the case. § 3599(d). "Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings . . . ." § 3599(e).[5] As the Supreme Court has noted, "those measures 'reflec[t] a determination that quality legal representation is necessary' in all capital proceedings to foster 'fundamental fairness in the imposition of the death penalty.'" *Martel*, 132 S. Ct. at 1285 (citing *McFarland v. Scott*, 512 U.S. 849, 855, 859 (1994)) (alternation in original).

A trial judge plays an important role in ensuring all criminal defendants, including those facing capital charges, receive a fair trial and their right to counsel. *Geders v. United States*, 425 U.S. 80, 86 (1976). In a capital case, the judge oversees the process of appointing "learned counsel," *United States v. Wilson*, 354 F. Supp. 2d 246, 246 (E.D.N.Y. 2005), and ensures that counsel, whether chosen or appointed, does "not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006). Unfortunately, "[a] criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process." *Geders*, 425 U.S. at 86. "If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings." *Id.* at 87.

[5] To attract better counsel, Congress authorized higher rates of compensation and provided additional resources for investigative and expert services in death penalty cases. *Martel*, 132 S. Ct. at 1285. *Compare* § 3599(g)(1) *with* § 3006A(d) *and* § 3599(f) and (g)(2) *with* § 3006A(e).

There is no question the circumstances surrounding Clarke's involvement in this case did not play out as one would have liked. The conflicts between the defense team members presented the Court with a difficult and unusual issue of how to proceed. Regardless of whether Movant knew about it, her defense was being impacted by the dysfunction within her defense team and the communications amongst the team were continually deteriorating. Considering all of the surrounding circumstances, this District's preference for local counsel, and § 3005's direction to consider the FPD's recommendation, the undersigned determined that terminating Clarke's appointment to the case was the most appropriate way to prevent the obstruction of judicial procedures and ensure Movant continued with an effective team of attorneys representing her.

*i. Sua Sponte Removal*

Nonetheless, Movant argues the termination of Clarke's appointment was a violation of her constitutional right to effective assistance of counsel because it interfered with the attorney-client relationship. (2255 Mtn, pp. 39-47). Movant acknowledges that indigent defendants are not entitled to choose their appointed counsel; who to appoint is a decision left to the discretion of the court. *See Gonzalez-Lopez*, 548 U.S. at 151 (stating "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them"); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (stating that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts"). The Eighth Circuit has held the "substitution of counsel is a matter committed to the sound discretion of the district court." *Hunter v. Delo*, 62 F.3d 271, 274 (8th Cir. 1995) (citation omitted). And statutory law supports

this proposition. "The United States magistrate judge or the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings." 18 U.S.C. § 3006A(c).

Section 3599(e), on the other hand, suggests that appointed counsel cannot be removed in capital cases unless the attorney or defendant so move. Some courts have permitted *sua sponte* removal of previously appointed counsel, *see, e.g., United States v. Orleans-Lindsay*, 572 F. Supp. 2d 144, 174 (D.D.C. 2008), while others have found a *sua sponte* removal error under the facts of those cases. *See, e.g., Stotts v. Wisser*, 894 S.W.2d 366, 367 (Tex. Crim. App. 1995); *Harling v. United States*, 387 A.2d 1101, 1105 (D.C. 1978). Both courts finding error in a *sua sponte* removal of appointed counsel stated that situations may arise in which a court may replace counsel without denying the defendant's constitutional right to counsel. The *Stotts* court stated there must be some principled reason for the judge's *sua sponte* replacement of appointed counsel. *Stotts*, 894 S.W.2d at 367. The *Harling* court stated a judge "may not arbitrarily remove the attorney, over the objections of both the defendant and his counsel" once the attorney is serving under a valid appointment and an attorney-client relationship has been established, but may "in the interest of justice substitute one counsel for another." *Harling*, 387 A.2d at 1105.

This Court does not believe § 3599(e) precluded it from terminating Clarke's appointment to the case. The Court had principled reasons for its decision and did not arbitrarily enter the order terminating the appointment. No one denies that Movant's defense team was dysfunctional following Clarke's appointment. After Hunt's appointment as learned counsel in January 2005, Movant was at all times represented by a minimum of two attorneys, at least one of whom had knowledge and experience in death penalty cases, fulfilling the requirements of § 3005. Clarke's appointment was not necessary to comply with statutory obligations, but rather,

she was appointed to aid in Movant's defense in the interests of justice. When it became clear that Clarke's appointment was no longer in the interests of justice due to the breakdown in communication between her and other defense team members, her appointment was terminated. *Cf. Martel*, 132 S. Ct. at 1286-87 (adopting the "interests of justice" standard to § 3599 motions to substitute counsel filed by capital defendants).

This is quite similar to the facts in *Orleans-Lindsay*. In that case, the defendant was facing charges punishable by death. *Orleans-Lindsay*, 572 F. Supp. 2d at 153. Two attorneys, Ponds and Kiersh, were initially appointed to represent the defendant. *Id.* at 154. Kiersh was a death penalty qualified attorney while Ponds was not. *Id.* Kiersh withdrew from the case and was replaced by Boss, another death penalty qualified attorney, and Tucker, an Assistant Public Defender. *Id.* The defendant was not satisfied with the representation provided by Boss and Tucker. *Id.* at 154-55. The Court removed them and replaced them with O'Toole and Ricco, two highly experienced death penalty qualified attorneys. *Id.* at 155. Upon O'Toole and Ricco's appointment, the Court determined *sua sponte* that Ponds's services were no longer necessary and terminated his appointment. *Id.* The defendant argued that Ponds's removal resulted in a deterioration of his ability to communicate with his lead counsel and that he was not familiar with O'Toole and Ricco and had no confidence in their ability to represent him. *Id.* at 174. The reviewing court concluded removal was proper. *Id.*

Like the defendant in *Orleans-Lindsay*, Movant contends that Clarke was the only counsel she trusted, that she did not have a good relationship with the other counsel, and she would have preferred for Clarke to continue representing her and have the other appointed attorneys removed. But Movant's right to counsel "does not involve the right to a 'meaningful relationship' between an accused and [her] counsel." *Hunter*, 62 F.3d at 274 (citing *Swinney*,

970 F.2d at 499). Like in *Orleans-Lindsay*, Movant had at least two appointed attorneys qualified under the statutes at all times but now contends she preferred the attorney who was removed. Here, because of the communication issues between defense members, the significant personality conflict, the FPD's recommendation, and the preference for local counsel, there is even a stronger case for preferred counsel's removal. Just as in *Orleans-Lindsay*, these other considerations outweigh Movant's position that she preferred Clarke's continued representation as part of her defense team.

Movant also argues that Supreme Court precedent precluded the trial court from terminating Clarke's appointment, citing *Gonzalez-Lopez*. (2255 Mtn, pp. 39-47). In *Gonzalez-Lopez*, the Supreme Court concluded that the trial court erroneously deprived the defendant's counsel of choice, entitling him to reversal of his conviction. 548 U.S. at 150. In that case, the defendant did not require appointed counsel, but rather retained an out-of-state attorney to represent him. *Id.* at 142. The trial court repeatedly denied retained counsel's numerous motions for admission *pro hac vice*. *Id.* at 142-43. The Supreme Court reiterated that, when the defendant can afford to hire an attorney, his Sixth Amendment right to counsel includes the right to choose that counsel. *Id*. at 144. The Court held that, to deprive a defendant not requiring appointed counsel the choice of counsel is a "structural defect" for which prejudice is presumed. *Id.* at 150. But, the Court also noted that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151.

Here, Clarke was not retained. Thus, the *Gonzalez-Lopez* holding is inapplicable. Moreover, Clarke did not engage in *any* effort to remain on the case. Clarke never filed a motion to reconsider or requested a hearing on the matter. Nor did Hunt or any other attorney associated

with the case.[6] By all appearances, Clarke consented to the termination of her appointment and acknowledged that it was appropriate.

*ii. Alleged Entitlement to Hearing*

Movant next argues that both she and Clarke were entitled to a hearing on the issue before the Court made its decision to terminate Clarke's appointment. (2255 Mtn, pp. 41-47). Courts are required to make factual findings on the record when disqualifying a defendant's counsel of choice. *United States v. Collins*, 920 F.2d 619, 628 (10th Cir. 1990). In some instances, trial courts should hold evidentiary hearings on a defendant's motion to remove appointed counsel. *United States v. Jones*, 795 F.3d 791, 796-97 (8th Cir. 2015) (discussing a trial court's obligation to inquire into complaints about counsel). But, Movant cites to no cases, nor is the Court aware of any cases, where it has been deemed error for a trial court to remove an appointed attorney on that attorney's motion to withdraw, co-counsel's motion to remove, or a court's *sua sponte* removal before holding a hearing on the matter. Movant does cite non-controlling decisions that *sua sponte* removal must be based on "some principled reasons," *Stotts*, 894 S.W.2d at 367, and cannot be arbitrary, *Harling*, 387 A.2d at 1105, but those cases do not indicate that a hearing is required. The record clearly establishes that the Court's decision was not arbitrary and was based on principled reasons to ensure a cohesive defense team for Movant.

Nor was Clarke entitled to a hearing on the termination of her appointment. When used as a sanction or disciplinary measure, *pro hac vice* counsel is entitled to notice and an opportunity to respond before being disqualified and having their status revoked. *Cole v. U.S.*

[6] Movant claims that Hunt orally moved for Clarke's reinstatement during the conferences in chambers. (2255 Mtn, pp. 39-47). It appears Movant is trying to recreate the record. The actual record reveals that Hunt presented Clarke's reinstatement as an option but made no formal motion, orally or in writing, to reinstate her.

*Dist. Court*, 366 F.3d 813, 822 (9th Cir. 2004); *Johnson v. Trueblood*, 629 F.2d 302, 303-04 (3d Cir. 1980). Here, the Court did not revoke Clarke's *pro hac vice* status. Rather, it terminated her appointment to the case. The Court did not find that Clarke had engaged in any unethical conduct warranting discipline such as a revocation of *pro hac vice* status. Rather, the Court has explicitly outlined the reasons behind its removal of Clarke: a breakdown in communication between members of the defense team, a significant personality conflict between her and co-counsel, the FPD's recommendation to terminate Clarke's appointment, and the preference for local counsel. The order terminating Clarke's appointment in no way references a revocation of *pro hac vice* status. There is simply nothing in the record indicating that Clarke's *pro hac vice* status was "revoked" as a disciplinary measure, thereby entitling her to notice and an opportunity to respond.

Again, Clarke did not personally challenge the Court's decision to terminate her appointment. Clarke did not file a request for reconsideration or a hearing. Nor did she seek a writ of mandamus or appeal the decision. Courts have routinely recognized that an attorney who has been unwillingly removed from a case has a personal stake in that decision and has standing to appeal that decision on her own behalf. *See Kirkland v. Nat'l Mortgage Network, Inc.*, 884 F.2d 1367, 1370 (11th Cir. 1989) (dismissal of underlying action did not moot attorney's disqualification because the "grounds of dishonesty and bad faith could well hang over his name and career for years to come"). To the extent Movant argues on Clarke's behalf, such argument has been waived.

*iii. No Structural Error*

For all of these reasons, the Court had the authority to terminate Clarke's appointment to the case and did not err in making this decision. However, even if the Court exceeded its

authority in making this decision, the termination of Clarke's appointment still was not a structural error for which prejudice is presumed and does not automatically entitle Movant to a new trial. As outlined above, "in order to succeed on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Sweeney*, 766 F.3d at 859-60 (internal quotation marks and citations omitted). Courts have presumed prejudice in three situations: (1) where "the accused is actually or constructively denied counsel during a critical stage of the criminal proceeding;" (2) where counsel "fails to subject the government's case to a meaningful adversarial testing, which failure must be complete and not limited to isolated portions of the proceeding;" or (3) "when circumstances are present that even competent counsel could not render effective assistance." *Garcia v. Bertsch*, No. A3-04-075, 2005 WL 4717675, at *6 n.5 (D.N.D. Sept. 12, 2005) *subsequently aff'd*, 470 F.3d 748 (8th Cir. 2006) (citing *Bell v. Cone*, 535 U.S. 685, 695-697 (2002); *United States v. White*, 341 F.3d 673, 677-679 (8th Cir. 2003)). Here, Movant argues that the termination of Clarke's appointment resulted in a denial of counsel during critical stages of the criminal proceedings, specifically the pretrial, guilt, and penalty phases of her trial.

