UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LISA M. MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | 12-CV-08001-GAF |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GARY A. FENNER
UNITED STATES DISTRICT JUDGE
JANUARY 27, 2016
KANSAS CITY, MISSOURI

FOR THE PLAINTIFF:
MS. KELLEY J. HENRY
Office of the Federal Public Defender
810 Broadway Street, Suite 200
Nashville, Tennessee 37203

MS. LISA G. NOURI
2526 Holmes
Kansas City, Missouri 64108

Proceedings recorded by mechanical stenography, transcript produced by computer

KATHERINE A. CALVERT, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER
CHARLES EVANS WHITTAKER COURTHOUSE
400 EAST NINTH STREET
KANSAS CITY, MISSOURI 64106

APPEARANCES
(continued)

FOR THE DEFENDANT:
MR. JEFFREY E. VALENTI
MR. PHILIP M. KOPPE
MS. LAJUANA M. COUNTS
United States Attorney's Office
400 East Ninth Street
Kansas City, Missouri 64106

JANUARY 27, 2016

THE COURT: Good morning. Thank you. You can all be seated.

Well, I guess we ought to start out talking about the evidentiary issues and what the parties see as the matters that have not been ruled by way of my order on December the 21st, and then I'd like to talk about how we're going to -- well, when we're going to have the hearing and how we're going to facilitate that in terms of identification of witnesses and exhibits and matters such as those. So that's kind of my thoughts on it.

Ms. Nouri, would you or Ms. Kelley [sic] like to begin speaking on behalf of the movant? And if the memorandum I sent you helps to serve as some kind of a starting point for it, we can go along those lines. If you have a different approach, you can let me know.

MS. HENRY: No, Your Honor. I think your memorandum was perfectly clear and, frankly, answered all the questions we had as far as the scope of the Court's order; and we are prepared to move on to, frankly, just talking about the logistics as far as getting ready for a hearing. We've done some thinking about that.

THE COURT: Okay. And just so the record is clear about this, I wanted to give you an opportunity, if you choose to do so, to address any additional matters. I don't mean to

imply that the particulars that I cite in my memorandum are all inclusive, but I do believe that the general topics that are addressed, at least in my mind, address the issues that need to be resolved by way of evidentiary hearing.

Do you have anything you want to add to that, Ms. Kelley?

MS. HENRY: Your Honor, I think we had actually done sort of an analysis of your order and our analysis of your -- your memorandum tracks our analysis of your order as well, recognizing, of course, you were using shorthand and we get that, but I think that it's pretty comprehensive. The questions we had from your order really seemed to be answered by our own studying of it and your memorandum. So I feel comfortable that we know it's a -- we're grateful for the memorandum and we're grateful for the hearing, which is pretty broad. And, yeah, I don't have anything else to say.

THE COURT: All right. Let me see what the government has to say on this matter.

Mr. Valenti, you want to speak to this or do you want to let somebody who knows more about it?

MR. VALENTI: Well, Your Honor, lack of knowledge never stopped me from speaking before.

THE COURT: Jeff, if you would come over to the podium. I think it's a little bit easier for me and everybody.

MS. HENRY: Your Honor, in regards to the

memorandum, we, like Ms. Henry and Ms. Nouri, have done analysis with your order as related to the extant issues, and we believe that it tracks fairly closely. There's a few subparts in yours that we might not have tracked, but I think we have clear understanding of the record we think needs to be developed when this hearing goes. We understand what we need to do, and we'll be prepared to do that whenever we set this.

THE COURT: All right. Thank you.

Ms. Kelley, first of all, do you anticipate calling any expert witnesses at the hearing at this time?

MS. HENRY: Yes, sir.

THE COURT: And do you know who you might call?

MS. HENRY: We know some of who we might call.

THE COURT: Okay. And can you tell me who you're contemplating at this point in time, and I'm not seeking to try to make that exclusive at this time, but --

MS. HENRY: Do you mind if I grab my --

THE COURT: Sure.

MS. HENRY: Thank you.

Dr. George Woods, Jan Vogelsang. And that's V-o-g-e-l-s-a-n-g. I'll spell this: Siddhartha Nadkarni, S-i-d-a-r-t-h-a [sic] N-a-d-k-a-r-n-i; Dr. Ramachandran, R-a-m-a-c-h-a-n-d-r-a-n; Ruben Gur, G-u-r; Russ Stetler, S-t-e-t-l-e-r; Dr. Linda McCandless, M-c-C-a-n-d-l-e-s-s. And I should add that Dr. McCandless may be more as a fact witness

than as an expert witness, but she is a mental health expert.

There is a mental health expert that we need to identify from the Bureau of Prisons. I don't know that name as of yet. There are a couple of other areas of expertise that we are considering.