The flaw in Movant's argument that Clarke's termination resulted in a structural error is that, at all times following Hunt's appointment, Movant was represented by at least two attorneys in accordance with the requirements listed in §§ 3005 and 3599. She was never actually denied counsel, let alone at a critical stage. She may have been denied Clarke's representation, but as stated above, indigent defendants are not entitled to counsel of their choice. *Gonzalez-Lopez*, 548 U.S. at 151. Thus, the termination of Clarke's appointment, by itself, cannot result in structural error requiring an automatic finding of prejudice even if the Court did not have

authority to remove her. Rather, Movant must establish that other appointed attorneys were ineffective either under the *Strickland* harmless error standard or because of some other structural error. *See People v. Noriega*, 229 P.3d 1, 5 (Cal. 2010).

***2. Purported Fraud on the Court (Ground II)***

Movant next argues that structural error occurred when Owen and Conrad purportedly perpetrated a fraud on the Court. (2255 Mtn, pp. 47-52). "Fraud on the court which justifies vacating a judgment is narrowly defined as fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *United States v. Smiley*, 553 F.3d 1137, 1144 (8th Cir. 2009) (internal quotation marks and citations omitted). "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel . . . ." *Landscape Properties, Inc. v. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995) (citation omitted). Only if the court is actually deceived by the misrepresentation may a judgment be set aside based upon fraud on the court. *Smiley*, 553 F.3d at 1144.

"The standard for 'fraud on the court' is demanding." *Johnson v. United States*, No. 4:07CV00365ERW, 2011 WL 940841, at *2 (E.D. Mo. Mar. 16, 2011) (citing *Williams v. Dormire*, No. 4:10-CV-1660-CAS, 2010 WL 3733862 , at *2 (E.D. Mo. Sept. 20, 2010); *Jackson v. Thaler*, 348 F. App'x 29, 34-35 (5th Cir. 2009); *Best v. United States*, Nos. 2:00-CR-171, 2:08-CV-59, 2011 WL 321153, at *1-2 (N.D. Ind. Jan. 26, 2011)). A finding of fraud on the court "must be supported by clear, unequivocal, and convincing evidence." *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir. 1991) (quotation omitted). All doubts are resolved in favor of the finality of a judgment. *Smiley*, 553 F.3d at 1144. "Conclusory averments of the existence of fraud made on information and belief and unaccompanied by a statement of clear

and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud." *Galatolo v. United States*, 394 F. App'x 670, 672 (11th Cir. 2010) (quoting *Booker v. Dugger*, 825 F.2d 281, 283-84 (11th Cir. 1987)).

Movant has no evidence that Owen and/or Conrad perpetrated a fraud on the Court. That memories have faded and some conversations went unreported is not clear, unequivocal, and convincing evidence of fraud. Movant merely speculates that there *must* have been some false information provided to the Court for it to terminate Clarke's appointment to the case. The Court's reasons for terminating Clarke's appointment have been thoroughly discussed above as well as during the hearing on Movant's Motion to Reassign the case and in resulting Orders. (Civ. Case, Docs. ## 53, 59, 65). The affidavits submitted, along with statements made by the undersigned and Judge Maughmer, establish that a disruptive conflict between appointed counsel existed, which was or was going to negatively impact Movant's defense. As Hunt put it, the defense team comprised of herself, Owen, and Clarke was "doomed to fail." Movant has no clear, unequivocal, and convincing evidence that Owen or Conrad misrepresented the nature of that conflict, let alone knowingly lied, to the Court.

### *3. Purported Conflict of Interest (Grounds III-IV)*

Movant alternatively argues that Owen and Conrad had an actual conflict of interest that affected their performance when seeking removal of Clarke. (2255 Mtn, pp. 52-56). When a conflict of interest affecting representation is alleged, the Court begins by determining whether there is an actual conflict, a potential conflict, or no conflict. *See generally*, *Edelmann*, 458 F.3d at 807. Where an attorney has a potential conflict of interest, the defendant must demonstrate prejudice to prove that the conflict resulted in a violation of her Sixth Amendment right to effective assistance of counsel. *Id.* Prejudice is presumed, however, when a defendant

establishes that her attorney had an actual conflict of interest that adversely affected the attorney's performance. *Id.*; *Cuyler v. Sullivan*, 466 U.S. 335, 348 (1980). "An actual conflict occurs 'when, during the course of the representation, the attorney's and the defendant's interest diverge with respect to a material factual or legal issue or to a course of action.'" *Edelmann*, 458 F.3d at 807 (quoting *United States v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994)).

Neither the Supreme Court nor the Eighth Circuit has extended the rule presuming prejudice "beyond cases in which an attorney has represented more than one defendant." *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006). The Court declines to extend the rule to the circumstances presented here. But, even if the Court assumed Owen and Conrad had an actual conflict of interest with Movant when seeking Clarke's removal, this does not end the inquiry. Movant still must demonstrate that the alleged conflict denied her her constitutional right to effective assistance of counsel *during a critical stage of the proceedings*. *See Mickens*, 535 U.S. at 166 (reaffirming that effective assistance must be denied entirely or during a critical stage of the proceeding for relief to be granted).

At all times after Hunt's appointment, Movant had at least two appointed counsel in accordance with §§ 3005 and 3599. Assuming Owen and Conrad had conflicts which prevented them from providing effective assistance of counsel when seeking Clarke's removal, Movant still had at least one attorney—first Hunt, then later O'Connor and Duchardt—providing her counsel.[7] In dicta, the Supreme Court has indicated that the rights in §§ 3005 and 3599 are not constitutional in nature, *see Martel*, 132 S. Ct. at 1286, but even if they were, Movant must establish that the period between the termination of Clarke's appointment on April 20, 2006, and the appointment of Duchardt on May 16, 2006, (which resulted in Movant being represented by

[7] Whether O'Connor's and Duchardt's counsel was effective will be determined following an evidentiary hearing.

O'Connor, Owen, and Duchardt) was a critical stage in the proceedings. This 22-day period constitutes a "critical stage" in the proceedings, if it was a "step[] in the proceeding in which the accused [was] confronted by the procedural system or the prosecutor or both and where available defenses may [have been] irretrievably lost." *Smith v. Lockhart*, 923 F.2d 1314, 1319 (8th Cir. 1991) (citations omitted).

During the 22-day period, no pretrial hearings where "counsel's absence might derogate [Movant's] right to a fair trial" occurred. *See United States v. Wade*, 388 U.S. 218, 226-27 (1967). Nor was she confronted by the prosecutors during this time period. And no defenses were irretrievably lost. It therefore cannot be said that this relatively brief period of time was a critical stage in the case. Accordingly, even if defendants facing the death penalty have a constitutional right to effective assistance of two attorneys, and even if there was an actual conflict of interest, Movant was not deprived of such a right during a critical stage in the proceedings.

Movant further contends that, because of Owen's purported conflict of interest, each additional member of the trial team also "had a conflict of interest barring further development of [her] claim." (2255 Mtn, p. 56). Movant cites no law in support of this proposition and thus has failed to establish a basis for relief. *Skinner v. United States*, 326 F.2d 594, 597 (8th Cir. 1964) (citation omitted). Moreover, the Eighth Circuit has stated that a public defender's conflict of interest cannot be imputed to attorneys who work in other offices without additional facts. *Nave v. Delo*, 62 F.3d 1024, 1034 (8th Cir. 1995). As O'Connor and Duchardt were private attorneys maintaining their own separate practices, Owen's purported conflict cannot be imputed to them. Regardless, this allegation at most suggests O'Connor and Duchardt, the other two attorneys appointed as trial counsel, had a *potential* conflict of interest. *See Edelmann*, 458

F.3d at 807 (defining potential conflict of interest). Thus, Movant must demonstrate prejudice to establish that O'Connor's and Duchardt's alleged potential conflicts violated her right to effective assistance of counsel. *See id.*

***4. Clarke Issue on Appeal (Ground IV)***

Movant additionally argues that Duchardt and John Gromowsky provided ineffective assistance of counsel as appellate counsel for failing to challenge Clarke's removal on appeal. (2255 Mtn, pp. 56-59). This argument is without merit. "When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." *Winters v. United States*, 716 F.3d 1098, 1106 (8th Cir. 2013) (quotation omitted). Movant implicitly admits that her appeals team raised some good points of error on appeal. Some points raised in her § 2255 Motion were previously raised on direct appeal, specifically (1) the Government's argument regarding her failure to apologize, (2) the absence of lesser included offense jury instructions, and (3) Victoria Jo was not a person under federal law until the moment of her birth. Moreover, the Eighth Circuit has routinely held that "one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed." *Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006). Appellate counsel is not ineffective for failing to raise every conceivable issue. *Winters*, 716 F.3d at 1106. For the reasons explained above, the Clarke issues were not likely to succeed on appeal, and therefore, it cannot be said that failure to raise these issues resulted in error. *See Pfau v. Ault*, 409 F.3d 933, 939-40 (8th Cir. 2005) (concluding the defendant did not establish prejudice by appellate counsel's failure to raise a non-meritorious issue on direct appeal).

In short, Movant has not established the termination of Clarke's appointment resulted in structural error. Thus, the Court will not presume prejudice. Accordingly, even assuming other counsel deficiently performed, Movant still must demonstrate she was prejudiced by her other appointed counsel's alleged ineffective assistance by producing credible evidence establishing that the outcome of her trial and appeal would have been different had counsel been effective.

**B. Grounds VIII, X, XIV: Prosecutorial Misconduct**

Movant asserts that she is entitled to relief due to prosecutorial misconduct. (2255 Mtn, pp. 198-203, 212-13). Specifically, she claims that then United States Attorney for the Western District of Missouri, Todd Graves was an interested prosecutor; the Government made several errors in its penalty phase opening statement and closing argument; and the Government suppressed exculpatory evidence and knowingly used perjured testimony.

***1. Claimed Interested Prosecutor (Ground VIII)***

Movant contends that former United States Attorney Todd Graves was impermissibly motivated by political reasons in his prosecution of this case. (2255 Mtn, p. 198-200). Todd Graves's brother is Sam Graves, who has been a United States Congressman since 2001 for the district which includes Skidmore, Missouri. Movant alleges that, because of his brother, Todd Graves had a conflict of interest that "skewed both the decision to federally prosecute [Movant] and the determination to authorize a capital prosecution" and should have recused himself.

"[P]rosecutors must be disinterested such that they may not represent the United States 'in any matter in which they, their family, or their business associates have any interest.'" *United States v. Sigillito*, 759 F.3d 913, 927-28 (8th Cir. 2014) (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987)). The appointment of an interested prosecutor is a fundamental error which "undermines confidence in the integrity of the criminal proceeding." *Young*, 481 U.S. at 810. However, "the standards of neutrality for prosecutors are

not necessarily as stringent as those applicable to judicial or quasi-judicial officers." *Id.* "An arrangement represents an actual conflict of interest if its potential for misconduct is deemed intolerable." *Id.* at 807 n.18. Further, the burden is on the movant to "show that an actual conflict of interest is present." *Sigillito*, 759 F.3d at 928.

Movant has not met her burden to show Todd Graves had an actual conflict of interest. Movant merely alleges that a conflict of interest exists because "[t]he murder occurred in the same district where [Todd Graves's] brother was a United States Congressman." (2255 Mtn, p. 199). Alleged prosecutorial conflicts of interest that are too remote or speculative do not meet the burden placed upon the movant. *See United States v. Tierney*, 947 F.2d 854, 865 (8th Cir. 1991). In *Tierney*, the defendant alleged a conflict of interest because "[t]he prosecutor's husband was a partner in a law firm representing [the] defendant's insurer, and the insurer ha[d] sued [the] defendant for a declaratory judgment rescinding [the] defendant's liability insurance policy." *Id.* at 864-65. The Eighth Circuit concluded, "[a]lthough such partners may have an interest in prevailing, we believe that this interest is simply too insubstantial to require disqualification of a partner's spouse in related litigation." *Id.* at 865. Similarly, in *Sigillito*, one of the victims was a cousin of a supervisory prosecuting attorney for the Eastern District of Missouri. *Sigillito*, 759 F.3d at 928. Although two attorneys from the Eastern District of Missouri were part of the defendant's prosecution team, the Eighth Circuit concluded a conflict of interest did not exist because the defendant "failed to demonstrate that [the cousin] exercised any authority in the case that would call the fairness of the trial into question." *Id*.