We've lost one of our expert witnesses who's provided an affidavit in support of our motion because she's unavailable to come and testify, so we're going to have to replace her with a different witness.

THE COURT: Have you had any communication with these people about their availability on the dates that I proposed?

MS. HENRY: Not all of them but a lot of them.

THE COURT: Okay.

MS. HENRY: And Dr. Woods and Dr. Vogelsang are not -- or Ms. Vogelsang are not available until September. Dr. Gur could be available in the summer. Dr. Nadkarni is always busy but said would try to work with us. Mr. Stetler has said he's completely booked over until I think about the middle of April. That's as far as we've gotten with asking them their schedules.

THE COURT: Okay. Any others?

MS. HENRY: Not that I know of right now. There are people we want to identify but we wanted to get a date for the hearing, then we could choose those experts based on the date

of the hearing.

THE COURT: All right. I think we all recognize that gathering a bunch of experts, particularly some of the people that you mentioned here, is going to be a big task to get everybody in the same place at the same time. I don't know if you've had any discussion with Mr. Ketchmark or Mr. Valenti or anyone else in the U.S. Attorney's Office about the possibility of taking these individuals' depositions.

MS. HENRY: We've only had a preliminary discussion with Mr. Valenti, Mr. Ketchmark, Ms. Nouri, and myself on the phone. Mr. Valenti, who I know from my old days back in Jackson County, suggested that perhaps I should look at Your Honor's other cases for some guidance as to how you might want to proceed, and so I did do that and looked at the Sinisterra docket.

What we were prepared to propose to Your Honor today, based not only on our witnesses' availability but our own availability in terms of our dockets, that we're pretty full through really early summer already but before we got your order, is we were going to suggest that we start our hearing date on October 31st, which is very much in line with the first hearing date that was set in Sinisterra's case.

He had, as Your Honor knows, nine witnesses and 60 exhibits. So far we've identified 43 witnesses that we would need to call and over 250 exhibits, plus we need to go back and

reread the record. It's been some time. We need to prepare -- we don't want to come in here bungling and really, frankly, wasting the Court's time; whereas, if we come in prepared, we're slick, we're ready to go, I think it would be much better for Your Honor and for Ms. Montgomery, of course.

THE COURT: All right. Let me see what Mr. Valenti has to say on these matters.

MS. HENRY: May I just -- I'm sorry, Your Honor. Nine of our witnesses -- just another factor to consider is nine witnesses out of the 43 are witnesses who are outside of the subpoena jurisdiction of Your Honor and may not willingly come to a hearing, and so one other thing we will have to have a conversation with the government about is scheduling video depositions in the districts and jurisdictions where they reside since, as I understand it, I can't force them to come to Kansas City if they don't want to since they're outside.

THE COURT: Right. Okay.

Mr. Valenti, very fortunate Mr. Ketchmark is on vacation today.

MR. VALENTI: Yes.

THE COURT: And I want you to tell me if you have identified some expert witnesses that you intend to call, and I'd also like to get your input on the appropriateness of taking depositions of some of these people and a hearing date.

MR. VALENTI: Your Honor, as relates to expert

witnesses, based upon my knowledge of the file, either Dr. Park Dietz or Dr. Dan Martell, one a psychiatrist and one a neuropsychologist, both interviewed Ms. Montgomery. My suspicion is that given the allegation about her lack of competency at the time of the trial, one or both of them will be needed by the government.

We've not talked to them about a time yet because of their national reputation and schedule. Thought it would be more appropriate to get a hearing date and make sure they can make it happen at that time; and then if one or either would not be available, we can accommodate them accordingly.

We don't have a ton of witnesses in this case. We don't carry the burden. Those would be the only experts that I can envision now. As it relates to taking their depositions, I'm willing to consider that. I'd like to have a date set for hearing so I could find out who's available.

Having gone through these hearings, it's much more useful to have the witnesses live, if possible, in order for them to deal with the most recent developments in the evidentiary presentation so that the information and the record can be as accurate as possible.

If some witnesses are unavailable, I can certainly see the need in order to accommodate those type of situations with a deposition, whether that be a video or whatever. We've done it before in these cases. It ends up working out fine.

My preference would be to have them live. We can do it but if that's not a possibility, we can be flexible.

As far as a hearing date, Mr. Ketchmark and I discussed that. Whenever you say to be ready, Your Honor, we'll be ready. This is important for the office. Obviously it's a large prosecution. It will become a front-burner issue depending upon what that date is, and so whatever accommodates your schedule and their schedule, we'll be ready.

THE COURT: All right. Well, whatever the reasons are it seems extremely difficult to move this matter forward. It's been way too long. I realize that, you know, a lot of that was due to Mr. Duchardt's availability to provide the affidavit that I required him to provide, but I really feel strongly that we need to schedule this matter as soon as possible, and I realize that's not a very definitive statement, but I'd rather have the expert witnesses here in person as well. It's easier and it's better.