Like in *Tierney* and *Sigillito*, Movant's claim is too remote, speculative, and insubstantial to amount to an actual conflict of interest. Movant fails to explain how having a brother who is a United States Congressman creates an intolerable potential for misconduct or even why Sam

Graves would have an interest in the outcome of one of many criminal cases within his district. Further, Movant does not cite to any facts in the record which support the claim that Todd Graves was improperly motivated or even that he was directly involved with Movant's prosecution. Movant additionally fails to cite to any law, and this Court was unable to find any, which indicates a prosecuting attorney must recuse himself from high profile cases occurring within a family members' political district. Even if Todd Graves's prosecution of this case rose to the level of an ethical violation, the question for a court reviewing a habeas petition "is not whether the prosecutor's actions violated the ethical code. Habeas corpus relief is available only where there are errors of constitutional magnitude." *Wilkins v. Bowersox*, 933 F. Supp. 1496, 1522 (W.D. Mo. 1996) *aff'd*, 145 F.3d 1006 (8th Cir. 1998). Accordingly, Movant has failed to demonstrate that there was a prosecutorial conflict of interest.

***2. Penalty Phase Opening Statement and Closing Argument (Ground X)***

Movant outlines numerous alleged errors in the Government's penalty phase opening statement and closing argument. (2255 Mtn, pp. 201-03). These allegations are largely unsupported and laid out in a conclusory manner. Movant outlines thirteen alleged errors; however, this Court has combined some for purposes of discussion, resulting in nine subsections.

*i. Mitigating Factors and Unanimity*

Movant first contends that the Government misstated the law when it "implied that the jury must unanimously find mitigating factors by a preponderance of the evidence" in its opening statement. (2255 Mtn, pp. 201-02). Movant argues that this implication violated the Supreme Court's decision in *Mills v. Maryland*, 486 U.S. 367 (1988). In *Mills*, the Supreme Court held that a sentence must be overturned if a reasonable jury could have interpreted the instructions to require unanimity before a mitigating factor could be considered. 486 U.S. at 384.

In the cited portion of its opening statement, the Government said, "Now aggravating factors, as the judge has told you, must be proven by us beyond a reasonable doubt. Mitigating factors are only required to be proved by a preponderance of the evidence." (Crim. Case, Docs. ## 411-421, Penalty Phase Transcript ("Penalty Tr.") 2865:15-19). At no point in this portion of the trial did the Government even say the word "unanimous." (*See id.*). Further, the penalty phase jury instructions given in this case clearly stated that "[a] unanimous finding [was] not required" to consider mitigating factors and that "[a]ny one of you may find the existence of a mitigating factor, regardless of the number of other jurors who may agree." (Crim. Case, Doc. # 356 ("Penalty Jury Instructions"), No. 1). Thus, no misstatement of the law occurred.

*ii. Alleged Concession Regarding Death Penalty*

Movant also contends that the Government in its closing argument "argued that the defense had conceded that death was the only appropriate sentence by describing the crime as 'unimaginable, unspeakable, off the charts.'" (2255 Mtn, p. 202). In reality, the Government never argued that the defense conceded the death sentence was appropriate. (*See* Penalty Tr. 3151). Instead the Government stated that the defense "said it is unthinkable, it is unimaginable, it is unspeakable, it is off the chart." (*Id.* at 3151:7-10). An argument was not made that the defense supported the death penalty, only that they recognized the horrible nature of the crime. (*Id.*). Thus, no misstatement was made.

*iii. Use of Personal Opinions*

Movant additionally argues that the Government improperly injected personal opinions into the closing argument. (2255 Mtn, p. 202). "'Except to the extent [counsel] bases any opinion on the evidence in the case, [counsel] may not express his [ ] personal opinion on the merits of the case or the credibility of witnesses.'" *United States v. Segal*, 649 F.2d 599, 604

(8th Cir. 1981) (quoting *United States v. Garza*, 608 F.2d 659, 662-63 (5th Cir. 1979)). However, "an attorney may urge a conclusion based on the evidence." *United States v. Felix*, 867 F.2d 1068, 1075 (8th Cir. 1989).

Movant fails to identify which specific statements she believes amount to improper injections of opinion. It is a Movant's burden to identify and support a basis for relief. *See Taylor v. United States*, 229 F.2d 826, 832 (8th Cir. 1956). This, in and of itself, causes her argument to fail. However, Movant does cite to a number of pages in the Penalty Phase Transcript. This Court has reviewed those pages and finds no examples of any improper personal opinions. For example, the Government stated "Death is warranted in this case." (Penalty Tr. 3151:9-10). This was not an improper opinion, but a conclusion reached by reviewing the evidence supporting the existence of aggravating factors.[8] *See Bucklew v. Luebbers*, 436 F.3d 1010, 1022-23 (8th Cir. 2006).

On the cited pages, there were two examples of colorful language: the Government referred to the crime as "horrifying" and referred to Movant as a "cold-blooded predator." (*Id.* 3151:16; 3153:6). Again Movant does not specifically quote these statements, but out of an abundance of caution, this Court will briefly address them. Such caution is necessary because Movant failed to identify which statements she was challenging. "Federal habeas relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999). These statements do not rise to the prohibited level. Courts have

[8] The Government later similarly argued "[t]he death penalty is warranted in this case," "[t]his case is death worthy," and "this case is one of those rare senseless murders that deserves the ultimate punishment, a death sentence." (Penalty Tr. 3153:7; 3154:10; 3181:12-14). These statements are also examples of urging conclusions based on the evidence.

determined that characterizing a crime as horrifying in a closing argument does not necessitate habeas relief. *See Havens v. Solem*, 455 F. Supp. 1132, 1136 n.7 (D.S.D. 1978). Thus, the Government did not err by doing so.

Further, when the evidence allows a reasonable inference that the defendant was in fact a predator, it is not error to characterize her as such. In *Jackson v. Purkett*, No. 4:07CV0435 TCM, 2010 WL 908488 (E.D. Mo. Mar. 9, 2010), the court found no error in the prosecution's argument that the defendant was a predator when he shot the victim in the back, stole his car, and then tried to pass the car off as the defendant's own. 2010 WL 908488, at *4. Here, Movant stalked her pregnant victim online, strangled her, stole her baby, and tried to pass the baby off as Movant's own. Clearly, Movant's actions were more predatory than those in *Jackson*. "So long as prosecutors do not stray from the evidence and the reasonable inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury." *United States v. Robinson*, 110 F.3d 1320, 1327 (8th Cir. 1997). Thus, the Government's statements that the crime was "horrifying" and that Movant was a "cold-blooded predator" do not provide grounds for relief.

*iv. Reference to Apology*

Next, Movant contends it was error for the Government to argue that she had never apologized for her actions. (2255 Mtn, p. 202). "It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) (internal quotation marks and citation omitted). Moreover, the law of the case doctrine requires Eighth Circuit decisions be left undisturbed "absent an intervening change in controlling authority." *Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008). In her direct appeal, Movant argued it was improper

for the Government to bring up whether she had apologized. *Montgomery*, 635 F.3d at 1096. The Eighth Circuit considered and rejected this argument, finding that the comments were permissible. *Id.* at 1097. Thus, it cannot be relitigated in the present posture.

*v. Calls for Justice for the Family*

Movant also alleges that the Government improperly appealed to the jury's emotions when it argued that the death penalty should be imposed to provide justice for the victim's family. (2255 Mtn, p. 202). The Supreme Court has stated that "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 358 (1977). The Government asked the jury to consider whether a life sentence would be "justice for the Stinnett family" and then later stated "please give the Stinnett family justice. Please give Bobbie Jo justice." (Penalty Tr. 3182:4-7; 3194:16-17).

Movant contends the Government's request for justice on behalf of the Stinnett family violated the Eighth Circuit's holding in *Miller v. Lockhart*, 65 F.3d 676 (8th Cir. 1995)). In *Miller*, the prosecutor "[r]eferr[ed] to the family's desire for the death penalty . . . . None of the family members, however, testified during the penalty phase, nor did any of them at any time testify that he or she wanted [the defendant] put to death." 65 F.3d at 682. The Eighth Circuit concluded that because "no evidence was introduced regarding the wishes of the family;" the statements regarding the family's desire for death should not have been made. *Id.* at 685. Like in *Miller*, the Stinnett family did not testify that they desired the death penalty for Movant. (*See* Penalty Tr.). However, unlike in *Miller*, the Government never stated that the Stinnett family desired the death penalty. (*See id.*).

Further, other courts have determined that statements which do not reference the family's preference for the death penalty but instead are "merely pleas on behalf of the [s]tate and the family of the victim to return a sentence of death" are proper even when the state "introduced no victim impact testimony." *Thorson v. State*, 895 So. 2d 85, 114 (Miss. 2004). Additionally, "a prosecutor may argue the jury should do justice for the victim and the victim's family if the argument does not specifically relate to the family's opinions about the defendant or the crime." *State v. Prevatte*, 570 S.E.2d 440, 490 (N.C. 2002). Accordingly, the comments made by the Government urging the jury to do justice for the Stinnett family were not improper because they did not state that the family desired the death penalty.

*vi. Characterization of Mitigating Evidence*

Movant next argues that the Government improperly demeaned the mitigation evidence. (2255 Mtn, p. 202). In its closing argument, the Government referred to Movant's mitigating arguments regarding her past abuse and mental illness as excuses. (Penalty Tr. 3155:19-20; 3183:7-10; 3184:8-10; 3189:8-9). However, "[a]s long as the jury is properly instructed on the use of mitigating evidence, the prosecution is free to comment on the weight the jury should accord to it." *Bland v. Sirmons*, 459 F.3d 999, 1026 (10th Cir. 2006). In *Bland*, the prosecutor "referred to [the defendant's] mitigating evidence as 'excuses.'" *Id.* The Tenth Circuit concluded that such a reference was proper because, the prosecutor "never told the jury it could not consider [the] mitigating evidence . . . and [the prosecutor's comments] bore only on the weight of the evidence." *Id.* Like in *Bland*, the Government never told the jury not to consider the mitigating evidence, instead its argument bore only on the appropriate weight to give to the

argument.[9] Movant fails to cite to any case, and this Court knows of none, where the statements in question were found to be improper.

Movant also alleges the Government improperly argued the jury should not consider the evidence of her PTSD because it was not causally connected to the crime. (2255 Mtn, p. 202-03). In its closing argument, the Government argued Movant "may have some post-traumatic stress disorder. It didn't have anything to do with her thinking or her conduct." (Penalty Tr. 3154:25-3155:2). Movant argues that this statement violated the Supreme Court's decision in *Lockett v. Ohio*, 438 U.S. 586 (1978). Ohio's death penalty statute only allowed for consideration of a limited range of mitigating factors. *Lockett*, 438 U.S. at 607-08. In striking down Ohio's statute, the Supreme Court held that a jury, in deciding whether to impose the death penalty, must "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id*. at 604 (emphasis in orginal). However, in this case the jury was not precluded from considering Movant's PTSD as a mitigating factor. Instead, the Government properly argued the amount of weight that the jury should place on the evidence in question. *See Bland*, 459 F.3d at 1026.[10]

*vii. Facts not in Evidence*

---

[9] Movant does allege in her Motion that the Government "suggested the jury should not consider [the mitigation evidence]." However, Movant fails to cite to any specific portion of the Record where she believes this suggestion occurred. This Court has reviewed the generic citation provided by Movant and finds no statements from the Government which encourage the jury not to consider the mitigation evidence. (Penalty Tr. 3154-57, 3183-4, 3186-93).

[10] The other cases cited by Movant for support similarly speak to when a jury should be allowed to consider evidence in mitigation. *See Smith v. Texas*, 550 U.S. 297, 315-16 (2007); *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004). Since evidence of Movant's PTSD was admitted for consideration, Movant's argument fails.