October the 31st is a long ways away, and I really don't want to continue this matter that far. Terri advises me that October and November are pretty full for us right now. It doesn't mean it's going to stay that way. And I'm certainly willing to give this case a priority over others, and I hope that counsel is as well.

What's the earliest date you can be prepared, Ms. Henry?

MS. HENRY: Honestly, the earliest I thought I could be prepared is next year. So when I said October 31st -- this case has a priority for me. It is a priority for me. It's a priority for our office. Also a priority for my office, Your Honor, is the method of execution litigation which is followed by every execution in the state of Tennessee right now. The record was filed yesterday. The brief will be due in 30 days. It's a 2,500-page transcript of a trial that we held last July, and the brief -- I'm lead counsel for 33 of the 62 death row inmates in the state of Tennessee. I have to do that. I can't tell the Tennessee Supreme Court that I can't do that.

THE COURT: Well, there are three of you out here, though.

MS. HENRY: There are, Your Honor. I'm the most experienced and I'm not the only counsel on the case. Ms. Nouri is wonderful to work with. We have a great team. It's a wonderful team. I love this team. But I am the only one with capital experience on the case, and Mrs. Montgomery has the right to that experience.

I would prefer to have live witnesses. I'd prefer to have all the witnesses together because it's going to make it a more cohesive, coherent hearing. I will do what the Court tells me to do. You tell me to start next week, I'm going to start next week. But I will just let you know because I think Your Honor wants to know what my level of preparedness is going

to be, what the team's level of preparedness is going to be because we won't be the last lawyers. We'll have a set of lawyers behind us looking at what we did and we're going to do everything we possibly can do to get this thing ready for hearing.

September is when Dr. Woods and Ms. Vogelsang are available, and I really do not feel that the evidence can go forward in a coherent way by setting them off from the rest of the witnesses. I feel like it needs to come together. And with hearing Dr. Dietz and Dr. Martell may be testifying, there are 20 hours of video recordings of Dietz and Martell that will have to be reviewed, not only by the team, but also by our expert witnesses to be prepared to rebut Dr. Dietz and Dr. Martell and prepare to cross-examine them. So, honestly, the earliest would be September, Your Honor, and I think that's seriously pushing it. I'm just being honest. I'm going to do what you tell me to do.

THE COURT: Terri, what do we have set October 31st?

THE COURTROOM DEPUTY: We have a civil trial.

THE COURT: Which case?

THE COURTROOM DEPUTY: It's one that has attempted to settle through settlement conference and it didn't settle. Let me go back to the calendar. Yes. And I believe it's a four-day.

THE COURT: What's the name of it?

THE COURTROOM DEPUTY: Davis v. State Farm.

THE COURT: Are you familiar with that case, Janelle?

THE LAW CLERK: I am.

THE COURT: Which one was it?

(Discussion held off the record.)

THE COURT: Well, let me go and look at my calendar for a minute because I've got to assess some of this and I'll be back in five or ten minutes.

MS. HENRY: Thank you.

(A recess was taken.)

THE COURT: All right. Mr. Valenti, October 31st work for the government?

MR. VALENTI: Yes, Your Honor.

THE COURT: All right. I'll move that case that I have then. And, you know, I want the parties to understand that this hearing's going to go on October 31st, and so you get your experts lined up. If they can't be here, you all cooperate to get their depositions taken; and if there's some problem or objection to that on any given individual, then come back to me and we'll decide it, because one way or another the testimony is going to be presented on October 31st.

And, you know, my guess is that I'm going to need to block out a couple of weeks to make sure we have plenty of time.

Is that an accurate estimate in your opinion, Ms. Henry?

MS. HENRY: Yes, Your Honor.

THE COURT: And, Mr. Valenti, do you have any idea how long it might take?

MR. VALENTI: I think two weeks will be plenty of time. Obviously the burden falls on them. It depends on how long their presentation is, but Mr. Ketchmark and I intend to go fairly quickly.

THE COURT: All right. We'll mark out two weeks and hopefully it won't take that long; but if it does, we'll have the time available.

Now, Ms. Henry, can you designate the expert witnesses who you intend to call within 60 days from today?

MS. HENRY: Yes, Your Honor. I see no problem.

THE COURT: And, Mr. Valenti, can you designate your experts within 20 days after their designation?

MR. VALENTI: Yes, Your Honor.

THE COURT: And, Ms. Henry, I'd like for you to file, additionally, a witness and exhibit list 30 days before the hearing.

MS. HENRY: Yes, sir.

THE COURT: All right. And, Mr. Valenti, can the government do the same?

MR. VALENTI: Yes, Your Honor.

THE COURT: Thank you.