Movant also contends the Government improperly argued facts not in evidence when it suggested that there are thousands of victims of abuse in response to Movant's mitigation argument and when it gave an anecdote encouraging the jury to look at the big picture of the crime.[11] (2255 Mtn, p. 202). Movant contends the use of this evidence violated the Supreme Court's decision in *Gardner*. In *Gardner*, the defendant challenged the judge's use of a confidential presentence investigation report that was not made available to the parties in sentencing. *Gardner*, 430 U.S. at 353-54. The Supreme Court held that the court's reliance on the report was improper stating the defendant "was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Id.* at 362. Unlike in *Gardner*, in this case, Movant's sentence was not dependent on a report kept outside the record that neither party had an opportunity to examine or challenge. The comments in question were made on the Record in open court. (Penalty Tr. 3154:21-23). Defense counsel heard the statements and could have challenged them had they so desired. Thus, Movant was not denied an opportunity to deny or explain the statements in question.

While, "[p]rosecutorial comments in closing argument that argue facts not in evidence may constitute grounds for reversing a conviction," *United States v. Vazquez-Garcia*, 340 F.3d 632, 641 (8th Cir. 2003), the statements in question were not arguments of fact, like the report in *Gardner*, but statements made to help the jury weigh and analyze the evidence before it. "[A]n attorney's role is to assist the jury in analyzing, evaluating, and applying the evidence." *United*

[11] In her Brief, Movant argues that the Government "told the story of [the prosecutor's] older brother and an abused child he helped. In reality, the prosecutor told a story about his niece who wrote him a letter. (Penalty Tr. at 3183). The prosecutor said that when he first read the letter he focused on all of its little mistakes and lost sight of the letter's true purpose. (*Id.*). The prosecutor then encouraged the jury to focus on the big picture of the crime instead of the mitigation evidence from twenty years previously put forth by Movant. (*Id.* at 3184).

*States v. Beckman*, 222 F.3d 512, 527 (8th Cir. 2000). "A prosecutor is given wide latitude in making a closing argument." *Clayton v. Roper*, 515 F.3d 784, 792 (8th Cir. 2008). "Anecdotes and personal experiences, including those involving counsel's family members, are common place in both opening [statements] and closing arguments." *Niles v. Owensboro Med. Health Sys., Inc.*, No. 4:09-CV-00061-JHM, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011). Movant offers no case law to support her argument that such statements were improper. Thus, the Government's use of a personal anecdote was not error.

*viii. Crime Scene Photographs*

Next, Movant alleges the Government improperly stated it had to show the jury the crime scene photographs. (2255 Mtn, p. 203). During its closing argument the Government, in reference to the crime scene photographs, stated "I am going to have to show these pictures again." (Penalty Tr. 3149:25). Presumably, Movant is arguing that the Government lied when it said it had to show the crime scene photographs, when in reality, it was not required to show them. This must be presumed because Movant fails to explain why she believes this statement was improper. In fact, Movant's entire argument on the subject is less than a sentence in length. As explained above, a prosecutor has wide latitude in making her closing argument. *See Clayton*, 515 F.3d at 792. A prosecutor's comments only violate a defendant's rights when the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974)). While Movant may be correct that the Government was not required to show the photographs again, such a phrase is a figure of speech and not outside the range of appropriate conduct.

Movant also argues that the photographs were shown as "a blatant attempt to encourage the jury to sentence [Movant] to death out of emotion, vengeance, [and] caprice." The Eighth

Circuit held that when crime scene photographs have already been shown to the jury and when they are at least arguably relevant to an element in question, presentations of them again during closing argument does not "render the trial fundamentally unfair and the resulting verdict d[oes] not constitute a denial of due process." *Strong v. Roper*, 737 F.3d 506, 522 (8th Cir. 2013). This is true even when the photographs in question are "flagrantly gruesome." *Kuntzelman v. Black*, 774 F.2d 291, 292 (8th Cir. 1985). In this case, the photographs were shown in the guilt phase of the trial and then were presented in the closing argument of the penalty phase to prove the heinous and depraved nature of the crime, an aggravating factor. (Penalty Tr. 3149:18-22; Penalty Phase Instruction No. 1). Accordingly, it was proper for the Government to show the photographs again during its closing argument.

*ix. Characterization of the Death Penalty*

Movant alleges the Government improperly characterized the death penalty when it argued that a life sentence was not sufficient punishment, the jury could not exercise mercy of sympathy, the death sentence was not ultimately the jury's responsibility, and the jury had a societal obligation to impose the death penalty. (2255 Mtn, p. 203). These allegations are not only conclusory but also largely unsubstantiated by the Record. In a Section 2255 motion, the burden is on the movant to establish a basis for relief. *Taylor*, 229 F.2d at 832. "At the threshold of [a movant's] undertaking is the necessity of alleging facts which, if proven, would entitle him to relief. Such allegations must particularize definitely." *Id.* "[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). On this basis alone, her arguments are insufficient.

In its closing argument, the Government spoke about the possibility of a life sentence. (Penalty Tr. 3281-82). It stated that a life sentence is "a very serious penalty. There is no

question about it." (*Id.* at 3181:23-24). However, the Government also urged the jury to consider whether such a sentence was justice and whether they were "really punishing [Movant] severely if [they] gave her a life sentence" because in prison Movant would get medications, decent meals, television, and reading materials. (*Id.* at 3182:8-17; 3186:19-20). Movant argues such comments were improper; yet, fails to explain how and why she believes the statements were improper. (2255 Mtn, p. 203).

The only situation where such statements were found to be improper was when a prosecutor compared a life sentence with the plight of the victim. Several courts have determined that it is improper to compare the plight of the victims with a defendant's life in prison. *See United States v. Johnson*, 495 F.3d 951, 979-80 (8th Cir. 2007) (The prosecutor argued "that ten, twenty, and thirty years from now, the victims would still be dead and [ ] would still be ten and six-years old. . . . No matter how small [the defendant's] cell may be, it's going to be larger than the coffin that [the victims] are laying in now.") (internal quotation marks omitted); *Bland*, 459 F.3d at 1027-28 ("it is prosecutorial misconduct for the prosecution to compare the plight of the victim with the life of the defendant in prison"). Although they found these statements to be undesirable, both courts ultimately determined that the comments in question did not necessitate relief. *See Johnson*, 495 F.3d at 980; *Bland*, 459 F.3d at 1028. In this case, while the Government spoke about what Movant's life would be like in prison, it did not juxtapose that with the plight of the victims. (*See* Penalty Tr.). When not made in comparison to the plight of the victim, comments about the conditions of life in prison made to show that "the death penalty rather than life imprisonment was the more appropriate punishment" are permissible. *Rodriguez v. Zavaras*, 42 F. Supp. 2d 1059, 1130 (D. Colo. 1999). Accordingly, such comments were not improper.

Movant also contends that the Government improperly argued that the jury could not exercise mercy or sympathy. (2255 Mtn, p. 203). The Government never made any such statements. (*See* Penalty Tr.). Instead, the Government stated that Movant "wants sympathy because she had bad parents. The sympathy in this case belongs with the Stinnett family." (*Id*. at 3190:14-16). Later the Government stated Movant "wants mercy. What kind of mercy did she show Bobbie Jo Stinnett, no mercy . . . . And I submit you should show her no mercy with your verdict." (*Id.* at 3193:1-7). At no point did the Government ever argue the jury was forbidden from exercising mercy or sympathy; it only argued that such an exercise was not warranted in this case.

As discussed above, "a prosecutor is given wide latitude in making a closing argument." *Clayton*, 515 F.3d at 792. "Prosecutors can discuss mercy in closing arguments because mercy is a valid sentencing consideration . . . . A prosecutor is allowed to argue that the defendant does not deserve mercy under the facts of a particular case." *State v. Rousan*, 961 S.W.2d 831, 851 (Mo. 1998) (en banc); s*ee also Rousan v. Roper*, 436 F.3d 951, 960 (8th Cir. 2006). Thus, it was not improper for the Government to ask the jury to refrain from showing Movant mercy or sympathy.

Movant next argues that the Government improperly stated that the responsibility for her death sentence was not borne by the jury. (2255 Mtn, p. 203). Again, Movant fails to cite to any specific portion of the Record where she believes such a violation has occurred, and, accordingly, her claim must fail.

Her argument also fails on the merits. In *Caldwell v. Mississippi*, 472 U.S. 320 (1985), the Supreme Court concluded that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for

determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29. In *Caldwell*, the prosecutor stated that the defense "would have you believe that you're going to kill this man and they know – they know that your decision is not the final decision. . . . Your job is reviewable." *Id.* at 325. The Supreme Court determined that this statement was improper because is suggests that the jury may shift its responsibility to another party, which may encourage the jury to sentence a defendant to death for reasons other than a belief that death is truly the appropriate sentence. *Id.* at 330-34. At the heart of *Caldwell* was the need for the jury to recognize "the gravity of its task and proceed with the appropriate awareness" of its responsibility. *Id.* at 341.

In applying *Caldwell*, the Eighth Circuit has concluded that "*Caldwell* is limited to comments 'that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision.'" *Middleton v. Roper*, 455 F.3d 838, 858 (8th Cir. 2006) (quoting *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994)). "'To establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law.'" *Id.* at 858-59 (quoting *Dugger v. Adams*, 489 U.S. 401, 407 (1989)). This Court has reviewed the Record in this case and sees no mention by the Government regarding the availability of appellate review or any statements indicating that another party had the final decision regarding Movant's sentence. (*See* Penalty Tr.). Instead, the Government stated the sentencing decision was "extremely important" and "shouldn't be taken lightly." (*Id.* at 3192:16-17). Movant has failed to establish a *Caldwell* violation.

Finally, Movant contends the Government improperly argued it was the juror's societal obligation to impose the death penalty. (2255 Mtn, p. 203). In closing argument, the

Government reasoned Movant was using her past abuse as an excuse for the present crime and stated "[m]embers of the jury, as a society, we cannot let this happen." (Penalty Tr. at 3192:1-6). Movant fails to explain why she believes such a statement was improper, or what doctrine it supposedly violated. In fact, Movant fails to cite to a single piece of authority in support of her claim. For this reason alone, her claim on this issue fails. *See Taylor*, 229 F.2d at 832.

In the event Movant is attempting to argue the Government was intending to inflame the jury, such an argument is without merit. "A prosecutor should not urge a jury to convict for reasons other than the evidence; arguments intended to inflame juror emotions or implying that the jury's decision could help solve a social problem are inappropriate." *United States v. Tulk*, 171 F.3d 596, 599 (8th Cir. 1999). However, "[u]nless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible." *United States v. Sanchez-Garcia*, 685 F.3d 745, 753 (8th Cir. 2012) (quotation omitted). In this case, the Government did not urge the jury to act as the conscience of the community, or to impose the death penalty out of such an obligation. (*See* Penalty Tr. at 3192:1-6). The statement was not calculated to inflame in that it did not include a warning about potential danger to the community or a request for the jury to send a message to other potential defendants. *See Sanchez-Garcia*, 685 F.3d at 753-54; *United States v. Johnson*, 968 F.2d 768, 770-71 (8th Cir. 1992). Thus, the Government's isolated reference to 'society' does not require relief. *See United States v. Grauer*, 701 F.3d 318, 323 (8th Cir. 2012); *United States v. Levering*, 431 F.3d 289, 293 (8th Cir. 2005).

***3. Alleged Evidence Violations (Ground XIV)***

Movant next contends that the Government knowingly used false testimony which it failed to correct and suppressed exculpatory evidence. (2255 Mtn, p. 212-13). As explained above, in a Section 2255 motion, the burden is on the movant to establish a basis for relief.

*Taylor*, 229 F.2d at 832. It is necessary to allege "facts which, if proven, would entitle [a defendant] to relief. Such allegations must particularize definitely." *Id.* A movant must do more than present "conclusory allegations unsupported by specifics." *Blackledge*, 431 U.S. at 74. Movant alleges these violations in a conclusory statement in the heading of her argument. In the body of her argument, Movant cites to law outlining the requirements for disclosure of exculpatory evidence and the prohibition against the use of false testimony. However, at no point does Movant support her arguments with any facts from the record.

Such support is required. "Generally, to obtain relief on a claim that the State introduced 'false evidence,' petitioner has the burden of demonstrating: (1) that a witness testified falsely, (2) that the false testimony was material, and (3) that the prosecution offered the testimony knowing it to be false." *Bragg v. Norris*, 128 F. Supp. 2d 587, 604 (E.D. Ark. 2000) (citing *Giglio v. United States*, 405 U.S. 150, 153-54 (1972)). Movant failed to identify which witness allegedly testified falsely, what the claimed false statements were, when the statements were made, or how or why the Government knew them to be false.

"To establish a *Brady* violation, a defendant must show that the government suppressed exculpatory evidence that was material either to guilt or to punishment." *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005). "[N]onspecific contentions [that] do not even identify the material allegedly withheld" are insufficient to establish a violation. *United States v. Heppner*, 519 F.3d 744, 750 (8th Cir. 2008). Movant failed to identify any material allegedly withheld or even which agency she believes withheld material improperly. Accordingly, these arguments are insufficient to establish a basis for relief.[12]

[12] Movant herself seems to agree that this argument is insufficient and indicated that this argument was raised only in an attempt to preserve it for further amendment, which never occurred. (2255 Mtn, p. 212 n.32).

## C. Ground XI: Composition of the Grand Jury

Movant argues that women and African-Americans were unconstitutionally underrepresented on the Grand Jury which indicted her. (2255 Mtn, pp. 204-05). Movant has only made conclusory statements that the grand jury did not represent a cross-section of the community without providing any evidence to that effect. In fact, she implicitly admits that her argument lacks a factual basis: "Mrs. Montgomery will expeditiously seek discovery in order to supplement this claim with additional facts and evidence." (*Id.* at p. 205 n.30). Over two years later, Movant has yet to supplement this claim.[13]

As noted throughout this Order, in a § 2255 motion, the burden is on the movant to establish a basis for relief. *Taylor*, 229 F.2d at 832. Here, Movant alleges the empaneled grand jury unconstitutionally underrepresented women and African-Americans in conclusory statements. Her argument correctly cites to a plethora of law regarding grand jury composition. However, Movant provides no facts to support her claim.

Factual support is required. In order to establish a claim of unconstitutional make-up of a grand jury, Movant must prove each of the following elements: "(1) that the allegedly excluded group is distinctive in the community; (2) that the group's representation in jury pools is not fair and reasonable in relation to the number of its members in the community; and (3) that this

---

[13] Given that over two years passed between Movant filing her § 2255 Motion and her Traverse, Movant should have discovered facts necessary to support this claim. *See Ringo v. Roper*, 472 F.3d 1001, 1008-09 (8th Cir. 2007) ("[The defendant] failed to avail himself of the numerous alternative sources of evidence that might have been useful in proving systemic discrimination."). Had Movant encountered resistance from the sources of the relevant evidence, she could have sought an order compelling discovery on the grand jury's composition or its selection process, but she did not. The Court would likely have granted such request as the Eighth Circuit has stated that "[g]rounds for challenges to the [grand] jury selection process may only become apparent after an examination of the records" and thus, "[e]ven if the defendant's anticipated challenges to the [grand] jury selection process . . . are without merit, the defendant may still inspect the jury records." *United States v. Alden*, 776 F.2d 771, 775 (8th Cir. 1985).

underrepresentation is due to systematic exclusion in the jury selection process." *United States v. Di Pasquale*, 864 F.2d 271, 282 (3d Cir. 1988) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Even assuming that women and African-Americans were underrepresented on the grand jury that indicted her, Movant has not alleged any facts suggesting that the purported underrepresentation is due to a systematic exclusion in the jury selection process. Where nothing in the record indicates how a grand jury was selected or what its racial and ethnic composition was, the Eighth Circuit has held that the defendant failed to satisfy the elements of a prima facie case. *United States v. Deering*, 179 F.3d 592, 597 (8th Cir. 1999) (citations omitted). Movant's argument on this ground is, therefore, without merit.

**D. Grounds IX, XVI: Claims of Trial Court Errors**

***1. 911 Tape (Ground IX)***

In her first allegation of trial court error, Movant alleges that the Court improperly admitted the 911 recording during the penalty phase. (2255 Mtn, pp. 200-01). Movant argues that its admission violates *Payne v. Tennessee*, 501 U.S. 808 (1991). *Payne* allows for the admission of "evidence about the victim and about the impact of the murder on the victim's family [as it] is relevant to the jury's decision as to whether or not the death penalty should be imposed." 501 U.S. at 827. This is because the Government "'has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to his family.'" *Id.* at 825 (quoting *Booth v. Maryland*, 482 U.S. 496, 517 (1987) (White, J., Dissenting)). Thus, *Payne* allows for evidence, such as the 911 call, that shows the jury the impact the murder had on the victim's family.

Movant also argues that the tape's admission violates *Booth*. (2255 Mtn, pp. 200-01). In *Booth*, the Supreme Court determined that "family members' opinions and characterizations of the crimes and the defendant" are irrelevant to capital sentencing. 482 U.S. at 502-03.[14] However, the opinions and characterizations prohibited by *Booth* are statements such as the victims were "butchered like animals", that no one "should be able to do something like that and get away with it", and that the victim's family felt that "the people who did this could [n]ever be rehabilitated." *Booth*, 482 U.S. at 508. The statements contained in the 911 recording were not these types of opinions and characterizations. As Movant admits in her summary of the recording, it contained simply a mother's anguish at finding her daughter dead. Thus, the admission of the recording was not inappropriate under *Payne* or *Booth*.

Finally, Movant argues that the admission of the recording was improper because it was more prejudicial than probative as there was other evidence establishing the victim's uniqueness and the recording was meant only to inflame the jury. (2255 Mtn, p. 201). Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice." However, "[c]laimed errors in evidentiary rulings . . .do not state a claim for relief under [§] 2255." *Houser v. United States*, 508 F.2d 509, 515-16 (8th Cir. 1974). Accordingly, this claim is insufficient to establish relief.

**2. *Wendy Treibs's Testimony (Ground XVI(A))***

Movant contends that this Court erred when it excluded testimony from her cousin, Wendy Treibs, regarding a familial history of mental illness. (2255 Mtn, pp. 214-16). Ms. Treibs was called to testify during the penalty phase of Movant's trial. (*See* Penalty Tr. 2977). Movant's counsel questioned Ms. Treibs about her own mental illness and then asked her about

[14] While much of *Booth* was overruled by *Payne*, the Supreme Court in *Payne* specifically stated that this portion of *Booth* was not overruled. *Payne*, 501 U.S. at 830 n.2.

her brother Kenny. (*Id.*). Counsel asked Ms. Treibs to tell the jury what Kenny had been diagnosed with. (*Id.* at 2977:17-22). Ms. Treibs responded "I have talked to some psychologists that have treated him but they're not allowed to tell me his exact diagnosis. I, my brother, has told me they told him he had bi-polar disorder." (*Id.* at 2977:24-2978:2). The Government objected to the statement, arguing it was speculative, irrelevant, and hearsay. (*Id.* at 2978:4-7). This Court sustained the objection, noting that hearsay is admissible in the penalty phase if it is otherwise reliable, but that Ms. Treibs's testimony was not reliable. (*Id.* at 2978:8-12).

Movant argues the evidence was excluded in error pursuant to the Supreme Court's ruling in *Green v. Georgia*, 442 U.S. 95 (1979). In *Green*, the Supreme Court determined that hearsay testimony is admissible in the penalty phase of a trial when it is "highly relevant to a critical issue" and "substantial reasons exist to assume its reliability." 442 U.S. at 97; *see also Sears v. Upton*, 561 U.S. 945, 950 n.6 (2010) ("reliable hearsay evidence that is relevant to a capital defendant's mitigation defense should not be excluded by rote application of a state hearsay rule"). If either relevance or reliability is lacking, the evidence in question need not be admitted. *See Brown v. Luebbers*, 371 F.3d 458, 467 (8th Cir. 2004).

In this case, the statement in question was not reliable. Evidence is not reliable if it is not "based on the personal knowledge of the declarant." *Mahlandt v. Wild Canid Survival & Research Ctr., Inc.*, 588 F.2d 626, 631 (8th Cir. 1978). The omitted testimony was not based on Ms. Treibs's personal knowledge, but instead was based upon something her brother claimed his doctor told him and he passed along to her. (Penalty Tr. at 2977:24-2978:2). This is hearsay upon hearsay without any corroboration of the parties' reliability or the information involved. The omitted testimony contains none of the indicia of reliability the Eighth Circuit has in the past found to be sufficient. *See Skillicorn v. Luebbers*, 475 F.3d 965, 971 (8th Cir. 2007) (noting that

a spontaneous admission or a statement against the declarant's penal interests and corroborated by other evidence would be reliable). Accordingly, it was not error to exclude the statement in question.

### 3. *Guilt Phase Jury Instructions (Ground XVI(B))*

Movant challenges several instructions given during the guilt phase of her trial. (2255 Mtn, pp. 216-18). She specifically challenges jury instruction numbers four, twelve, thirteen, fifteen, sixteen, seventeen, eighteen, and nineteen. She further argues that an instruction for lesser included offense should have been given.

#### *i. Jury Instruction Numbers Four and Twelve*

Movant argues that jury instructions four and twelve were improper because they unconstitutionally limited the jury to considering only certain factors in weighing the credibility of witnesses. (2255 Mtn, p. 216). In the instructions, the Court stated

> In deciding what testimony of any witness to believe, consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with other evidence that you believe.

(Crim. Case, Doc. # 339 ("Guilt Jury Instructions"), Nos. 4, 12). Movant argues these instructions improperly precluded the jury from evaluating the evidence using other considerations, such as body language or word choice, not included in the list. The challenged language is a direct quote from the Eighth Circuit Model Criminal Jury Instructions. 8th Cir. Model Crim. Jury Instr. Nos. 1.05, 3.04 (2014). The Eighth Circuit has concluded that this language "fairly and adequately submit[s a witness's] credibility to the jury" and thus is not error. *United States v. Bamberg*, 478 F.3d 934, 940 (8th Cir. 2007).

*ii. Jury Instruction Number Thirteen*

Movant next argues that jury instruction thirteen was improper. (2255 Mtn, p. 217). Instruction thirteen provided:

> You have heard testimony that the defendant made statements to law enforcement officers from the Maryville Department of Public Safety and the Federal Bureau of Investigation. It is for you to decide: First, whether the defendant made the statements and second, if so, how much weight you should give them. In making these two decisions you should consider all of the evidence, including the circumstances under which the statements may have been made.

(Guilt Jury Instructions, No. 13). Movant argues this instruction was improper because it failed to instruct the jury that it should disregard the statements unless they unanimously found that Movant properly waived her *Miranda* rights before making the statements; that the statements were knowingly, intelligently, and voluntarily made; and that the statements were truthful. However, the determination about whether a statement was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and about whether a statement was voluntarily made is one to be made by the Court, not the jury. *See* 18 U.S.C. § 3501(a); *see also Lego v. Twomey*, 404 U.S. 477, 490 (1972); *Pinto v. Pierce*, 389 U.S. 31, 32 (1967); *United States v. Davis*, 936 F.2d 352, 355 (8th Cir. 1991). Movant cites to no law to support her contention that such a determination should have been made by the jury or that a jury must unanimously find the statement was truthful before they may consider it.

Additionally, the language of the challenged instructions is a direct quote from the Eighth Circuit Model Criminal Jury Instructions. 8th Cir. Model Crim. Jury Instr. No. 2.07 (2014). The Eighth Circuit has determined that Model Instruction 2.07 properly instructs the jury to give such weight to the confession as it feels is deserved. *See Davis*, 936 F.2d at 355.

*iii. Jury Instruction Numbers Fifteen, Seventeen, and Nineteen*

Movant next contends that instructions fifteen and nineteen were improper because they required the jury to find that she suffered from a severe mental disease or defect. (2255 Mtn, p. 217). Movant argues that the mental disease or defect need not be severe. However, the Eighth Circuit has determined that "[t]o establish an insanity defense, a federal defendant must prove by clear and convincing evidence (1) that he was suffering from a *severe* mental disease or defect . . . ." *United States v. Hiebert*, 30 F.3d 1005, 1007 (8th Cir. 1994) (emphasis added); *see also* 18 U.S.C. § 17(a). Movant presents no cases or support for her argument that severity is not required.

Movant also alleges that instructions fifteen and seventeen were improper because they required Movant to prove her insanity by clear and convincing evidence. (2255 Mtn, p. 217). Movant contends that she need only prove insanity by a preponderance of the evidence. 18 U.S.C. § 17(b) unequivocally states that the defendant has the burden to prove the insanity defense by clear and convincing evidence. Moreover, the Eighth Circuit has determined that a defendant must prove insanity by clear and convincing evidence. *Hiebert*, 30 F.3d at 1007. As support for her claim, Movant cites to *Cooper v. Oklahoma*, 517 U.S. 348 (1996). However, *Cooper* applied specifically in the context of competency to stand trial, not in the context of the affirmative defense of insanity. *See Cooper*, 517 U.S. at 368. Movant cites to no case, and this Court is unaware of any, which extends *Cooper* to the affirmative defense of insanity.

Movant's last argument surrounding these three jury instructions is that instruction seventeen failed to inform the jury that her mental state should be considered as it decided whether the Government met their burden of proof. (2255 Mtn, p. 217). However, the jurors were informed that in making their decision they should consider "all the evidence." (Guilt Jury Instructions, No. 21). The Court instructed the jury to consider "any statements made and acts

done by the defendant, and all the facts and circumstances in evidence which may aid in a determination of the defendant's knowledge or intent" when determining whether the Government proved intent or knowledge. (*Id.* at No. 20). The jurors were also informed that the evidence in the case consisted of all the testimony, documents, and other exhibits in the case. (*Id.* at No. 11). Accordingly, the jurors were informed that they could consider all of the evidence, including evidence regarding Movant's mental state, in determining whether the Government met their burden of proof.

*iv. Jury Instruction Number Sixteen*

Movant next argues that instruction sixteen incorrectly defined reasonable doubt. (2255 Mtn, p. 218). In the instruction, the Court defined reasonable doubt as "a doubt based upon reason and common sense, and not the mere possibility of innocence." (Guilt Jury Instructions, No. 16). Movant argues this language is improper as it overstates the amount of doubt required to acquit. This challenged language is a direct quote from the 2007 version of the Eighth Circuit Model Jury Instructions. *See* 8th Cir. Model Crim. Jury Instr. No. 3.11 (2007). The Eighth Circuit has "repeatedly upheld the use of [Model] Instruction 3.11, specifically upholding the 'mere possibility of innocence' language challenged by [Movant]." *United States v. Cruz-Zuniga*, 571 F.3d 721, 726 (8th Cir. 2009); *see also United States v. Foster*, 344 F.3d 799, 802 (8th Cir. 2003). Thus, the instruction was not improper.

*v. Jury Instruction Number Eighteen*

Movant also contends that instruction eighteen overstated the burden of proof required for clear and convincing evidence. (2255 Mtn, pp. 217-18). In the instruction, the Court stated

> Clear and convincing evidence is an evidentiary standard that is greater than a preponderance of the evidence but less than a reasonable doubt. It is evidence of a character that creates in a reasonable person a firm belief or conviction or high probability that the allegation sought to be established is true.

(Guilt Jury Instructions, No. 18). Movant argues that a high probability of truth is not required, instead only a firm belief or conviction of the truth is necessary. Contrary to Movant's belief, the questioned jury instruction did not require the jury to find a high probability of truthfulness. (*Id.*). Instead, the jury was instructed that clear and convincing evidence was established if it created a firm belief or conviction of the truth *or* if it created a high probability of truth. (*Id.*). Thus, even assuming Movant's argument about the burden of proof for clear and convincing evidence is correct, no error occurred as the jury was instructed in line with the definition Movant puts forth.

Moreover, the "high probability" language was not an error. Courts have often used that language to define the clear and convincing evidence burden. *See, e.g., Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 11200, 1209 (8th Cir. 2002); *Cornell v. Nix*, 119 F.3d 1329, 1334-35 (8th Cir. 1997) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

*vi. Absence of Lesser Included Offenses*

Movant finally argues that her guilt phase jury instructions were improper because the instructions did not provide for lesser included offenses. (2255 Mtn, p. 218). Movant argues that an instruction should have been submitted for the lesser included offense of attempted interstate kidnapping. In *Beck v. Alabama*, 447 U.S. 625 (1980), the Supreme Court held that a death sentence may not be imposed if the jury was not permitted to consider a lesser included offense when the evidence would have supported the lesser included offense and required acquittal of the greater. 447 U.S. at 627, 635.

Movant argues that the evidence required acquittal of the greater (*i.e.* there was insufficient evidence to convict her), but supported conviction of the latter because at the time Bobbie Jo Stinnett died, she had not yet taken Victoria Jo Stinnett across state lines. However,

as explained above "[i]t is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." *Bear Stops*, 339 F.3d at 780 (quotation omitted). Movant argued on direct appeal that she could not be found guilty of death resulting from interstate kidnapping because Bobbie Jo died before she took Victoria Jo across state lines. *Montgomery*, 635 F.3d at 1087. The Eighth Circuit rejected this argument stating "a death may precede the completion of the crime of kidnapping, but nonetheless result from the kidnapping." *Id.* Accordingly, Movant's argument is meritless because the evidence supported conviction of the greater offense, interstate kidnapping resulting in death. *See Garrett v. Wallace*, No. 4:12-CV-00402-JAR, 2015 WL 1433991, at *3-4 (E.D. Mo. Mar. 27, 2015).

**4. *Penalty Phase Jury Instructions (Ground XVI(C))***

Movant also challenges several instructions given during the penalty phase of her trial. (2255 Mtn, pp. 218-25). Specifically she challenges jury instruction numbers one, two, three, seven, eight, ten, and eleven. She further argues that an additional reasonable doubt instruction was necessary. Movant's argument challenging instructions two and three are nearly identical to challenges she made to their corresponding guilt phase instructions. Accordingly, for the reasons specified above, these challenges fail.

*i. Instruction Number One*

Movant argues the jury was misinformed on the meaning of the word "mitigate." (2255 Mtn, pp. 218-19). The Court defined "mitigate" as "'to make less severe' or 'to moderate.'" (Penalty Jury Instructions, No. 1). Movant argues that this definition violates the Supreme Court's opinion in *Lockett*. As discussed above, *Lockett* holds that a jury in deciding whether to impose the death penalty must "not be precluded from considering, *as a mitigating factor*, any

aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604 (emphasis in original). The definition used by the Court in no way prevented the jury from considering any aspect of Movant's character, record, or circumstances as a mitigating factor. In fact, in the next sentence the jury was informed that "[a] mitigating factor is any aspect of a defendant's character or background, any circumstance of the offense, or any other relevant fact or circumstance which might indicate that the defendant should not be sentenced to death." (Penalty Jury Instructions, No. 1). Accordingly, the Court's definition did not violate *Lockett*.

*ii. Instruction Number Two*

Movant complains that the second instruction improperly placed the burden on her. The Court instructed that Movant bears the "burden to establish any mitigating factors, by a preponderance of the evidence." (Penalty Jury Instructions, No. 2). Movant alleges this was error because a defendant bears no such burden. However, as the Eighth Circuit has consistently recognized, "[t]he defendant has the burden to prove mitigating factors." *United States v. Bender*, 33 F.3d 21, 23 (8th Cir. 1994). As Movant cites no law to the contrary, her argument is without merit.

*iii. Instruction Number Seven*

Movant next takes issue with four of the statutory aggravating factors the jury was asked to consider. (2255 Mtn, pp. 219-20). The first aggravating factor was that

> The death of Bobbie Jo Stinnett occurred during the commission of the kidnapping of Bobbie Jo Stinnett's daughter, Victoria Jo Stinnett, by the defendant. The Government must prove beyond a reasonable doubt that: *One*, on or about December 16, 2004, the defendant unlawfully kidnapped, abducted, carried away or held Victoria Jo Stinnett; *Two*, the defendant did so for the purpose of claiming Victoria Jo Stinnett as her own child; *Three*, the defendant willfully, knowingly and unlawfully transported Victoria Jo Stinnett across the

> state line from Missouri to Kansas; and *Four*, Bobbie Jo Stinnett died as a result of the defendant's actions.

(Penalty Jury Instructions, No. 7). Movant contends that this aggravating factor was the substantive offense itself which led the jury to unconstitutionally double-count the offense conduct and did not narrow the class of persons eligible for the death penalty. Movant is correct that "an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence." *Zant v. Stephens*, 462 U.S. 862, 877 (1983). The fact that an aggravating factor repeats the elements of a crime is insufficient to alone establish a need for relief. *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988).

Movant made the same argument challenging the inclusion of this aggravating factor prior to trial. *See United States v. Montgomery*, No. 05-6002-CV-SJ-GAF, 2007 WL 2711511, at *3 (W.D. Mo. Sept. 13, 2007) *aff'd*, 635 F.3d 1074 (8th Cir. 2011). Movant's argument was rejected by this Court. *Id.* In rejecting this argument, the Court stated

> The recent opinion in *United States v. Mayhew*, 380 F.Supp.2d 936 (S.D.Ohio 2005) is instructive.
>
> In *Mayhew*, the federal government charged the defendant with murder arising from a kidnapping. *Id.* at 940. Further, the government sought the death penalty against the defendant, including as one aggravating factor that a death occurred during the commission of another crime. *Id.* at 946. Prior to trial, the defendant moved to strike the aggravating factor, arguing that it was essentially duplicative of the indictment. *Id*. . . . . [T]he defendant argued that "the kidnapping and subsequent death of [the victim] in both the Indictment and a statutory aggravating factor [would] fail to narrow adequately the class of individuals eligible for the death penalty, thereby violating the defendant's rights." *Id.* The district court, however, rejected the defendant's argument and followed the "majority of courts." *Id.* at 947.
>
> The *Mayhew* court found that Congress, in drafting the [Federal Death Penalty Act (the "FDPA"), 18 U.S.C. §§ 3591 *et seq*.], specifically anticipated that the sentencing jury would consider the circumstances of the underlying crime as evidenced by the incorporation of "death during the commission of another

crime" as a statutory aggravator. *Id.* Moreover, such a result was not improper duplication:

> "[D]uplication occurs when the jury is asked, at the sentencing stage, to consider two or more *aggravating factors* that are essentially interchangeable; here, however, the sentencing jury will only consider the underlying one time during the trial phase and one time during the sentencing phase, not twice during the latter." *Id.*
>
> In fact, the court was "troubled by the notion of asking the jury to determine [the] defendant's sentence without allowing the jury to consider the crime itself." *Id.* The Court agrees with the reasoning in Mayhew and similar cases and concludes that there is no improper duplication between the Superseding Indictment charging kidnapping and the aggravating factor that the crime was committed "during the commission and attempted kidnapping of Bobbie Jo Stinnett's infant daughter, Victoria Jo Stinnett."

*Id.* at *4. This Court agrees with its previous rationale and does not see cause to change it.

The second aggravating factor was that in the course of the offense, Movant created a grave risk of death to an additional person, Victoria Jo Stinnett. (Penalty Jury Instructions, No. 7). Movant argues that this instruction was improper because Victoria Jo was not a person under federal law until the moment of her live birth. (2255 Mtn, p. 219). In Movant's direct appeal, the Eighth Circuit recognized that under federal law "the term 'person' does not necessarily include fetuses." *Montgomery*, 635 F.3d at 1087. Even assuming that any risk of death created prior to the moment Victoria Jo was born alive could not be considered as an aggravating factor, Movant still created a grave risk of death to Victoria Jo after the moment of her birth. The evidence showed Movant took the premature, newborn Victoria Jo out into the cold January air, stopped at numerous locations, and failed to provide any medical care to the child. (Penalty Tr. 3149:6-14). Thus, even after she was born, Movant created a grave risk of death to Victoria Jo.

The third aggravating factor was that Movant "committed the offense in an especially heinous or depraved manner." (Penalty Jury Instructions, No. 7). Movant argues that this factor was improper because it relied upon the same conduct as the second aggravating factor and, thus,

improperly double-counted the conduct. (2255 Mtn, p. 220). This has no merit; the aggravating factors in this case were not duplicative. In *United States v. Purkey*, 428 F.3d 738 (8th Cir. 2005), the Eighth Circuit used the Tenth Circuit's test to determine whether aggravating factors were duplicative. *Purkey*, 428 F.3d at 762. Under the Tenth Circuit's test, "to overlap impermissibly, one aggravating circumstance must necessarily subsume another. It is not impermissible for certain evidence [to be] relevant to both aggravators." *Medlock v. Ward*, 200 F.3d 1314, 1319 (10th Cir. 2000) (alteration in original) (quotation omitted). The second aggravating factor dealt only with the risk to Victoria Jo, while the third aggravating factor dealt only with the abuse to Bobbie Jo. (Penalty Jury Instructions, No. 7). Some of the evidence such as Movant using a kitchen knife to cut Victoria Jo from her mother's womb was relevant to both aggravators. However, as explained above, other evidence such as Movant's care and treatment of Victoria Jo after she was cut from her mother is also relevant to the second aggravating factor but not to the third. Because the aggravating factors involve different evidence and reference different victims, one cannot subsume the other. They are thus not duplicative. *See Medlock*, 200 F.3d at 1319. In any event, both the Supreme Court and the Eighth Circuit have declined to determine that aggravating factors could be so duplicative as to render them constitutionally invalid. *See Jones v. United States*, 527 U.S. 373, 398 (1999); *United States v. Purkey*, 428 F.3d 738, 762 (8th Cir. 2005)..

The fourth aggravating factor was that Movant committed the offense "after substantial planning and premeditation." (Penalty Jury Instructions, No. 7). Movant argues that the jury never unanimously found the existence of this aggravating factor. (2255 Mtn, pp. 219-20). Movant argues as such because in the verdict form, for every other aggravating factor the jury

was asked "[d]o you, the jury, unanimously find that . . ." but for the fourth aggravating factor the jury was asked "[d]o you, the jury, find that . . ." (Penalty Jury Instructions, Verdict Form).

This case is similar to *United States v. Frazier*, 48 F. App'x 222 (8th Cir. 2002). In *Frazier*, there was an error in the verdict form; however, the Eighth Circuit instructed that the verdict form should be considered as a whole, in combination with the jury instructions. 48 F. App'x at 224. The Court further "presume[d] the jury followed the court's instructions." *Id.* Because the jury instructions themselves were clear, the Court concluded that "the error on the verdict form [wa]s harmless." *Id.*

In this case, the word unanimously should have appeared in the verdict form for the fourth aggravating factor because "[a] finding with respect to any aggravating factor must be unanimous." 18 U.S.C. § 3593(d). However, the Penalty Phase Jury Instructions advised the jury fifteen times that their decision regarding each aggravating factor must be unanimous. (Penalty Jury Instructions, Nos. 1, 7, 8, 9, 11). Thus, taking the instructions as a whole and presuming that the jury followed the law, the error was harmless. Further, for a death sentence to be imposed "only one statutory aggravating factor need be found." *United States v. Bolden*, 545 F.3d 609, 617 n.6 (8th Cir. 2008). In this case, the jury unanimously found the existence of four other statutory aggravating factors. (Penalty Jury Instructions, Verdict Form). Accordingly, even without the fourth aggravating factor, the death penalty could have been properly imposed.

*iv. Instruction Number Eight*

In addition to statutory aggravating factors, the jury was also instructed that it was "permitted to consider and discuss" one non-statutory aggravating factor. (Penalty Jury Instructions, No. 8). This non-statutory factor was victim impact evidence and asked the jury to consider whether "[t]he offense caused injury, loss and harm because of victim Bobbie Jo

Stinnett's personal characteristics as an individual human being and the impact of the death upon victim Bobbie Jo Stinnett's family." (*Id.*). Movant argues that this factor applies in every homicide case and thus does not constitutionally narrow the class of persons eligible for death. (2255 Mtn, p. 220-21).

In *Payne*, the Supreme Court determined that victim impact evidence may be admitted to inform "the sentencing authority about the specific harm caused by the crime in question." 501 U.S. at 825. In the sentencing phase, a jury may "consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." *Jones*, 527 U.S. at 395. In *Jones*, the defendant argued that the non-statutory, victim impact aggravating factor used in his case was overbroad because it could have applied in every murder case. *Id.* at 401. The Supreme Court, in a plurality opinion, disagreed stating "though the *concepts* of victim impact and victim vulnerability may well be relevant in every case, *evidence* of victim vulnerability and victim impact in a particular case is inherently individualized. . . . So long as victim vulnerability and victim impact factors are used to direct the jury to the individual circumstances of the case, [the] principle will be disturbed." *Id.* at 401-02 (emphasis in original). Thus, pursuant to *Jones* and *Payne*, the non-statutory, victim impact aggravating factor was proper in this case.

*v.* *Instruction Number Ten*

Movant next takes issue with two of the mitigating factors the jury was asked to consider. (2255 Mtn, pp. 221). The first mitigating factor in this case was that Movant's "capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law was significantly impaired . . . ." (Penalty Jury Instructions, No. 10). The second mitigating

factor was that Movant "committed the offense under severe mental or emotional disturbance." (*Id.*). Movant alleges these factors were improper because they required a finding of significant impairment and severe illness which thereby precluded the jury from fully considering these issues.

The language used by this Court in the mitigating factors was a direct quote from 18 U.S.C. § 3592 which recognizes committing "the offense under severe mental or emotional disturbance" and significant impairment of the "capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law" as mitigating factors. The Southern District of Ohio has analyzed the constitutionality of this statutory mitigating factor. *United States v. Henderson*, 485 F. Supp. 2d 831, 853 (S.D. Ohio 2007). In that case, the defendant argued the "'restrictive' language contained in the mitigating circumstances defined in 18 U.S.C. § 3592(a), such as . . . 'severe' [mental] disturbance" was improper. *Id.* The court noted Section 3592(a) allows for consideration of any mitigating factor in addition to the ones listed in the statute and thus § 3592 "does not limit the mitigating evidence Defendant may produce." *Id*. Like in *Henderson*, in this case the jury was informed it could "consider <u>anything</u> else about the commission of the crime or about [Movant's] background or character that would mitigate against imposition of the death penalty." (Penalty Jury Instructions, No. 10 (emphasis in original)). Thus, the jury was not improperly precluded from considering Movant's alleged mental illness or capacity while deliberating, even though the instruction included qualifiers such as "severe" and "significant."

*vi. Instruction Number Eleven*

In the eleventh instruction, the Court advised the jury that they could "unanimously find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to

justify a sentence of death." (Penalty Jury Instructions, No. 11). Movant argues that this allowed the jurors to impose the death penalty on the basis of a single invalid aggravating factor. (2255 Mtn, p. 222). However, Movant's argument relies on the fact that one or more statutory aggravating factor was improper. As explained above, all aggravating factors were proper in this case. Thus, Movant's argument fails.

Movant also argues that the eleventh instruction was improper because it instructed jurors that in order to impose a life sentence, they had to determine that death was not justified. (2255 Mtn, pp. 222-23). The eleventh instruction stated "whether or not the circumstances in this case justify a sentence of death is a decision that the law leaves entirely to you." (Penalty Jury Instructions, No. 11). In *U.S. v. Allen*, 247 F.3d 741 (8th Cir. 2001), the defendant challenged the use of a similar jury instruction. 247 F.3d at 780, *vacated on other grounds*, 536 U.S. 953 (2002). The Eighth Circuit upheld the use of such an instruction stating that it "accurately explain[ed] the jury's role in sentencing under the FDPA, which reads as follows: '[T]he defendant . . . *shall* be sentenced to death *if*, after consideration of the [aggravating and mitigating] factors . . . it is determined that imposition of a sentence of death is *justified* . . . .'" *Id.* (second alteration, first and third omission, and emphasis in original) (quoting 18 U.S.C. § 3591(a)(2)). Accordingly, the instruction was valid.

*vii. Need for a Reasonable Doubt Instruction*

In the penalty phase, the jury is called upon to make three determinations,

> First it must find, unanimously and beyond a reasonable doubt, that the defendant acted with the requisite mens rea. Second, again unanimously and beyond a reasonable doubt, it must find the existence of at least one statutory aggravating factor. [Third, i]f the above two requirements are satisfied, the jury must then determine whether the aggravating factors, both statutory and non-statutory, sufficiently outweigh the mitigating factors presented by the defendant to justify a death sentence.

*Purkey*, 428 F.3d at 749 (internal citations and quotation marks omitted). The first two determinations are required for the defendant to become eligible for the death penalty. *Jones*, 527 U.S. at 376-77. Movant argues that the jury should have been required to make the third determination, that the aggravating factors sufficiently outweigh the mitigating factors, beyond a reasonable doubt. (2255 Mtn, pp. 223-24). As support, Movant cites to the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

This exact argument was considered by the Sixth Circuit in *U.S. v. Gabrion*, 719 F.3d 511 (2013) (en banc). In rejecting Movant's position, the Sixth Circuit noted *Apprendi* did "not apply to every 'determination' that increases a defendant's maximum sentence. Instead it applies only to findings of 'fact' that have that effect." *Id.* at 532 (citing *Apprendi*, 530 U.S. at 490).

> *Apprendi* findings are binary—whether a particular fact existed or not. Section 3593(e), in contrast, requires the jury to "consider" whether one type of "factor" "sufficiently outweigh[s]" another so as to "justify" a particular sentence. Those terms—consider, justify, outweigh—reflect a process of assigning weights to competing interests, and then determining, based upon some criterion, which of those interests predominates. The result is one of judgment . . . .

*Id.* at 532-33 (alteration in original). Thus, the third determination is not a finding of fact within the meaning of *Apprendi* and need not be made beyond a reasonable doubt. *Id.* at 533.[15] In addition to the Sixth Circuit, five other circuits have agreed that the requested reasonable doubt instruction is not required. *See United States v. Runyon*, 707 F.3d 475, 516 (4th Cir. 2013); *United States v. Fields*, 516 F.3d 923, 950 (10th Cir. 2008); *United States v. Mitchell*, 502 F.3d

[15] Interestingly, Movant cites to a previous version of *Gabrion* in her Brief as support for her position. (2255 Mtn, p. 225). In this version, a panel of the Sixth Circuit determined that the reasonable doubt instruction was required. *United States v. Gabrion*, 648 F.3d 307, 325 (6th Cir. 2011). However, this opinion was vacated upon rehearing of the case en banc. *Gabrion*, 719 F.3d 511.

931, 994 (9th Cir. 2007); *United States v. Sampson*, 486 F.3d 13, 32 (1st Cir. 2007); *United States v. Fields*, 483 F.3d 313, 345 (5th Cir. 2007). Accordingly, Movant's argument is without merit.

**E. Grounds XVII, XIX, XX, XXI: Constitutionality of the Death Penalty**

Movant raises four challenges to the constitutionality of the death penalty. (2255 Mtn, pp. 225-33). First, she alleges that the death penalty is racially biased. Next she alleges that death is not a suitable punishment for those suffering from severe mental illness. Third, she contends her sentence is not proportional to other women and fetal abductors. Finally, Movant argues the death penalty violates international law.

***1. Alleged Racial Bias of Death Penalty (Ground XVII)***

Movant alleges that the death penalty is an unconstitutional violation of the Equal Protection Clause and the Eighth Amendment because it is disproportionately applied according to the race of the victim. (2255 Mtn, pp. 225-27). Movant's challenges are generally based on a study conducted in 2001 by David Baldus (the "Baldus Study") and a 2008 study by Lauren Bell, but Movant fails to include any citations to specific research articles, publications, or portions of the mentioned studies in support of her claim. Instead, Movant simply summarizes alleged findings without references.

Even if it were well-supported, Movant's argument fails as a matter of law. In *McCleskey v. Kemp*, 481 U.S. 279 (1987), the defendant, an African-American male, challenged his death sentence using an older version of the Baldus Study. 481 U.S. at 292-93. The Supreme Court rejected the defendant's equal protection argument stating "to prevail under the Equal Protection Clause, [the defendant] must prove that the decisionmakers in *his* case acted with discriminatory purpose." *Id.* at 292 (emphasis in original). "[T]he Baldus study is clearly

insufficient to support an inference that any of the decisionmakers in [the defendant's] case acted with discriminatory purpose. *Id.* at 297. The Court also rejected the defendant's Eighth Amendment argument stating that, "[a]t most, the Baldus study indicates a discrepancy that appears to correlate with race. Apparent disparities in sentencing are an inevitable part of our criminal justice system." *Id.* at 312. "Despite these imperfections, our consistent rule has been that constitutional guarantees are met when 'the mode [for determining guilt or punishment] itself has been surrounded with safeguards to make it as fair as possible.' . . . [W]e hold that the Baldus study does not demonstrate a constitutionally significant risk of racial bias." *Id.* at 313 (quoting *Singer v. United States*, 380 U.S. 24, 35 (1965)) (first alteration in original).[16]

Since *McCleskey*, other courts have reviewed updated versions of the Baldus Study and similarly concluded that "[b]are statistical discrepancies are insufficient to prove a Fifth Amendment violation." *Sampson*, 486 F.3d at 26. When a defendant fails to provide "specific evidence of purposeful discrimination . . . against himself . . ., his Fifth Amendment challenge fails." *Id.* In *Sampson*, the First Circuit concluded that the defendant's Eighth Amendment challenge also failed because the updated Baldus Study "provides no basis for attributing the statistical discrepancies with respect to . . . race in [federal death penalty] prosecutions to discrimination rather than to other factors, such as differences in the nature of the crimes involved." *Id.* at 26-27.

Like in *McCleskey* and *Sampson*, the statistical evidence offered by Movant fails to prove that the decisionmakers in Movant's case were motivated by a discriminatory purpose. Thus, Movant's equal protection challenge fails. Movant's Eighth Amendment claim similarly fails

[16] In Movant's heading for this ground, she also alleges that the statistical discrepancies violate her due process rights and her right to effective assistance of counsel. She provides no argument on these bases and therefore the Court declines to consider them.

because the evidence presented does not raise a constitutionally significant risk of racial bias rather than other non-invidious factors.

#### *2. Mental Illness (Ground XIX)*

Movant next alleges that she suffers from severe mental illness and brain damage which prohibits execution under the evolving standards of decency of the Eighth Amendment. (2255 Mtn, pp. 228-30). In *Atkins v. Virginia*, 536 U.S. 304 (2002), the Supreme Court concluded that "death is not a suitable punishment for a mentally retarded criminal." 536 U.S. at 321.[17] However, Movant does not contend that she suffers from an intellectual disability. Instead, Movant alleges the Supreme Court's prohibition on the execution of those with intellectual disabilities should be extended to include those with serious mental illnesses.

"*Atkins* did not cover mental illness separate and apart from mental retardation." *In re Woods*, 155 F. App'x 132, 136 (5th Cir. 2005). Movant cites to no other precedent, neither from the Supreme Court nor any lower courts, that extends *Atkins'* prohibition to individuals with severe mental illness. Movant is essentially asking this Court to apply a new constitutional standard, a standard which every court who has been asked to consider has rejected. *See e.g.*, *Mays v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014) *cert. denied*, 135 S. Ct. 951, 190 L. Ed. 2d 844 (2015); *In re Woods*, 155 F. App'x at 136; *Lockett v. Workman*, No. CIV-03-734-F, 2011 WL 10843368, at *36-38 (W.D. Okla. Jan. 19, 2011); *Scott v. Mitchell*, No. 1:95CV2037, 2001 WL 1692113, at *2-3 (N.D. Ohio May 14, 2001); *Martin v. Dugger*, 686 F. Supp. 1523, 1572 (S.D. Fla. 1988). That is something this Court cannot do. This Court is "bound to follow controlling United States Supreme Court precedents." *Union Pac. R. Co. v. 174 Acres of Land*

[17] Current guidelines reference the condition formerly known as "mental retardation" as "intellectual disability."

*Located in Crittenden Cnty., Ark.*, 193 F.3d 944, 946 (8th Cir. 1999). Thus, this Court is not free to, and must decline Movant's invitation to, redefine the law.

***3. Sentence Proportionality (Ground XX)***

Movant additionally alleges that her death sentence is disproportionate to her crime because she is the both the only woman and the only fetal abductor to be sentenced to death under the FDPA. (2255 Mtn, pp. 230-31). The Eighth Amendment requires that punishment not be excessive. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "*Gregg* instructs that capital punishment is excessive when it is grossly out of proportion to the crime." *Kennedy v. Louisiana*, 554 U.S. 407, 441 (2008). The Supreme Court has concluded that "when a life has been taken deliberately by the offender, we cannot say that the [death penalty] is invariably disproportionate to the crime." *Gregg*, 428 U.S. at 187.

The Supreme Court has "occasionally struck down punishments as inherently disproportionate, and therefore cruel and unusual, when imposed for a particular crime or category of crime." *Pulley v. Harris*, 465 U.S. 37, 43 (1984). This traditionally only includes "an abstract evaluation of the appropriateness of a sentence for a particular crime." *Id.* at 42-43. Thus, "traditional proportionality review hinges on whether a particular kind of crime warrants a particular punishment." *Johnson*, 495 F.3d at 961. For example, the Supreme Court determined that the death penalty is "grossly disproportionate and excessive punishment for the crime of rape and is therefore forbidden." *Coker v. Georgia*, 433 U.S. 584, 592 (1977).

Movant asks this Court to take traditional proportionality review a step further, requiring not only proportionality within a particular crime such as rape or murder, but also proportionality between defendants of the same gender as well as similar manners in which crimes are committed. However, as the Supreme Court has already stated, a defendant "cannot prove a

constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty." *McCleskey*, 481 U.S. at 306-07 (emphasis in original). In *Johnson*, the Defendant argued that her death sentence was disproportionate to her crime because her codefendants did not receive the death penalty. 495 F.3d at 960. The Eighth Circuit rejected this argument, concluding that it was not disproportionate for some codefendants to receive the death penalty while others did not. *Id.* at 961. The Eighth Circuit stated

> Two juries hearing similar, but not identical, evidence may well reach different conclusions regarding the proper penalty for their respective defendants. In addition, different verdicts may permissibly reflect not only differences between the facts presented at trial, but differences between the juries themselves. . . . One cannot expect that two different juries—each of which is composed of citizens with diverse backgrounds and values—must necessarily reach the same verdict.

*Id.* Thus, it is not unconstitutional that other women or other fetal abductors, in different cases with different juries did not receive the death penalty while Movant did. Movant has produced no law or support to the contrary.

***4. International Law (Ground XXI)***

Movant also alleges that the imposition of the death penalty violates the Supremacy Clause of the United States Constitution because the death penalty violates treaties and customary international law. (2255 Mtn, pp. 231-33). The Supremacy Clause states "[t]his Constitution, . . . and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ." U.S. Const. Art. VI, cl. 2. As an initial matter, the Supreme Court has as recently as the 2014 Term held that the imposition of the death penalty is constitutional. *See Glossip v. Gross*, -- U.S. --, 135 S. Ct. 2726 (2015).

The Sixth Circuit Court of Appeals examined this argument and concluded the claim "that international law completely bars this nation's use of the death penalty . . . is unsupportable

since the United States is not party to any treaty that prohibits capital punishment per se, and since total abolishment of capital punishment has not yet risen to the level of customary international law." *Coleman v. Mitchell*, 268 F.3d 417, 443 n.12 (6th Cir. 2001) (quotation omitted) (omission in original). Though this case was decided in 2001, Movant cites to no more recent treaties or customary international laws.

Two months later, the Sixth Circuit conducted a more extensive examination of this argument. It stated

> Customary international law, then, consists of two components. First, there must be a "general and consistent practice of states." This does not mean that the practice must be "universally followed;" rather "it should reflect wide acceptance among the states particularly involved in the relevant activity." Second, there must be "a sense of legal obligation" . . . . In other words, "a practice that is generally followed but which states feel legally free to disregard does not contribute to customary law;" rather, there must be a sense of legal obligation. States must follow the practice because they believe it is required by international law, not merely because that they think it is a good idea, or politically useful, or otherwise desirable.

Buell v. Mitchell, 274 F.3d 337, 372 (6th Cir. 2001) (quoting Restatement (Third) of Foreign Relations Law § 102(2)). The Court went on to state "[t]here is no indication that the countries that have abolished the death penalty have done so out of a sense of legal obligation, rather than for moral, political, or other reasons." *Id.* at 373. The court further concluded that even if the death penalty violated customary international law, such law could not be used as a defense by a United States citizen against the United States government. *Id.* at 374-75. Instead, a determination of whether customary international law prevents the death penalty "is a question that is reserved to the executive and legislative branches of the United States government, as it [is] their constitutional role to determine the extent of this country's international obligations and how best to carry them out." *Id.* at 376. Additionally, every other court who has examined this argument has similarly concluded it is without merit. *See e.g.*, *Hain v. Gibson*, 287 F.3d 1224,

1243-44 (10th Cir. 2002); *White v. Johnson*, 79 F.3d 432, 440 n.2 (5th Cir. 1996); *United States v. Savage*, No. CRIM.A. 07-550-03, 2012 WL 4068416, at *2 (E.D. Pa. Sept. 14, 2012) ("no federal court has ever held that international law superseded the FDPA") (collecting cases); *United States v. Quinones*, No. 00 CR.761(JSR), 2004 WL 1234044, at *2 (S.D.N.Y. June 3, 2004).

Movant fails to cite to a single case in support of her argument that international law and treaties prohibit the use of the death penalty. Perhaps more importantly, Movant fails to even cite to specific portions of any treaties or customary international laws she believes were violated. Such blanket argument does not fulfill Movant's burden. *See Taylor*, 229 F.2d at 832. This Court agrees with the weight of authority that neither customary international law nor treaties prevent the imposition of the death penalty in this country.

## IV. EVIDENTIARY HEARING AND CERTIFICATE OF APPEALABILITY

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [she] is entitled to no relief.'" *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (quoting *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835-36 (8th Cir. 2005)). However, no hearing is required "'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Id*. (quoting *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)). The issues discussed above are either inadequate on their face or affirmatively refuted by the Record, and thus are entitled to no evidentiary hearing.

In contrast, the remaining claims brought by Movant – which include her claims of ineffective assistance of counsel not otherwise addressed herein, competency and effects of her medication, exclusion of Venireperson Torres, prosecutorial misconduct regarding Tommy

Kleiner, and exclusion of Dr. Gur – all raise issues of fact not conclusively resolved by the Record. (2255 Mtn, Grounds V-VII, XII-XIII, XV, XVIII, XXII). Thus, an evidentiary hearing is proper only for those remaining issues not resolved in this Order. Counsel will be contacted by the Court to set up a hearing on these remaining issues, and a scheduling order shall follow.

Additionally, a movant can appeal a decision to the Eighth Circuit only if a court issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability should be issued only if a movant can make a substantial showing of a denial of a constitutional right. *Id.* § 2253(c)(2). To meet this standard, a movant must show reasonable jurists could debate whether the issues should have been resolved in a different manner or the issues deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Whether to issue a certificate of appealability will be determined following the evidentiary hearing.

## V. DISCOVERY

Movant also requests the Court to authorize discovery to allow Movant to depose five witnesses and request the production of documents. (Doc. # 150, p. 1). "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). A court, in its discretion "may, for good cause, authorize a party to conduct discovery" under the rules governing § 2255 proceedings. *Aldridge v. United States*, No. 06-1025-CV-W-NKL-P, 2007 WL 1289684, at *2 (W.D. Mo. May 1, 2007). Good cause for discovery has not been established in this case. Instead, Movant may call and question witness and further develop the record on the remaining issues at the forthcoming evidentiary hearing.

## CONCLUSION

Movant was not denied effective assistance of counsel due to the removal of Judy Clarke,

nor was the attorney/client relationship unconstitutionally interfered with. Movant has failed to establish that a fraud on the Court occurred or that conflicts of interest denied her effective assistance of counsel. There was no prosecutorial misconduct or errors in the Government's closing argument which would support relief. Movant has no evidence that the Grand Jury was unconstitutionally composed. Further, the jury instructions were proper and the Court did not err in its evidentiary decisions. The death penalty is constitutional; Movant's generic claims to the contrary are insufficient to establish relief. For these reasons and the reasons stated above, Movant's Motion to Vacate is DENIED on grounds I – IV, VIII – XI, XIV, XVI – XVII, and XIX – XXI. Movant's request for an evidentiary hearing is GRANTED for grounds V – VII, XII – XIII, XV, XVIII, and XXII. Movant's Motion to Authorize Discovery is DENIED.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 21, 2015