And also I'd like for the parties simultaneous with their exhibit list to identify the exhibits that the parties are willing to stipulate to for, at a minimum basis, of identification and stipulate as far as you might deem appropriate, but I expect the parties to cooperate on identification and foundation, not make people jump through a bunch of unnecessary hoops in that regard.

Ms. Henry, anything else you can think of that we might need to discuss here today?

MS. HENRY: Your Honor, and without seeming in any way -- with all respect for your order, I did want to, once again, ask the Court to perhaps consider allowing at least some limited discovery. I think specifically with Dr. McCandless who is in Phoenix, Arizona, who has refused to submit to a voluntary interview with us, and I think it would be helpful for us to move forward with the hearing if we could go to Arizona and take the discovery deposition of Ms. McCandless. I think that would help us prepare -- decide whether we need to call her and help us prepare our cross-examination of Mr. Duchardt.

And we really also feel like it would be helpful to all the parties to have a discovery deposition of Mr. Duchardt. I think that would assist all the parties as we prepare for the hearing. It will help narrow our questions of him in the

courtroom, which would make the testimony before Your Honor go much more quickly. And I say that again not to be quarrelsome and with all respect for Your Honor, we just really would request the opportunity to take those -- at least those two depositions.

THE COURT: Are you willing to compensate Mr. Duchardt for his time?

MS. HENRY: Yes, sir.

THE COURT: You are?

MS. HENRY: Yes, sir.

THE COURT: At what rate?

MS. HENRY: I think the capital attorney rate right now is $189 an hour.

THE COURT: At the capital rate?

MS. HENRY: At the capital rate, yes, sir.

THE COURT: Is that all of them, just those two individuals?

MS. HENRY: Yes, sir.

THE COURT: Mr. Valenti, what's your position on that?

MR. VALENTI: Your Honor, I don't believe that I would be educated enough to take a position different than what we've taken before. I don't know that discovery needs to be done, especially in the case of Mr. Duchardt given the length of the affidavit he previously prepared and the focus and

nature of the record that you've indicated that -- in your order of January 25th. I think it would be time consuming to Mr. Duchardt who already spent a day or more of his time in court. I don't know that's necessary for either him or either Dr. -- or Ms. McCandless. I don't think discovery needs to be done other than what's already available.

THE COURT: All right. Well, it's my opinion, as I expressed previously, that providing the parties an opportunity for evidentiary hearing on these matters and the opportunity to call these witnesses in this bench-tried proceeding obviates the need for any additional discovery by way of deposition of any potential witnesses. So I'm not going to direct or allow that those discovery depositions be taken.

MS. HENRY: Thank you.

THE COURT: All right. Anything else, Ms. Henry?

MS. HENRY: Your Honor, would it be appropriate to set a pretrial hearing in case there are any motions that the parties want to take up or would you prefer just to take those all up the morning of October 31st?

THE COURT: Sure. We can do that. I figured probably if you had motions, I would be hearing from you, but we can set a date to do that. Do you want -- how about if we do it 20 days before the hearing date?

Terri, have you got some space in there somewhere?

Is that agreeable with you, Mr. Valenti?

MR. VALENTI: Yes, Your Honor.

THE COURTROOM DEPUTY: The week of the 10th. That Monday is a holiday.

THE COURT: Monday's a holiday?

THE COURTROOM DEPUTY: Yes. 12th is completely open, Wednesday, October 12th.

THE COURT: Okay. October 12th. Do you prefer morning or afternoon?

MS. HENRY: Whatever works best for the Court we'll be here.

MR. VALENTI: Any is fine.

THE COURT: You don't have to come very far, do you?

MR. VALENTI: No, sir.

THE COURT: All right. Let's do it at ten o'clock on -- what is it? A Wednesday?

THE COURTROOM DEPUTY: Wednesday.

THE COURT: Wednesday, October the 12th.

And any pretrial motions or pretrial briefs are to be filed by that time.

Anything else, Ms. Henry?

MS. HENRY: No thank you, Your Honor.

THE COURT: Mr. Valenti?

MR. VALENTI: No, Your Honor. Thank you.

THE COURT: All right. I think everybody understands, just to make sure you do, October the 31st is set

in stone and that's when we're going to -- that's when we're going to do it. So everybody get prepared.

Thank you.

(Adjournment)



Case 4:12-cv-08001-GAF Document 179 Filed 02/04/16 Page 19 of 20

## CERTIFICATE OF OFFICIAL REPORTER

I, Katherine A. Calvert, Federal Official Court Reporter, in and for the United States District Court for the Western District of Missouri, do hereby certify that the foregoing is a true and correct transcript of the stenographically reported proceedings in LISA M. MONTGOMERY, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant, No. 12-CV-08001-GAF.

Dated this 4th day of February, 2016.

________________________________
KATHERINE A. CALVERT, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER